UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE,<br><br>          Plaintiffs,<br><br>     v.<br><br>DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE, POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY,<br><br>          Defendants. | CIVIL ACTION<br>DOCKET NO. 04-CV-4151 (AKH)<br><br><br><br><br>__MEMORANDUM IN SUPPORT__<br>__OF PLAINTIFFS' MOTION__<br>__FOR PRELIMINARY INJUNCTION__ |

## TABLE OF CONTENTS

INTRODUCTION.................................................
2

STATEMENT OF
FACTS...........................................4

ARGUMENT....................................................
6

A.   PLAINTIFFS ARE LIKELY TO SUCCEED
     ON THE MERITS OF THEIR CLAIM BECAUSE
     THEY SATISFY THE STATUTORY AND REGULATORY
     REQUIREMENTS FOR EXPEDITED
PROCESSING......................9

     1.   Plaintiffs Are Entitled To Expedited
          Processing Because  They Are Organizations

Primarily      Engaged In Disseminating
Information And Who Are Seeking Records
That Are Urgently Needed To Inform The
Public About Federal Government
Activity.............10

(i)  Plaintiffs Are Organizations Primarily
Engaged In Disseminating
Information...........10

(ii) The Records Plaintiffs Seek Are
Urgently Needed To Inform The Public
About Federal Government
Activity...............14

2.   Plaintiffs Are Entitled To Expedited
Processing Because The Request Meets The
FOIA's Humanitarian Need And Imminent
Risk
Standards.....................................19

B.   IRREPARABLE INJURY AND EXTREME DAMAGE WILL
RESULT IF PRELIMINARY INJUNCTION NOT
GRANTED..............20

C.   THE BALANCE OF THE HARDSHIPS CLEARLY FAVOR
PLAINTIFFS...............................................2
2

CONCLUSION..................................................2
5

## INTRODUCTION

This case involves a request filed under the Freedom of Information Act ("FOIA") for records pertaining to the treatment of individuals apprehended after September 11, 2001, and held in United States custody in military bases or detention facilities outside the United States ("Detainees").  Although Plaintiffs requested these records almost nine months ago, and although the extraordinary public

interest in the release of these records is clear, the only record that Defendants have thus far disclosed in response to the request is a set of talking points used by the State Department in communications with the media.  Plaintiffs file this motion in order to enforce their statutory right, under FOIA, to expedited processing.

Plaintiffs are organizations that share a belief that Detainees should be treated in accordance with domestic and international law and whose mission is to provide information to the public on such issues.[1]  They seek the immediate processing and release of agency records, pursuant to FOIA, 5 U.S.C. § 552, from Defendants Department of Defense ("DOD"), Department of Justice ("DOJ"), Department of Homeland Security ("DHS"), Department of State ("DOS"), Central Intelligence Agency ("CIA"), and their above-named components.

Plaintiffs have filed two FOIA requests seeking identical categories of documents.  The first was filed in October 2003; having received no response to that Request from Defendants, and amidst further news reports describing the abuse of Detainees, Plaintiffs filed a second FOIA request in May 2004.  In each case, Plaintiffs sought expedited processing under FOIA and corresponding regulations.  With respect to the October 2003 request, no agency granted plaintiffs' request for expedited processing.  With respect to the

---

[1]  Plaintiffs are American Civil Liberties Union ("ACLU"), Center for Constitutional Rights ("CCR"), Physicians for Human Rights ("PHR"), Veterans for Common Sense ("VCS") and Veterans for Peace ("VCP").

May 2004 request, only DOJ and DOS have granted Plaintiffs' request for expedited processing.   Neither agency, however, nor any other Defendant, has provided a processing schedule or stated any date by which processing will be completed.

Defendants' continued refusal to disclose the requested records deprives Plaintiffs and the public of information critical to the their ability to evaluate the government's policies and practices with respect to Detainees.   The government has continued to obstruct inquiries related to Detainee abuse in the face of mounting evidence that the abuse was not isolated to a few incidents but was instead systemic, and that high-ranking government officials may have condoned or even authorized that abuse.   Grave questions about who was ultimately responsible for Detainee abuse remain unanswered as key records remain undisclosed despite the efforts of Congress and the press.

