UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION, CENTER FOR
CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN
RIGHTS, VETERANS FOR COMMON SENSE AND
VETERANS FOR PEACE,

        Plaintiffs,

    v.

DEPARTMENT OF DEFENSE, AND ITS COMPONENTS
DEPARTMENT OF ARMY, DEPARTMENT OF NAVY,
DEPARTMENT OF AIR FORCE, DEFENSE
INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND
SECURITY; DEPARTMENT OF JUSTICE, AND ITS
COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL
DIVISION, OFFICE OF INFORMATION AND
PRIVACY, OFFICE OF INTELLIGENCE, POLICY AND
REVIEW, FEDERAL BUREAU OF INVESTIGATION;
DEPARTMENT OF STATE; AND CENTRAL
INTELLIGENCE AGENCY,

        Defendants.

CIVIL ACTION
DOCKET NO. 04-CV-4151 (AKH)

**AMENDED**
**COMPLAINT FOR**
**INJUNCTIVE RELIEF**

PRELIMINARY STATEMENT

1.  This is an action under the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552 *et seq.*, for injunctive and other
appropriate relief, and seeking the immediate processing and release
of agency records requested by plaintiffs from defendants Department
of Defense ("DOD"), Department of Homeland Security ("DHS"),
Department of Justice ("DOJ"), Department of State ("DOS"), Central
Intelligence Agency ("CIA"), and their above-named components.

2.  Plaintiffs submitted their initial FOIA request in October 2003 for three categories of records.  First, plaintiffs sought records concerning the treatment of individuals apprehended after September 11, 2001, and held by the United States at military bases or detention facilities outside the United States ("Detainees").  Second, plaintiffs sought records concerning the deaths of Detainees in custody.  Third, plaintiffs sought records concerning the government's practice of "rendering" Detainees to countries known to use torture.

3.  Since plaintiffs submitted their initial FOIA request, numerous news stories have documented the abuse of Detainees held in Iraq and Afghanistan and the rendition of Detainees and others to countries known to use torture.  Photographs and videos leaked to the press have established beyond any doubt that Detainees held in Iraq have been subjected to humiliating and degrading treatment.  The government has conceded that numerous Detainees have died in custody; at least sixteen of these deaths have been classified as homicides.  There is growing evidence that the abuse of Detainees was not aberrational but systemic, that in some cases the abuse amounted to torture and resulted in death, and that senior officials either approved of the abuse or were deliberately indifferent to it.

4.  In light of these recent disclosures, plaintiffs filed a second FOIA request in May 2004, seeking the same records as set

2

forth in the first request.  Incorporated in plaintiffs' second FOIA request was a new application for expedited processing.

5.  Although the public interest in the release of the records at issue here is manifest, the only record that the government has released in response to plaintiffs' request is a set of talking points used by the DOS in communications with the media.  None of the defendant agencies has released any other records in response to plaintiffs' request.  Further, none of the defendant agencies has granted plaintiffs' application for expedited processing.

6.  To vindicate the public's right to information about government conduct, plaintiffs seek an injunction requiring defendant agencies immediately to process plaintiffs' request and to release records that are and have been unlawfully withheld.

JURISDICTION AND VENUE

7.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii).  This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

PARTIES

8.  Plaintiff American Civil Liberties Union ("ACLU") is a New York-based, nationwide, non-profit, non-partisan organization with

almost 400,000 members dedicated to the constitutional principles of liberty and equality.  The ACLU is committed to ensuring that actions taken by the government under the rubric of "national security" are consistent with the Constitution and international law.  To inform the public about government conduct, the ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public.  ACLU publications are available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through the ACLU's public education department.  The ACLU also disseminates information through its website, <www.aclu.org>, and through an electronic newsletter, which is distributed to thousands of subscribers by e-mail.

9.  Plaintiff Center for Constitutional Rights ("CCR") is a New York-based legal and public education not-for-profit organization that engages in litigation, legal research, and the production of publications in fields of civil and international human rights, including extensive materials on Detainees and others apprehended after September 11, 2001.  CCR publishes regular newsletters, know-your-rights handbooks, and other informational materials for public dissemination.  These materials are also available through CCR's Development and Outreach Departments.  CCR operates a website <www.ccr-ny.org>, that addresses the issues on which the Center works.  The website includes material on topical civil and human

4

rights issues and material concerning CCR's work.  All of this material is freely available to the public.

