DAVID N. KELLEY                                    **ECF CASE**
United States Attorney for the
Southern District of New York
By: SEAN H. LANE (SL-4898)
    PETER M. SKINNER (PS-9745)
Assistant United States Attorneys
86 Chambers Street -- 5th Floor
New York, New York 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
AMERICAN CIVIL LIBERTIES UNION,                  :
CENTER FOR CONSTITUTIONAL RIGHTS,                :
PHYSICIANS FOR HUMAN RIGHTS,                     :
VETERANS FOR COMMON SENSE AND                    :
VETERANS FOR PEACE,                              :
                                                 :
              Plaintiffs,                        :
                                                 :   04 Civ. 4151 (AKH)
         v.                                      :
                                                 :
DEPARTMENT OF DEFENSE, AND ITS                   :   DECLARATION OF
COMPONENTS DEPARTMENT OF ARMY,                   :   MAJOR SAMUEL W. MORRIS
DEPARTMENT OF NAVY, DEPARTMENT OF                :
AIR FORCE, DEFENSE INTELLIGENCE                  :
AGENCY; DEPARTMENT OF HOMELAND                   :
SECURITY; DEPARTMENT OF JUSTICE,                 :
AND ITS COMPONENTS CIVIL RIGHTS                  :
DIVISION, CRIMINAL DIVISION, OFFICE OF           :
INFORMATION AND PRIVACY, OFFICE OF               :
INTELLIGENCE POLICY AND REVIEW,                  :
FEDERAL BUREAU OF INVESTIGATION;                 :
DEPARTMENT OF STATE; AND CENTRAL                 :
INTELLIGENCE AGENCY,                             :
                                                 :
              Defendants.                        :
-------------------------------------------------------------- x

        I, MAJOR SAMUEL W. MORRIS United States Army, make the following

declaration under penalty of perjury:

        1. I am a military attorney with the Army Judge Advocate General's Corps working in

the Department of the Army, United States Army Litigation Division, assigned as a Litigation Attorney and currently hold the rank of Major. Specifically, I am responsible for defending the Army in matters of civil litigation relating to government contract law, government information practices, and other areas of general law. I routinely serve as "of counsel" with Department of Justice attorneys representing the Army in civil cases and on matters involving the Freedom of Information Act (FOIA) and Privacy Act (PA) issues. I currently serve as "of counsel" in this case on behalf of the Department of the Army.

2. I submit this declaration to explain the Department of the Army's actions in response to the Court's Opinion and Order dated September 15, 2004 ("Order"). I am familiar with the history and subject matter of plaintiffs' complaint in this case. The statements made herein are based on my own personal knowledge and on information made available to me in the performance of my official duties.

3. On or about October 7, 2003, The Department of the Army's Freedom of Information and Privacy Division ("DA FOIA Office") received the plaintiffs' October 3, 2003, FOIA request via fax. On October 17, 2003, the Department of Defense's Office of Freedom of Information and Security Review ("OFOISR") instructed the DA FOIA Office that OFOISR would centralize the processing of plaintiffs' FOIA request. The DA FOIA Office did not receive plaintiffs' second FOIA request, dated May 25, 2004.

4. On September 2, 2004, the Army began coordinating the Army's response to plaintiffs' FOIA requests. On September 13, 2004, the DA FOIA Office initiated an Army-wide search request for records responsive to plaintiffs' two FOIA requests to include those records with any referenced attachments, exhibits or supporting documents in any media format responsive to the

2

requests. The request directed that the search encompass all organizations under the Army's

purview regardless of physical location and include all records in existence on or before August

30, 2004. The request instructed Army organizations to identify all responsive documents by

October 8, 2004, and then to process those documents for release and prepare Vaughn

declarations for documents not released in their entirety.

5. The search request also included the following list of key words/terms to assist Army

organizations in their search: "205th Military Intelligence Brigade, 800th Military Police Brigade,

Abu Ghraib, Abuse, Abusive Tactics, al-Qaeda, Allegations of abuse, Bagram, Binding hands or

feet, Blindfolding, Counter-Terrorism Interrogation, Cruel, inhuman or degrading treatment or

punishment, Detainee abuse, Death of Detainees, Denial of medical treatment, Denial of

medication, Detention Operations, Disciplinary Proceedings, Excessive cold or heat/temperature

extremes, Geneva Convention, Guantanamo Bay, Hooding, International Committee of the Red

Cross (ICRC) or other non-governmental organization (NGO) access to detainees, Internal

investigation, Internment, Interrogation, Interrogation Techniques, Intense noise, John Walker

Lindh, Medical, psychiatric or psychological assessment, Mind altering substances, Pathologist,

Prison Tactics, Prisoners, Rendition of Detainees (to Jordan, Syria, Egypt, Saudi Arabia, or

Morocco), Sleep deprivation, Stress and Duress, Stress Positions, Stripping, Torture, Use of force

against detainees, Violent Shaking."

