UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE,

Plaintiffs,

v.

DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY,

Defendants.

ECF CASE

No. 04 Civ. 4151 (AKH)

**MEMORANDUM OF LAW IN SUPPORT OF THE CENTRAL INTELLIGENCE AGENCY'S APPLICATION FOR LIMITED RELIEF FROM THE SEPTEMBER 15, 2004 ORDER**

DAVID N. KELLEY
United States Attorney for the
Southern District of New York
Attorney for Defendant Central
Intelligence Agency
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2737
Fax: (212) 637-2730

SEAN H. LANE (SL-4898)
PETER M. SKINNER (PS-9745)
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 2

STATEMENT OF FACTS ..... 4

ARGUMENT ..... 7

THE COURT SHOULD RELIEVE THE CIA OF ITS OBLIGATIONS UNDER THE SEPTEMBER 15 ORDER WITH REGARD TO OPERATIONAL AND OIG INVESTIGATIVE FILES UNTIL AFTER THE OIG INVESTIGATION INTO IMPROPRIETIES IN IRAQ IS COMPLETED ..... 7

A. The CIA Is Not Obligated to Search Operational Files Until the OIG Investigation Is Completed ..... 7

1. The Operational Files Exemption ..... 7

2. The Legislative History Demonstrates Congress's Intent for the CIA to Search Operational Files After Investigations Are Completed ..... 10

B. The Statutory Scheme Further Demonstrates Congress's Intent to Have Searches Under § 431(c)(3) Conducted After Investigations Are Completed ..... 11

1. Congress Did Not Rely on Investigators to Locate Information Subject to FOIA Under § 431(c)(3) ..... 11

2. Given Section 431(c)(3)'s Narrow Application, It Is Not Practical to Search Operational Files Until After an Investigation Is Completed ..... 13

C. Under the Facts of This Case, the CIA Cannot Review Information in Operational Files or the OIG's Files Until After the OIG Investigation Is Completed ..... 16

CONCLUSION ..... 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE,

Plaintiffs,

v.

DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY,

Defendants.

ECF CASE

No. 04 Civ. 4151 (AKH)

**MEMORANDUM OF LAW IN SUPPORT OF THE CENTRAL INTELLIGENCE AGENCY'S APPLICATION FOR LIMITED RELIEF FROM THE SEPTEMBER 15, 2004 ORDER**

Defendant Central Intelligence Agency (the "CIA") respectfully submits this memorandum of law in support of its application for limited relief from the terms of the Court's September 15, 2004 Order on the grounds that (i) where an investigation makes otherwise exempt operational files subject to the Freedom of Information Act ("FOIA"), the CIA is not obligated to search operational files until the investigation is completed; (ii) it is impractical, if not virtually impossible, to conduct searches of operational files before investigations are completed; and (iii) under the facts of this case, the CIA cannot search operational files or CIA

Office of Inspector General ("OIG") investigative files until after the OIG completes its ongoing investigation into improprieties in Iraq.[1]

## PRELIMINARY STATEMENT

The Central Intelligence Agency Information Act (the "Act") exempts the CIA's "operational files" from search and review in response to FOIA requests. 50 U.S.C. § 431(a). Operational files "directly concern and document intelligence sources and methods and are thus the repository of many sensitive CIA secrets." H.R. Rep. 98-726(I), at 15, 1984 U.S.C.C.A.N. 3741, at 3742. Congress exempted operational files from FOIA because, *inter alia*, requests for information in operational files resulted in the release of "little or no meaningful information;" reviewing operational files required the "diversion of skilled, CIA operational personnel from important operational duties to FOIA processing;" public access to operational files caused an "inability to observe security principles of need-to-know and compartmentation;" and applying FOIA to operational files created a "risk . . . of accidental or unintended disclosure of sensitive material." H.R. Rep. 98-726(I) at 9-10, 1984 U.S.C.C.A.N. at 3747-48.

Where there is an investigation into illegality or impropriety in the conduct of an intelligence activity, however, exempted operational files are subject to search and review for information concerning "the specific subject matter" of the investigation. 50 U.S.C. § 431(c)(3).

