UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION, CENTER FOR
CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN
RIGHTS, VETERANS FOR COMMON SENSE AND
VETERANS FOR PEACE,

     Plaintiffs,

  v.

DEPARTMENT OF DEFENSE, AND ITS COMPONENTS
DEPARTMENT OF ARMY, DEPARTMENT OF NAVY,
DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE
AGENCY; DEPARTMENT OF HOMELAND SECURITY;
DEPARTMENT OF JUSTICE, AND ITS COMPONENTS
CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE
OF INFORMATION AND PRIVACY, OFFICE OF
INTELLIGENCE, POLICY AND REVIEW, FEDERAL
BUREAU OF INVESTIGATION; DEPARTMENT OF STATE;
AND CENTRAL INTELLIGENCE AGENCY,

     Defendants.

DOCKET NO. 04-CV-4151 (AKH)

---

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CENTRAL INTELLIGENCE AGENCY'S APPLICATION
FOR LIMITED RELIEF FROM THE SEPTEMBER 15, 2004 ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE, POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY,<br><br>Defendants. | DOCKET NO. 04-CV-4151 (AKH) |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CENTRAL INTELLIGENCE AGENCY'S APPLICATION
FOR LIMITED RELIEF FROM THE SEPTEMBER 15, 2004 ORDER**

Defendant Central Intelligence Agency ("CIA") has submitted an Application for Limited Relief from the Court's September 15, 2004 Order, which directed Defendants to produce or identify all documents responsive to Plaintiffs' Freedom of Information Act ("FOIA") requests by October 15, 2004. *See American Civil Liberties Union v. Department of Defense*, 339 F.Supp.2d 501, 505 (S.D.N.Y. 2004). The CIA's motion seeks the Court's permission to avoid conducting a search and review of operational files under FOIA for information concerning the specific subject matter of an investigation by the Office of Inspector General ("OIG") until after the OIG has completed its investigation. Plaintiffs American Civil Liberties Union ("ACLU"),

Center for Constitutional Rights ("CCR"), Physicians for Human Rights ("PHR"), Veterans for Common Sense ("VCS") and Veterans for Peace ("VCP") respectfully submit this memorandum in opposition to Defendant CIA's Application for Limited Relief from the September 15, 2004 Order.

## PRELIMINARY STATEMENT

This case involves the United States government's ongoing refusal, in violation of the Freedom of Information Act ("FOIA"), to expeditiously process Plaintiffs' request for records pertaining to the treatment of individuals apprehended after September 11, 2001, and held in United States custody in military bases or detention facilities outside the United States ("Detainees"). For well over a year, Plaintiffs have sought documents related to the torture and inhumane treatment of Detainees held in prisons such as Guantánamo Bay, Cuba and Abu Ghraib, Iraq, as well as records relating to the government practice known as "rendition," whereby Detainees and other individuals are transferred by the United States to countries known to employ torture and illegal interrogation techniques.

Plaintiffs filed two FOIA requests seeking the identical categories of documents: the first was filed in October 2003; the second was filed in May 2004, amidst numerous news reports which established that Detainees have been subjected to abusive and inhumane treatment. On October 27, 2003, the CIA denied Plaintiffs' first request on the grounds that responsive records would be exempted from disclosure under the Central Intelligence Agency Information Act (the "Act"), which provides that the CIA's operational files are exempted from FOIA's search, review, publication and disclosure requirements. *See* 50 U.S.C. § 431. Plaintiffs appealed the CIA's determination by letter dated December 11, 2003. The CIA denied this appeal on May 13, 2003 with respect to operational files, and with respect to non-operational files located 13

responsive documents which it withheld in full under FOIA exemptions (b)(1) and b(3).  *See* 5 U.S.C. §§ 552(b)(1) & 552(b)(3).  As to the second request, the CIA did not respond until July 29, 2004, when it sent Plaintiffs a letter accepting the request, but providing no substantive responses.  This case, seeking an expeditious and substantive response to Plaintiffs' FOIA requests in accordance with Defendants' FOIA obligations, was filed in July 2004.

