UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION, CENTER FOR
CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN
RIGHTS, VETERANS FOR COMMON SENSE AND
VETERANS FOR PEACE,

                    Plaintiffs,

      v.

DEPARTMENT OF DEFENSE, AND ITS COMPONENTS
DEPARTMENT OF ARMY, DEPARTMENT OF NAVY,
DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE
AGENCY; DEPARTMENT OF HOMELAND SECURITY;
DEPARTMENT OF JUSTICE, AND ITS COMPONENTS
CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE
OF INFORMATION AND PRIVACY, OFFICE OF
INTELLIGENCE, POLICY AND REVIEW, FEDERAL
BUREAU OF INVESTIGATION; DEPARTMENT OF STATE;
AND CENTRAL INTELLIGENCE AGENCY,

                    Defendants.

---

DOCKET NO. 04-CV-4151 (AKH)

*Document Electronically Filed*

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ................................................................................................................... 4

    I.    DOD HAS IMPROPERLY WITHHELD DOCUMENTS PERTAINING
          TO THE INTERNATIONAL COMMITTEE OF THE RED CROSS ................. 4

          A.    Because DOD Has Failed to Promulgate Regulations, DOD May
              Not Withhold Any Documents on the Basis of 10 U.S.C. § 130c. ............ 5

          B.    The DOD's Search for Documents Pertaining to the ICRC Was
              Inadequate. ............................................................................................. 5

          C.    DOD Has Improperly Invoked Exemption 3 to Withhold Items 13,
              49 And 58 ................................................................................................ 6

              1.    DOD Has Failed to Demonstrate That These Documents
                    Were Produced in Cooperation With the ICRC ............................ 7

              2.    DOD Has Not Demonstrated That This Information Meets
                    the Statute's Confidentiality Conditions. ...................................... 8

          D.    With Respect to Concerns that the ICRC Has Officially Made
              Public, the ICRC Has Not Met the Statute's Confidentiality
              Prerequisites. .......................................................................................... 9

    II.    DOD HAS FAILED TO PRODUCE SEVERAL RESPONSIVE
          DOCUMENTS PERTAINING TO INTERROGATION TECHNIQUES .......... 10

    III.    THE CIA IMPROPERLY REFUSED TO CONFIRM OR DENY THE
          EXISTENCE OF ITEMS 1, 29, AND 61 AND HAS FAILED TO
          JUSTIFY THEIR WITHHOLDING ................................................................ 11

    IV.    CIA HAS FAILED TO APPROPRIATELY JUSTIFY THE
          WITHHOLDING OF CERTAIN DOCUMENTS RESPONSIVE TO
          ITEM 43 ................................................................................................... 14

    V.    DOD HAS IMPROPERLY WITHHELD PHOTOGRAPHS AND
          VIDEOTAPES DEPICTING THE ABUSE OF DETAINEES. ........................ 16

          A.    The Court Should Order the Release of All Three Categories of
              Photographs and Videotapes Plaintiffs Are Seeking. ............................. 17

          B.    The Release of the Photographs Would Not Invade the Personal
              Privacy of the Detainees. ....................................................................... 18

          C.    The Release of the Photographs Would Be Consistent With the
              Geneva Conventions. ............................................................................. 21

          D.    Even if There is a Privacy Interest at Stake, the Public Interest in
              Disclosure Outweighs the Privacy Interests of the Detainees. ................ 24

## TABLE OF CONTENTS

(continued)

E.    Even if the Court Does Not Order the DOD to Release These Photographs, DOD Should be Ordered to Justify Their Withholding on a Case by Case Basis in Each Instance Balancing the Privacy Concerns with the Public Interest Involved. .......................... 27

## TABLE OF AUTHORITIES

### CASES

*Afshar v. Department of State,*
    702 F.2d 1125 (D.C.Cir. 1983)...................................................................... 15

*Albuquerque Publishing Co. v. United States Department of Justice,*
    726 F.Supp. 851 (D.D.C. 1989)..................................................................... 18

*Alirez v. NLRB,*
    676 F2d. 423 (10th Cir. 1982) ...................................................................... 21

*Church of Scientology v. United States Department of the Army,*
    611 F.2d 738 (9th Cir. 1979) ................................................................. 15, 19

*Department of Defense v. FLRA,*
    510 U.S. 487 (1994).............................................................................. 19, 26

*Department of the Air Force v. Rose,*
    425 U.S.352 (1976)...................................................................................... 24

*Founding Church of Scientology v. NSA,*
    610 F.2d 824 (D.C.Cir. 1979)....................................................................... 15

*Goldberg v. U.S. Department of State,*
    818 F.2d 71 (D.C.Cir. 1987).......................................................................... 12

*Hunt v. CIA,*
    981 F.2d 1116 (9th Cir. 1992) ...................................................................... 13

