V. **DOD HAS IMPROPERLY WITHHELD PHOTOGRAPHS AND VIDEOTAPES DEPICTING THE ABUSE OF DETAINEES.**

DOD has withheld photographs depicting the abuse of detainees on the basis of Exemptions 6 and 7(C), which provide that documents or information may be withheld when disclosure would cause an unwarranted invasion of personal privacy. *See* 5 U.S.C. §§ 552(b)(6) & (b)(7)(C).[3] In determining whether a document or information should be withheld under Exemptions 6 and 7(C), the Court must consider whether the public interest in disclosure outweighs the privacy interest involved. In the face of an overwhelming public interest in the release of these photographs, Defendant DOD has refused to release them, purportedly on the grounds of protecting the personal privacy of the detainees depicted therein.

Plaintiffs share the DOD's concern for the privacy and dignity of the detainees who suffered torture and abuse at the hands of DOD and its employees. For this reason, the photographs and videotapes can and should be altered to delete any identifying information and obscure any identifying details. The redaction of identifying details would safeguard the privacy and dignity of the detainees while disclosing information pertaining to a matter of extraordinary and widespread public concern.

DOD has not justified the continued withholding of these photographs. First, although Plaintiffs challenged the withholding of three categories of responsive photographs and videotapes (Items 10, 11, and 69), DOD addresses only the Darby photographs in this motion (Item 69). As set forth below, the Court should order the release of all three categories. *See infra* Section III.A. Second, the release of all three categories of photographs and videotapes, if properly altered to obscure any identifying details, could not reasonably be expected to cause an unwarranted invasion of personal privacy.[4] *See infra* Section III.B. Third, Defendant argues that

---

[3] Exemption 6 shields information contained in "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) provides that a record "compiled for law enforcement purposes" may be withheld if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[4] Although these two exemptions are analyzed in tandem, the standard in Exemption 7(C) -- "could reasonably be expected to constitute an unwarranted invasion of personal privacy" -- is a lower standard than that in Exemption 6, which requires the agency to consider whether disclosure "would constitute a clearly unwarranted invasion of personal privacy." Because the documents analyzed herein, and many of the others, are now part of criminal

release of the photographs would violate the public curiosity provisions of the Geneva Conventions. However, the Geneva Conventions would plainly permit the release of the photographs and videotapes if all identifying details were redacted. *See infra* Section III.C. Fourth, even if the release of the photographs and videotapes constituted an invasion of privacy, their public disclosure would contribute significantly to the public interest and serve the core principles of FOIA by shedding light on the agency's performance (or non-performance) of its statutory duties. *See infra* Section III.D. Finally, and in any event, DOD must justify the withholding of each picture or videotape on an individual basis. It has not done this. *See infra* Section III.E.

### A.     The Court Should Order the Release of All Three Categories of Photographs and Videotapes Plaintiffs Are Seeking.

In the August 16, 2004 List, Plaintiffs specifically sought photographs and videotapes depicting the abuse of detainees at Guantánamo (Item 10) and in Iraq (Item 11), as well as the photographs provided by Joseph Darby, a military policeman assigned to Abu Ghraib, to the Army's Criminal Investigation Division (Item 69). *See* Plaintiffs' Memorandum of Law, Exhibit A. On November 8, 2004, DOD invoked Exemptions 6 and 7 in response to these requests, and stated that "[a]s to any photographs or videotapes that exist the records have been determined to be exempt but the Department of Defense is currently reassessing the public and privacy interest associated with these records." *See* Plaintiffs' Memorandum of Law, Exhibit D. On the basis of this representation ("[T]he records have been determined to be exempt."), Plaintiffs moved for summary judgment on all three categories of photographs. However, in Defendants' Opposition and Reply, the DOD addressed only the Darby photographs, and stated that the Department has not yet processed the other categories of responsive documents for withholding or release. *See* Defendants' Memorandum of Law, at 9-10, n.3.

---

investigation files, Plaintiffs will utilize the standard set forth on Exemption 7(C). However, Plaintiffs note that as to photographs that are not compiled for law enforcement purposes, the burden on the Government is greater.

