UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE, POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY,<br><br>Defendants. | DOCKET NO. 04-CV-4151 (AKH)<br><br>*Document Electronically Filed* |

**PLAINTIFFS' STATEMENT PURSUANT TO LOCAL RULE 56.1**

Pursuant to Rule 56.1 of the Local Civil Rules of United States District Court for the Southern District of New York, Plaintiffs hereby submit this counter-statement of facts:

1. Agreed.

2. Agreed.

3. Agreed.

4. Agreed, except that Plaintiffs identified documents on August 16, 2004, not April 16, 2004.

5. Agreed.

6. Agreed.

7. Agreed, except that Plaintiffs dispute that "[a]n index of the documents responsive to Request 13 has been provided." An index of *some* of the documents responsive to Request 13 has been provided.

8. Agreed.

9. Agreed as to the first two sentences. Plaintiffs have no knowledge as to the remainder of this statement.

10. Agreed, except that Plaintiffs have no knowledge as to whether or not "DOD has been unable to locate a document responsive to Request 51."

11. Agreed, except that Plaintiffs dispute that "[a]n index of the documents responsive to Request 58 has been provided." An index of *some* of the documents responsive to Request 58 has been provided.

12. Agreed.

13. Disputed. Finn Ruda, the ICRC Deputy Head of Delegation for United States and Canada, stated in a letter dated March 9, 2005, to Stewart Aly that "all records of communications from the ICRC or its representatives regarding detainees at Guantanamo

2

and Iraq have been provided by the ICRC to the DOD on condition that the documents not be released to the public," and that "the ICRC itself is withholding such documents from public disclosure." Aly Decl., ¶ 13. In addition, the ICRC has stamped the reports it has submitted to DOD as "strictly confidential and intended only for the authorities to whom it is presented." Aly Decl., ¶ 13.

14. Agreed.

15. Agreed.

16. Disputed. During the meetings between ICRC representatives and the Joint Task Force Guantanamo Commander the ICRC stated that "the ICRC's standard operating procedure at detention sites require that the ICRC's observations and findings be treated as strictly confidential, and that under no circumstances does the ICRC comment public on the treatment of detainees or conditions of detention." Beaver Decl., ¶ 5. "The following statement appears prominently on ICRC reports: 'This report is strictly confidential and intended only for the authorities to whom it is presented. It must not be published, in full or in part, without the consent of the International Committee of the Red Cross.'" Allen Decl., ¶ 12. *See also supra* Paragraph 13.

17. Agreed.

18. Agreed.

19. Agreed.

19.1. In October 2003, a senior ICRC official publicly challenged the United States' policy of holding detainees in conditions of indefinite detention. The official stated in regard to conditions at Guantanamo Bay, that "[t]he open-endedness of the situation and its impact on the mental health of the population has become a major problem."

20. Agreed.

20.1. The Investigation of Intelligence Activities At Abu Ghraib by George R. Fay

[hereinafter the "Fay Report"] refers to the September 10, 2003 memorandum.

20.2. An article by Douglas Jehl and Eric Schmitt, entitled "The Reach of the War: The Interrogators," which appeared in *The New York Times* on May 21, 2004, at A1, refers to September 10, 2003 and September 28, 2003 memoranda as distinct from the September 14 and October 12 directives. Exhibit 3.

21. Agreed.

21.1. Request 1 cites an article from Newsweek, dated May 24, 2004, entitled "The Roots of Torture: The Road to Abu Ghraib Began After 9/11, When Washington Wrote New Rules to Fight a New Kind of War." Plaintiffs' Memorandum of Law, Exhibit O.

22.2. The memorandum contains a legal interpretation of the Convention Against Torture, and provide that certain interrogation techniques -- including sleep deprivation, the use of phobias and the deployment of "stress factors" -- are legally permissible. *See* Plaintiffs' Memorandum of Law, Exhibit O. In addition, the memorandum contains a prohibition on "causing severe physical or mental pain." *See id.*

22. Agreed.

22.1. Request 29 cites an article from *U.S.A.Today* entitled "Memo Lists Acceptable 'Aggressive' Interrogation Methods Justice Department Gave Guidance to CIA."

