UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

AMERICAN CIVIL LIBERTIES UNION,
CENTER FOR CONSTITUTIONAL RIGHTS,
PHYSICIANS FOR HUMAN RIGHTS,
VETERANS FOR COMMON SENSE, and
VETERANS FOR PEACE,

      Plaintiffs,

v.

04 Civ. 4151 (AKH)

DEPARTMENT OF DEFENSE, AND ITS
COMPONENTS DEPARTMENT OF ARMY,
DEPARTMENT OF NAVY, DEPARTMENT OF
AIR FORCE, DEFENSE INTELLIGENCE
AGENCY; DEPARTMENT OF HOMELAND
SECURITY; DEPARMENT OF JUSTICE,
AND ITS COMPONENTS CIVIL RIGHTS
DIVISION, CRIMINAL DIVISION,
OFFICE OF INFORMATION AND PRIVACY,
OFFICE OF INTELLIGENCE POLICY AND
REVIEW, FEDERAL BUREAU OF
INVESTIGATION; DEPARTMENT OF STATE;
and CENTRAL INTELLIGENCE AGENCY,

      Defendants.
_____

### SEVENTH DECLARATION OF MARILYN A. DORN
### INFORMATION REVIEW OFFICER
### CENTRAL INTELLIGENCE AGENCY

I, MARILYN A. DORN, hereby declare and say:

1. I am the Information Review Officer (IRO) for the

National Clandestine Service (NCS)[1] of the Central

Intelligence Agency (CIA). This is my seventh declaration

_____

[1] NCS is the successor to the Directorate of Operations (DO).

in this case.  This declaration incorporates by reference

my previous declarations submitted in this case dated

15 October 2004, 16 February 2005, 9 March 2005, 30 March

2005, 15 July 2005, and 5 August 2005.

2.  As stated in my declaration dated 15 October 2004,

as a senior CIA official and under a written delegation of

authority pursuant to Section 1.3(c) of Executive Order

12958, as amended,[2] I hold original classification authority

at the TOP SECRET level.  Therefore, I am authorized to

conduct classification reviews and to make original

classification and declassification decisions.

3.  I make the following statements based upon my

personal knowledge and information made available to me in

my official capacity.

4.  The purpose of this declaration is to describe, to

the greatest extent possible on the public record, the

CIA's position with respect to records from the CIA's

Office of Inspector General ("OIG") that no longer relate

to pending law enforcement proceedings and are responsive

to Plaintiffs' May 25, 2004 Freedom of Information Act

("FOIA") request.  As explained below, the 227-page Vaughn

---

[2] Executive Order 12958 was amended by Executive Order 13292, effective
March 25, 2003.  See Exec. Order No. 12958, 3 C.F.R. 333 (1995),
reprinted as amended in 50 U.S.C.A. § 435 note at 91 (Supp. 2004).  All
citations to Executive Order No. 12958 are to the Order as amended by
Executive Order No. 13292.

2

index and related 8-page Summary List of Documents in the
Vaughn index, both of which are attached to this
declaration, addresses a sample of the records at issue.

    5.  By letter dated April 15, 2005, the CIA provided
plaintiffs with an administrative response concerning
records in OIG files responsive to plaintiffs' May 25,
2004, FOIA request for records since September 11, 2001,
pertaining to "the treatment of Detainees in United States
custody; the deaths of Detainees in United States custody;
and, the rendition of Detainees and other individuals to
foreign powers known to employ torture or illegal
interrogation techniques." The CIA's April 15, 2005
response stated that all of the records in OIG files that
pertain to ongoing investigations were withheld in their
entirety pursuant to FOIA exemption (b)(7) because their
disclosure could reasonably be expected to interfere with a
pending investigation or law enforcement proceeding. The
CIA's response also stated that FOIA exemptions (b)(1),
(b)(2), (b)(3), (b)(5), and (b)(6) applied to the records
contained in OIG files that pertain to ongoing
investigations.

    6.  The CIA's April 15, 2005 response also addressed
records that no longer relate to pending law enforcement
proceedings. The CIA stated that it had not completed its

3

document-by-document, word-by-word review of these
documents, but that it expected to complete processing of
the OIG records that no longer relate to pending law
enforcement proceedings by July 15, 2005.

7.   On July 15, 2005, the CIA sent plaintiffs a final
administrative response with respect to the OIG records
that no longer relate to pending law enforcement
proceedings.   The July 15, 2005 response stated that the
records were withheld in their entirety pursuant to FOIA
exemptions (b)(1), (b)(2), (b)(3), (b)(5), and (b)(6).   The
CIA's July 15, 2005 response further stated that certain
OIG records that no longer relate to pending law
enforcement proceedings had been referred to other agencies
for review and coordination.

