UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

AMERICAN CIVIL LIBERTIES UNION,
CENTER FOR CONSTITUTIONAL RIGHTS,
PHYSICIANS FOR HUMAN RIGHTS,
VETERANS FOR COMMON SENSE AND
VETERANS FOR PEACE,

          Plaintiffs,

          v.

DEPARTMENT OF DEFENSE, AND ITS
COMPONENTS DEPARTMENT OF ARMY,
DEPARTMENT OF NAVY, DEPARTMENT OF
AIR FORCE, DEFENSE INTELLIGENCE
AGENCY; DEPARTMENT OF HOMELAND
SECURITY; DEPARTMENT OF JUSTICE,
AND ITS COMPONENTS CIVIL RIGHTS
DIVISION, CRIMINAL DIVISION, OFFICE OF
INFORMATION AND PRIVACY, OFFICE OF
INTELLIGENCE POLICY AND REVIEW,
FEDERAL BUREAU OF INVESTIGATION;
DEPARTMENT OF STATE; AND CENTRAL
INTELLIGENCE AGENCY,

          Defendants.
------------------------------------------------------------- x

04 Civ. 4151 (AKH)

FOURTH DECLARATION OF
STEWART F. ALY

I, Stewart F. Aly, declare under penalty of perjury that the following information is true and correct.

1.    I am a consultant to the Office of the General Counsel of the Department of Defense. I began my service in that capacity on March 6, 2007. Prior to that, from January 1, 1993, until December 31, 2006, I served as Associate Deputy General Counsel (Legal Counsel) in the Office of the General Counsel (OGC) of the Department of Defense ("DoD" or the "Department"). My areas of responsibility included statutes relating to management and release

of information, such as the Privacy Act and the Freedom of Information Act (FOIA). I personally reviewed FOIA requests and appeals as part of my official duties, and I had authority to make determinations regarding the release of records of the OGC. I served as counsel to the Office for Freedom of Information, which is the office responsible for formulation and promulgation of the Department's FOIA policy and have represented the Defense Department in major FOIA litigation. Because of my background and experience with classified information, I also served as counsel to the officials in the Office of the Secretary of Defense responsible for policy relating to security programs, including the policies on classification and declassification of information. I was a member of the Defense Department team which participated in the drafting of Executive Order 12958, "Classified National Security Information," which is the authority for classification and declassification of information. As the senior career attorney in this office during my period of service, I from time to time served as the Acting Deputy General Counsel (Legal Counsel) in the intervals when there was no appointed Deputy General Counsel in that position which is a political, not a career, appointment. While serving as the Acting Deputy General Counsel I held original classification authority at the SECRET level.

2. I began my career in the United States Government as an intelligence officer in the United States Air Force in 1970. I have held a security clearance for access to classified information without interruption since that date, and I have worked with classified information throughout my career. I served as an intelligence officer for almost six years including a tour as a targets officer assigned to the 432nd Tactical Reconnaissance Wing at Udorn Royal Thai Air Force Base during the Vietnam War. After law school, I served for seven years on active duty and eight years in the reserves as a Air Force judge advocate. I began my service as a civilian

attorney in the Defense Department in 1986. During my legal career, I have represented the Department in many cases involving classified information, including the Korean Air Lines Flight 007 case arising from the Soviet Union's shooting down a commercial airliner in 1983, the prosecution of a former Defense Department employee for espionage and the prosecution of John Walker Lindh. I have filed declarations in several cases brought under the Freedom of Information Act addressing the application of exemptions to information withheld, including information withheld under Exemption 1. I have filed three previous declarations in this case. I submit this declaration based upon my personal knowledge and information made available to me in my official capacity.

3. <u>Documents related to detainee deaths</u> Plaintiffs contend that the Defense Department has not identified and processed a large number of critical documents responsive to their request (Pls. Brief at 5). They identify one category of such documents as "documents related to the deaths of prisoners in U.S. custody abroad." However, the ACLU's own website, which makes available the documents released by the Department of Defense in this case, includes a section listing certificates of death, autopsy reports and similar documents concerning 58 separate deaths. (ACLU site at http://action.aclu.org/torturefoia/re;eased/102405/.)