In light of Defendants' failure to comply with FOIA and corresponding regulations, Plaintiffs respectfully request that this Court enter a preliminary injunction ordering Defendants to (1) within 14 days of entry of the Court's order, complete the processing of Plaintiffs' request and provide Plaintiffs with a Vaughn Declaration; and (2) hold a status conference at which a schedule can be set for the filing of cross-motions for summary judgment.

**STATEMENT OF FACTS**

On October 7, 2003, Plaintiffs submitted substantively identical FOIA requests in separate letters to Defendants DOD and its components; DOJ and its components; DOS; and CIA.  The same request was sent to Defendant DHS on December 13, 2003.  *See* Exh. 1-13 (Appendix B).  Plaintiffs' request sought records concerning (1) the treatment of Detainees; (2) the deaths of Detainees while in United States custody; and (3) the rendition of Detainees and other individuals to countries known to employ torture or illegal interrogation techniques.  *See id.*, Amended Compl. ¶¶23, 45.

By separate letters filed on the same day, Plaintiffs submitted a request for expedited processing.  *See* Exh. 1-13 (Appendix C).  None of the Defendants granted Plaintiffs' request for expedited processing.  Furthermore, the only record that Plaintiffs have received from their October 2003 request is a set of talking points used by DOS in communications with the media.

Plaintiffs filed a second FOIA request on May 25, 2004, seeking the same three categories of information as was in their first request, but referring to specific records made known to certain members of the media since October 2003 but still undisclosed to the public for review.  *See* Amended Compl. ¶¶45-47; Exh.1-13.  Plaintiffs again sought expedited processing on various statutory and regulatory grounds.

With the exception of DOJ's Office of Information and Privacy and DOS, which granted Plaintiffs expedited processing by letters dated June 2, 2004 and June 18, 2004, respectively,[2] none of the Defendants have granted Plaintiffs expedited processing. DOD denied Plaintiff's request for expedited processing in a letter dated June 21, 2004, on the grounds that Plaintiffs failed to establish a "compelling need."[3]  The remaining agencies *de facto* denied Plaintiffs expedited processing by failing to respond to their request.[4]  None of

---

[2] Despite the grant of expedited processing, the assigned DOJ analyst for FOIA processing informed counsel for Plaintiffs by telephone on June 10, 2004, that there was no specific date, or even approximate time period, in which DOJ could currently expect release of the requested records.  Defendant FBI, in a letter dated June 28, 2004, informed Plaintiffs that it is conducting a search in accordance with the grant of expedited processing by DOJ but did not provide any schedule for such processing.  Similarly, in its letter granting expedited processing, DOS stated that "we cannot promised that the processing of your request will be completed by a specific date."

[3] The Records Coordinator of the DOD Directorate for Freedom of Information and Security Review had previously informed counsel for Plaintiffs via telephone on June 11, 2004, that a *de facto* denial of Plaintiffs' expedited processing request would be forwarded in the mail, on the basis that the agency is experiencing a backlog in processing requests and, in particular, requests associated with the treatment of Detainees.

[4]  No other agencies provided a response to Plaintiffs' request for expedited processing within the statutory time limit except for Defendants DIA and DOJ Civil Rights, which sent letters dated May 27 and June 1, 2004 respectively, explaining that a backlog in agency requests would prevent timely processing.  DHS substantively denied Plaintiffs' request by letter dated June 10, 2004, stating that the documents requested "fall outside of the areas of responsibility" because the DHS has "no overseas detention facilities."  In addition, by letters dated June 2 and June 4, 2004, respectively, Defendants Army and Navy informed Plaintiffs that the FOIA Request would be forwarded to Defendant DOD for processing.

the Defendants have provided any records, or indices of potential records, in response to Plaintiffs' May 2004 Request.

## ARGUMENT

### PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION COMPELLING DEFENDANTS TO PROCESS THEIR REQUEST ON AN EXPEDITED BASIS.