10. Plaintiff Physicians for Human Rights ("PHR") is a not-for-profit organization whose mission is to promote health by protecting human rights.  It uses scientific methods and clinical medical skills to investigate allegations of human rights violations.  PHR has conducted medical investigations of torture throughout the world and played a leading role in developing the principal instrument for the medical evaluation of torture, the Istanbul Protocol.  PHR publishes newsletters, reports, and informational materials for the public, may of which are available on its website, <www.phrusa.org>.  The website contains a section with articles on torture and the means of preventing it, as well as investigations on health and human rights in, among other places, Iraq and Afghanistan.  PHR also distributes an email newsletter free of charge to the public.

11. Plaintiff Veterans for Peace ("VFP") is a not-for-profit, non-partisan organization of United States war veterans who served from World War II through Gulf War I.  There are 85 VFP chapters across the nation, from Alaska to Florida.  VFP consists of men and women who, having dutifully served their nation, now serve the cause of world peace.  To this end, they work with others to: (1) increase public awareness of the costs of war; (2) restrain the U.S. government from intervening, overtly and covertly, in the internal affairs of other nations; (3) end the arms race and reduce and

eventually eliminate nuclear weapons; (4) seek justice for veterans and victims of war; and (5) abolish war as an instrument of national policy.   VFP  disseminates  information  through  its  website, <www.veteransforpeace.org>, electronic listserves for the general on-line membership, chapter contacts, and a quarterly newsletter.

12. Plaintiff Veterans for Common Sense ("VCS") is a not-for-profit organization for U.S. veterans.  VCS is committed to providing a voice of reason on issues of war and national security from the unique perspective of those who have served their country in uniform. VCS stands firm on the principal that our nation's precious youth should be committed to battle only under the gravest of circumstances and therefore seek to return our country to a time when war was truly the policy of last resort.  To this end, it informs fellow citizens of the terrible costs of war, by challenging policies that abuse the trust of military service members and by speaking out in defense and support of the values espoused by the Constitution of the United States.  VCS disseminates information and news to the general public through  its  website,  <www.veteransforcommonsense.org>,  news briefings, media interviews, published editorials and direct contact through e-mail with VCS general members.

13. Defendant DOD is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  Defendants Defense Intelligence Agency ("DIA"),

Department of the Army ("Army"), Department of the Navy ("Navy"), and Department of the Air Force ("Air Force") are components of DOD.

14. Defendant DOJ is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).   Defendants Civil Rights Division, Criminal Division, Federal Bureau of Investigation ("FBI"), Office of Information and Privacy ("OIP"), and Office of Intelligence Policy and Review ("OIPR") are components of DOJ.

15. Defendant DHS is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

16. Defendant DOS is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

17. Defendant CIA is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

FACTS

I.   INITIAL REPORTS OF ABUSE AND DEATHS OF DETAINEES IN CUSTODY, AND
     RENDITION OF DETAINEES TO COUNTRIES KNOWN TO USE TORTURE

18. Since February 2002, news agencies first began to publish reports indicating that Detainees held in United States custody in Afghanistan  and Guantánamo Bay Naval Station ("Guantánamo") were being subjected to mistreatment.  *See, e.g.,* Molly Moore, *Villagers Released by American Troops Say They Were Beaten, Kept in  "Cage"*, Washington Post (Feb. 11, 2002); Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations*, Washington Post (Dec. 26, 2002); Paul Harris & Burhan Wazir, *Briton Tells of Ordeal in Bush's torture jail*, The Observer (UK) (Dec. 29, 2002); Jess Bravin & Gary Fields, *How Do U.S. Interrogators Make a Captured Terrorist Talk?*, Wall Street Journal (Mar. 4, 2003).

19. Reports also indicated that Detainees had been killed in United States custody.  *See, e.g.,* Marc Kaufman, *Army Probing Deaths of 2 Afghan Prisoners*, Washington Post (Mar. 5, 2003); Vanessa Gezari, *3rd detainee dies in U.S. custody*, Chicago Tribune (June 24, 2003); Barbara Starr, *Afghan Detainees' Deaths Ruled Homicides*, CNN.com (Mar. 5, 2003).