6. This search request was transmitted via Email to 32 Army Initial Denial Authorities,

23 separate Major Army Commands and 189 other separate Army organizations including the

Headquarters, Department of the Army and Offices of Staff Judge Advocate.

3

7. On October 12, 2004, the DA FOIA Office and I consolidated the responses from the responding Army organizations and divided the responsive documents into two separate document logs – classified and unclassified.

8. The classified document log attached to this declaration at Appendix A contains approximately 500 documents consisting of approximately 11,000 pages. (See Appendix A). In addition, the classified document log identifies approximately two CD ROMs, two audio tapes and 46 other files which contain classified documents in unknown quantities. These figures accurately represent the results of the Army's search and response to date. These figures may change if additional documents are reported by Army organizations. The Army intends to update this document log should additional responsive documents be discovered following this submission.

9. The unclassified document log attached to this declaration at Appendix B contains approximately 1,000 documents consisting of approximately 133,000 pages. (See Appendix B). In addition, the unclassified document log identifies approximately ten CD ROMs, 46 audio tapes, seven boxes of documents and 204 other files which contain unclassified documents in unknown quantities. These figures accurately represent the results of the Army's search and response to date. These figures may change if additional documents are reported by Army organizations. The Army intends to update this document log should additional responsive documents be discovered following this submission.

10. 175 Army organizations provided the DA FOIA Office with a "No Records Certification" statement in response to the search request. A "No Records Certification" indicates that the reporting Army organization has located no responsive documents following

4

their search.

## Plaintiffs' August 16, 2004 List of Seventy Categories of Specific Documents

11. The Army has also considered its obligations under the Order to respond with the release or production of Vaughn declarations for those Army documents contained within the plaintiffs' list of 70 items provided to DOD as a result of the August 12, 2004, Preliminary Injunction hearing. The Army has identified several categories within that list for which it possesses responsive documents as follows:

A. **Item No. 11 - Iraq Abuse Photos:** To the best of the Army's knowledge and information, the Army's Criminal Investigation Command ("CID"), Fort Carson, and the 1st Armored Division are the only Army organizations in possession of responsive photographs. On or about October 12, 2004, Army CID delivered all photos in its possession to DOD OGC for a final release determination. On or about October 8, 2004, as a result of the September 13, 2004, Army-wide search request, Fort Carson and the 1st Armored Division identified responsive autopsy and interrogation photographs which are detailed in Appendix B. These photographs will be processed and delivered to DOD OGC for a final release determination.

B. **Item No. 12 - Interrogation Memos:** To the best of the Army's knowledge and information, the Army has multiple organizations with responsive documents which were not identified until October 8, 2004. These documents have not yet been processed for release and will require an unknown yet significant amount of time and manpower to process.

(1) The Classified documents are detailed in Appendix A. They are considered exempt from release in whole or in part under the FOIA, and consist of documents with titles that include "interrogation plans," "interrogation working papers," "interrogation tactics,"

5

"interrogation summaries," "interrogation reports," "interrogation worksheets," "interrogation team operations," "interrogation status," "participation of MP personnel in interrogations and debriefings," "commander's inquiry into possible interrogation rules of engagement," "15-6 investigation into conditions and procedures at the joint interrogation briefing center" "interrogation and counter resistance policy," "interrogation facility inspection program," "standard operating procedures - brigade interrogation facility," "interrogation general safeguards," "interrogation policy memo," "interrogation techniques," and "approved interrogation techniques." This is not intended to be an exhaustive list. Please refer to Appendix A for an accurate listing of the documents.