---

1 Although the Iraq investigation is referred to in the singular in this memorandum of law, there may be several investigations that are related to or grow out of the general Iraq investigation. Declaration of Mona B. Alderson, dated November 9, 2004 ("Alderson Decl."), at 3 n.1. In addition, the OIG is conducting other criminal investigations the specific subject matter of which may overlap with the subject matter of plaintiffs' FOIA requests. See id. This application seeks relief with regard to all OIG investigations that may overlap with the subject matter of plaintiffs' FOIA requests.

In this case, the OIG has begun an investigation into improprieties in Iraq, thereby triggering § 431(c)(3)'s exception to the Act.

The legislative history to the Central Intelligence Agency Information Act makes clear that where an investigation triggers § 431(c)(3), the CIA is not obligated to search its operational files until that investigation is completed. Indeed, the legislative history states that information "that *was the subject of an investigation* for alleged illegality or impropriety" is subject to FOIA. H.R. Rep. 98-726(II), at 6, 1984 U.S.C.C.A.N. at 3780 (emphasis added). Moreover, in describing § 431(c)(3), Congress refers to investigations triggering the exception in the past tense, thereby demonstrating an intent to have the CIA search operational files after an investigation is completed.

Congress's intent is further demonstrated by the statutory scheme, which makes review of operational files before the completion of an investigation impractical, if not virtually impossible. Congress structured the exception so that it covers the "specific subject matter" of the investigation, rather than the files relied upon by the investigators themselves. Therefore, searches of operational files under § 431(c)(3) must be conducted separate and apart from the investigation. To protect the integrity of the OIG's internal investigations, separate searches of operational files must take place after investigations are completed. Further, § 431(c)(3) does not apply to information in operational files that is generally related to the subject matter of an investigation but is unrelated to the specific wrongdoing under investigation. Therefore, it is not feasible to search operational files before an investigation is completed and the full scope of the investigation is known.

Finally, under the facts of this case, operational files and other OIG investigative files cannot be searched until the OIG investigation is completed. The CIA components

responsible for responding to plaintiffs' requests cannot search operational files and other OIG investigatory files while the OIG investigation is ongoing without threatening the integrity of the OIG's internal investigation. Further, the OIG itself cannot respond to plaintiffs' requests without diverting valuable investigative resources from the ongoing Iraq investigation. Accordingly, the CIA must wait until the OIG investigation is completed to search these files in response to plaintiffs' FOIA requests. Deferring the search for information until that time will not affect plaintiffs' ability to secure documents, because all of the information in the OIG files is very likely exempt under FOIA exemption (b)(7)(A) from disclosure while the OIG investigation is pending.

For all of these reasons, the Court should relieve the CIA of its obligations under the September 15 Order with regard to operational files and other investigative files within the OIG until after the OIG investigation into improprieties in Iraq is completed.

## STATEMENT OF FACTS

The American Civil Liberties Union sent a letter to the CIA dated October 7, 2003 that contained a FOIA request on behalf of all of the plaintiffs to this action. See Declaration of Scott A. Koch, dated October 15, 2004 ("Koch Decl."), ¶ 14.[2] The request sought records concerning the treatment, death and rendition of overseas detainees in United States custody. Id. On October 27, 2003, the CIA denied plaintiffs' request on the basis that the responsive records, if they existed, would fall under the protection of the Central Intelligence Agency Information Act, which provides that the Director of Central Intelligence may exempt

---

2 The Koch Declaration was filed as part of the CIA's October 15, 2004 response to the Court's September 15, 2004 Order. For the Court's convenience, the Government has provided a second courtesy copy of the Koch Declaration along with this memorandum of law.

operational files of the CIA from FOIA's search, review, publication and disclosure provisions. Id.; see also 50 U.S.C. § 431.

Plaintiffs appealed the CIA's determination by letter dated December 11, 2003. Koch Decl. ¶ 15. The CIA responded to plaintiffs' appeal on May 13, 2004. Id. The CIA again invoked the operational files exemption to FOIA with regard to records likely to be found in CIA operational files. Id. With regard to non-operational files, the CIA conducted a search of those record systems that reasonably could be expected to contain responsive records, located thirteen responsive documents, and withheld all of those documents in their entirety under FOIA exemptions (b)(1) and (b)(3). Id. This completed the CIA's administrative response with regard to plaintiffs' October 7, 2003 FOIA request. Id. ¶ 16.