The CIA Information Act (the "Act") exempts operational files from FOIA disclosure, except to the extent that they concern the subject matter of an investigation by, *inter alia*, the CIA's Office of Inspector General ("OIG").  *See* 50 U.S.C. 431(c)(3).  Here, the OIG has begun an investigation into "allegations of improprieties in Iraq."  *See Memorandum of Law in Support of the Central Intelligence Agency's Application for Limited Relief from the September 15, 2004 Order,* at 3 ("Defendant's Memorandum of Law").  The CIA's otherwise exempt operational files are now subject to search and review for information concerning the subject matter of the investigation.  Defendant CIA asks the Court to construe the Act as limited to instances in which the relevant investigation has been completed.  But there is no basis for the Court to construe the Act in this manner, as the plain and unambiguous language of the Act does not limit the CIA's obligation to conduct the search and review under section 431(c)(3) to closed investigations.  Moreover, the legislative history upon which the CIA relies is unconvincing and in no way demonstrates a Congressional intent to limit the applicability of section 431(c)(3) to closed investigations.  Finally, contrary to the CIA's suggestion, conducting a search and review prior to the conclusion of the investigation would not be impossible or impracticable in light of either the statutory scheme or the facts of this case.

For all of these reasons, the Court should deny the Defendant CIA's application for relief from its Order and should, instead, order the CIA to (1) conduct a search and review of the

appropriate files, (2) produce or identify all responsive documents to Plaintiffs, and (3) provide a justification for the non-production of any documents, on or before January 31, 2005.

## STATEMENT OF FACTS

On October 7, 2003, Plaintiffs submitted a FOIA request, *inter alia*, to Defendant CIA. Plaintiffs' request sought records concerning (1) the treatment of Detainees; (2) the deaths of Detainees while in United States custody; and (3) the rendition of Detainees and other individuals to countries known to employ torture or illegal interrogation techniques.  In their request, Plaintiffs listed the categories of documents sought, including policies, procedures or guidelines, investigations, inquiries and related disciplinary proceedings.  Plaintiffs also specifically identified, and requested, numerous reports detailing particular instances and allegations of torture and abuse of Detainees and/or rendered individuals, as well as statements of government officials giving rise to the concerns that the maltreatment of Detainees was widespread practice. Defendant CIA denied plaintiffs' October FOIA request in full on the grounds that all requested documents were exempted under the operational files exemption. Plaintiffs appealed the CIA's determination by letter dated December 11, 2003.  The CIA responded to Plaintiffs' appeal on May 13, 2004, again invoking the operational files exemption, but also conducting a search and review of non-operational files which located 13 documents withheld in full under exemptions b(1) and b(3).  5 U.S.C. §§ 552(b)(1) & 552(b)(3).

Plaintiffs filed a second FOIA request on May 25, 2004, seeking the identical categories of information in their first request, but with reference to specific records that had become known through media reports since October 2003 which remained unavailable to the public for review.  Defendant CIA failed to provide any records, or indices, in response to Plaintiffs' May 2004 Request.

Meanwhile, on or about May 11, 2004, the OIG commenced a criminal investigation of allegations of impropriety in Iraq.  In the course of its investigation, the OIG has searched for and retrieved documents from the operational files of the CIA.  These documents are maintained in OIG investigative files and may include documents responsive to Plaintiffs' FOIA requests.

On July 2, 2004, Plaintiffs commenced this action, seeking injunctive relief from this Court, and an order requiring Defendants to expeditiously process Plaintiffs' requests and to provide Plaintiffs with all responsive non-exempt documents that were the subject of Plaintiffs' requests.  On August 12, 2004, after a hearing before this Court, Defendants were ordered to respond in full to a specific list of enumerated documents prepared by Plaintiffs by August 23, 2004.  On August 16, 2004, Plaintiffs sent Defendants the list of specifically enumerated documents (the "List"), but Defendant CIA did not respond to the Plaintiffs' List.  On September 15, 2004 this Court issued an order directing Defendants to respond to Plaintiffs' August 16, 2004 List and "produce or identify" all documents responsive to Plaintiffs' FOIA overall FOIA requests on or before October 15, 2004.  *American Civil Liberties Union*, 339 F.Supp.2d at 505.

On October 15, 2004, Defendant CIA informed the Court that it would be unable to comply with this order, seeking an extension of time to search and review documents contained in non-operational files,[1] and seeking leave to search and review operational files only after the Office of Inspector General's Investigation is complete.  The latter request for relief is the subject of the present motion.  For the reasons set forth below, that motion should be denied.

---

[1] On November 8, 2004, Defendant CIA represented that it had completed the processing of non-operational files.