*Lamont v. Department of Justice,*
    475 F.Supp. 761 (S.D.N.Y. 1979) ................................................................ 15

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C.Cir. 1981)....................................................................... 15

*National Archives and Records Admin v. Favish,*
    541 U.S. 157 (2004)..................................................................................... 19

*New York Times Co. v. NASA,*
    920 F.2d 1002 (D.C.Cir. 1990)..................................................................... 19

*New York Times v. NASA,*
    782 F.Supp. 628 (D.D.C. 1991 ..................................................................... 20

*New York Times v. NASA,*
    782 F.Supp. 628 (D.D.C. 1991)............................................................. 11, 19

*Perrin v. United States,*
    444 U.S. 37 (1979) ................................................................................. 7

*Ray v. Turner,*
    587 F.2d 1187 (D.C. Cir. 1978) ............................................... 12, 19, 20

*Rubin v. CIA,*
    2001 WL 1537706 (S.D.N.Y. Dec. 3, 2001) ........................................ 13

*Stillman v. CIA,*
    319 F.3d 546 (D.C.Cir. 2003) ............................................................. 12

*United States Department of Justice v. Reporters Committee for Freedom of the
    Press,*
    489 U.S. 749 (1989) ........................................................................... 24

*United States Department of State v. Washington Post Co.,*
    456 U.S. 595 (1982) ........................................................................... 19

*United States v. Dauray,*
    215 F.3d 257 (2d Cir. 2000) ................................................................. 7

*United States v. Davis,*
    968 F.2d 1280 (D.C.Cir. 1998) ........................................................... 25

*Wolf v CIA,*
    357 F.Supp.2d 112 (D.D.C. 2004) ...................................................... 13

## STATUTES

10 U.S.C. § 130c ....................................................................... passim

10 U.S.C. § 130c(b)(1) ...................................................................... 4

10 U.S.C. § 130c(b)(2) ................................................................... 4, 9

10 U.S.C. § 130c(b)(3) ...................................................................... 4

10 U.S.C. § 130c(b)(3)(A) ............................................................. 4, 9

10 U.S.C. § 130c(b)(3)(B) ............................................................. 4, 9

10 U.S.C. § 130c(b)(3)(C) ............................................................. 4, 9

10 U.S.C. § 130c(g)(1) .................................................................. 4, 5

5 U.S.C. § 552 .................................................................................. 1

5 U.S.C. § 552(b)(6) ............................................................. 16, 18, 24

5 U.S.C. § 552(b)(7)(C) ............................................................................ 16, 18, 24

## OTHER AUTHORITIES

**A.P.V. Rogers, LAW OF THE BATTLEFIELD 53 (2d ed.)** ............................................. 23

**COMMENTARY** ON THE GENEVA CONVENTION (IV) RELATIVE TO THE
PROTECTION OF CIVILIAN PERSONS IN TIME OF WAR 240 (Jean Pictet gen. ed.
1958) ................................................................................................... 23

H.R.Rep.No. 1497 (89th Congress), 1966 USCCAN 2428 ...................................... 21

**ICRC** COMMENTARY ON THE GENEVA CONVENTION (III) RELATIVE TO THE
TREATMENT OF PRISONERS OF WAR 140 (Jean de Preux ed., 1960) ........................ 23

## TABLE OF EXHIBITS

1. Letter from Sean H. Lane to Larry S. Lustberg, dated December 14, 2004.

2. Excerpt from the Fay Report referring to a September 10, 2003 memorandum.

3. Douglas Jehl and Eric Schmitt, *The Reach of the War: The Interrogators* NEW YORK TIMES, dated May 21, 2004, at A1 (referring to September 10, 2003 and September 28, 2003 memoranda).

4. Letter from Sean Lane to United States District Court Judge Alvin K. Hellerstein, dated April 5, 2005.

5. Sample of Army CID documents that refer to photographs as part of the CID file.

6. Excerpt from A.P.V. Rogers, LAW ON THE BATTLEFIELD, Second Edition, Manchester University Press 2004.

## **INTRODUCTION**

On January 13, 2005, Plaintiffs filed a motion for partial summary judgment, and accompanying memorandum of law [hereinafter "Plaintiffs' Memorandum of Law"], seeking the release of selected documents under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). On March 30, 2005, Defendants Department of Defense ("DOD") and Central Intelligence Agency ("CIA") submitted a cross-motion for partial summary judgment as to these same documents, along with a memorandum of law in opposition to Plaintiffs' motion for partial summary judgment and in support of Defendants' cross-motion for partial summary judgment [hereinafter "Defendants' Memorandum of Law"]. Plaintiffs here submit this reply memorandum of law in support of their motion for partial summary judgment and in opposition to Defendants' cross-motion for partial summary judgment.