17

The Court should order the release of all three categories of photographs. Given that these requests were included in the August 16, 2004 List, and that Defendant DOD stated in their November 8, 2004 Response that the documents had been determined to be exempt, all three sets of documents should have already been processed and included in Defendants' Motion and Memorandum of Law. Indeed, Defendants have now had more than 8 months to process this request (and over 18 months since Plaintiffs filed their initial request). Moreover, the Government's letter to the Court, dated April 5, 2005, states that certain photographs contained in the Army's Criminal Investigation Division (CID) files have already been processed. *See* Exhibit 4 (Letter from S. Lane to United States District Judge Alvin K. Hellerstein, dated April 5, 2005). In addition, many of the CID documents produced to Plaintiffs reference photographs depicting the abuse of detainees. *See* Exhibit 5 (sample of Army CID documents that refer to photographs as part of the CID file). At the very least, then, those photographs that have already been processed should have been included in Defendants' Motion and Memorandum of Law. Regardless, the Court can and should order the release of all three sets of photographs given that the legal issues presented by the release of photographs responsive to Requests 10 and 11 are the same as those presented by the Darby photographs, and in each case the privacy interests at issue do not outweigh the public interest in disclosure.

### B. The Release of the Photographs Would Not Invade the Personal Privacy of the Detainees.

The release of appropriately redacted photographs would not invade the personal privacy of the detainees. If all identifying details are redacted, then the photographs cannot be linked to particular individuals. If the photographs do not identify particular individuals, their release does not constitute an invasion of personal privacy.

The first inquiry when determining whether or not documents are exempt from production under Exemptions 6 and 7(C) is whether the release of the documents would constitute an "invasion of personal privacy." 5 U.S.C. §§ 552(b)(6) & (7)(C); *Albuquerque Publishing Co. v. United States Department of Justice*, 726 F.Supp. 851, 855 (D.D.C. 1989)

18

("Our preliminary inquiry is whether a privacy interest is involved."). DOD argues that because the detainees depicted in the photographs "often appear naked or otherwise improperly clothed, posed in ways that were designed to embarrass and humiliate the individuals in the pictures," their release would implicate significant privacy interests. *See* Defendants' Memorandum of Law, at 68 (citing Second McGuire Decl., ¶ 8). However, the personal privacy of the detainees would not be invaded if the photographs were appropriately redacted to obscure personal details and any other identifying information.

As set forth in Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, the question of whether or not a privacy interest is at stake turns on whether or not the pictures in question can be linked to "particular, named individuals." *United States Department of Justice v. Ray*, 502 U.S. 164, 175-76 (1991); *see also* Defendants' Memorandum of Law, at 59 (quoting *Ray*, 502 U.S. at 175-76 (where highly personal information regarding "marital and employment status, children, living conditions and attempts to enter the United States" is "linked publicly with particular, named individuals," disclosure amounts to a "significant" invasion of privacy)). Furthermore, in each of the cases on which DOD relies in support of its position, the information at issue could have been linked to particular and identifiable individuals if released. *See, e.g., National Archives and Records Admin v. Favish*, 541 U.S. 157, 179-80 (2004) (photographs of scene of the suicide of Deputy White House Counsel Vincent Foster); *Department of Defense v. FLRA*, 510 U.S. 487, 497 (1994) (holding that disclosure of names and addresses would constitute invasion of personal privacy); *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (properly withholding passport information pertaining to two named individuals); *New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C.Cir. 1990) (voice tapes from the shuttle Challenger were not subject to disclosure because they identified crew members by the sound and inflection of their voices); *Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 747 (9th Cir. 1979) (religious affiliation of particular, named individuals not subject to release). In each case, general information or information not linked to particular individuals was subject to

release, with names and identifying details deleted. As the Supreme Court has held, release of such personal information "constitutes only a de minimis invasion of privacy when the identities [] are unknown," and becomes significant only when the personal information is linked to particular individuals. *See Ray*, 502 U.S. at 176. Therefore, redacting the photographs and videotapes so that they cannot be linked to particular, identifiable individuals would address the privacy concerns raised by the Government.