22.2. The memorandum provides a legal justification for the use of an interrogation technique known as waterboarding, in which the prisoner is made to believe that he is drowning.

23. Agreed.

23.1. Request 69 cites an article from Newsweek, dated May 24, 2004, entitled "The Roots of Torture: The Road to Abu Ghraib Began After 9/11, When Washington Wrote New Rules to Fight a New Kind of War." *See* Plaintiffs' Memorandum of Law, Exhibit O.

4

24. Agreed.

   24.1. DOD acknowledged that the prisoner referred to in Item 43 should have been but was not registered with the ICRC. *See* Plaintiffs' Memorandum of Law, Exhibit Q (Shanker et al., *Rumsfeld Admits He Told Jailers to Keep Detainee in Iraq Out of Red Cross View*, N.Y. TIMES, June 18, 2004, at A10).

25. Agreed.

   25.1. The 72 documents do not include a request from Central Intelligence Director George Tenet or an order implementing that request by Defense Secretary Donald Rumsfeld.

26. Disputed. Request 10 seeks "videotapes, photographs and other records of abuse, including videotapes, photographs and other records of abuse catalogued and stored in Guantanamo Bay facilities." Pls. Br. Ex. A. Request 11 seeks "videotapes, photographs and other records depicting abuse at Iraqi facilities."

27. Disputed. DOD On November 8, 2004, DOD invoked Exemptions 6 and 7 in response to these requests, and stated that "[a]s to any photographs or videotapes that exist the records have been determined to be exempt but the Department of Defense is currently reassessing the public and privacy interest associated with these records." *See* Plaintiffs' Memorandum of Law, Exhibit D. Moreover, the Government sent a letter to the Court dated April 5, 2005, which states that certain photographs contained in the Army's Criminal Investigation Division files have already been processed. *See* Exhibit 4 (Letter from S. Lane to Judge Alvin K. Hellerstein, dated April 5, 2005). In addition, many of the Criminal Investigation Division (CID) documents produced to Plaintiffs reference photographs depicting the abuse of detainees. *See* Exhibit 5 (collecting samples of Army CID documents that refer to photographs as part of the CID file).

28. Agreed as to first sentence. Disputed as to second sentence. DOD has invoked Exemptions 6 and 7(C) as a basis for withholding the release of the photographs, *purportedly* in order to protect the privacy of the detainees pictured therein.

29. Agreed.

30. Agreed.

31. Agreed.

32. Agreed.

33. Agreed.

34. Agreed.

35. Agreed.

36. Agreed.

37. Agreed as to the first sentence. Disputed as to the second sentence. The ICRC has taken the view that Article 13 of the Third Geneva Convention requires parties to a conflict to avoid publication of images that show individually identifiable prisoners of war in degrading or humiliating positions.

38. Agreed.

39. Agreed.

40. Disputed. With redactions, the personal identity of the individual detainees would be protected from an invasion of privacy and from being subjected to public curiosity.

41. Disputed. The United States has released some accounts of the abuses that took place at Abu Ghraib in Iraq.

42. Agreed.

43. Agreed.

44. Plaintiffs have submitted two declarations demonstrating that the Geneva Conventions have been construed by the United States, other states, and the ICRC to permit the dissemination of photographs where identifying features are obscured or redacted.

Respectfully submitted,

Dated: April 28, 2005

s/ Lawrence S. Lustberg (LL-1644)
Lawrence S. Lustberg (LL-1644)
Megan Lewis (ML-3429)
GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
llustberg@gibbonslaw.com
phone: (973) 596-4700
facsimile: (973) 596 0545


Jameel Jaffer (JJ-4653)
Amrit Singh (AS-9916)
Judy Rabinovitz (JR-1214)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, New York 10004

Barbara Olshansky (BO-3635)
Jeffrey E. Fogel (JF-3848)
Michael Ratner (MR-3347)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004
*Attorneys for Plaintiffs*