8.   The parties then negotiated an agreement whereby
the CIA would provide a declaration that explains, to the
greatest extent possible on the public record, why the OIG
records that no longer relate to pending law enforcement
proceedings were withheld in their entirety.   Pursuant to
that agreement, the CIA agreed to address a sample of the
approximately 1,500 documents at issue, which totaled
approximately 7,500 pages and were divided into four
categories:   cables, e-mails, interview reports, and
"other" or miscellaneous documents that did not fit into

4

any particular category.  Specifically, the CIA agreed to
complete a Vaughn index for every second "other" document,
every tenth interview report, every thirtieth cable and
every fiftieth e-mail in its declaration.  The parties
further agreed that the Court's rulings with respect to
this representative sample of documents addressed in the
declaration would be applied to the records that were not
included in the sample.

     9.   To ensure that a random sample was addressed in
the declaration, the CIA arranged each set of documents in
date order (with the exception of some undated documents in
the "other" category, which were grouped together at the
end), numbered them, and invited plaintiffs to select the
starting point for the documents to be indexed in each
category.  Plaintiffs asked the CIA to begin with the third
interview report, the third cable, the seventh e-mail and
the first miscellaneous document.  Thus, for example, the
CIA included every tenth interview report in the
declaration beginning with the third interview report
(i.e., the third, thirteenth, twenty-third, thirty-third,
etc.).[3]

---

[3]   Nineteen e-mails were inadvertently left out of the e-mail collection
when the collection was numbered.  These e-mails were subsequently
inserted in their proper date order within the collection, and marked
with the same number as the preceding e-mail, plus a lower-case letter
to individually distinguish it within the collection.  These e-mails

10. As explained in greater detail in the attached index, all of the records included in the sample were withheld in their entirety pursuant to FOIA exemptions (b)(1), (b)(2), (b)(3), and (b)(5). For the Court's convenience, I have attached the unclassified Vaughn index of the documents as an exhibit to this declaration. I hereby incorporate by reference my explanations of the specific FOIA Exemptions, as previously set forth in my 30 March 2005 declaration, claimed herein.

11. I also understand that plaintiffs have in the past argued that information was improperly classified because it allegedly dealt with "illegality." The CIA does not classify information to conceal violations of law. Moreover, in this case, I have not classified any information in order to conceal violations of law. Where otherwise properly classified records might contain information about possible violations of law, the CIA provides information to the appropriate oversight committees and law enforcement entities. Nothing in Executive Order 12958, however, prevents the CIA from

are: 30-a, 38-a, 98-a,b,&c, 123-a, 138-a, 144-a, 187-a&b, 193-a, 325-a, 389-a, 445-a, 492-a, 494-a, 614-a, 718-a, and 730-a. As a result, while the e-mail sample consists of every fiftieth document beginning with the number seven as per the agreement with plaintiffs, the actual document numbers in the sample do not all end with the numeral seven. (e.g., the first document in the sample, number seven, is not followed by document number fifty-seven, because e-mails 30-a and 38-a were counted as well - producing document number fifty-five instead).

6

protecting classified information that might also reveal a
violation of law where, as here, there is an independent
basis for classifying the information -- protecting
intelligence sources, methods, and activities, as well as
foreign government information and foreign relations of the
United States, whose disclosure reasonably could be
expected to cause damage to the national security.

12.  These OIG documents that no longer relate to
pending law enforcement proceedings have been denied in
full because I have determined that no meaningful,
reasonably segregable portion of those documents could be
released.  The determination of segregability was made
based upon a careful review of the documents in this case,
both individually, and as a whole.[4]  Indeed, a line-by-line
review was conducted for all the documents, individually
and as whole, at issue to identify and release meaningful,
reasonably segregable, non-exempt portions of documents.
Any non-exempt information is so inextricably intertwined
with the exempt information that there are no meaningful,
reasonably segregable, non-exempt portions.  Therefore, I

---

[4] In making this determination I must consider the entire mosaic of
information available, including information that may be publicly
available in other cases or available to our adversaries through their
intelligence activities, to determine if any releases would reveal
classified information.

determined that there are no meaningful segments of

information that reasonably can be segregated for release.

*   *   *   *

I hereby declare under penalty of perjury that the

foregoing is true and correct.

Executed this 27th day of January, 2006.

Marilyn A. Dorn
Information Review Officer
Central Intelligence Agency

8