4. <u>Documents listed in plaintiffs' Exhibit G to their brief filed in March 2007</u> Plaintiffs have provided a list of documents that they contend are responsive to their FOIA request but have not been identified or produced by the Department of Defense. Plaintiffs filed this list as exhibit G to their brief earlier this year. I addressed the documents on Exhibit G in paragraphs 37 through 40 of the Third Declaration of Stewart Aly (referred to as "my prior declaration"). Plaintiffs do not now challenge the Items listed in Exhibit G which were

addressed in my prior declaration but still seek the remaining documents in Exhibit G. (Pls. Brief at 5). These remaining documents in Exhibit G fall into three categories: the first group of entries are not individual categories but instead are categories of documents. The second group of entries consist of references to documents included in other documents released in this case. The final group is a list of media reports which refer to documents. This list has been reviewed and those documents which have been located, determined to be responsive and processed are addressed in my prior declaration. In some cases, particularly in the media reports, the references do not provide a complete description. Moreover, as has been true for other descriptions provided by Plaintiffs in the past— including the documents listed on Plaintiffs' August 15, 2004 list of 70 —media reports often contain incomplete or inaccurate descriptions. The difficulty for the Defense Department in evaluating the documents described in Exhibit G is illustrated by item 23, "Memorandum signed by Defense Secretary Rumsfeld authorizing interrogation techniques (approx. Nov. 2002)." The description goes on to cite a newspaper report. In June, 2004, the Department of Defense released a document signed by Secretary Rumsfeld dated 27 November 2002 with the subject: "Counter -Resistance Techniques." It is posted on the Defense Department web site at http://www.defenselink.mil/news/Jun2004/d20040622doc5.pdf. Notwithstanding the existence of this publicly available document, Plaintiffs still seek document 23, notwithstanding that Plaintiffs have requested that the Department exclude from its production any publically available documents. In any event, the Defense Department has not been able to resolve the remaining items on the list in plaintiffs' Exhibit G.

5. <u>Plaintiffs' Claims that Responsive Documents Have Not Been Identified</u>

Plaintiffs claim that a substantial number of responsive documents has not been identified should

be evaluated in the context of the production made by the Department of Defense and its components in this case. The Army has made more than 20 releases consisting of more than 100,000 documents. The Defense Intelligence Agency also has made multiple releases as well. The documents released include multiple groups of Navy and Marine Corps records which contain, among other documents, reports of criminal investigations and records of proceedings under the Uniform Code of Military Justice. The Department of Defense has released a long series of reports responsive to the plaintiffs' request, beginning with the report of Major General Taguba along with the Miller and Ryder reports. The Formica and Jacoby reports, along with their exhibits, have been released to the plaintiffs, as well as the full version of Admiral Church's report to the Secretary of Defense. The Department of Defense has also released substantial documents to the public on its own initiative: the Jones, Fay and Kern reports, the Schlesinger report and the Schmidt-Furlow report. In June of 2004, the Department released a series of documents which included, among others, the report prepared by a working group chaired by the Air Force General Counsel Mary Walker and the document described above in paragraph 4 of this declaration. Plaintiffs' claims that responsive documents have not been produced are dwarfed by the material that has been released.

6. <u>Herrington Report</u> Plaintiffs challenge the determination of the Defense Department that the report on human intelligence operations in Iraq prepared by Colonel Stuart Herrington is not responsive to their request. They quote from a news article from December 2004 which describes what purports to be portions of the report. (Pls. Brief at 6) Plaintiffs argue that a document released by the Defense Department in this case confirms "that Herrington submitted a report describing" the prisoner abuse reported in the newspaper. Plaintiffs argue that

"there may have been a 'cover-up' of the abuse." Their source for this "confirmation" is the transcript of an interview of a retired Army Colonel included in a report prepared by the Army Inspector General; the identity of the interviewee is redacted from the report to protect his privacy in accordance with standard Defense Department policy. Yet the plaintiffs speculate that the interviewee is Colonel Herrington, and based on this speculation they argue that Colonel Herrington submitted a report on prisoner abuse.