"FOIA is often explained as a means for citizens to know 'what the Government is up to.'  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy." *Nat'l Archives and Records Admin. v. Favish*, __ U.S. __, 124 S.Ct. 1570, 1580 (Mar. 30, 2004) (citation omitted).  In enacting FOIA, Congress recognized that an informed citizenry is "needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA thus "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999).  *See also New York Public Interest Research Group v. United States Env'tl Protection Agency,* 249 F.Supp.2d 327, 331 (S.D.N.Y. 2003) (purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny") (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  To this end, FOIA directs government agencies to disclose certain types of records and describes the manner of disclosure required, *see* 5

U.S.C. § 552(a), while setting forth the specific categories of materials exempted from disclosure, *id.* § 552(b); *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (exemptions to the FOIA are to be "narrowly construed with doubts resolved in favor of disclosure").

Ordinarily, an agency faced with a request for records under § 552(a) must respond within 20 days. 5 U.S.C. § 552(a)(6)(A)(i). When an application for expedited processing is filed, however, the agency is required to respond to the application within ten days after the date of the request. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I). Where expedited processing is warranted, FOIA requires that the request be processed "as soon as practicable." *Id.* § 552(a)(6)(E)(iii).

Defendants' failure to provide expedited processing within the ten-day statutory period in this case violates FOIA and warrants the grant of a preliminary injunction. In order to prevail on a motion for a preliminary injunction, Plaintiffs must demonstrate:

> (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24-25 (2d Cir. 2004). As discussed below, Plaintiffs have met these requirements for immediate injunctive relief. Accordingly, this Court should

enter a preliminary injunction ordering Defendants to (1) within 14 days of entry of the Court's order, complete the processing of Plaintiffs' request and provide Plaintiffs with a Vaughn Declaration; and (2) hold a status conference at which a schedule can be set for the filing of cross-motions for summary judgment. *See, e.g., Ferguson v. Federal Bureau of Investigation,* 957 F.2d 1059, 1066 (2d. Cir. 1999) (ordering agency to begin immediate processing of FOIA request, granting 85 days to complete processing); *ACLU v. United States Dep't of Justice*, __ F. Supp. __, 2004 WL 1162149, *11 (D.D.C. May 10, 2004) (ordering defendant to provide expedited processing).

**A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM BECAUSE THEY SATISFY THE STATUTORY AND REGULATORY REQUIREMENTS FOR EXPEDITED PROCESSING.**

Plaintiffs satisfy the various statutory and regulatory standards for expedited processing and are therefore likely to succeed on the merits of their claim. FOIA provides that expedited processing is warranted where a requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E). Such need is established where the records sought are "urgently needed by [organizations] primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(i). *See* 32 C.F.R. § 286.4(d)(3) (DOD); 22 C.F.R. § 171.12(b) (DOS); 32 C.F.R. § 1900.34(c), (c)(2) (CIA); 6 C.F.R. § 5.5(d)(i) (DHS). DOD and DOS regulations provide that a request is deemed "urgently needed" if "[t]he information has a particular value that will be lost if not disseminated quickly. Ordinarily, this

means a breaking news story of general public interest."  32 C.F.R. § 286.4(d)(3) (DOD); 22 C.F.R. § 171.12(i).

Requesters may also establish "compelling need" by a showing that the failure to expedite the request would "pose an imminent threat to the physical safety of an individual."  5 U.S.C. § 552(a)(6)(E)(i).  *See* 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ).  Additionally, DOJ regulations require expedited processing for requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5(d)(1)(iv).  DOD regulations further warrant expedited processing where requesters demonstrate an "imminent loss of substantial due process rights," 32 C.F.R. § 286.4(d)(3), or a "humanitarian need" for the information requested.  32 C.F.R. § 286.4(d)(3)(iv).

Plaintiffs' May 2004 FOIA Request seeks expedited processing on these statutory and regulatory grounds.  For the reasons set forth below, Plaintiffs' claim satisfies these standards and Plaintiffs are therefore likely to prevail on the merits thereof.

**1.    Plaintiffs Are Entitled To Expedited Processing Because They Are Organizations Primarily Engaged In Disseminating Information And Who Are Seeking Records That Are Urgently Needed To Inform The Public About Federal Government Activity.**

Plaintiffs are statutorily entitled to expedited processing because (i) they are organizations primarily engaged in disseminating information; (ii) the records sought are urgently needed to inform

the public about federal government activity.  *See* 5 U.S.C.
§ 552(a)(6)(E)(i)(I).