20. Numerous media outlets reported that the United States had rendered Detainees and other individuals to foreign powers known to employ illegal interrogation techniques, including torture.  *See, e.g.,* Rajiv Chandrasekaran & Peter Finn, *U.S. Behind Secret Transfer*

*of Terror Suspects,* Washington Post (Mar. 11, 2002); Priest & Gellman, *supra;* Faye Bowers & Philip Smucker, *US Ships Al Qaeda Suspects to Arab States*, Christian Science Monitor (July 26, 2002).

21. In response to these reports and to inquiries from human rights organizations, the DOD general counsel stated that United States policy condemns and prohibits torture; that DOD personnel are required to follow this policy and "applicable laws" prohibiting torture; and that DOD would investigate any allegations of mistreatment of or injuries to detainees.  DOD also stated that "if the war on terrorists of global reach required transfer of detained enemy combatants to other countries for continued detention on our behalf, U.S. government instructions are to seek and obtain appropriate assurances that such enemy combatants are not tortured." Letter from William J. Haynes II, General Counsel of the Department of Defense, to Kenneth Roth, Executive Director, Human Rights Watch (Apr. 2, 2003).  *See also* Letter from William J. Haynes II, General Counsel of the Department of Defense, to the Hon. Patrick J. Leahy (June 25, 2003).

II.   PLAINTIFFS' OCTOBER 2003 FOIA REQUEST

22. In October 2003, plaintiffs submitted a FOIA request to defendants DOD, and its components Army, Navy, Air Force and DIA; DOJ, and its components FBI, OIP and OIPR; DOS; and the CIA.

Plaintiffs submitted a FOIA request to defendant DHS on December 12, 2003.

23. Plaintiffs' FOIA request sought three categories of records. First, plaintiffs sought records concerning the treatment of Detainees.  Second, plaintiffs sought records concerning the deaths of Detainees while in U.S. custody.  Third, plaintiffs sought records concerning the rendition of Detainees and other individuals to foreign powers known to employ illegal interrogation techniques, including torture.

24. In a second letter to defendants filed on the same day as their FOIA requests, plaintiffs made application for expedited processing based on "compelling need," 5 U.S.C. § 552(a)(6)(E)(i), specifically, that the records sought were "urgently needed by [organizations] primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. 552(a)(6)(E)(i); *see also* 32 C.F.R. § 286.4(d)(3) (DOD); 22 C.F.R. § 171.12(b) (DOS); 32 C.F.R. § 1900.34(c), (c)(2) (CIA); 6 C.F.R. § 5.5(d)(i) (DHS).

25. In addition, plaintiffs requested expedited processing based on individual agency regulations promulgated pursuant to the FOIA. For DOD and DOS, plaintiffs sought expedited processing on the grounds that the requests related to "a breaking news story of general public interest," 32 C.F.R. § 286.4(d)(3) (DOD); 22 C.F.R. § 171.12(b) (DOS), and on humanitarian grounds.  22 C.F.R. §

171.12(c)(4) (DOS), 32 C.F.R. § 286.4(d)(3)(iv) (DOD).   For DOJ,
plaintiffs sought expedited processing on the grounds that the
records pertained to "[a] matter of widespread and exceptional media
interest in which there exist possible questions about the
government's integrity which affect public confidence." 28 C.F.R.
§ 16.5(d)(1)(iv) (DOJ).   For DHS, plaintiffs sought expedited
processing on the grounds  that failure to expedite the request would
"pose an imminent threat to the physical safety of an individual." 5
U.S.C. 552(a)(6)(E)(i); 6 C.F.R. § 5.5(d)(1)(ii) (DHS).

### Department of Defense

26. DOD denied plaintiffs' application for expedited processing
by letter dated October 30, 2003.   Plaintiffs administratively
appealed the decision of DOD by letter dated December 8, 2003.   DOD
rejected plaintiffs' appeal by letter dated February 10, 2004, on the
grounds that (1) the subject matter of the request was not "breaking
news;" and (2) plaintiffs did not appear to disseminate information
as a primary activity.   DOD has not released any record in response
to plaintiffs' request.

27. The Army informed plaintiffs by letter dated December 11,
2003, that it was unable to comply with the statutory time limit.   In
a letter dated March 30, 2004, the Army notified plaintiffs that it
had completed its search and that no records responsive to the FOIA
request had been located.