(2) The Unclassified documents are detailed in Appendix B. They may be subject to multiple FOIA Exemptions and consist of approximately one audio taped interview with an interrogation team and other documents with titles that include "observation of improper tactics in the interrogation room," "interrogation procedures," "objection to aggressive interrogation techniques," "aggressive interrogation," "intelligence interrogation," "summary interrogation report," "detainee operations and detainee interrogation techniques," "support to review of DOD detention operations and DOD interrogation techniques," "FORSCOM training guidance - MI interrogation training task," "evidence and legal process findings to inspector general's brigade and division interrogation facilities inspection report of findings and recommendations," "legal review of interrogation and counter resistance policy," "information paper proposal for conducting joint interrogations with the Iraqi National Intelligence Service," and "brigade interrogations procedures inspection checklist." This is not intended to be an exhaustive list. Please refer to Appendix B for an accurate listing of the documents.

6

C. **Items No. 14 - Abuse Investigations & No. 15 - Detainee Statements:** To the best of the Army's knowledge and information, the Army's Criminal Investigation Division ("CID") has responsive investigations, nine of which have been processed with a separate Vaughn declaration asserting appropriate FOIA Exemptions. Further, on October 8, 2004, CID identified approximately 195 additional responsive investigations, which are detailed in Appendix B. These documents have not yet been processed for release.

Finally, multiple Army organizations have identified responsive investigations, which were not identified until October 8, 2004, as a result of the Army-wide search request. These documents have not yet been processed for release and will require an unknown yet significant amount of time and manpower to process.

(1) The Classified documents are detailed in Appendix A. They are exempt from release in whole or in part under the FOIA, and consist of documents with titles that include "AR 15-6 Investigation - Detainee Abuse," "15-6 Investigation and information from Iraq surrounding high ranking detainee's death," "Article 15-6 Investigation of the 800th MP Bde," "15-6 Investigation into conditions and procedures at the Joint Interrogation Debriefing Center (JIDC)," "Copy of 15-6 Investigation into deaths of detainees MG Mowhoush and LTC Jaleel," "15-6 Investigation into use of detainees by Explosive Ordinance Disposal," "Legal Review - 15-6 investigation into detention of Adnan Hamid A. Hassan Al-Abassi," This is not intended to be an exhaustive list. Please refer to Appendix A for an accurate listing of the documents.

(2) The Unclassified documents are detailed in Appendix B. They may be subject to FOIA Exemptions, and consist of documents with titles that include "AR 15-6 Investigation (Detainee Broken Jaw)," "AR 15-6 Investigation (Death of Detainee)," "1-8

7

Prisoner Abuse Case - 15-6 Investigation," "15-6 Investigation on Asad Abdul Karim Death,"

"AR 15-6 Investigation - Detainee-Assault," "AR 15-6 Investigation," "informal AR 15-6

Investigation findings," "legal review of 15-6 investigation into policies for disposing of

unknown released detainee property," "legal review - 15-6 investigation into 22 detainees killed

on 20 Mar 04 in mortar attack on Abu Gharib Prison," "15-6 investigation into death of Abdallah

H. Khalaf Al-Dalaimi," "legal review - 15-6 investigation into allegations of detainee abuse,"

"15-6 Investigation into maltreatment of detainees," and "15-6 Investigation - allegations of

detainee abuse made by SGT Ford." This is not intended to be an exhaustive list. Please refer to

Appendix B for an accurate listing of the documents.

      D. **Item No. 17 - Medical Personnel Conduct:** To the best of the Army's

knowledge and information, the Army has potentially responsive documents which were

identified October 8, 2004. These documents have not yet been processed for release and will

require an unknown yet significant amount of time and manpower to process.

      (1) The Classified documents are detailed in Appendix A. They are considered

exempt from release in whole or in part under the FOIA, and consist of documents with titles that

include "Site Visit of Abu Gharib" and "medical records of released detainees." This is not

intended to be an exhaustive list. Please refer to Appendix A for an accurate listing of the

documents.

      (2) The Unclassified documents are detailed in Appendix B. They may be

subject to FOIA Exemptions, and consist of approximately four audio taped interviews on topics

such as "EPW medical treatment - system problems," "Prisoner's medical conditions,"

"Detention Center experience - medical issues," and "Detainee medical treatment," and paper

copies of other documents with titles that include "Detainee Medical Inprocessing Questionnaire," "Index of Medical Record Extracts for Prisoners Of War/Internees at U.S. Army Medical Treatment Facilities," "HVD 39 Heart Attack File - Death," and "Information Paper, Detainee Medical Care." This is not intended to be an exhaustive list. Please refer to Appendix B for an accurate listing of the documents.

E. **Item No. 19 - John Walker Lindh Interrogation Instructions.** To the best of the Army's knowledge and information, the Army has no organizations with documents responsive to this request.