On May 25, 2004, counsel for plaintiffs sent the CIA a letter containing a second FOIA request. Koch Decl. ¶ 17. This request sought the same information covered in the October 7, 2003 request, as well as any additional records generated or obtained since the October 7, 2003 request. Id. By letter dated July 29, 2004, the CIA accepted plaintiffs' second FOIA request, agreed to search for responsive records, and assigned a search cut-off date of July 29, 2004. Koch Decl. ¶ 19.

On May 11, 2004, the OIG commenced a criminal investigation of allegations of impropriety in Iraq. Alderson Decl. ¶ 5; Koch Decl. ¶ 21. The OIG investigation is ongoing. Id. It will require the OIG to investigate the conduct of CIA components and personnel. Id. In the course of its investigation so far, the OIG has searched for and received documents, including

documents from the operational files of the CIA.[3] Koch Decl. ¶ 21. The scope of the OIG investigation of improprieties in Iraq will affect the CIA's response to plaintiffs' second FOIA request because the operational files exemption does not apply to the specific subject matter of an investigation by the OIG. See 50 U.S.C. § 431(c)(3).

The OIG cannot review its investigative files to respond to plaintiffs' FOIA requests. Because the investigation is an ongoing investigation of CIA components and personnel, the search and review of OIG documents can only be conducted by OIG personnel. Alderson Decl. ¶ 13. The OIG has concluded, however, that any time OIG personnel spend "on reviewing documents for the FOIA request would only divert valuable investigative resources and delay the completion of the investigation." Id. Therefore, the OIG cannot respond to plaintiffs' requests directly without jeopardizing the investigation into improprieties in Iraq.

The CIA components responsible for processing plaintiffs' FOIA requests – the Information Management Service ("IMS"), the Office of General Counsel, and the various directorates of the CIA whose information is at issue, including the Directorate of Operations – cannot search operational files for records until the OIG investigation is completed. See Alderson Decl. ¶ 7. The CIA components cannot conduct a search of operational files at this time because they "do not know the specific subject matter of the Iraq investigation." Id. Indeed, the OIG has determined that it "cannot disclose the specific subject matter of the Iraq investigation to the CIA components responsible for the FOIA request because doing so would interfere with the integrity of OIG's independent investigation." Id.

---

3 These documents are maintained in OIG investigative files, which also include documents created by the OIG. The OIG's files may include documents responsive to plaintiffs' request. Those files are referred to as "OIG Investigative Files" in this memorandum of law.

## ARGUMENT

## THE COURT SHOULD RELIEVE THE CIA OF ITS OBLIGATIONS UNDER THE SEPTEMBER 15 ORDER WITH REGARD TO OPERATIONAL AND OIG INVESTIGATIVE FILES UNTIL AFTER THE OIG INVESTIGATION INTO IMPROPRIETIES IN IRAQ IS COMPLETED

### A. The CIA Is Not Obligated to Search Operational Files Until the OIG Investigation Is Completed

The OIG's investigation into allegations of impropriety in Iraq may cover subject matter that overlaps with plaintiffs' FOIA requests. Therefore, the CIA will be required to search and review otherwise exempted operational files for information that is the specific subject matter of the OIG investigation and is responsive to plaintiffs' FOIA requests. However, the CIA has no legal obligation to search operational files that are the specific subject matter of an OIG investigation until that investigation is completed.

#### 1. The Operational Files Exemption

The Central Intelligence Agency Information Act, 50 U.S.C. § 431, provides that "Operational files of the Central Intelligence Agency may be exempted by the Director of the Central Intelligence Agency from the provisions of section 552 of Title V (Freedom of Information Act) which require publication or disclosure, or search or review in connection therewith." 50 U.S.C. § 431(a). With this statute, "Congress exempted the Agency's 'operational files' from disclosure under the FOIA." CIA v. Sims, 471 U.S. 159, 174 n.19 (1985). As Congress explained, the Act has three purposes:

> (1) to relieve the Central Intelligence Agency from an unproductive Freedom of Information Act Requirement to search and review certain CIA operational files consisting of research and review certain CIA operational files consisting of records which, after line-by-line security review, almost invariably prove not to be releasable under the FOIA;
>
> (2) to improve the ability of the Central Intelligence Agency to respond to Freedom of Information Act requests from the public in a timely and efficient manner, while preserving undiminished the amount of

> meaningful information releasable to the public under the Freedom of Information Act; and
>
> (3) to provide additional assurance of confidentiality to sources who assist the United States by cooperating with the Central Intelligence Agency.