## ARGUMENT

### DEFENDANT CENTRAL INTELLIGENCE AGENCY IS NOT ENTITLED TO RELIEF FROM THE COURT'S SEPTEMBER 15, 2004 ORDER

It is long recognized that freedom of information is a "structural necessity in a real democracy." *Nat'l Archives and Records Admin. v. Favish*, __ U.S. __, 124 S.Ct. 1570, 1580 (2004). In enacting FOIA, Congress recognized that an informed citizenry is "needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA thus "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999). *See also New York Public Interest Research Group v. United States Env'tl Protection Agency,* 249 F.Supp.2d 327, 331 (S.D.N.Y. 2003) (purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny")(quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). To this end, FOIA directs government agencies to disclose certain types of records and describes the manner of disclosure required, *see* 5 U.S.C. § 552(a), while setting forth the specific categories of materials exempted from disclosure. Id. § 552(b). Exemptions to the FOIA are to be "narrowly construed with doubts resolved in favor of disclosure" *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002).

As this Court has recognized, Defendants have failed to respond in a timely fashion to Plaintiffs' requests. *See American Civil Liberties Union*, 339 F.Supp.2d at 502-03 ("As of today, eleven months later, with small exceptions, no documents have been produced by defendant, no documents have been identified, no exemptions have been claimed and no objections have been stated."). The timeliness of agency responses to FOIA requests is one of the crucial elements of

meaningful access to the information FOIA makes available.  *See id.* at 505 ("To permit further delays in disclosure or providing justification for not disclosing would subvert the intent of FOIA. . .The glacial pace of disclosure shows an indifference to the commands of FOIA and fails to afford accountability of government that the act requires.").  As such, Defendant CIA's application for permission to delay conducting a search and review until after the OIG investigation is complete would fundamentally impede Plaintiffs' access to the substantive responses to which they are entitled under FOIA.

The Central Intelligence Agency Information Act (the "Act") provides that the CIA's "operational files" are exempt from search and review, except that such files "shall continue to be subject to search and review for information concerning . . .the specific subject matter of an investigation by . . . the Office of Inspector General of the Central Intelligence Agency . . . for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity."  50 U.S.C. § 431 (c)(3).  In this case, Defendant CIA has acknowledged that the OIG has begun an investigation into improprieties in Iraq, thereby triggering section 431(c)(3)'s exception to the Act and rendering the subject records available for search and review under FOIA.  Nonetheless, the CIA has refused to conduct the requisite search and review on the grounds that the OIG's investigation is currently ongoing.

Defendant's proposed exception to section 431(c)(3), namely that the CIA is not obligated to search its operational files under FOIA until the relevant investigation is complete, is contrary to the plain and unambiguous language of the statute.  Moreover, even if the Court were to determine that the language of the statute is ambiguous and that resort to legislative history was appropriate, the legislative history of section 431(c)(3) does not support Defendant's

proposed limitation.  Finally, and in any event, the limitation proposed by Defendant is not mandated by the factual circumstances of this case.

**A.**    **The Plain And Unambiguous Language Of The Act Is Contrary To The Rule Proposed By The CIA.**

The plain and unambiguous language of Section 431(c)(3) is contrary to the rule proposed by Defendant CIA.  Because the plain language of the Act is unambiguous, resort to legislative history is not appropriate for the purposes of inferring a limitation not otherwise suggested by the language of the Act.

The Act provides that operational files are exempt from search and review, but states that files will:

> continue to be subject to search and review for information concerning . . . the specific subject matter of an investigation by the intelligence committees of the Congress, the Intelligence Oversight Board, the Department of Justice, the Office of General Counsel of the Central Intelligence Agency, the Office of Inspector General of the Central Intelligence Agency, or the Office of the Director of Central Intelligence for an impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity.  50 U.S.C. § 431(c)(3).

Nowhere does the Act state or even imply that this investigation have been completed in order for the search and review to be conducted.  Rather the Act simply states that the operational files will "continue to be subject to search and review" to the extent that they contain information concerning the "specific subject matter of an investigation," by one of the enumerated entities.  There is no limitation suggested by this language, nor is the language vulnerable to differing interpretations.  Were the limitation proposed by Defendant CIA intended, this section could have been written to refer only to information that "was" the subject matter of an investigation, or to information concerning "the specific subject matter of a closed or completed investigation."  No such language appears in the statute or is suggested by its wording.  Importantly, Defendant has not argued otherwise, and has not even contended that the

Act is ambiguous.   Rather Defendant has relied directly on legislative history without first making the case that it is appropriate for the Court to do so.