Plaintiffs seek the release of documents under FOIA pertaining to the treatment of individuals apprehended after September 11, 2001, and held in United States custody in detention facilities outside the United States. In particular, Plaintiffs' partial summary judgment motion challenges the Government's decision to withhold five categories of documents pursuant to four of FOIA's nine exemptions. The Government bears the burden of proving that the exemptions, which are narrowly construed, apply to the documents that have been withheld. Defendants' opposition and cross-motion fails to adequately justify the invocation of these exemptions or to meet their burden of proving that the exemptions at issue apply to the documents that Plaintiffs seek. As such, the Court should order the Government to release the following five categories of documents:

**First**, Plaintiffs seek documents pertaining to the activities of the International Committee of the Red Cross ("ICRC"). Defendant DOD has withheld these documents on the basis of 10 U.S.C. § 130c, which permits national security officials to withhold sensitive, confidential information from foreign governments or international organizations where *three* prerequisites are met. DOD has failed to demonstrate that the information contained in these documents meets the statute's prerequisites. The statute provides that regulations must be

prescribed "in order to carry out this section," and that the "regulations shall include criteria for making the determinations required under subsection (b)." 10 U.S.C. § 130c(g)(1). Because no regulations have been promulgated that include criteria for making the determinations required by the statute, DOD may not withhold any documents on the basis of 10 U.S.C. § 130c. Moreover, the statute requires that the information has been "provided by" or "produced in cooperation with" the ICRC. Here, however, there are numerous memoranda and letters documenting or pertaining to the DOD's meetings and conversations with members of the ICRC that contain information not "provided by" or "produced in cooperation with" the ICRC. The statute also requires that the information meet certain exacting confidentiality requirements. DOD has not demonstrated that much of the information in question meets these requirements.

**Second**, Plaintiffs seek the release of six memoranda from the DOD setting forth permissible interrogation techniques. DOD has released two documents in response to these six requests and has denied that additional documents exist. Yet, it is clear from documents released by DOD that additional documents responsive to these six requests do, in fact, exist. Plaintiffs therefore move the Court to require DOD to conduct a diligent search in order to locate these additional responsive documents, and to release them to Plaintiffs.

**Third**, Plaintiffs seek the release of three documents from Defendant CIA as to which the CIA has invoked a Glomar response, refusing to confirm or deny the existence of the documents. The Glomar doctrine is available when confirming or denying the existence of documents would result in the unauthorized disclosure of intelligence sources and methods. Here, however, the CIA has not demonstrated that these documents should be withheld; it certainly has not demonstrated that simply confirming or denying their existence would reveal intelligence sources or methods. Each of these memoranda contain statements of policy with respect to the permissibility of various interrogation techniques and detention practices. The CIA does not indicate that these documents provide information about the actual use of these techniques, about the targets of these techniques or about the existence of particular detention facilities. Accordingly, these documents should be released.

**Fourth**, Plaintiffs seek the release of documents relating to the CIA's request that the DOD hold an Iraqi prisoner off the prison rolls at a DOD detention center, and DOD's order implementing that request. Defendants have failed to identify documents containing either the request or the order implementing the request. Defendants have also failed to justify the invocation of Exemptions 1 and 3 as a basis for the withholding of the 72 documents that have been identified. The justifications submitted are insufficiently specific to meet the Government's burden of proof on this matter and do not demonstrate that there are no reasonably segregable portions of the documents that could be released.

**Fifth**, Plaintiffs seek the release of photographs and videotapes depicting the abuse of detainees in Iraq and Guantánamo. Defendant DOD has refused to provide these photographs, purportedly on the grounds that the Department is protecting the privacy of the detainees and that there is no public interest in their disclosure. Because these photographs and videotapes can be altered to delete any identifying details or information, their release would not constitute an invasion of personal privacy. Nor do the Geneva Conventions dictate a contrary result. Moreover, there is intense public interest in the release of these photographs. The release of the photographs would serve the core principles of FOIA by shedding light on the conduct of DOD in the performance of its statutory duties.

In sum, because Defendants have failed to satisfy their burden to justify the withholding of documents responsive to Requests 1, 4, 8, 10, 11, 13, 29, 37, 39, 40, 41, 42, 43, 49, 58, 61, and 69, the Court should order Defendants to produce all responsive documents forthwith.

## STATEMENT OF FACTS

Plaintiffs incorporate herein the Statement of Facts from their Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment.