DOD erroneously argues that even if the information released did not identify particular individuals, it would still constitute an invasion of personal privacy. First, DOD argues that even with redactions, each detainee depicted would still "suffer the personal humiliation and indignity accordant with the knowledge that these photographs [of abuse or mistreatment] have been placed in the public domain." Defendants' Memorandum of Law, at 73 (*citing New York Times v. NASA*, 782 F.Supp. 628, 631-32 (D.D.C. 1991) (concluding that voice tapes from the shuttle Challenger would "cause the Challenger families pain" and inflict "a disruption [to] their peace of mind every time a portion of the tape is played within their hearing"), *on remand from* 920 F.2d 1002, 1005 (D.C.Cir. 1990)). Yet, this broad interpretation of "personal privacy" does not accord with either the case law or the legislative history. In *New York Times v. NASA*, as in the other cases cited above, the deciding factor was that the publication of the voice tapes from the Challenger would have resulted in a "disruptive assault" on the Challenger families by subjecting them "not just to a barrage of mailings and personal solicitations, but also to a panoply of telephone calls from media groups." 782 F.Supp. at 632. Thus, the invasion of privacy occurred not because the families' peace of mind of would be disturbed, but rather by virtue of the actual invasion of their homes by mailings, solicitations, and telephone calls from the media. Moreover, at common law, there is no right to privacy in the publication of images that do not reveal the identity of the subject of the photograph. *See* PROSSER AND KEETON ON TORTS 853 (5th ed.) (citing cases in which the publication of a picture of a hand, leg or foot, or an unidentifiable corpse, which did nothing to indicate whose they were, did not constitute an invasion of personal privacy). Finally, to the extent that there is any ambiguity in the term

20

"invasion of personal privacy," the legislative history is clear that the information would have to be linked to a particular identifiable individual to invade that individual's personal privacy. "Exemption [6 was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." H.R.Rep.No. 1497 (89th Congress), 1966 USCCAN 2428.

Second, DOD argues that the redactions would not protect the privacy of the detainees because "given that some of these photographs previously were unofficially placed into the public domain," the identities of certain of the detainees could be established. *See* Defendants' Memorandum of Law, at 72-73. It is not clear what DOD intends by the term "public domain." To the extent the term public domain refers to the media, most of the photographs Plaintiffs are seeking are not in the public domain. While Plaintiffs have no way of knowing how many responsive photographs exist, at the very least 1,800 slides and several videos were shown to members of Congress in May 2004. *See* Plaintiffs' Memorandum of Law, Exhibit O (John Barry, et al., "The Roots of Torture," Newsweek, at May 24, 2004). Of these 1,800 images, only a small fraction are in the public domain. Indeed, if there were other available pictures, they would have already been published by the media or others. Moreover, there have been thousands of detainees in United States custody in Iraq, Afghanistan and Guantanamo. For this reason, the issues presented herein are not akin to those presented in *Alirez v. NLRB*, 676 F2d. 423 (10th Cir. 1982), in which the deletion of names and other identifying information was inadequate to protect identities of individuals given limited number of people involved in the underlying incidents. *See id*. at 428.

C.  **The Release of the Photographs Would Be Consistent With the Geneva Conventions.**

DOD states that it has made the decision to withhold these photographs in light of the United States international treaty obligations under the Third and Fourth Geneva Conventions, which prohibit subjecting detainees to insult and public curiosity. *See* Defendants' Memorandum of Law, at 69-70. Defendant argues that the "release of these photographs of

21

abuse and mistreatment would subject the pictured detainees to insult and public curiosity, regardless of any redactions made to the photographs." *See id.* Plaintiffs do not dispute that the United States has interpreted Article 13 of the Third Geneva Convention and 27 of the Fourth Geneva Convention to prohibit the taking and publication of detainee photographs where it would subject detainees to public curiosity, including depicting detainees in degrading or humiliating circumstances. However, these provisions of the Conventions do not prohibit the publication of such images where the individual detainees cannot be identified. The public curiosity provisions of the Conventions have been construed by the United States, other states, and the ICRC to prohibit the dissemination of photographs that depict individuals that can be identified.

United States practice is consistent with this construction. Department of Defense guidelines governing both media access to Guantánamo Bay and embedded media in Iraq, prohibit the dissemination of photographs or videotapes that identify individual detainees, but allow the dissemination of images insofar as they do not identify individual detainees. *See* Horton Decl., ¶¶ 19, 20 (citing Supplemental Public Affairs Guidance (PAG) on Detainees (Exhibit B to Declaration of Edward R. Cummings); Memo from Public Affairs Officer to Potential Media Embeds re: Media Embed Informational Package ¶ 1(k)(18) (Exhibit D to Declaration of Edward R. Cummings)). These policies are consistent with DOD's interpretation of the public curiosity provisions of the Conventions which protect detainees and prisoners of war from being "'photographed in such a manner that viewers would be able to recognize'" the prisoner, but that permit depicting detainees "'with their faces covered or their identities otherwise disguised.'" Horton Decl., ¶ 18 (quoting Jennifer K. Elsea, *Congressional Research Service Report for Congress: Lawfulness of Interrogation Techniques under the Geneva Conventions* (Sept. 8, 2004), p.CRS-19).