7. In fact, the interview cited by the plaintiffs describes a scenario quite different from what they claim. In this interview the interviewee states that he received information from another person who alleged that abuses of detainees had taken place at a specific time and place in Iraq. The interviewee reported these allegations to senior officers on more than one occasion. He was then informed that these allegations had in fact been investigated. (See Interview cited by Plaintiffs at page 12)

8. There were in fact two reports prepared by Colonel Herrington both of which were reviewed and determined to be non-responsive as stated in the my prior declaration:

> For example, the plaintiffs identify two reports by Colonel Stuart Herrington; these reports are listed twice on plaintiffs' list; numbers 5 and 6 are the same documents as items 30 and 31. Although these two reports are mentioned in the Church report, as noted by the plaintiffs, they were reviewed and determined to be non-responsive to the plaintiffs' request . . . .

Third Aly Decl. ¶ 32. The Herrington report on Iraq, which is 14 pages long, mentions allegations of abuse in the course of its evaluation of human intelligence operations. The Church report, which was released by the Department of Defense in this case, discusses this Herrington report and notes that it addresses these allegations. (See Church report at 60). It also states that another officer, Lieutenant Colonel Lee, was appointed to investigate the abuses mentioned in the

Page 6 of 11

Herrington report. (See Church Report at 61). This investigation resulted in the Lee Report which is a responsive document listed in the Defense Department Vaughn index, document A-138. The Lee Report has been released to the plaintiffs along with its supporting documents. In short, the report of the investigation of the allegations presented to Colonel Herrington is the Lee report which has been released to the plaintiffs.

9. <u>Internal Nature of Church Report</u> Plaintiffs contend that the Department of Defense has not demonstrated that the Church Report is covered in its entirety by exemption 5. (Pls. Brief at 26). In this regard, plaintiffs are correct; the Department of Defense does not contend that the Church Report in its entirety is a privileged document. In fact, most of it has been released to the plaintiffs and the released portions are available to the public on the Defense Department web site. Plaintiffs, however further contend that the Department of Defense has not demonstrated that the exemption 5 privileges which cover portions of the report were not waived by the incorporation of this privileged information into the report. Their basis for this claim is their speculation that the Church report "presumably was shared with numerous individuals." They offer no support for this claim and do not even speculate that any of these "numerous individuals" were outside the Department of Defense or not authorized to review it.

10. The Church Report itself, and the circumstances of its release, show that this contention is unfounded. The second page of the report is a memorandum of transmittal from the Inspector General of the Navy to the Secretary of Defense conveying the report to the Secretary in response to the Secretary's direction. The report was consistently treated as an internal document, and it was released in part only after it was reviewed in response to the plaintiffs request. In contrast, an abbreviated Executive Summary, which does not contain the privileged

information, was released to the public.

11. <u>Medical Sections of Church Report</u>: Plaintiffs challenge the withholding of sections of the Church Report under exemption 2, arguing that it is not apparent how release of these sections could risk circumvention of the law. (Pls. Brief at 21). The basis for this contention is stated clearly in the applicable sections of the index covering these documents. (Exhibit 5 to Third Declaration of Stewart Aly, ID numbers R-71 through R-74). Detailed descriptions and analysis of medical practices, procedures and requirements in detention facilities could be used, if they became public, to impede the operations of the detention facility–in particular the medical facility.