### (i)  Plaintiffs Are Organizations Primarily Engaged In Disseminating Information.

Plaintiffs are primarily engaged in disseminating information.
FOIA specifically allows for members of the public to qualify for
expedited processing by demonstrating that their "primary activity
involves publishing or otherwise disseminating information to the
public concerning actual or alleged Federal Government activity."  5
U.S.C. § 552(a)(6)(E)(i)(I).  Plaintiffs are "primarily" involved in
disseminating information within these explicit purposes, as they are
organizations who share a central purpose of providing the public
with information on government conduct.  *See* Amended Compl. ¶¶8-12.

While no court has directly considered the meaning of the phrase
"primarily engaged in disseminating information," the courts have
considered the meaning of a closely related standard used in the
FOIA's fee-waiver provisions.   5 U.S.C. § 552(a)(4)(A)(ii)(II).
Those provisions state that a fee waiver may be appropriate where the
request at issue is filed by a "representative of the news media."
In *Electronic Privacy Information Center v. Dep't of Defense*, 241
F.Supp.2d 5 (D.D.C. 2003), the Court held that "It is critical that
the phrase 'representative of the news media' be broadly interpreted
if the act is to work as expected . . . [A]ny person or organization
which regularly publishes or disseminates information to the
public . . . should qualify . . . as a 'representative of the news
media.'"  In *National Security Archive v. Dep't of Defense*, 880 F.2d

1381, 1387 (D.C. Cir. 1989), the D.C. Circuit held that the critical question in determining whether an organization is a "representative of the news media" is whether it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."   Notably, agency regulations governing expedited processing recognize that "[r]epresentatives of the news media . . . would normally qualify as individuals primarily engaged in disseminating information."   32 C.F.R. § 286.4(d)(3)(ii) (DOD regulations); *see also ACLU v. United States Dep't of Justice*, 2004 WL 1162149 at *11 n.5 (D.D.C. May 10, 2004) (finding that requester was "primarily engaged in disseminating information" on the basis of previous judicial determination that requester was a "representative of the news media").

Plaintiffs certainly meet these standards.   *See* Amended Compl. ¶¶8-12.   In particular, Plaintiffs focus on such areas of government policy and accountability as civil and constitutional rights, health policy, and veterans' advocacy on military interventions.   *Id.*   A fundamental and daily aspect of each Plaintiff's mission is to provide public education, particularly about government activities, in support of their advocacy work.   *See* Amended Compl. ¶¶8-12.   To that end, Plaintiffs publish, regularly and to a broad public, originally authored reports and information collected from other sources, compiled as news briefs, articles, essays and editorials, as well as longer publications, including newsletters, pamphlets, educational materials and books.   *Id.*   Plaintiffs accomplish these aims via multiple channels, including heavily trafficked and

subscribed websites and electronic listserves (reaching at least 500,000 individuals), direct mailings and other educational forums. *See id*.

Specific examples of the many ways in which Plaintiffs disseminate information include Know-Your-Rights handbooks, *see* Amended Compl. ¶8-9; published investigations on health and human rights, *id*. ¶10; and regular news briefings and updates. *Id*. ¶8-12. Plaintiff ACLU, for example, is committed to ensuring that actions taken by the government under the rubric of "national security" are consistent with the Constitution and international law, to that end, have produced and provide numerous publications for the public. *Id*. ¶8. Similarly, Plaintiff CCR has disseminated many publications in fields of civil and international human rights, including extensive materials on Detainees and others apprehended after September 11, 2001. *Id*. ¶¶9. Plaintiff PHR promotes health by protecting human rights and has conducted medical investigations of torture throughout the world, played a leading role in developing the principal instrument for the medical evaluation of torture, and conducted investigations on health and human rights in, among other places, Iraq and Afghanistan. *Id*. ¶¶10. Plaintiffs VFP and VCS, organizations of and for United States war veterans, distribute information widely on the policies and consequences of armed conflict, and have published many materials on the wars in Afghanistan and Iraq. *Id*. ¶¶11-12.