28. The DIA, Air Force and Navy have not released any records in response to plaintiffs' request.

## Department of Justice

29. OIP denied plaintiffs' application for expedited processing by letter dated October 23, 2003, on the grounds that (1) the matters in question do not pertain to widespread and exceptional media interest as set forth by DOJ; and (2) plaintiffs are not primarily engaged in disseminating information within the meaning of FOIA. Plaintiffs administratively appealed this decision by letter dated December 8, 2003.  OIP denied plaintiffs' appeal by letter dated February 19, 2004.

30. OIPR informed plaintiffs by letter dated October 30, 2003, that it had completed its search and that no records responsive to plaintiffs' request had been located.  Plaintiffs appealed this decision by letter dated December 11, 2003, but have received no response.

31. The Civil Rights Division informed plaintiffs by letter dated November 24, 2003, that it has no records responsive to plaintiffs' request.

32. The Criminal Division has failed to release any records in response to plaintiffs' request.

33. The FBI informed plaintiffs by letter dated October 30, 2003, that it has records potentially responsive to plaintiffs'

request, but that such records are exempt from disclosure in their entirety pursuant to 5 U.S.C. § 552(b)(7)(A).  Plaintiffs appealed this decision by letter dated December 19, 2003, but the FBI has not informed plaintiffs whether the appeal has been granted or denied.

34. None of the DOJ's components have released any record in response to plaintiffs' request.

### Department of Homeland Security

35. DHS has not released any records in response to plaintiffs' request.

### Department of State

36. DOS denied plaintiffs' request for expedited processing by letter dated October 18, 2003.  Plaintiffs administratively appealed the denial of expedited processing by letter dated December 1, 2003. DOS rejected the administrative appeal by letter dated December 12, 2003, on the grounds that (i) the records sought do not pertain to a "breaking" news story; and (ii) requests based solely on the allegations of Detainees was insufficient to demonstrate harm to substantial humanitarian concerns.

37. On March 5, 2004, DOS provided plaintiffs with talking points used by DOS personnel in communications with the press concerning Detainees held in Guantánamo.  DOS has not released any other record in response to plaintiffs' request.

Central Intelligence Agency

38. The CIA denied plaintiffs' FOIA request by letter dated October 27, 2003, on the grounds that the records requested fall under the "operational files" exemption of the CIA Information Act, 50 U.S.C. § 431.  Plaintiffs appealed the CIA's decision by letter dated December 11, 2003.  The CIA has not informed plaintiffs whether it will grant the appeal.  The CIA has not released any records in response to plaintiffs' request.

III. PROLIFERATING REPORTS OF DETAINEE ABUSE, DEATHS OF DETAINEES IN CUSTODY, AND RENDITION OF DETAINEES TO COUNTRIES KNOWN TO USE TORTURE

39. In recent weeks, following the publication of photographs depicting the horrifying abuse of Detainees held in Iraq, numerous international and domestic news media have reported that the abuse of Detainees is widespread.  *See, e.g.,* Douglas Jehl, *et al.*, *Abuse of Captives More Widespread, Says Army Survey*, NYTimes.com (May 26, 2004); Mark Mazzetti *et al.*, *Inside the Iraq Prison Scandal*, UsNews.com (May 24, 2004); Mitch Frank, *A Pattern of Abuse?*, Time.com (May 9, 2004); Matt Kelley, *Guards Allege Abuse at Four Other Prisons*, AP (May 30, 2004); John Barry *et al.*, *The Roots of Torture: The Road to Abu Ghraib Began After 9/11, When Washington Wrote New Rules to Fight a New Kind of War*, Newsweek (May 24, 2004).

40. News media have also reported that numerous Detainees have died in United States custody.  *See, e.g.*, Jehl, *et al., supra*; Tom

14

Bowman, *Prisoner Fatality Inquiry Expands,* Baltimore Sun (May 22, 2004).

41. News media have also reported that the practice of rendering Detainees and other individuals is far more widespread than previously believed, and that there exists a "joint intelligence task force," comprised of United States government personnel, that participates in the interrogation of individuals rendered to foreign powers known to violate international standards. Dana Priest & Joe Stephens, *U.S. Arranges Detentions and Conducts Interrogations of Terror Suspects in Secret*, Washington Post (May 12, 2004).

42. Public concern has become so widespread that government and military officials have been compelled to present testimony regarding the interrogation tactics employed by defendant agencies' personnel against Detainees and rendered individuals in hearings before Congress. *See, e.g.,* Eli Lake, *Senate Seeking Complete Probe of Iraq Abuses*, New York Sun (May 11, 2004).