F. **Item No. 22 - John Walker Lindh Documents:** To the best of the Army's knowledge and information, the Army has one organization, the United States Army Special Operations Command ("USASOC") with one responsive document, the John Walker Lindh Army Regulation 15-6 Investigation. This document has been processed for release by USASOC, is subject to FOIA Exemptions 3 and 6, and is currently being referred to U.S. Central Command for a final security review prior to release and preparation of a Vaughn declaration.

G. **Item No. 38 - Statements of Dog Handlers:** To the best of the Army's knowledge and information, responsive documents, to the extent they exist, are in the custody of the Army's Criminal Investigation Division ("CID"). CID may have responsive statements of dog handlers in one or more of the approximately 195 investigations identified as a result of the September 13, 2004, Army-wide search request. (See Appendix B). Otherwise, the Army has not identified any documents responsive to this request.

H. **Item No. 52 - Army Inspector General Memorandum:** To the best of the Army's knowledge and information, the Office of the Inspector General of the United States

Army has located and processed for release the "Detainee Operations Inspection Report." This document was made publicly available in July 2004, by posting to an internet website. (See Appendix C - Declaration of Margaret B. Baines). This document has been released in its entirety with the exception of Appendix G, which is being withheld subject to FOIA Exemption 1 as discussed at Appendix C.

I.. **Item No. 60 - Records of UCMJ Proceedings:** To the best of our knowledge and information, the Army has multiple organizations with potentially responsive documents which were not identified until October 8, 2004. These documents have not yet been processed for release and will require an unknown yet significant amount of time and manpower to process.

(1) There are no Classified documents responsive to this request.

(2) The Unclassified documents are detailed in Appendix B. They may be subject to FOIA Exemptions and consist of documents with titles that include "Result of Trial - Sivits," "Result of Trial - Cruz," "Summary Courts-Martial - Michael S. Peasgood," "Resignation for the Good of the Service in Lieu of General Court-Martial - 1LT James M. Yancey," "Article 15 Case file, LTC Nathan Sassaman: Samarra Drowning Case," "Article 15 Case File, SGT Reggie Martinez, Samarra Drowning Case," "Article 15 Case File, SPC Terry Bowman, Samarra Drowning Case," "Article 32 Paperwork filed in support of Samarra Drowning Case, Filed on 1 LT Saville, SFC Perkins, SGT Martinez, SPC Bowman, Grants of Testimonial Immunity," "Court-martial, Article 32 Paperwork on 1LT Saville & SFC Perkins, Samarra Drowning Case," "PFC England Article 32 Investigation," "SSG Frederick Art 32 Investigation," "SPC Graner Art 32 Investigation," "SPC Ambuhl Art 32 Investigation," "SGT Davis Art 32 Investigation," "Email: Data Call: Detainee-Related Article 15s," "Article 15 - SSG

10

Iturregui, Eduardo," "Article 15 - PFC Johnson, Michael," "Article 15 - SPC Garcia, Jesus,"
"Article 15 - LTC West, Allen," "Article 15 - SFC Edmonds, Jack," "Record of Proceedings
Under Article 15, UCMJ - Jonathan H. Mizgier," "Record of Proceedings Under Article 15,
UCMJ - Daniel R. Freeman," "Record of Proceedings under Article 15, UCMJ - Jeromie D.
Johnson," "Record of Proceedings Under Article 15, UCMJ - SGT Raul S. Molina,"and "Record
of Proceedings Under Article 15, UCMJ - PFC Laumatalelei H. Pelesasa." This is not intended
to be an exhaustive list. Please refer to Appendix B for an accurate listing of the documents.

J. **Item No. 69 - Darby Photos:** To the best of the Army's knowledge and
information, the Army's Criminal Investigation Division may have responsive photographs in
one or more of the approximately 195 investigations that it has identified as a result of the
September 13, 2004, Army-wide search request detailed in Appendix B. Otherwise, the Army
has not identified any documents responsive to this request.

K. **Item No. 70 - Other Responsive Documents:** To the best of the Army's
knowledge and information, the Army has multiple organizations with potentially responsive
documents which were not identified until October 8, 2004. These documents are located at both
Appendices A & B, are both classified and unclassified, may be subject to FOIA Exemptions,
have not yet been processed for release and will require an unknown yet significant amount of
time and manpower to process.

11

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true

and correct to the best of my knowledge, information, and belief. Executed this 15th day of

October, 2004 at Arlington, Virginia.

SAMUEL W. MORRIS
Major, United States Army

12