H.R. Rep. 98-726(I) at 4, 1984 U.S.C.C.A.N. at 3742.

The Act was created in response to frustrations with FOIA's application to the CIA. See H.R. Rep. 98-726(I) at 4-5, 1984 U.S.C.C.A.N. at 3742-43. Prior to the Act, the CIA searched its operational files in response to FOIA requests. Id. The information contained in those files almost invariably fell within the FOIA exemptions protecting classified information and information relating to intelligence sources and methods. Id. Nevertheless, the CIA was obligated under FOIA to conduct time consuming line-by-line reviews of those documents. Id. Those reviews were particularly burdensome because they had to be conducted by senior intelligence officers:

> The unproductive process of searching and reviewing CIA operational records systems which contain little, if any, information releasable under FOIA absorbs a substantial amount of the time of experienced CIA operational personnel and scarce tax dollars. This expenditure of time and money on fruitless search and review of sensitive operational records contributes nothing to the FOIA goal of releasing non-exempt information to the public, since it produces almost no records releasable to the public. In fact, it actively hinders achievement of that goal, because the time-consuming process of reviewing sensitive CIA operational records which prove unreleasable creates a bottleneck in the Agency's FOIA review process, causing a two-to-three year delay in CIA responses to many FOIA requests.

Id. Congress enacted the Act to relieve the CIA of this burden. Id. ("The 'Central Intelligence Agency Information Act' (H.R. 5164) will remove certain specifically defined sensitive CIA

operational files from FOIA search and review requirements, eliminating the waste of CIA human and fiscal resources.").[4]

The CIA's relief from its obligations under FOIA, however, is not absolute. The Act further provides that operational files are subject to search and review under certain limited circumstances, including, *inter alia*, if those operational files are:

> the specific subject matter of an investigation by the congressional intelligence committees, the Intelligence Oversight Board, the Department of Justice, the Office of General Counsel of the Central Intelligence Agency, the Office of Inspector General of the Central Intelligence Agency, or the Office of the Director of Central Intelligence for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity.

50 U.S.C. § 431(c)(3). This exception to the Central Intelligence Agency Information Act is implicated here because the OIG has commenced a criminal investigation into allegations of impropriety in Iraq. See Koch Decl. ¶ 20.

The Central Intelligence Agency Information Act does not state when operational files that are the "specific subject matter of an investigation" must be searched in response to FOIA requests. See 50 U.S.C. § 431(c). It is clear from the legislative history, however, that the Act does not require operational files to be searched until after an investigation is completed.

---

4 Briefly, "the term 'operational files' means files which document (1) the conduct of foreign intelligence operations, (2) the means by which foreign intelligence is collected through scientific and technical systems, and (3) investigations conducted to determine the suitability of foreign intelligence sources." Students Against Genocide v. Dep't of State, No. CIVA96-667(CKK/JMF), 1998 WL 699074, at *7 n.8 (D.D.C. Aug. 24, 1998) (citing 50 U.S.C. § 431(b)). The CIA's classification of files as "operational files" is not at issue here.

**2. The Legislative History Demonstrates Congress's Intent for the CIA to Search Operational Files After Investigations Are Completed**

The legislative history to the Central Intelligence Agency Information Act makes clear that where an investigation triggers section 431(c)(3)'s exception, the CIA is not obligated to search operational files until that investigation is completed. In defining the types of information that would remain subject to FOIA despite the Central Intelligence Agency Information Act's general exemption for operational files, the legislative history states that information "that *was the subject of an investigation* for alleged illegality or impropriety" is subject to FOIA. H.R. Rep. 98-726(II) at 6, 1984 U.S.C.C.A.N. at 3780 (emphasis added). The legislative history does not state that information that *is* the subject of *ongoing* investigations is subject to FOIA. If Congress had wanted the CIA to search its operational files while an investigation into impropriety or illegality was pending, it would not have limited FOIA's application to information "that *was the subject of an investigation*" in the legislative history to the Act. See id. (emphasis added).