The law is clear: where the terms of a statute are plain and unambiguous, the statute is construed according to the plain meaning of its words, not in terms of legislative history.  *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997) (the first step is to determine whether the "language at issue has a plain and unambiguous meaning"); *Greenery Rehabilitation Group, Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998); *Luyando v. Grinker*, 8 F.3d 948, 950 (2d Cir. 1993) (holding that the Court must first look to the "plain language of a statute and interpret it by its ordinary, common meaning").  Thus, the Court may consider legislative history, as well as the "broader context and primary purpose of the statute" only where the language of the statute is ambiguous.  *See Catellano v. City of New York*, 142 F.3d 48, 67 (2d Cir. 1998);  *Lee v. Bankers Trust Co*., 166 F.3d 540, 544 (2d Cir. 1999) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous."); *In re Olga Coal Co*., 159 F.3d 62, 67 (2d Cir. 1998) (noting that resort to legislative history is inappropriate when the meaning of a statutory provision is otherwise unambiguous).[2]

Defendant CIA here asks the Court to alter the plain meaning of section 431(c)(3) by inferring a limitation on its application that appears nowhere in the language of the statute.  It is, however, not the Court's province to alter the plain meaning of statutory provisions.  *See Connecticut National Bank v. Germain*, 503 U.S. 249, 254 (1992).  Moreover, the absence of a

---

[2] There are exceptional cases in which it is appropriate for a court to consider legislative history even where the plain language of the statute is unambiguous.  Those are cases in which the evidence of legislative history is so strong that a literal reading of the statutory language would result in defeating Congress's purpose in enacting it.  *See Green v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996).  As set forth below, and as is clear from Defendant CIA's Memorandum of Law, the legislative history is not strong and does not demonstrate a strong intent on the part of Congress.  Thus, this case is not one of the exceptional cases in which a clear Congressional intent allows the Court to disregard the plain language of the statute.

limitation in the plain language of the statute does not give rise to an ambiguity.  Rather, the absence of a limitation should be construed as an unambiguous indication that Congress did not intend to limit the statute in the manner suggested.  *See In Re Chateaugay Corp.*, 945 F.2d 1205 (2d Cir. 1991) (holding that the absence of a limiting word or phrase indicated that no such limitation could be inferred).  In this case, there is no limitation stated, implied or even suggested on the face of the statute.  By contrast, other clarifying limitations are expressed in section 431(c)(3), including limiting the search to the "specific subject matter" of the investigation, and requiring that the illegality occur in "the conduct of an intelligence activity."  Especially because Congress placed certain express limitations on the applicability of this section, the Court should not infer other limitations that do not appear on the face of the statute.

Furthermore, courts construe exemptions to FOIA narrowly.  "FOIA adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies."  *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999).  FOIA contains nine exemptions under which an agency may withhold information, 5 U.S.C. §§ 552(a)(4)(B) & (b)(1)-(9), but the exemptions are narrowly construed and the Government bears the burden of proving that any given exemption applies.  *See Halpern,* 181 F.3d at 287; *see also Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (FOIA exemptions are narrowly construed); *United States DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755 (1989) (burden of proving that withholding the records is not improper falls on the agency).  It is well established that the "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Klamath Water Users*, 532 U.S. at 7-8.

The CIA Information Act should be read in conjunction with FOIA, because the operational files exception is intended to limit the CIA's obligations under FOIA.  As such, the principle described above, namely that FOIA exemptions are narrowly construed, likewise requires that the operational files exemption must also be construed narrowly, rather than expansively.  For this reason alone, the absence of such a limitation in the language of the Act should be understood as indicating that no such limitation was intended.

In sum, the language of the Act is plain and unambiguous.  Inferring the limitation which Defendant seeks would be contrary to its terms and plain meaning.  The absence of this limitation in the language of the Act does not suggest an ambiguity, and Defendant has not argued that it does.  Finally, because FOIA exemptions are construed narrowly, the Court should not imply a limitation not otherwise suggested by the terms of the Act itself by reference to either legislative history or the statutory scheme.

**B.** **Even If The Court Determines That The Language Of The Act Is Ambiguous And That Resort To Legislative History Is Appropriate, The Legislative History Does Not Support The CIA's Position.**

Even if the Court determines that the language of section 431(c)(3) is ambiguous and that, as such, consulting the legislative history would be appropriate in this case, the legislative history does not support the CIA's position.  The CIA argues that the legislative history demonstrates that Congress intended the CIA to search operational files only after investigations have been completed.  To the contrary, however, Congress did not demonstrate an intention to limit section 431(c)(3) to closed investigations.  Indeed, there is absolutely no mention of this issue in the legislative history.  Nor is there an indication that such a limitation was presumed.