## ARGUMENT

## I.   DOD HAS IMPROPERLY WITHHELD DOCUMENTS PERTAINING TO THE INTERNATIONAL COMMITTEE OF THE RED CROSS.

Plaintiffs have requested documents pertaining to the ICRC and the ICRC's monitoring of detainees in the custody of the United States. *See* Plaintiffs' Memorandum of Law, Exhibit A (Items 8, 13, 49, and 58). Item 8 seeks all reports from the ICRC concerning the treatment and detention of Detainees; Item 13 seeks records that contain a "[r]esponse to concerns raised by the ICRC regarding the treatment of Detainees;" Item 49 seeks a "[l]etter from military lawyers over the signature of Brig. Gen. Janis Karpinski to the International Committee for the Red Cross (ICRC) responding to its concerns about conditions at Abu Ghraib;" and Item 58 seeks all documents reflecting discussions between the ICRC and military officers at Guantánamo Bay.[1]

Defendant DOD has withheld these documents, either in full or substantially in full, on the basis of 10 U.S.C. § 130c, which permits national security officials to withhold sensitive information received from foreign governments or international organizations where three conditions are met. *See* 10 U.S.C. § 130c(b)(1)-(3). First, the information must have been "provided by, made available by, or produced in cooperation with" the ICRC. *See* 10 U.S.C. § 130c(b)(1). Second, the ICRC must make a written representation that it is withholding the information from public disclosure. *See* 10 U.S.C. § 130c(b)(2). Third, the ICRC must either have requested in writing that the information be withheld or have provided the information to the United States on condition that it not be released to the public, or DOD regulations must specify that release of the information would have an adverse effect on the ability of the United States to obtain the same or similar information in the future. *See* 10 U.S.C. § 130c(b)(3)(A)-(C). The statute also requires that regulations be promulgated "in order to carry out this section," and that the "regulations shall include criteria for making the determinations required under subsection (b)." 10 U.S.C. § 130c(g)(1).

---

[1] Defendants have asserted that Items 50 and 51 do not exist or are no longer in the possession of the DOD. Plaintiffs withdraw these requests without prejudice and reserve the right to renew them should Plaintiffs obtain further information that these documents do indeed exist.

The DOD has not promulgated regulations that include criteria for making the determinations required by the statute. Accordingly, DOD may not withhold any documents under Section 130c. *See infra* Section I.A. Further, even if the Court determines that the adoption of such regulations is not a necessary predicate for the implementation of the statute, DOD has still not met its burden of proof with respect to the documents Plaintiffs are seeking. First, DOD has failed to index many of the responsive documents, much less to properly justify their exemption. *See infra* Section I.B. Second, although Defendant DOD justifies the exemption of certain documents on the grounds that they were produced "in cooperation with" the ICRC, DOD has failed to prove that the requested documents were in fact produced in cooperation with the ICRC or that these documents meet the statute's other prerequisites. *See infra* Section I.C. Third, DOD failed to justify the withholding of those portions of documents provided by the ICRC or produced in cooperation that relate to information that the ICRC officially made public in October 2003. *See infra* Section I.D.

## A.   Because DOD Has Failed to Promulgate Regulations, DOD May Not Withhold Any Documents on the Basis of 10 U.S.C. § 130c.

Because no regulations have been promulgated that include criteria for making the determinations required by the statute, DOD may not withhold any documents on the basis of 10 U.S.C. § 130c. The statute provides that regulations must be prescribed "in order to carry out this section," and that the "regulations shall include criteria for making the determinations required under subsection (b)." 10 U.S.C. § 130c(g)(1). In accordance with the plain language of the statute, because of the failure to prescribe such regulations, DOD may not withhold information on the basis of this statute.

## B.   The DOD's Search for Documents Pertaining to the ICRC Was Inadequate.

The DOD's search for documents pertaining to the ICRC and to the DOD's responses to the ICRC was plainly inadequate. The Government represented to Plaintiffs in a letter dated December 14, 2004, that *all* documents pertaining the ICRC had already been processed. *See*

Exhibit 1 (Letter from S. Lane to L. Lustberg, dated December 14, 2004). The Second Declaration of Stewart Aly [hereinafter "Second Aly Declaration"] purports to index and describe all of the responsive documents. *See* Second Aly Decl., ¶¶ 5,11. Yet, the Second Aly Declaration is clearly incomplete. "Responses" to concerns raised by the ICRC would certainly have been memorialized and discussed in other internal memoranda and electronic communications that do not appear on the indices appended to the Second Aly Declaration. All such documents should have been addressed and included in the present motion. Because they present the same issues as the documents the DOD has already addressed, the Court should proceed to order their release in connection with this motion.