This construction is further supported by the practice of other states. States have condemned "parading" of prisoners which seemed designed to insult or mock the prisoners, but have accepted release of pictures which seemed designed for a legitimate humanitarian purpose.

22

Importantly, the British Ministry of Defense specifically allowed British media to show Iraqi prisoners of war - but requested that identifying features be obscured or pixillated. *See* Exhibit 6 (excerpt from A.P.V. Rogers, LAW ON THE BATTLEFIELD 53 (2d ed.)).

Contrary to DOD's assertions, the United States' historical construction of the Conventions accords with the ICRC's interpretation of the Conventions. The Cummings Declaration states without citation that the ICRC takes the position that Article 13 categorically prohibits states party to the Conventions from disseminating photographs that show prisoners of war in degrading or humiliating positions. *See* Cummings Decl., ¶ 13. However, with respect to photographs of abuse in particular, the ICRC recently stated that the Conventions permit the dissemination of such photographs if faces and identifying features are obscured. *See* Sassoli Decl., ¶ 12 (citing "Pics not breaching convention," *South Africa News* (May 21, 2004) (attached thereto as Exhibit A)); Horton Decl., ¶ 19.

Moreover, the purpose of the public curiosity provisions is to protect prisoners of war from inhuman and degrading treatment, not to protect the occupying power. The ICRC Commentary to the Third Geneva Convention, upon which DOD also relies, describes Article 13 as protecting the POW's "honor." ICRC COMMENTARY ON THE GENEVA CONVENTION (III) RELATIVE TO THE TREATMENT OF PRISONERS OF WAR 140 (Jean de Preux ed., 1960). The analogous Commentary to the Fourth Geneva Convention, discussing the same protection extended to interned civilians, describes it as a protection designed to prevent exposure to "systematic scorn for human values." COMMENTARY ON THE GENEVA CONVENTION (IV) RELATIVE TO THE PROTECTION OF CIVILIAN PERSONS IN TIME OF WAR 240 (Jean Pictet gen. ed. 1958). Release of photographs of detainees, without identifying features, will not impugn their honor, or demonstrate a systematic scorn for human values, but will ensure their protection. The proscription against exposing prisoners to insult and public curiosity reflects a concern for the prisoner as an individual. Sassoli Decl., ¶ 13. Allowing the dissemination of photographs and videotapes altered to obscure the identity of the individual is consistent with this concern and serves the Conventions aims. *See id.* at 14. The provisions themselves, and the ICRC's

23

Commentary, specifically clarify that the purpose of the provision is the protection of the prisoner's interests - and not those of the detaining power.

In sum, the release of these photographs and videotapes, where the features of the individual detainees were appropriately altered, would not violate the public curiosity provisions of the Geneva Conventions.

### D. Even if There is a Privacy Interest at Stake, the Public Interest in Disclosure Outweighs the Privacy Interests of the Detainees.

Even if the Court determines that there is a privacy interest at stake, the Court must nonetheless balance the interest in privacy that would be furthered by nondisclosure against the public's interest in disclosure. The release of these photographs would serve the core purposes of FOIA and contribute significantly to public understanding of the operations or activities of the government.

The question is whether disclosure "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added); *see also* 5 U.S.C. § 552(b)(6). Pursuant to Exemptions 6 and 7(C), the Court must balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information. The fundamental focus of this inquiry must be on the relationship of the requested material to the basic purpose of FOIA, which is to expose agency action to public scrutiny. *See United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 769-770 (1989) (quoting *Department of the Air Force v. Rose*, 425 U.S.352, 372 (1976)). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *Id.* at 773. In crafting this standard, the Supreme Court reiterated that the Congressional purpose underlying FOIA was to "'contribut[e] significantly to public understanding *of the operations or activities of the government.*'" *Id.*

Defendants argue that the release of the Darby photos "would not significantly further the public interest because these photographs are not necessary to confirm or refute evidence of

24

Government misconduct nor will they contribute significantly to the public's knowledge of these events." *See* Defendants' Memorandum of Law, at 70. The Government states that allegations of abuse have been "widely publicized," and that "the United States has recognized that abuse and mistreatment took place at Abu Ghraib prison in Iraq and has released detailed accounts of these abuses." *See id.*