12. <u>Basis for Assertion of Exemption 1</u> As noted in paragraph 16 of my previous declaration, I reviewed each of the documents denied in full by Defense Department components other than the Army and the Defense Intelligence Agency with one exception: video images contained in DVDs taken of Forced Cell Extraction Teams at Guantanamo. I reviewed many of the documents released in part, including the Formica and Jacoby reports with their respective attachments, the Church Report and the exhibits to the Schmidt-Furlow report. As I noted in my prior declaration, the purpose of this review was to ensure that non-exempt information in all of these documents was properly segregated from exempt information and released and that the FOIA exemptions are asserted consistently based on the comments from, and in some cases my consultations with, the relevant components and classification authorities. For all the documents I reviewed pursuant to the Department's invocation of Exemption 1, I determined that the documents were classified by an original classification authority, as defined by Executive Order 12958, a fact evident from the markings on the documents that I reviewed. One of the most

important elements of this review was to ensure that the information over which exemption 1 was asserted was treated consistently. The Department of Defense has released a large amount information which was declassified for release, both in this case and in the official releases described in paragraph 5 of this declaration. The classified documents processed in this case originated in and were classified by many different components at many different times. This was evident to me from the markings on the documents I reviewed, and in some cases from my discussions with classification authorities or other experts with knowledge of the classification decisions. The classification determinations over the documents at issue in this case were made by many classification authorities at several levels in various Defense Department commands and subordinate units. As I worked with these documents from the initial stages of this case, I became familiar with the information in them that had been classified. My review was intended, in part, to identify and resolve inconsistent classifications based on my familiarity with the information processed and released both in this case and in official releases like those described in paragraph 5 of this declaration. On occasion, I consulted with individuals within the Department who have expertise in detainee issues, including experts in the Office of the Secretary of Defense, combatant commands and the Army to ascertain the basis for their decisions and to resolve inconsistencies. On the completion of this review, I concluded that exemption 1 was properly applied to the documents at issue.

13. <u>Exemption 1 Asserted for Details About Interrogation Policy</u> Plaintiffs correctly note that not every withheld document under Exemption 1 pertains to the interrogation of a specific detainee. However, the other documents withheld under exemption 1 similarly relate to specific details regarding Defense Department interrogation policy. <u>See, e.g.</u> Document A-110

(described as questioning and interrogation approaches SOP) (see Pls. Brief. at 16). While the Defense Department has made public an enormous amount of information on interrogation techniques—including all the techniques utilized by the Defense Department —and the evolution of Defense Department detention policy, the Department has withheld documents that provide more specific details about the exact circumstances in which specific interrogation techniques are used. These documents raise the same concerns under Exemption 1 as documents regarding the interrogation of specific detainees: release of such specific details about interrogation policy would permit outside individuals to discern patterns of interrogation, draw conclusions regarding the effectiveness of particular techniques, and even create profiles of interrogation methods used on detainees possessing certain characteristics or map the characteristics that give rise to the use of certain techniques.

14. Medical Records Plaintiffs protest the withholding under Exemption 6 the medical records of detainees mentioned in the Formica report to protect their privacy. (Pls. Brief at 31). The basis for this withholding is a concern that, given the limited number of detainees discussed in the Formica report, each detainee could be identified by individuals in Iraq; release of their medical records with identifying information redacted could assist in this identification. This would mean that the full medical records of these individuals would become public. In any event, the records are withheld consistent with Defense Department policy not to release medical records of Defense Department personnel, even with redactions, in similar circumstances and its determination to provide foreign nationals the same protection.

15. The March 14, 2003 Memorandum Plaintiffs argue that the March 14, 2003 Office of Legal Counsel memorandum addressed to the General Counsel of the Department of

Defense, which was discussed in paragraph 36 of my previous declaration, cannot be withheld under Exemptions 1 and 5 because it was superceded by subsequent OLC memoranda. As I noted in my previous declaration, this memorandum contains information currently and properly classified under Executive Order 12958 which pertains to intelligence activities and foreign relations of the United States. The fact that the legal analysis in the memorandum was superceded does not change the fact that the memorandum includes classified information. Those facts remain classified, despite the fact that the legal analysis was subsequently superceded. Moreover, I have been informed in the course of my official duties as a Defense Department employee and consultant that this Memorandum has not been adopted by the Department of Defense.

16. <u>Document overlooked</u> Plaintiffs note that one of the documents challenged in their brief filed in March of this year, number A-73, was not included in the Vaughn index attached to my previous declaration. (Pls. Brief at 8-9, n.4) This omission was an administrative error. The entry for this document is attached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: December 13, 2007

_____
STEWART F. ALY