Although Plaintiffs' interests are wide-ranging, they have been united by the singular concern over the lack of access to information regarding Detainees. The information thus requested in Plaintiffs'

FOIA request is critical to their abilities to analyze government policies and to produce and disseminate information on the United States government and its conduct towards Detainees, including allegations of torture and inhumane treatment, as well as government policies which result in the rendition of individuals to countries known to employ torture and illegal interrogation methods.

In light of FOIA's broad definition for "representative of news media" and Plaintiffs' primary and shared commitment to the dissemination of information concerning federal government activities, Plaintiffs have met this requirement for expedited processing.

**(ii)   The Records Plaintiffs Seek Are Urgently Needed To Inform The Public About Federal Government Activity.**

The records sought by Plaintiffs are also urgently needed to inform the public about federal government activity.   While the Second Circuit has not yet set forth a defining test for determining when a requester has established an "urgent need," the Court of Appeals for the District of Columbia Circuit has recently done so:

> [I]n determining whether requesters have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns a federal government activity.

*Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 311 (D.C. Cir. 2001).   Defendant DOD and DOS additionally define "urgently needed" as relating to a "breaking news story of general public interest."

32 C.F.R. § 286.4(d)(3) (DOD); 22 C.F.R. § 171.12(b)(DOS). In light of the unmistakable public interest and the daily media coverage of the issues implicated in Plaintiffs' Request, this standard is clearly met here. Indeed, DOJ and DOS have granted Plaintiffs' request for expedited processing based on these standards. Here, Plaintiffs readily satisfy these requisites.

Plaintiffs' request concerns a matter of extraordinary public interest involving, as it does, fundamental questions about government integrity. As set forth by news articles cited in Plaintiffs' request for expedited processing and confirmed by news reports published thereafter, recent months have witnessed public outrage regarding Detainee abuse in Iraq, Guantánamo and Afghanistan. *See, e.g.,* John Barry *et al.*, *The Roots of Torture: The Road to Abu Ghraib Began After 9/11, When Washington Wrote New Rules to Fight a New Kind of War*, Newsweek (May 24, 2004) (tracing news coverage uncovering abuse of Detainees in Iraq and Afghanistan); Douglas Jehl and Eric Shmitt, *Dogs and Other Harsh Tactics Linked to Military Intelligence*, N.Y. Times (May 22, 2004); Bradley Graham, *Number of Army Probes of Detainee Deaths Rises to 33,* Wash. Post (May 22, 2004); Douglas Jehl & Eric Schmitt, *Afghan Policies On Questioning Taken to Iraq: Harsher Interrogation Practices are Cited,* N.Y. Times (May 21, 2004); Charlie Savage, *As Threats to U.S. Changed, So Did Prison Tactics*, BostonGlobe.com (May 16, 2004); Mitch Frank, *A Pattern of Abuse?*, Time (May 9, 2004) ("For two years reports have piled up about 'stress and duress' techniques military and CIA officers are using on al-Qaeda and Iraqi captives"); Dana Priest

& Joe Stephens, *Pentagon Approved Tougher Interrogations*, Wash. Post (May 9, 2004). *See also* Exh. 1-13 (Appendix A). Indeed, the issues that form the basis of Plaintiffs' request were a paradigmatic breaking news story at the time that Plaintiffs sought expedited processing, and remain just as newsworthy today.

Nor have the efforts of Congress and the press to secure the release of relevant records adequately met the urgent public need for information. Defendants have continued to refuse to disclose, to both the public and Congress, the vast majority of responsive records.[5] And although members of Congress have submitted inquiries to Defendants, no formal subpoenas or demands have been issued.[6]

And, in the few instances when the press obtained "leaked" government documents, it sometimes chose on its own accord to redact portions of those documents prior to publishing them.[7]

---

[5] *See, e.g.,* Susan Schmidt, *Ashcroft Refuses to Release '02 Memo: Document Details Suffering Allowed in Interrogations*, Wash. Post (June 9, 2004); Testimony of Attorney General John Ashcroft Before Senate Judiciary Comm. (June 8, 2004); Michael Hirsh & John Barry, *Is Rumsfeld's Defense Department Obstructing Investigations Into Abuses at Abu Ghraib?*, Newsweek (June 7, 2004) (describing documents which suggest that the Department of Defense "is doing its best to stop potentially incriminating information from coming out, that it's deflecting Congress's inquiries and shielding higher-ups from investigation").