43. In addition, several Departments, including defendants DOD and Army, have publicly announced ongoing or earlier investigations into the torture and abusive conditions, as well as the deaths of Detainees. *See, e.g.,* Bradley Graham, *Army Investigates Wider Iraq Offenses,* Washington Post (June 1, 2004).

44. Internationally, foreign governments, non-governmental organizations and humanitarian organizations have come forward and detailed their earlier attempts to gain access to Detainees and to

15

report to United States officials the abuse suffered by Detainees as learned by these organizations. *See, e.g.,* Richard A. Serrano, *Nov 6 Red Cross Report to Military Detailed Abuse,* LosAngelesTimes.com (May 29, 2004); *U.S. Tried to Curtail Red Cross Access to Iraqi Prisons*, AFP (May 19, 2004).

IV.   PLAINTIFFS' MAY 2004 FOIA REQUEST AND DEFENDANTS' RESPONSES

45. On May 25, 2004, plaintiffs submitted a FOIA request to defendants DOD, and its components Army, Navy, Air Force and DIA; DOJ, and its components FBI, OIP and OIPR; DOS; DHS; and the CIA.

46. Plaintiffs' FOIA request sought the identical three categories of records as set forth in their October 2003 request.

47. In same letter to defendants, plaintiffs made application for expedited processing based on "compelling need," 5 U.S.C. § 552(a)(6)(E)(i).

48. In addition, plaintiffs requested expedited processing based on individual agency regulations promulgated pursuant to the FOIA.

49. Defendant DOJ Office of Information and Privacy granted plaintiffs' request for expedited processing by letter dated June 2, 2004.

50. Defendants DIA and DOJ Civil Rights, sent letters dated May 27 and June 1, 2004, respectively, explaining that a backlog in agency requests would prevent timely processing.

51. Defendants Navy and Army informed plaintiffs by letters dated June 4 and June 2, 2004, respectively, that the FOIA request would be forwarded to Defendant DOD for processing.

52. Defendant DHS denied plaintiffs' request by letter dated June 10, 2004.

53. Defendant DOS granted plaintiffs' request for expedited processing by letter dated June 18, 2004.

54. Defendant DOD denied plaintiffs' request for expedited processing by letter dated June 21, 2004.


## CAUSES OF ACTION

### First Cause of Action:
### Violation of the FOIA for Failure to Expedite
### the Processing of Plaintiffs' Request

55.   Plaintiffs repeat and reallege paragraphs 1-43.

56.   Defendants' failure to expedite the processing of plaintiffs' October 2003 and May 2004 request violates the FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and defendant agencies' own regulations promulgated thereunder.


### Second Cause of Action:
### Violation of the FOIA for Failure to Make Promptly
### Available the Records Sought by Plaintiffs' Request

57.   Plaintiffs repeat and reallege paragraphs 1-43.

58.   Defendants' failure to make promptly available the records sought by plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

### Third Cause of Action:

17

<u>Violation of the FOIA for Failure to
Timely Respond to Plaintiffs' Request</u>

59.   Plaintiffs repeat and reallege paragraphs 1-43.

60.   Defendants' failure timely to respond to plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and defendant agencies' own regulations promulgated thereunder.

<u>Fourth Cause of Action:
Violation of the FOIA for Failure to
Release Records Sought by Plaintiffs' Request</u>

61.   Plaintiffs repeat and reallege paragraphs 1-43.

62.   Defendants' failure release records sought by plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a).

<u>REQUESTED RELIEF</u>

WHEREFORE, plaintiffs pray that this Court:

a) order defendants immediately and expeditiously to process plaintiffs' FOIA request and to disclose the requested records;

b) award plaintiffs their costs and reasonable attorneys fees incurred in this action; and

c) grant such other relief as the Court may deem just and proper.

Respectfully submitted,


_____/LSL/_____   _____
Lawrence S. Lustberg (LL-1644)
Jennifer Ching (JC-5267)
GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4500


18

Jameel Jaffer (JJ-4653)
Amrit Singh (AS-9916)
Judy Rabinovitz (JR-1214)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, New York 10004
Barbara Olshansky (BO-3635)
Jeffrey E. Fogel (JF-3948)
Michael Ratner (MR-3357)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004

Dated: July 6, 2004          *Attorneys for Plaintiffs*

19