Congress likewise used the past tense to describe investigations that would trigger section 431(c)(3). For example, the legislative history states that "information concerning the specific subject matter of the investigation will remain subject to search and review regardless of whether those conducting the investigation *reviewed* records containing that information *in the course of the investigation*." H.R. Rep. 98-726(1) at 30, 1984 U.S.C.C.A.N. at 3768. Similarly, the legislative history notes that "the key requirement is that information concern the specific subject matter of the investigation, not that the information *surfaced in the course of the investigation*." H.R. Rep. 98-726(1) at 30-31, 1984 U.S.C.C.A.N. at 3768-69.

The legislative history to the Act therefore demonstrates Congress's intent to make information in operational files that is the specific subject of an investigation into impropriety or illegality subject to FOIA after the investigation is completed, but not before.

### B. The Statutory Scheme Further Demonstrates Congress's Intent to Have Searches Under § 431(c)(3) Conducted After Investigations Are Completed

Congress's intent is further demonstrated by the statutory scheme, which makes review of operational files before the completion of an investigation impractical, if not virtually impossible. First, as argued below, the statutory scheme requires a review of operational files in response to § 431(c)(3) to be conducted by non-investigators. To protect the integrity of an investigation into improper or illegal activity, however, a review by non-investigators must take place after the investigation is completed. Second, § 431(c)(3) is limited to the specific subject matter of an investigation into illegal or improper activity. By making the scope of the exception overlap with the scope of the investigation, Congress necessarily intended for the review of operational files under § 431(c)(3) to take place after an investigation is completed and the full scope of the investigation is conclusively determined.

#### 1. Congress Did Not Rely on Investigators to Locate Information Subject to FOIA Under § 431(c)(3)

Section 431(c)(3) requires operational files to be searched for information that is the "specific subject matter" of an investigation into impropriety or illegality. As the legislative history makes clear, the exception is not limited to the information considered by the investigators. H.R. Rep. 98-726(1) at 30-31, 1984 U.S.C.C.A.N. at 3768-69. Congress therefore required the review of operational files for information that was considered by the investigators

as well as information that was not considered by the investigators but was nevertheless within the specific subject matter of the investigation. See id.[5]

It would be impractical and contrary to Congress's intent to conduct this type of review while an investigation is pending. The investigations that trigger the application of § 431(c)(3) are investigations of impropriety and illegality in the CIA's conduct of intelligence activity. 50 U.S.C. § 431(c)(3). If a review of operational files were to take place while this type of investigation was ongoing, the review would have to be conducted by the investigative personnel themselves. See Alderson Decl. ¶ 13 ("the search of OIG files and the review of documents can only be conducted by OIG personnel"). Non-investigators could not conduct the review, as they might be witnesses for, or even subjects of, the ongoing investigation. See id. ¶ 8; Koch Decl. ¶ 27. Under the terms of the statute, non-investigators would then have to re-review the operational files after the investigation was completed to make sure the investigators did not miss anything. This duplicative process would defeat one of the Act's primary purposes – to relieve the CIA of an unnecessary burden under FOIA. See H.R. Rep. 98-726(I) 30-31, 1984 U.S.C.C.A.N. at 3742 (one of the Act's three purposes was to "relieve the Central Intelligence Agency from an unproductive Freedom of Information Act (FOIA) requirement"). Plainly, in drafting § 431(c)(3) to capture information that was the specific subject of the

---

5 This approach was endorsed by an ACLU representative in testimony before Congress. In advocating a House of Representatives' version of the Central Intelligence Agency Information Act over a Senate version of the Act, the ACLU representative testified: "Now, the difference is that if an investigator happens to overlook a document, he has not reviewed or relied upon it, and it would not be covered by the Senate bill, whereas the [House] bill will cover all documents which concern the subject of the investigation, irrespective of whether it has been actually looked at or overlooked through inadvertence or whatever other reason." Karen A. Winchester & James W. Zirkle, Freedom of Information and the CIA Information Act, 21 U. Rich. L. Rev. 231, 271 (1987) (quoting Hearing before the Subcommittee on Legislation of the House Permanent Select Committee on Intelligence, 98th Cong., 2d Sess. (1984)).

investigation, regardless of whether it was in fact considered by the investigators, Congress envisioned a review process that would be conducted by non-investigators *after* the investigation in question was completed.[6]

**2. Given Section 431(c)(3)'s Narrow Application, It Is Not Practical to Search Operational Files Until After an Investigation Is Completed**

Further, § 431(c)(3) applies only to information that is the specific subject of an investigation into illegal or improper activities. It is not practical to search operational files for the limited information covered by the exception until an investigation triggering the exception is completed and the full scope of the investigation is known.