Defendant relies on two statements in the House of Representatives Reports accompanying the Act that are neither persuasive nor conclusive.  First, Defendant argues that

11

the House Report states that only information "that was the subject of an investigation for alleged illegality of impropriety" is subject to FOIA.   H.R. Rep. 98-726 (II) at 6, 1984 U.S.C.C.A.N. at 3780.  In particular, Defendant contends that because the Report uses the word "was," Congress intended to limit the exception to closed investigations, or specifically to matters that were the subject of investigation.  *Defendant's Memorandum of Law*, at 10. However, the full quote is illuminating and demonstrates that Defendant's interpretation is erroneous.  The House Report actually says:  "[T]he following types of information will be subject to FOIA search and review requirements to the same extent that they are today: . . .(5) information concerning any agency intelligence activity that was improper or illegal *or* that was the subject of an investigation for alleged illegality or impropriety."  H.R. Rep. 98-726 (II) at 6, 1984 U.S.C.C.A.N. at 3780 (emphasis added). The phrase omitted by the Government in its brief, "information concerning any intelligence activity that was improper or illegal," demonstrates that Congress intended to include both types of information in this exception: information that was the subject matter of investigations (which Defendant correctly notes would include closed investigations), *and* information concerning intelligence activity that was improper or illegal, which would plainly include open investigations.  When the entire sentence is considered, it is clear that the legislative history supports the position that both ongoing and closed investigations remain subject to search and review under FOIA.

The second piece of legislative history relied upon by Defendant is likewise unavailing to support the broad exception to section 431(c)(3) proposed by the CIA.  Defendant refers to a portion of the House Report which states that "information concerning the specific subject matter of the investigation will remain subject to search and review regardless of whether those conducting the investigation reviewed records containing that information in the course of the

investigation."  H.R. Rep. 98-726 (I) at 30, 1984 U.S.C.C.A.N. at 3768.  This statement is intended to address a debate about whether to limit this section to records that were actually reviewed during the course of the investigation or to include records that were pertinent to the subject matter of the investigation even if the investigators inadvertently or intentionally overlooked them.  *See* Karen A. Winchester, et al., *Freedom of Information and the CIA Information Act*, 21 U. Rich. L.Rev. 231, 271-72 (1987). The purpose of this statement was to explain the decision to include records in this exception that were not specifically reviewed in the course of the investigation.[3]  But this statement--explaining a decision to expand the scope of the exception--does not indicate Congress's intention to then limit the exception to closed cases.  Indeed, even if Congress had limited the exception to records that had actually been reviewed during the course of an investigation, such a rule would not necessitate that the investigation have been closed before the CIA could undertake a search and review and thereby meet its obligations under FOIA.  Rather, a search and review could be undertaken at any point during the investigation, encompassing, at that point, those records that had already been reviewed.

Neither of these statements, separately or together, demonstrates Congress's intent to limit section 431(c)(3) to closed investigations.  Moreover, there are two other statements in one of the Reports on which Defendant relies which indicate that Congress intended this section to apply even when investigations were ongoing.  First, the Report states that "[r]equests under the FOIA for information of these three types [including the specific subject matter of an investigation] will continue to be processed in accordance with the Freedom of Information Act in the same manner as if section 701(a), which provides for exemption of operational files, were

---

[3]  The original version of the bill limited the exception to documents reviewed during the course of the investigation.  *See* Karen A. Winchester, et al., *Freedom of Information and the CIA Information Act*, 21 U. Rich. L. Rev. 231, 270-71 (1987).

never enacted." H.R.Rep. 98-726 (I) at 23, 1984 U.S.C.C.A.N. at 3761. This statement is illuminating, as it demonstrates that Congress intended the CIA to treat these files as though they were the subjects of a routine FOIA request and not be given special protections or further limited because of the operational files exemption. The Court must treat these files as though the operational files exemption "were never enacted." The Report continues, stating that "[w]hen allegations received by the CIA from outside the agency result in investigations of intelligence activities for illegality or impropriety, exempted operational files will remain subject to search and review for information concerning the specific subject matters of those investigations." H.R. Rep. 98-726(I) at 29, 1984 U.S.C.C.A.N. at 3767. This statement clearly demonstrates that Congress did not intend that such investigations be concluded prior to the information being subject to search and review. Rather, Congress used the present tense, stating that they will remain subject to search and review. The legislative history of this provision merely serves to clarify Plaintiffs' position: those items excepted from the operational files exemption should be treated as though the operational files exemption did not exist. In this case, these files should be treated as any other files compiled for investigative purposes.