### C.    DOD Has Improperly Invoked Exemption 3 to Withhold Items 13, 49 And 58.

DOD has improperly withheld documents and information responsive to Items 13, 49, and 58. Defendant DOD asserts that "any response by DOD to ICRC 'concerns' regarding the treatment of detainees was produced 'in cooperation with' the ICRC." *See* Defendants' Memorandum of Law, at 18. DOD argues that "[a] critical element of DOD's cooperation with the ICRC is the dialogue it has with the ICRC regarding detainees." *Id*. at 18 (*citing* Declaration of Charles A. Allen [hereinafter "the Allen Declaration"], Exhibit A (ICRC report stating that "detention problems are best solved through constructive dialogue"); Declaration of Diane E. Beaver [hereinafter "the Beaver Declaration"], ¶ 3 (noting that DOD minutes of ICRC meetings shared with ICRC to ensure accuracy)). Defendant also asserts, in a conclusory fashion and without further elaboration, that "the withheld documents were produced in cooperation with the ICRC because they were responses to ICRC concerns." *See* Defendants' Memorandum of Law, at 19; Second Aly Decl., ¶ 19. None of the foregoing arguments in any way demonstrate that these documents, with the exception of the minutes of meetings between the ICRC and DOD that were approved by both parties, were "produced *in cooperation with*" the ICRC. Moreover, even if the Court determines that the information in question was produced in cooperation with the

ICRC, DOD has failed to demonstrate with respect to this information that the statute's confidentiality requirements have been met.

**1.    DOD Has Failed to Demonstrate That These Documents Were Produced in Cooperation With the ICRC.**

That the documents contain responses to ICRC concerns or reflect discussions with the ICRC does not, of course, indicate that they were "produced in cooperation with" the ICRC. To understand this term, the Court must look to its plain meaning. *See United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000) (consulting dictionary definition to determine the ordinary, common-sense meaning of the words in question); *Perrin v. United States*, 444 U.S. 37, 42 (1979). Webster's Third New International Dictionary defines the term "cooperation" as "the act of cooperating: a condition marked by cooperating: joint operation: common effort or labor." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 501. Webster's defines "cooperate" as "to act or work with another or others to a common end: operate jointly." *See id.*

There is no indication from the evidence presented by DOD that the agency was working with the ICRC "to a common end" or operating jointly in the production of the information or documents Plaintiffs are seeking. DOD presented only two pieces of evidence supporting its sweeping argument that the information Plaintiffs seek was produced in cooperation with the ICRC: (1) the statement from the ICRC's website that the ICRC tries to resolve issues related to detainees and prisoners of war through "constructive dialogue;" and (2) the statement that the DOD sent the minutes of meetings with the ICRC to the ICRC to ensure their accuracy. Neither of these items are particularly indicative of cooperation; moreover, the second speaks only to a small subset of the documents Plaintiffs are seeking. Even if the ICRC and the DOD had engaged in a "constructive dialogue" -- and the DOD presents no evidence indicating whether that was the case -- a dialogue implies a back and forth conversation or negotiation, but does not indicate a joint effort or cooperation in the production of the information. Indeed there is extensive evidence that the dialogue between the ICRC and the DOD has consisted of disagreement, criticism, and negotiation regarding the condition of the detainees and that each

7

party produces documents containing information that was not produced in cooperation with the other, but to the contrary was produced entirely independently from the other entity. *See* Plaintiffs' Memorandum of Law, Exhibit I.

The fact that minutes were sent to the ICRC certainly does not indicate whether *other* documents were produced in cooperation with the ICRC. Many of documents that describe meetings with the ICRC were internal DOD documents that would presumably never have been shown to the ICRC. *See* Second Aly Decl., Tab B (Items 11, 12, 18); Tab C (Items 2, 4, 5). Moreover, as set forth in Section I.B. *supra*, there must have been other e-mails and other internal documents created by the DOD that the ICRC never saw. Such documents may have contained discussions of DOD's relations with the ICRC, of detainees and their conditions, and of the Geneva Conventions in relation to the ICRC.

The fact that the requested documents were "responses" to ICRC concerns does not mean that they were produced in cooperation with the ICRC. For example, in the document requested in Item 49, DOD contends that isolating some inmates was a military necessity and that prisoners held as security risks can legally be treated differently from prisoners of war or ordinary criminals. *See* Plaintiffs' Memorandum of Law, at 11. This document was plainly not produced *in cooperation with* the ICRC, but rather responded to the ICRC and presented the DOD's position based upon its own legal analysis. There is extensive information contained in the responses over and above the information provided by the ICRC, including comments regarding the DOD's positions on various issues, descriptions of various conditions of confinement for the detainees, and statements of policy. *See* Plaintiffs' Memorandum of Law, at 9-11.