In fact, however, the disclosure of this information *would* serve the public interest and the core purposes of FOIA in that it would shed light on an agency's performance of its statutory duties. The government's release of reports pertaining to abuse does not establish that the release of these pictures and videotapes will not contribute significantly to the public interest. To the contrary, the photographs and videotapes could depict entirely separate events that have never been documented or described in detail. Moreover, even if the images have been described in other documents, the photographs may capture the expressions of the United States personnel, or convey the character of the abuse in a way that a written account never could. Photographs also humanize victims in a way that text cannot. Plaintiffs believe that the release of the photographs will generate public concern for the victims of abuse and torture, and in a way that text alone would not.

Moreover, the information that Plaintiffs seek need not, contrary to Defendant's argument, "confirm or refute evidence of Government misconduct." Although doing so would serve a permissible public interest -- indeed these photographs are probative of Government misconduct -- it is not necessary that the release of the documents serve this particular interest. Defendant's argument is based on *United States v. Davis*, 968 F.2d 1280 (D.C.Cir. 1998), in which the Court required an analysis of whether information sought would confirm or refute alleged government misconduct because it was not evident that the information at issue was even connected to government misconduct. *See id.* at 1282. In this case, by contrast, Government involvement and misconduct is clear: the photographs shed light on an agency's performance and contributes significantly to public understanding of the operations and activities of government.

25

DOD argues that the release of these photographs will not inform the public about the CID's performance of its duties, and hence their release would not serve FOIA's core purposes. First, FOIA's purposes are not so narrowly drawn and there is no support for the idea that if these documents shed light on the DOD's overall performance of its duties their release would not serve the public interest. Second, the release of the photographs could, in fact, shed light on the issue of whether or not the CID has adequately performed its mission to conduct investigations into abuse of detainees.

Finally, the issues presented herein are entirely distinguishable from the cases cited by the Defendant in support of their contention that "[a]s there are less intrusive means to satisfy the public's right to know on this issue, these photographs should not be released." *See* Defendants' Memorandum of Law, at 72. In *United States Department of Defense v. FLRA*, 964 F.2d 26 (D.C. Cir. 1999), for example, the Court held that there were alternative sources and means for obtaining the names and addresses that were the subject of the FOIA request. *See id.* at 33-34. In that instance, the information sought was technical, and identical to information that could be obtained in other ways. Photographic images, on the other hand, are not identical to other information, and cannot be replaced by technical, written descriptions. There are no less intrusive means to obtain this information.

In sum, the public interest in a document does not turn on the agency's decision that enough information about a certain topic has reached the public, but rather on whether the documents requested shed light on an agency's conduct. In this case, these photographs would shed light on the agency's conduct and should be released.

### E. Even if the Court Does Not Order the DOD to Release These Photographs, DOD Should be Ordered to Justify Their Withholding on a Case by Case Basis in Each Instance Balancing the Privacy Concerns with the Public Interest Involved.

Finally, at the very least, Defendant has not adequately justified its decision to withhold the requested photographs by reference to appropriately detailed Vaughn declarations and

indices. The decision to withhold these photographs on the basis of Exemptions 6 and 7(C) should be explicated on a photograph by photograph basis given the variety of privacy concerns and the intense public interest at stake. Certain pictures, for example, may not reveal the identities of the detainees, even without redaction. Finally, if necessary, the Court should undertake an *in camera* review in order to determine whether or not the release of the photographs and videotapes being withheld would invade the personal privacy of the detainees depicted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for partial summary judgment, deny Defendants' cross-motion for partial summary judgment, and order Defendants DOD and CIA to release the documents described above.

Respectfully submitted,

Dated: April 28, 2005

__s/ Lawrence S. Lustberg (LL-1644)
Lawrence S. Lustberg (LL-1644)
Megan Lewis (ML-3429)
GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
llustberg@gibbonslaw.com
phone: (973) 596-4700
facsimile: (973) 596 0545

Jameel Jaffer (JJ-4653)
Amrit Singh (AS-9916)
Judy Rabinovitz (JR-1214)
Omar C. Jadwat (OJ-5792)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, New York 10004

27

Barbara Olshansky (BO-3635)
Jeffrey E. Fogel (JF-3848)
Michael Ratner (MR-3347)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004
*Attorneys for Plaintiffs*