[6] *See* Helen Dewar & Dan Morgan, *Senate Rejects Request for Abuse Documents,* Wash. Post (June 24, 2004). *See also* Thom Shanker, *Rumsfeld Admits He Told Jailers to Keep Detainee in Iraq Out of Red Cross View*, N.Y. Times (June 18, 2004).

[7] *See* Dana Priest, *Justice Dept. Memo Says Torture 'May Be Justified'*, Wash. Post, (June 14, 2004) (noting that "[t]he Post deleted several lines from the [August 1, 2002 memo from Assistant Attorney General Bybee to White House Counsel Alberto Gonzales] that are not germane to the legal arguments being made in it and that are the subject of further reporting by The Post"). *See also* http://www.washington

Despite the public outcry, key documents concerning the nature of government involvement in condoning or even authorizing these abuses remain undisclosed.  News reports have demonstrated a number of ways in which Defendants have sought to keep treatment of Detainees hidden from the public and media, as well as from counsel for Detainees, and from human rights observers reporting on the conditions in United States detention facilities.[8]

Even documents selectively disclosed by the White House and DOD, chosen for release by the very officials whose conduct and policies are at issue,[9] raise more questions than they answer.  Broad categories of documents are missing from the disclosed information, including communications to and from the DOS (such as known memoranda between officials regarding the use of torture);[10] communications with the FBI and CIA (despite the acknowledgment that it was communication from and among these agencies which prompted the review of

---

post.com/wp-srv/nation/documents/dojinterrogationmemo20020801.pdf (redactions at pages 32, 35 and 38).

[8] *See* Thom Shanker, *Rumsfeld Admits He Told Jailers to Keep Detainee in Iraq Out of Red Cross View*, N.Y. Times (June 18, 2004); Josh White, *Rumsfeld Authorized Secret Detention of Prisoner*, Wash. Post (June 18, 2004).

[9] *See* Scott Lindlaw, *White House Releases Interrogation File*, Assoc. Press (June 24, 2004).

[10] *See* R. Jeffrey Smith, *U.S. Liability Key in '02 Memos*, Wash. Post (June 23, 2004).  For example, a February 2002 DOS memorandum warned the White House that a rejection of international standards against torture when dealing with detainees would put United States troops at risk abroad. Lara Jakes Jordan, *State Department Warned White House on Torture*, Assoc. Press (June 11, 2004).

interrogation methods);[11] and documents dated after spring 2003.  *See Abu Ghraib, Stonewalled*, N.Y. Times, (June 30, 2004) ("Even last week's document dump from the White House . . . seemed part of [the Bush Administration's] stonewalling campaign.  Nothing in those hundreds of pages explained what orders had been issued to the military and CIA jailers in Iraq, and by whom").  Meanwhile, the partial information obtained by news sources continues to underscore the urgent need for an open review of the records in question.  *See* John Moore, *The Abu Ghraib Scandal Cover-Up?*, Assoc. Press (May 30, 2004) (reporting that prisoner abuse is more widespread than initially thought, and that much remains hidden).  Fundamental questions remain unanswered, including the extent and degree of Detainee abuse, and the role of Defendant agencies and components in enforcing, monitoring, investigating, and responding to such abuse. Weighty questions also remain about the role of non-government agents, including civilian contractors, in the perpetration of abuses against Detainees.[12]   Access to the records long requested by Plaintiffs is essential if those questions are to be answered.

---

[11]  Communications between DOJ, CIA, FBI and DIA officials occurred throughout 2002 and 2003 concerning the questioning of high-value Detainees and new tactics authorized by CIA and military-intel interrogators based on "methods that United States Special Forces are specifically trained to resist," including "physical roughing up; sensory, food and sleep deprivation, and a "water pit" in which detainees have to stand on tip-toe to keep from drowning."  Michael Hirsh, *et al.*, *A Tortured Debate*, Newsweek (June 21, 2004).

[12]  *See* Richard A. Oppel & Ariel Hart, *Contractor Indicted in Afghan Detainee's Beating*, N.Y. Times (June 18, 2004); *Iraq Interrogator Contractor Faces Probes*, Assoc. Press (May 27, 2004); *U.S. Civilian Working at Abu Ghraib Disputes Army's Version of His Role in Abuses*, N.Y. Times (May 26, 2004).