In describing § 431(c)(3)'s scope, Congress noted that "the specificity requirement in the phrase 'specific subject matter of the investigation' tailors the scope of the information remaining subject to the FOIA process to the scope of the specific subject matter of the investigation." H.R. Rep. 98-726(I) at 31, 1984 U.S.C.C.A.N. at 3769. The legislative history further observes that "this tailoring was intended to avoid the possibility of an unreasonably expansive interpretation of paragraph 701(c)(3) to include as subject to search and review information wholly unrelated to any question of illegality or impropriety." Id. The distinction between information subject to search and information exempted from search is best illustrated by example:

> Suppose a CIA case officer abroad, acting at the direction of his CIA superior, conducts an unlawful electronic surveillance of a United States citizen while trying to collect foreign intelligence on a foreign scientific

6 Moreover, for the reasons explained below in Section C, all of the OIG's documents are also likely covered by FOIA exemption (b)(7). Therefore, when read together, FOIA and the Central Intelligence Agency Information Act plainly demonstrate that Congress did not intend for any documents falling within the scope of an ongoing investigation to be disclosed to the public until the investigation is completed.

> installation abroad . . . . [T]he Agency would be required to search its files, including exempted operational files, for records containing information concerning the unlawful surveillance, not for all records concerning any operations targeted at the foreign scientific installation, because, in this case, the unlawful surveillance constitutes the specific subject matter of the investigation.

Id. Congress thus made clear that where an investigation triggers section 431(c)(3)'s exception, information in operational files that is related to the subject matter of the investigation but is not specifically related to the alleged illegal or improper acts under investigation remains exempt from FOIA.

The only published case to consider § 431(c)(3)'s scope further emphasized the exception's narrow application. See Sullivan v. CIA, 992 F.2d 1249, 1254-55 (1st Cir. 1993). The Sullivan court held that an "investigation that touches on CIA conduct in a particular incident or region, standing alone, is not sufficient to warrant the release of all CIA documents [related to] that investigation or region." Id. Instead, the "investigation and the documents sought must specifically relate to CIA wrongdoing, that is, some 'impropriety' or 'violation of law' in the conduct of the designated intelligence activity." Id.

The plaintiff in Sullivan had made a FOIA request to the CIA for documents concerning her father, who allegedly disappeared in 1963 while engaged in a CIA-sponsored mission to drop propaganda over Cuba. Sullivan, 992 F.2d at 1251. The CIA did not search its operational files in responding to the request. Id. Plaintiff argued that section 431(c)(3) of the Act applied "because a Senate Select Committee (the Church Committee) inquired into certain covert operations against Cuba mounted by the CIA and other (putatively independent) anti-Castro groups." Id. at 1254. The First Circuit rejected this broad reading of the exception, reasoning that:

> [Plaintiff's] request for information about her father's disappearance bears no claimed or readily discernable relationship to the investigation's

> purposes. This latter requirement is insurmountable: a pivotal requirement of section 431(c)(3) is that, to be extractable, the information requested must concern the specific subject matter of the official investigation. Thus, although there were instances in which the Committee searched for agency misconduct, that happenstance does not allow [plaintiff] to catapult herself over the statutory parapet. *It is simply not enough that information which bore in some remote way on the request surfaced in the course of an official investigation.*

Id. at 1255 (emphasis added). Therefore, the mere fact that an investigation might touch upon information in operational files that is responsive to a FOIA request is not enough to make that information subject to FOIA. See id. To the contrary, section 431(c)(3) is read narrowly; information in otherwise exempt operational files must be specifically related to the illegality or impropriety that is the subject of an investigation for it to be subject to FOIA. Id.