In sum, even if the Court considers the legislative history of this Act, it does not demonstrate a Congressional intention to limit the exception to closed investigations, but rather makes clear that section 431(c)(3) applies to both ongoing and closed investigations. Accordingly, the Court should not infer such a limitation and permit the CIA to avoid conducting the requisite search and review until after the investigation is complete.

**C.**     **The Statutory Scheme Does Not Render A Review Of The Relevant Files "Virtually Impossible," Or Even Impractical.**

Defendant argues that the statutory scheme make review of operational files "virtually impossible," on the grounds that: (1) "the statutory scheme requires a review of operational files

in response to § 431(c)(3) to be conducted by non-investigators;" and (2) "the scope of the exception overlap[s] with the scope of the investigation," which accordingly requires that the search and review be conducted only after the full scope of the investigation is conclusively determined. *Defendant's Memorandum of Law*, at 11.  But the CIA's arguments in this regard really amount to a list of complaints regarding Congress's decision to carve out the investigations exception to the operational files exemption.  Although the CIA may consider this exception inconvenient, the Court may not disregard the plain requirements of the Act.  As set forth below, the government has not demonstrated that the statutory scheme renders a review of the relevant files impossible before the investigation is completed.

The CIA argues that "the statutory scheme requires a review of operational files in response to § 431(c)(3) to be conducted by non-investigators."  *Defendant's Memorandum of Law*, at 11.  It bases this argument on the fact that section 431(c)(3) extends to the "specific subject matter" of the investigation, as opposed to those files specifically reviewed by the investigators.  *Id*. Where an investigation is ongoing, the Defendant argues, the review must be conducted by the investigative personnel themselves, because non-investigative personnel may be "witnesses for, or even subjects of, the ongoing investigation."  *Id*. at 12.  Non-investigators would then have to review the operational files after the investigation was completed "to make sure the investigators did not miss anything," which, according to Defendant, would place an unnecessary burden on the CIA.  *Id*.  This argument is without merit.

A review of files during an ongoing investigation is neither impossible nor impractical. Such a review need not be conducted by investigative personnel.  Indeed, it defies common sense to argue that the CIA could not select agency personnel that have no connection to either operational affairs or to the specific area of the investigation in question.  Defendant does not,

and really could not, argue that all CIA components are implicated in the OIG's investigation into improprieties in Iraq.  Nor is there any reason why, if duplication of effort is such a concern, the appropriate investigative personnel could not conduct the search and review.  Defendant argues that as a factual matter the investigative personnel cannot conduct the search and review because "any time the OIG spends on plaintiffs' FOIA requests will interfere with its ongoing investigation." *Id*. at 16.  Yet, this argument could theoretically apply to all FOIA requests, as all requests divert resources from other agency business.  But Congress, in enacting FOIA, decided that salutary public policy requires agencies--including the CIA--to divert resources from other agency business to making information available to the public.  In sum, the search and review can be conducted by investigators or personnel shielded from the investigation, both of which are entirely possible.

Depending on the specifics of the investigation and the mechanisms created for compliance with section 431(c)(3), it is possible that non-investigators may have to review the operational files after the investigation is completed to insure that there were not additional responsive files were omitted.  Defendant argues that this "duplicative process would defeat one of the Act's primary purposes -- to relieve the CIA of an unnecessary burden under FOIA." *Id*. at 12 (referring to H. R. Rep. 98-726(I) 30-31, 1984 U.S.C.C.A.N. at 3742).

As set forth above, reliance on legislative history is unnecessary and inappropriate where, as here, the language of the statute is plain and unambiguous.  However, even if the Court were to consider this language, it is neither illuminating nor instructive.  Defendant fails to mention in this section of its memorandum that the Act was passed with three purposes in mind, one of which was "to improve the ability of the Central Intelligence Agency to respond to Freedom of Information Act requests from the public in a timely and efficient manner, while preserving

undiminished the amount of meaningful information releasable to the public under the Freedom of Information Act." H.R.Rep. 98-726(I) at 4, 1984 U.S.C.C.A.N. at 3742. This provision makes clear that while the Act sought to relieve the CIA of any unnecessary burden, it also sought to bolster the right of the public to have its FOIA requests processed and appropriate information released in a timely fashion. Indeed, as noted above, the legislative history instructs that those files covered under section 431(c)(3), are to be treated as though the operational files exemption does not exist. In sum, the Act was passed with a number of purposes in mind, delicately balancing the right of the public to obtain releasable information, and the need of the CIA to avoid any unnecessary burdens. Congress struck a balance between these two interests, but did not determine that the CIA was exempt altogether or that operational files were entirely exempt from FOIA.