## 2. DOD Has Not Demonstrated That This Information Meets the Statute's Confidentiality Conditions.

Moreover, even if these documents were produced in cooperation with the ICRC, DOD has failed to demonstrate that this information complies with any of the options set forth in the statute's third prerequisite. First, the ICRC has not requested in writing that such information be

withheld. *See* 10 U.S.C. § 130c(b)(3)(A). Rather, the ICRC's written request states only that "all records of communications *from the ICRC or its representatives* regarding detainees at Guantanamo and Iraq have been provided to the DOD on condition that the documents not be released to the public." Second Aly Decl., ¶ 13 (quoting Exhibit D, Letter from ICRC Deputy Head of Delegation for United States and Canada to Stewart Aly, dated March 9, 2005) (emphasis added). This request pertains only to those records that have been provided to the DOD, but does not address documents produced by the DOD in response to the ICRC. Second, the DOD has not demonstrated that the information was provided on the condition that it not be released to the public. *See* 10 U.S.C. § 130c(b)(3)(B). Since the information at issue was not provided to the DOD at all, but rather produced by the DOD, this subsection is inapplicable. Third, the DOD regulations do not specify that release of the information would have an adverse effect on the ability of the United States to obtain similar information in the future. *See* 10 U.S.C. § 130c(b)(3)(C). In order to demonstrate compliance with this provision, DOD relies solely on a directive. Obviously, this directive is not a regulation. Moreover, the directive pertains only to ICRC communications provided to DOD. *See* Allen Decl., Exhibit B. For these reasons, all information not provided by the ICRC to DOD, even if produced in cooperation with DOD, is not covered by Section 130c.

### D. With Respect to Concerns That the ICRC Has Officially Made Public, the ICRC Has Not Met the Statute's Confidentiality Prerequisites.

Title 10 U.S.C. § 130c requires that the ICRC represent that it is withholding the information from public disclosure. *See* 10 U.S.C. § 130c(b)(2). With respect to the information publicly released by the ICRC, DOD cannot meet this prerequisite. As such, the information that ICRC officially disclosed is not protected by Section 130c and should be released.

In October 2003, a senior Red Cross official publicly challenged the United States' policy of holding detainees in conditions of indefinite detention. *See* Plaintiffs' Memorandum of Law, Exhibit I (collecting news articles describing the ICRC's public statements on the legal status of detainees). This senior Red Cross official stated publicly, in regard to conditions at Guantánamo

Bay, that "[t]he open-endedness of the situation and its impact on the mental health of the population has become a major problem." *See id.* Given that the ICRC raised this matter publicly, it is not tenable for DOD to argue that the ICRC is withholding these matters from public disclosure. Further, the ICRC has acknowledged elsewhere that it has disclosed certain information to the public. Indeed, in one of the very sources upon which DOD relies, the ICRC acknowledges that it "felt compelled to make some of its concerns public" and to remove these concerns from the ICRC's usual confidential dialogue. *See* Second Aly Decl., ¶ 14. For this reason, the ICRC documents and responses to the ICRC documents that contain information about the ICRC's concerns with the indefinite detention of Guantánamo detainees and its relationship to their mental health -- information that was subsequently made public in or about October 2003 -- must be released.

In sum, because the DOD has not promulgated regulations necessary to implement this section, all documents withheld pursuant to 10 U.S.C. § 130c should be released. In any event, even if the Court determines that such regulations are not a necessary predicate to the DOD's reliance on this statute, most of the requested documents should nonetheless be released because they contain information not provided by or produced in cooperation with the ICRC. These documents should also be released for the further reason that the statute's confidentiality provisions have not been met. Finally, all documents concerning the ICRC's public disclosures must be released, even if the information in question was provided by or produced in cooperation with the ICRC.

## II.  DOD HAS FAILED TO PRODUCE SEVERAL RESPONSIVE DOCUMENTS PERTAINING TO INTERROGATION TECHNIQUES.

Defendant DOD states that Plaintiffs' six requests seeking documents describing DOD interrogation techniques, Items 4, 37, and 39-42, actually address only two documents. *See* Defendants' Memorandum of Law, at 8. DOD notes that Requests 4, 37, and 40 all concern policies put into effect by Lieutenant General Ricardo S. Sanchez, and that Requests 39, 40 and 42 all address memoranda from the Combined Joint Task Force. *See* Second Aly Decl., ¶ 23. In

10

response to these six requests, Defendant DOD released two documents to Plaintiff, a memorandum from Sanchez dated September 14, 2003 and a memorandum from the Combined Joint Task Force dated October 12, 2003. *See* Second Aly Decl., Exhibits E, F. DOD asserts that it was not able to locate other responsive documents. However, it is clear from several sources, including the Investigation of Intelligence Activities At Abu Ghraib by George R. Fay [hereinafter the "Fay Report"], that there are more than two documents that are responsive to these six requests. *See* Exhibit 2 (Excerpt from the Fay Report referring to a September 10, 2003 memorandum); *see also* Exhibit 3 (Douglas Jehl and Eric Schmitt, The Reach of the War: The Interrogators, *The New York Times*, May 21, 2004, at A1 (referring to September 10, 2003, and September 28, 2003 memoranda). This evidence demonstrates that, at the very least, there are two other memoranda, dated September 10, 2003 and September 28, 2003, that should have been produced. The Court should order DOD to produce these documents forthwith.