Finally, the text of Plaintiffs' FOIA request indisputably establishes that the records requested concern a "federal government activity," namely, the treatment of Detainees by the United States government.  *See* Exh. 1-13.

Further delay in processing Plaintiff's request undermines the very purpose of FOIA and the rights of the citizenry to scrutinize the government's actions where a system of lawlessness appears to have been deliberately hidden from the public.  Plaintiffs' motion for a preliminary injunction, designed to avoid such further delay, should be granted.

**2.  Plaintiffs Are Entitled To Expedited Processing Because The Request Meets The FOIA's Humanitarian Need And Imminent Risk Standards.**

Expedited processing of Plaintiffs' request is also warranted because failure to do so will "pose an imminent threat to the physical safety of an individual."  5 U.S.C. § 552(a)(6)(E)(i). While recent media coverage has prompted Defendants to undertake investigations into the very Detainee deaths originally highlighted in Plaintiffs' FOIA request,[13] the progress of Defendants in addressing these issues does not ensure the protection of the human

---

[13] Current separate Army, CIA and DOD investigations concern at least 75 allegations of abuse and deaths.  *See* Miles Moffeit, *Brutal Interrogation in Iraq: Five Detainees' Deaths Probed*, Denver Post (May 19, 2004). DOJ has also opened an investigation into the involvement of CIA officers and contract employees in the suspicious deaths of Iraqi and Afghani detainees.  *See* David Johnston and Neil A. Lewis, *U.S. Examines Role of C.I.A. and Employees in Iraq Deaths*, N.Y. Times (May 6, 2004).

rights and physical safety of Detainees.   The ever-widening reports of torture and other ill-treatment grow more urgent with each disclosure, including such graphic details as repeated sexual humiliations, savage beatings, electric shocks and forced retrieval of food from toilets.[14]   Thousands of Detainees remain in United States custody under what appears to be a legal regime which condones or even authorizes their abuse.   Many of those Detainees, including those held in Guantánamo, are held in a shroud of secrecy which continues to prevent the enforcement of applicable laws.[15]   As a result, the Detainees remain at risk of substantial injury, or death, at the hands of United States actors.   *See* Todd Pitman, *U.S. Probes Death at Abu Ghraib Prison*, Guardian (June 17, 2004) (reporting death of Detainee in June 2004).

For these reasons, as well as those discussed, *supra*, continued delay in processing will compromise significant humanitarian interests, in violation of DOD and DOS regulations providing for

---

[14]   *See* Scott Higham and Joe Stephens, *New Details of Prison Abuse Emerge*, WashingtonPost.com (May 21, 2004).

[15]   *See, e.g.,* Letter to Human Rights Organizations from Secretary Rumsfeld (denying human rights groups and trial monitors access to attend or observe military commission trials of Detainees) (Feb. 24, 2004).   *See* John Moore, *The Abu Ghraib Scandal Cover-Up?*, Assoc. Press (May 30, 2004) (insiders believe that much of the torture scandal remains hidden to the public); Michael Hirsh & John Barry, *Is Rumsfeld's Defense Department Obstructing Investigations Into Abuses at Abu Ghraib?*, Newsweek (June 7, 2004) (describing documents that suggest that DOD "is doing its best to stop potentially incriminating information from coming out, that it's deflecting Congress's inquiries and shielding higher-ups from investigation").

expedited  processing  where  such  humanitarian  interests  are endangered.  *See, e.g.* 22 C.F.R. § 171.12(c)(4) (DOS); 32 C.F.R. § 286.4(d)(3)(iv)(DOD).  Plaintiffs' motion for preliminary injunction should be granted.