Given the limits Congress placed on the scope of the exception, it makes no sense to require the CIA to search its operational files before investigations triggering the exception are completed. As the OIG makes clear, it is virtually impossible to know all of the illegal or improper activity that is the subject of an investigation, and thus the precise limits of the exception to the operational files exemption, until an investigation is completed:

> As with all such broad investigations, the scope of the Iraq investigation will change over time as OIG gathers information. Sometimes, the scope of an investigation expands as new information points to additional programs, operations, or persons as subjects of inquiry. Other times, the scope of an investigation contracts as new information disproves allegations or eliminates subjects of inquiry. Occasionally, an initial investigation will give rise to one or more separate but related investigations. In short, an OIG investigation rarely starts and ends in the same place. Therefore, [the OIG] cannot conclusively determine the specific subject matter of the Iraq investigation until the investigation is complete.

Alderson Decl. ¶ 6. Therefore, Congress clearly intended for the CIA to wait until an investigation is completed before reviewing its operational files for information that is specifically related to the illegal or improper activity that was the subject of the investigation.

For all of these reasons, the statutory scheme further demonstrates Congress's intent to require the CIA to search its operational files only *after* an investigation that triggers § 431(c)(3) is completed.

**C. Under the Facts of This Case, the CIA Cannot Review Information in Operational Files or the OIG's Files Until After the OIG Investigation Is Completed**

Putting aside Congress's intent and the practical limitations of the statutory scheme, under the facts of this case the CIA cannot search for information contained in operational files or in OIG Investigative Files until after the OIG investigation is completed. First, the CIA components responsible for responding to plaintiffs' requests cannot conduct the search because they do not and cannot know the scope of the OIG's investigation. Second, the OIG investigation would be jeopardized if the OIG were required to conduct the search itself because any time the OIG spends on plaintiffs' FOIA requests will interfere with its ongoing investigation. And third, there is no practical reason to require the OIG to identify the documents responsive to plaintiffs' FOIA requests at this time, as all of those documents are likely to be exempt from release under FOIA exemption (b)(7)(A).

The CIA components responsible for responding to plaintiffs' requests cannot search operational files in response to those FOIA requests at this time. The components "do not know the specific subject matter of the Iraq investigation" and, thus, the scope of their duty to search operational files. See Alderson Decl. ¶ 7. The OIG investigation "necessarily involves an examination of the conduct of CIA components and personnel." Id. ¶ 8. Therefore, the OIG has determined that "communicating the specific subject matter of the Iraq investigation" to the CIA components responsible for plaintiffs' requests would present "an unacceptable risk of disclosing the focus of the OIG investigation to potential targets of the investigation." Id. For the same reasons, the CIA components cannot search the OIG Investigative Files. See id.

Moreover, the OIG has "determined that it would be improper for IMS to survey other CIA components in order to determine what otherwise exempt operational files they have produced to OIG because such monitoring would also interfere with the integrity of the investigation." Id. ¶ 9. Finally, the OIG has concluded that it would present an "unacceptable risk" to communicate the specific subject of the Iraq investigation to the components responsible for processing the request before that investigation is complete, as it might cause the removal of relevant documents "from their Agency record systems for purposes of FOIA processing or otherwise before OIG has obtained them," which would "interfere with the integrity of the ongoing investigation." Id. ¶ 10.

Further, the OIG itself cannot respond to plaintiffs' FOIA requests. First and foremost, "any time spent on reviewing documents for the FOIA request would divert valuable investigative resources and delay the completion of the investigation." Alderson Decl. ¶ 13. In addition, the OIG "cannot properly review the documents and identify the applicable FOIA exemptions without consulting with the other CIA components." Id. ¶ 14. For the reasons explained above, however, such consultation "would interfere with the integrity of the ongoing investigation." Id. The Government would therefore suffer significant harm were the OIG to be required to search for records responsive to plaintiffs' requests at this time.

Plaintiffs, on the other hand, will suffer no harm if operational files and documents in OIG Investigative Files are exempted from the requirements of the September 15 Order until the OIG investigation is completed. Because the CIA components cannot conduct a separate search at this time, the only files that could be searched while the OIG investigation is pending are those that the OIG has pulled in the course of its investigation. All of the OIG's files, however, will very likely be exempt from production under FOIA exemption (b)(7)(A)

while the OIG investigation is pending because disclosure of that information would likely interfere with the pending investigation.