Defendant next argues that because the operational files exemption is limited to the specific subject matter of the investigation, "it makes no sense to require the CIA to search its operational files before investigations triggering the exception are completed." *Defendant's Memorandum of Law*, at 15. Defendant argues that it is impossible to know the scope of the investigation until after it has been completed and that therefore, the search must be conducted when it is complete. *See id*. This argument is likewise without merit and similarly defies common sense.

It is not impossible to determine the scope of the investigation while it is ongoing. In this case, for example, the OIG is conducting an investigation into allegations of impropriety on the part of CIA personnel in their conduct of intelligence activities in Iraq. The scope of the investigation is clearly known to the OIG and at least some--if not all--of the files implicated thereby can be identified. The CIA's argument that the investigation will expand to include

other ancillary investigations is conclusory at best, and not supported on the particular facts presented herein.

Defendant supports its argument that the scope of the investigation cannot be ascertained while it is ongoing by referring to legislative history which indicates that "information in operational files that is related to the subject matter of the investigation but is not specifically related to the alleged illegal or improper acts under investigation remains exempt from FOIA." *Id*. at 14. The legislative history at issue does not indicate that the scope of the investigation cannot be ascertained during the course of the investigation; in fact, the legislative history does not address this issue at all. Rather, the legislative history upon which Defendant relies is intended to clarify the scope of section 431(c)(3), by excluding operational files that are "wholly unrelated to any question of illegality or impropriety." H.R.Rep. 98-726(I) at 31, 1984 U.S.C.C.A.N. 3769. Thus, in *Sullivan v. CIA*, 992 F.2d 1249 (1st Cir. 1993), upon which the Defendant also relies, the Plaintiff filed a FOIA request for documents concerning her father, who allegedly disappeared in 1963 while engaging in a CIA-sponsored mission to drop propaganda over Cuba. *See id*. at 1251. She argued that section 431(c)(3) applied "because the Senate Select Committee (the Church Committee) inquired into certain covert operations against Cuba mounted by the CIA and other (putatively independent) anti-Castro groups." *Id*. at 1254. The Court, however, held that she was not entitled to this information because "a pivotal requirement of section 431(c)(3) is that, to be extractable, the information requested must concern the specific subject matter of the official investigation." *Id*. at 1255. In that case, it did not.

The CIA relies on this aspect of the Act to argue that it would be impossible to conduct a search prior to the completion of the investigation because the scope of the investigation may

change over time, and expand to include other allegations of impropriety.  Yet *Sullivan*, and the legislative history cited by Defendant, actually demonstrates that the CIA need not be concerned: Courts will not construe section 431(c)(3) to include material from operational files that is not in fact within the scope of an investigation.  *Sullivan*, and the limitation on the applicability of section 431(c)(3) expressed in the legislative history, in fact make it easier to determine the scope of the investigative files exception as it is narrowly drawn to include only those files relevant to the allegations of impropriety and illegality.  *Sullivan* merely demonstrates that courts carefully construe section 431(c)(3) to include only those files that truly concern the subject matter of the investigation, and the specific allegations of illegality or impropriety at issue.  The case does not, however, shed light on when a search and review must be done, or hold that the CIA need not search investigative files before the investigation is complete.

In sum, the CIA's arguments that it cannot conduct a search and review while the investigation is ongoing amount to no more than an attempt to avoid the plain language of the statute, which requires it to conduct a search and review, and to produce responsive documents or justify claimed exemptions, even when an investigation is ongoing.  There are times when it may be difficult to conduct a search, but it is the agency's responsibility to do so where the law so requires and, if necessary, to create the structures internally for complying with its obligations under FOIA.