### III.  THE CIA IMPROPERLY REFUSED TO CONFIRM OR DENY THE EXISTENCE OF ITEMS 1, 29, AND 61 AND HAS FAILED TO JUSTIFY THEIR WITHHOLDING.

Plaintiffs seeks Items 1, 29, and 61 from the August 16, 2004 List. Items 1 and 29 are legal memoranda authored by the Department of Justice regarding the legality of employing various types of interrogation techniques. Item 61 seeks an order from President Bush authorizing the CIA to set up detention facilities outside the United States. The CIA has invoked the "Glomar" response, arguing that the "[t]he very fact of whether the CIA possesses records responsive to Requests 1, 29 and 61 is exempt from disclosure under Exemption 1 because it is classified for reasons of national security pursuant to Executive Order and under Exemption 3 because it could reveal intelligence activities and methods that the DCI has the statutory responsibility to protect." Defendants' Memorandum of Law, at 22. The CIA has not appropriately justified the decision to withhold these documents from public disclosure. The CIA has certainly not justified the invocation of Glomar.

As set forth in Plaintiffs' initial Memorandum of Law, while agencies are entitled to substantial deference, they earn this deference only when their affidavits and supporting documents enable the Court to undertake a *de novo* review.  *See* Plaintiffs' Memorandum of Law, at 19-23.  The agency's exemption determinations are only afforded substantial weight when accompanied by reasonably detailed explanations of why material was withheld.  In deciding this issue, the Court must not "relinquish[] its independent responsibility."  *Goldberg v. U.S. Department of State*, 818 F.2d 71, 77 (D.C.Cir. 1987); *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) (noting that FOIA drafters "stressed the need for objective, independent judicial determination, and insisted that judges could be trusted to approach the national security determinations with common sense, and without jeopardy to national security").

Defendants' Memorandum suggests otherwise and ignores the plain language of FOIA.  CIA relies on *Stillman v. CIA*, 319 F.3d 546 (D.C.Cir. 2003), noting that in *Stillman* the Court of Appeals criticized the district court for failing to "evaluate the pleadings and affidavits to be submitted by the Government in defense of classification decision," thereby erroneously withholding deference ordinarily owed to national security officials.  *See id*. at 548.  In fact, the error in Stillman, *which was not a FOIA case*, was that the district court had determined that the Plaintiff had a First Amendment right to the material he was seeking but did not first determine whether the material was "properly classified."  *Id*. at 548.  *Stillman* is entirely inapposite in the present context and does not address in any way the level of deference owed to national security officials.

The CIA has neither demonstrated that these documents should be withheld nor that simply confirming or denying their existence would reveal intelligence sources or methods.  The Glomar doctrine is available when confirming or denying the existence of documents would result in the unauthorized disclosure of intelligence sources and methods.  Simply confirming or denying the existence of these documents, and indeed their release, would merely serve to demonstrate that the CIA has in its possession a memorandum from the DOJ interpreting the Convention Against Torture and specifying legally permissible interrogation techniques, as well

12

as a memorandum from the President concerning the authority to establish detention facilities abroad. Nowhere does the CIA indicate that these documents provide information about the actual use of these techniques, about the targets of these techniques or about the existence of particular detention facilities.

In each of the cases on which the CIA relies in support of its invocation of the Glomar response in this case, the FOIA request specifically sought information about a particular individual or field of operation. In *Rubin v. CIA*, 2001 WL 1537706 (S.D.N.Y. Dec. 3, 2001), for example, plaintiff filed a FOIA request with the CIA seeking records regarding two literary figures, Stephen Spender and T.S. Eliot. *See id.* at *1. The CIA refused to confirm or deny the existence of any such records on the grounds that "confirming or denying the existence of the requested information would effectively disclose the very fact that must be protected in this case--whether the CIA has a current or past covert interest in a specific individual." *Id.* at *3-*4. *See also Wolf v CIA*, 357 F.Supp.2d 112, 116 (D.D.C. 2004) ("*Because the FOIA request concerned whether the CIA has gathered intelligence on a particular foreign national*, acknowledging the existence of such records could reveal intelligence sources and methods and information harmful to foreign relations.") (emphasis added). Similarly in *Hunt v. CIA*, 981 F.2d 1116 (9th Cir. 1992), the issue was whether the CIA could rely on the Glomar doctrine to refuse to confirm or deny the existence of documents relating to a particular foreign national. *See id.* at 1120.