**B.      IRREPARABLE INJURY AND EXTREME DAMAGE WILL RESULT IF PRELIMINARY INJUNCTION NOT GRANTED.**

The  violation  of  Plaintiffs'  statutory  right  to  expedited processing constitutes the irreparable injury they would suffer if they were to be denied preliminary relief.  Indeed, Plaintiffs' statutory right to expedited processing would be meaningless if such relief were unavailable to them.  As noted above, the documents requested pertain to issues that are currently and immediately the subject of important public discourse and debate.  In order to participate knowledgeably and effectively in this ongoing debate, Plaintiffs must obtain access to the requested records.  As courts have noted, organizations such as Plaintiffs, that rely "heavily and frequently on FOIA to conduct work that is 'essential to the performance of certain of their primary institutional activities'" demonstrate sufficient injury to warrant equitable relief in the face of agency delay in the release of requested records.  *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (quoting *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)).  Plaintiffs have a mission to provide the public

with accurate, reasoned information in a timely manner as the ongoing public debate on Detainee treatment unfolds.   Continued delay in the disclosure of records critical to that public debate causes irreparable injury by frustrating Plaintiffs' mission to inform the public in a contemporaneous manner.

Furthermore, in providing the public with advocacy and analysis of government policies, Plaintiffs bring a very different perspective to the debate on Detainee treatment from that provided by institutions of the federal government and mainstream media.   *See* discussion, *supra,* at 12-13.   Allowing Defendants to withhold responsive records would therefore irreparably injure Plaintiffs by precluding them from providing their particular perspective to the public on this issue.   *Cf. Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").   A preliminary injunction should be granted compelling Defendants to process Plaintiffs' FOIA request on an expedited basis.


**C.      THE BALANCE OF THE HARDSHIPS CLEARLY FAVOR PLAINTIFFS.**

The balance of hardships favors expedited processing of Plaintiffs' FOIA Request.   Injunctive relief would impose no burden on the Defendant beyond that already contemplated by FOIA and Defendants' own regulations.   Nor would injunctive relief impose any uncontemplated burden on the interests of other parties who have

submitted FOIA requests to Defendants.  Rather, FOIA expressly provides that expedited requests will take precedence over those requests that do not warrant expedited processing.  5 U.S.C. § 552(a)(6)(E).  The subordination of non-expedited requests is a consequence of the statutory scheme.

FOIA not only recognizes that the public interest is served by disclosure of government records, but that there is a public interest in prompt disclosure.  Where agency records shed light on controversial current operations of the government, delay in releasing the records frustrates the public interests served by the statute just as would an outright denial.  After all, it is a well-settled principle of FOIA that "excessive delay by the agency in its response is often tantamount to denial."  H.R. Rep. No. 876, 93rd Cong., 2d Sess. 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6271. "So long as the [FOIA] is the law, we cannot repeal it by a construction that vitiates any practical utility it may have." *Fiduccia v. United States Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999).  Here, in particular, Defendants have presumably accumulated numerous responsive records to Plaintiffs' request, as a result of prior or current inquiries or investigations regarding the treatment and deaths of Detainees.  *See* Steve Lee Myers & Eric Schmitt, *Wide Gaps Seen in U.S. Inquiries on Prison Abuse*, N.Y. Times (June 6, 2004); Matt Kelly, *Early Abu Ghraib Reports Went Unheeded*, Assoc. Press (June 11, 2004) (Fall 2003 complaints by military

personnel regarding abuses at Abu Ghraib). *See also* discussion, *supra*, at 23 n. 18. FOIA's provision for expedited processing ought not be able to be frustrated by Defendants' refusal to meet their statutory obligations.

For all of the reasons described above, Plaintiffs have demonstrated an urgent need for the records requested and it is likely that Plaintiffs will succeed on the merits of their claim. In light of the significant interests set forth by Plaintiffs, and the corresponding lack of equities in the government's continued failures of disclosure, this Court should grant Plaintiffs' motion for a preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a preliminary injunction ordering Defendants to (1) within 14 days of entry of the Court's order, complete the processing of Plaintiffs' request and provide a Vaughn Declaration; and (2) hold a status conference at which a schedule can be set for the filing of cross-motions for summary judgment.

Respectfully submitted,

_____/LSL/_____
Lawrence S. Lustberg (LL-1644)
Jennifer Ching (JC-5267)
GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4500

Jameel Jaffer (JJ-4653)
Amrit Singh (AS-9916)
Judy Rabinovitz (JR-1214)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, New York 10004

Barbara Olshansky (BO-3635)
Jeffrey E. Fogel (JF-3848)
Michael Ratner (MR-3347)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004

Dated: July 6, 2004      *Attorneys for Plaintiffs*