Under FOIA exemption 7(A), records compiled for law enforcement purposes are exempt from disclosure to the extent that their production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "A record is deemed to have been compiled for such a purpose if it was created or acquired in the course of an investigation 'related to the enforcement of federal laws,' and 'the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality.'" Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1986) (quoting Pratt v. Webster, 673 F.2d 408, 420-21 (D.C.Cir.1982). "[L]ess exacting proof" of a legitimate law enforcement purpose is required of law enforcement agencies. Quinon, at 1228 (quoting Pratt, 673 F.2d at 418 & n.25).[7]

The OIG has "determined that the release to plaintiffs of documents from OIG files could reasonably be expected to interfere with the integrity of the ongoing OIG investigation by publicly disclosing the focus, progress, and potential targets of the investigation." Alderson Decl. ¶ 11. Therefore, just as the OIG will not disclose the full scope of its investigation into improprieties in Iraq to other CIA components while the investigation is pending, exemption 7(A) will protect the OIG from having to disclose records when such

---

7 Documents can be "compiled for law enforcement" even if they were originally created or compiled for some other purpose. See, e.g., John Doe Agency v. John Doe Corp., 493 U.S. 146, 155 (1989) (statute's plain language does not permit distinction "between documents that originally were assembled for law enforcement purposes and those that were not so originally assembled but were gathered later for such purposes"); Williams v. FBI, 730 F.2d 882, 885 (2d Cir. 1984) ("[a]n investigation may well consist largely of compiling materials already in several agency files and placing copies in a single file under a new title").

disclosure would interfere with the investigation or otherwise reveal the scope of its investigation. See Judicial Watch, Inc. v. United States Dep't of Justice, 306 F. Supp. 2d 58, 75 (D.D.C. 2004) (exemption applicable where agency claimed disclosure could damage agency's ability to obtain information, reveal the status of the investigation or the agency's assessment of the evidence); Swan v. SEC, 96 F.3d 498, 500 (D.C. Cir. 1996) (exemption properly invoked where release could reveal information about focus and scope of investigation); Accuracy in Media, Inc. v. United States Secret Serv., No. 97-2108, 1998 WL 185496, at *4 (D.D.C. Apr. 16, 1998) (records exempt where disclosure could permit witnesses to modify testimony). Accordingly, plaintiffs will suffer no harm if they have to wait until the OIG investigation is completed for the CIA to search its operational files and documents in the OIG Investigative Files; indeed, they will very likely receive no documents from the OIG in the interim even if the OIG is required to search at this time. See Alderson Decl. ¶ 14. If the Government is required to conduct such a search, it reserves its right to assert any all applicable FOIA exemptions, including (b)(1), (b)(2), (b)(3), (b)(5), (b)(6) and (b)(7). See id.

## CONCLUSION

In sum, all of the documents implicated by the OIG investigation – those that are in operational files and those that are located in the OIG Investigative Files – are exempt from release at this time. Moreover, under the facts of this case, neither the CIA components responsible for responding to plaintiffs' requests nor the OIG can search for documents in operational or OIG Investigative Files without jeopardizing the integrity of the OIG's ongoing investigation. For all of these reasons, the Court should enter an order relieving the CIA of its obligations under the September 15, 2004 Order with regard to documents located in operational and OIG Investigative Files until the ongoing OIG investigation into improprieties in Iraq is completed. Further, as noted above, there may be additional investigations that overlap with the

subject matter of plaintiffs' FOIA requests. The CIA seeks the same relief with regard to every OIG investigation that may overlap with the subject matter of plaintiffs' FOIA requests.

Dated: New York, New York
November 10, 2004

Respectfully submitted,

DAVID N. KELLEY
United States Attorney for the
Southern District of New York
Attorney for Defendant Central
Intelligence Agency

By: /s/ Peter M. Skinner
SEAN H. LANE (SL-4898)
PETER M. SKINNER (PS-9745)
Assistant United States Attorney
86 Chambers Street, 5th Floor
New York, New York 10007
Telephone: (212) 637-2601
Facsimile: (212) 637-2730