**D.**   **Defendant Has Not Demonstrated That It Is Factually Impossible In This Case To Conduct A Review While The Investigation Is Ongoing.**

Defendant argues that it would be factually impossible to conduct a search and review while the investigation is ongoing on the grounds that: (1) "the CIA components responsible for responding to plaintiffs' request cannot conduct the search because they do not and cannot know the scope of the OIG's investigation;" (2) "the OIG investigation would be jeopardized if the

OIG were required to conduct the search itself because any time the OIG spends on plaintiffs' FOIA requests will interfere with its ongoing investigations;" and (3) "there is no practical reason to require the OIG to identify the documents responsive to plaintiffs' FOIA requests at this time, as all of those documents are likely to be exempt from release under exemption (b)(7)(A)." *Defendant's Memorandum of Law*, at 16. Again, these arguments question the wisdom of FOIA in general, and of section 431(c)(3) of the Act in particular. Whether or not the CIA wishes otherwise, Congress did not choose to exclude these files from FOIA's search and review provisions. Nor did it in any way limit section 431(c)(3) to closed investigations. As such, the CIA's attempt to seek relief from the terms of the statute is unavailing and inappropriate in light of the language and spirit of the Act. In particular, as set forth in the preceding section, the fact that OIG would have to divert resources or that the agency would have to afford it more resources in order to comply with its FOIA obligations is neither dispositive nor persuasive. Congress has already made the determination that valuable resources will be diverted to answering and processing FOIA requests. It is not for this Court to determine otherwise.

As to its third argument, the CIA argues that Plaintiffs would not be harmed by permitting the search and review to be conducted after the close of the investigation as the OIG investigative files will "very likely be exempt from production under FOIA Exemption (b)(7)(A) while the OIG investigation is pending because disclosure of that information would likely interfere with the pending investigation." *Defendant's Memorandum of Law*, at 18. Exemption (b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5

U.S.C. § 552(b)(7)(A).  It may be that the Court will ultimately determine that this exemption will apply.  But the CIA's conclusion that these files "will likely be exempt" cannot insulate this agency, any more than it does any agency, from its obligation to search and review the relevant files, and to justify the basis for its decision to withhold files pursuant to any of the nine FOIA exemptions.  *See Vaughn v. Rosen*, 484 F.2d 820, 825-27 (D.C.Cir. 1973).

Once it does so, it may well be that the Court determines that Exemption (b)(7)(A) has been improperly invoked.  *See, e.g.*, *Dow Jones Co., Inc. v. F.E.R.C.*, 219 F.R.D. 167 (C.D.Cal. 2003); *Putnam v. U.S.Dept. of Justice*, 873 F.Supp. 705 (D.D.C. 1995); *Campbell v. Department of Heath and Human Services*, 682 F.2d 256 (D.C.Cir. 1982); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir. 1980).  Indeed, courts do not blindly affirm an agency's decision to withhold documents pursuant to this or any exemption, even where it is ultimately determined to be an appropriate basis for withholding information.  *See, e.g., Ayyad v. U.S. Dept. of Justice*, 2002 WL 654133 (S.D.N.Y. 2002) (holding that files were exempt under Exemption (b)(7)(A) on the grounds that information contained in the prisoner's file was currently being used in the ongoing investigation and prosecution of a fugitive from justice); *Donovan v. FBI*, 579 F.Supp. 1111 (S.D.N.Y. 1983) (noting that the agency justified the withholding of the requested documents on the grounds, *inter alia*, of the destruction or alteration of evidence, the identification of witnesses who possessed information relative to the investigation and the possible harm to, or intimidation of, those witnesses).  As such, Defendant CIA is obligated to conduct the requisite search and review and properly justify its claimed exemption.

Indeed, citing Exemption 7, as opposed to the limitation that Defendant would have the Court place on section 431(c)(3), is the proper means for agencies to protect the integrity of

ongoing investigations. Exemption 7 does not permit agencies to avoid conducting a search and review, but rather to avoid disclosure only where it is in fact determined that an ongoing investigation will be compromised. For this reason, the CIA must conduct a search, a review and an appropriate exemption analysis in order to properly argue that Plaintiffs are not entitled to the requested documents. The Defendant's attempt to read a blanket limitation into the Act in order to avoid conducting this search and review is contrary to the plain language of the Act and a dangerous threat to the existence and purpose of FOIA.

## CONCLUSION

For the reasons set forth above, Defendant's Application for Limited Relief should be denied and the CIA ordered to: (1) conduct a search and review of the appropriate files, (2) produce or identify all responsive documents, and (3) justify the decision to withhold any such documents, on or before January 31, 2005.

Respectfully submitted,

/S/
Lawrence S. Lustberg (LL-1644)
Megan Lewis (ML-3429)
GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4500

Jameel Jaffer (JJ-4653)
Amrit Singh (AS-9916)
Judy Rabinovitz (JR-1214)

22

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, New York 10004

Barbara Olshansky (BO-3635)
Jeffrey E. Fogel (JF-3948)
Michael Ratner (MR-3357)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004

Dated: November 29, 2004          Attorneys for Plaintiffs