In this case, to the contrary, the relation between the documents sought and the existence or lack thereof of particular operations or even of the CIA's interest in particular operations is vague and speculative. The CIA has not demonstrated that disclosure of these documents would reveal intelligence sources and methods. The statement that "[t]hese documents would exist if CIA had engaged in clandestine intelligence activities or had an interest in pursuing clandestine intelligence activities upon which DOJ allegedly advised or which were allegedly included in the 'Presidential Directive,'" does not suffice to meet the CIA's burden of proving that these documents would reveal intelligence sources and methods. A vague concern about interest, without further specifics as to the particular intelligence sources at issue, does not suffice under

13

either Exemption 1 or 3. Based on the information publicly available, these various memoranda are legal opinions or statements of policy about permissible techniques and practices. For these reasons, the Court should order their release.

## IV.    CIA HAS FAILED TO APPROPRIATELY JUSTIFY THE WITHHOLDING OF CERTAIN DOCUMENTS RESPONSIVE TO ITEM 43.

Plaintiffs seek the release of documents relating to CIA Director George Tenet's request that Defense Secretary Donald Rumsfeld hold an Iraqi prisoner at a detention center but not be listed on the prison rolls, as well as Secretary Rumsfeld's order implementing that request. Plaintiffs' Memorandum of Law, Exhibit A (Item 43). Not only have Defendants failed to identify documents containing either the request or the order implementing the request, but they have also failed to justify the exemption of the 72 documents identified with respect to Exemptions 1 and 3.[2] The justifications submitted are insufficiently specific to meet the Government's burden of proof on this matter and to demonstrate that there is no reasonably segregable information that could be released.

First and foremost, Plaintiffs seek a response from Defendants, including the DOD, regarding the existence of documents describing or embodying the request by Tenet and the order implementing that request by Rumsfeld. DOD has never responded to this request, and the CIA's index does not list these documents. The Court should order Defendants to search for and produce these documents forthwith.

Moreover, these documents should be released, given that this information has already been officially revealed by Defense Secretary Rumsfeld. DOD acknowledged that the prisoner should have been but was not registered with the ICRC. *See* Plaintiffs' Memorandum of Law, Exhibit Q (Shanker et al., *Rumsfeld Admits He Told Jailers to Keep Detainee in Iraq Out of Red Cross View*, N.Y. TIMES, June 18, 2004, at A10). Publicly available information cannot be

---

[2] For the purposes of this motion, and without prejudice to Plaintiffs renewing this challenge in the future, Plaintiffs do not challenge the CIA's decision to withhold portions of these documents pursuant to other exemptions.

withheld under exemptions 1 and 3. *See, e.g., Afshar v. Department of State,* 702 F.2d 1125, 1133 (D.C.Cir. 1983) (official Government disclosures can preclude the invocation of Exemptions 1 and 3); *Founding Church of Scientology v. NSA,* 610 F.2d 824, 831-32 (D.C.Cir. 1979) (suppression of "well publicized" information would frustrate policies of Act without advancing countervailing interests); *Lamont v. Department of Justice,* 475 F.Supp. 761, 772 (S.D.N.Y. 1979) (Weinfeld, J.) (the "sunshine" purposes of FOIA would be thwarted if information remained classified after it had been "specifically revealed to the public"); *cf. Military Audit Project v. Casey,* 656 F.2d 724, 741-45 (D.C.Cir. 1981) (concluding that precise information withheld had not been previously revealed). Plaintiffs are entitled to the information that was officially disclosed by the DOD.

The CIA's justifications for withholding the requested documents pursuant to Exemptions 1 and 3 are insufficiently detailed. The declaration submitted by the CIA does not demonstrate that there is no reasonably segregable information. Plaintiffs acknowledge that the CIA has properly withheld the name of the detainee, as well as "cryptonyms," and the location of CIA stations. But the CIA provides no justification for withholding the rest of the information, except to assert without elaboration or explanation that it would reveal intelligence sources and methods. As set forth above, there is insufficient information in this declaration for the Court to conduct a de novo review. *See supra* Section IV.

As such, the Court should order the release of these documents or at the very least undertake an *in camera* review. Where the underlying documents contain evidence of illegality or unlawful activity, it is appropriate for the Court to view the agency's decision with a heightened scrutiny and to conduct an *in camera* review. *See* Plaintiffs' Memorandum of Law, at 27-29. DOD acknowledged that the prisoner should have been but was not registered with the ICRC, thereby acknowledging the underlying illegality. *See* Plaintiffs' Memorandum of Law, Exhibit Q (Shanker et al., *Rumsfeld Admits He Told Jailers to Keep Detainee in Iraq Out of Red Cross View,* N.Y. TIMES, June 18, 2004, at A10). At a minimum, the Court must undertake an *in camera* review to ascertain whether or not these documents are being improperly withheld.