UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

AMERICAN CIVIL LIBERTIES UNION, et al.,

                    Plaintiffs,                                        ELECTRONICALLY FILED

          v.                                                          04 Civ. 4151 (AKH)

DEPARTMENT OF DEFENSE, et al.,

                    Defendants.

------------------------------------------------------- x

AMERICAN CIVIL LIBERTIES UNION, et al.,

                    Plaintiffs,

          v.                                                          05 Civ. 9620 (AKH)

DEPARTMENT OF JUSTICE, AND ITS
COMPONENT OFFICE OF LEGAL COUNSEL,

                    Defendants.

------------------------------------------------------- x

## CENTRAL INTELLIGENCE AGENCY'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONTEMPT AND SANCTIONS

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendants
86 Chambers Street
New York, N.Y. 10007
Tel: (212) 637-2601
Fax: (212) 637-2730
Email:  Peter.Skinner@usdoj.gov

SEAN H. LANE
PETER M. SKINNER
Assistant United States Attorneys
          – Of Counsel –

## Table of Contents

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.     Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    THE COURT SHOULD DENY PLAINTIFFS'
    MOTION FOR CONTEMPT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.     The CIA's Destruction of the Videotapes Did Not Violate the
             Court's Orders Because the Videotapes Were Not Identified
             and Produced to, or Otherwise Collected by, the CIA's
             Office of Inspector General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.     The Videotapes Were Not Responsive to Plaintiffs'
             FOIA Requests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             1.     The Statute's Plain Language Makes Clear That
                     Section 431(c)(3) Is Triggered Only by Investigations
                     into Impropriety or Illegality. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             2.     The Legislative History Demonstrates that Section 431(c)(3)
                     Is Only Triggered by Investigations into Allegations of Impropriety
                     or Illegality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      C.     If the Court Does Not Deny Plaintiffs' Contempt Motion Outright,
             It Should Stay Any Contempt Proceedings Pending Resolution of
             DOJ's Criminal Investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Declarations and Exhibits Submitted with Government's Opposition**

Declaration of Constance E. Rea, dated January 10, 2008

      Exhibit 1:     Audit, Inspection and Special Assessment Report Handling Procedures

Declaration of Peter M. Skinner, dated January 10, 2008

      Exhibit A:    Statement to Employees by Director of the Central Intelligence Agency, General Michael Hayden, on the Taping of Early Detainee Interrogations, dated December 6, 2007

      Exhibit B:    Department of Justice Press Release, dated December 8, 2007

      Exhibit C:    Letter from Kenneth A. Wainstein, Assistant Attorney General, National Security Division, U.S. Department of Justice, to John A. Rizzo, Acting General Counsel, Central Intelligence Agency, dated December 8, 2007

      Exhibit D:    Department of Justice Press Release, dated January 2, 2008

      Exhibit E:    Memorandum and Order in <u>Abdah v. Bush</u>, 04-01254 (HHK) (D.D.C. January 9, 2008)

Defendant Central Intelligence Agency ("CIA"), by its attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to Plaintiffs' motion for contempt and sanctions.

## PRELIMINARY STATEMENT

A contempt order is a "potent weapon." Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967). Plaintiffs rush to wield this potent weapon against the CIA, assuming that the CIA's destruction of the detainee interrogation videotapes must have implicated their FOIA requests. Had they paused to consider the express language in the Court's orders addressing the CIA's search obligations, however, Plaintiffs would have realized that the destruction of the videotapes did not violate any of those orders.

The videotapes were held in operational files. The Court ruled that the CIA's obligation to search for records responsive to Plaintiffs' FOIA requests did not extend to its operational files. Rather, the Court ordered the CIA to search investigative files of the CIA's Office of Inspector General ("CIA OIG") for operational records produced to or collected by CIA OIG during the course of CIA OIG's investigation into allegations of impropriety in Iraq. The tapes were not produced to or collected by CIA OIG. Thus, the CIA's destruction of the videotapes did not violate the Court's orders.

Moreover, the videotapes were not responsive to Plaintiffs' FOIA requests because the activities depicted on the videotapes were not the subject of a CIA OIG investigation of allegations of impropriety in Iraq, or any other investigation conducted by CIA OIG. Under the Central Intelligence Agency Information Act ("CIA Information Act"), the CIA's operational records are exempt from search or review in response to FOIA requests unless an exception to

the Act applies.  One exception is where the records requested are the specific subject matter of

an investigation by CIA OIG into allegations of impropriety or illegality in the conduct of an

intelligence activity.  50 U.S.C. § 431(c)(3).  Here, CIA OIG did not conduct an investigation

into allegations of impropriety or illegality relating to the interrogations on the videotapes prior

to their destruction.  Therefore, the tapes were exempt from search and review in response to

Plaintiffs' FOIA requests up to the time of their destruction.

Further, the Department of Justice ("DOJ") has initiated a criminal investigation into the

destruction of the tapes.  That investigation is considering, inter alia, whether the destruction of

the tapes was inconsistent with or violated any legal obligations, including those arising out of

civil matters such as this Court's orders.  Accordingly, if the Court does not deny the contempt

application outright, it should stay these proceedings pending completion of DOJ's criminal

investigation.

## BACKGROUND

### A.     Procedural Background

The American Civil Liberties Union sent a letter to the CIA dated October 7, 2003 that

contained a FOIA request on behalf of the Plaintiffs to this action.  See Declaration of Scott A.

Koch, dated October 15, 2004, Docket No. 20 ("Koch Decl."), ¶ 14.   The request sought records

concerning the treatment, death and rendition of overseas detainees in United States custody.  Id.

On October 27, 2003, the CIA denied Plaintiffs' request on the basis that the responsive records,

if they existed, would fall under the protection of the CIA Information Act, which provides that

the Director of Central Intelligence ("DCI") may exempt the CIA's operational files from FOIA's

2

search, review, publication and disclosure provisions.  Id.; see also 50 U.S.C. § 431.[1]

Plaintiffs appealed the CIA's determination by letter dated December 11, 2003.  Koch Decl. ¶ 15.  The CIA responded to Plaintiffs' appeal on May 13, 2004.  Id.  The CIA again invoked the operational files exemption to FOIA with regard to records likely to be found in CIA operational files.  Id.  With regard to non-operational files, the CIA conducted a search of those record systems that reasonably could be expected to contain responsive records, located thirteen responsive documents, and withheld all of those documents in their entirety under FOIA exemptions (b)(1) and (b)(3).  Id.  This completed the CIA's administrative response with regard to Plaintiffs' October 7, 2003 FOIA request.  Id. ¶ 16.

On May 25, 2004, counsel for Plaintiffs sent the CIA a letter containing a second FOIA request.  Id. ¶ 17.  This request sought the same information covered in the October 7, 2003 request, as well as any additional records generated or obtained since the October 7, 2003 request.  Id.  On June 2, 2004, Plaintiffs filed this lawsuit.  By letter dated July 29, 2004, the CIA accepted Plaintiffs' second FOIA request, agreed to search for responsive records, and assigned a search cut-off date of July 29, 2004.  Koch Decl. ¶ 19.

On September 15, 2004, the Court entered an Opinion and Order requiring the defendant agencies, including the CIA, to "produce or identify" all documents responsive to Plaintiffs' FOIA requests.  Opinion and Order, dated September 15, 2004 ("September 15, 2004 Opinion

---

[1]        Section 1071(a)(6)(A) of the Intelligence Reform and Terrorism Prevention Act of 2004 ("Intelligence Reform Act"), Pub. L. No. 108-458, 118 Stat. 3638, amended 50 U.S.C. § 431(a) to provide that "The Director of the Central Intelligence Agency, with the coordination of the Director of National Intelligence, may exempt operational files of the Central Intelligence Agency."  The amendments did not go into effect, however, until June 2005.  Since this motion turns on exemptions made prior to June 2005, we refer to the designations of the Director of Central Intelligence rather than those of the Director of the Central Intelligence Agency.

and Order"), at 4.  On November 10, 2004, the CIA moved for limited relief from the Court's

September 15, 2004 Opinion and Order.  See Notice of Motion, dated September 15, 2004

(Docket No. 38).  In that motion, the CIA acknowledged that under the CIA Information Act, 50

U.S.C. § 431(c)(3), CIA OIG's initiation of an investigation into alleged improprieties in Iraq had

brought within the scope of FOIA operational files concerning the specific subject matter of that

investigation, which were otherwise exempt from search and review under FOIA.  See

Memorandum of Law in Support of the Central Intelligence Agency's Application for Limited

Relief from the September 15, 2004 Order, dated November 10, 2004 (Docket No. 39), at 2-4.

Because CIA OIG's investigation was ongoing, CIA sought relief from its obligations under the

September 15, 2004 Opinion and Order with regard to operational and other investigative files

within CIA OIG until after CIA OIG completed its investigation into improprieties in Iraq.  Id.

On February 2, 2005, the Court denied CIA's motion for limited relief.  See American

Civil Liberties Union v. Dep't of Defense, 351 F. Supp. 2d 265, 278 (S.D.N.Y. 2005) ("ACLU"

or the "February 2, 2005 Opinion and Order").  The Court held that "defendant CIA has failed to

satisfy the statutory prerequisites for invoking the operational files exemption, and hence may not

avoid the requirements imposed by FOIA, as defined in my Opinion and Order of September 15,

2004."  Id. at 268; see also id. at 271-72 (finding that CIA had not submitted evidence that the

DCI had claimed an exemption with respect to specifically categorized files, as required by 50

U.S.C. § 431(a)).  The February 2, 2005 Opinion and Order further held that even if the CIA had

satisfied the procedural requirements for invoking the operational files exemption, it had not

established that the operational files at issue were not subject to FOIA, "at least to the extent

documents have been produced or gathered pursuant to the investigation."  Id. at 272.

4

On February 8, 2005, the CIA moved for a stay of the Court's February 2, 2005 Opinion and Order while it considered whether to appeal that Opinion and Order.  See Memorandum of Law in Support of the Central Intelligence Agency's Motion for a Stay Pending Consideration of Appeal, dated February 8, 2005 (Docket No. 52), at 1.  On February 16, 2005, the CIA moved for partial reconsideration of the Court's February 2, 2005 Opinion and Order on the ground that the Court had overlooked evidence that the CIA had satisfied the procedural requirement for invoking the operational files exemption.  See Central Intelligence Agency's Memorandum of Law in Support of Its Motion for Partial Reconsideration or, Alternatively, for Partial Relief, dated February 16, 2005 (Docket No. 54), at 1-2.  Alternatively, the CIA moved for partial relief from the February 2, 2005 Opinion and Order based on new evidence further establishing that the DCI had properly designated the operational files that would contain information responsive to Plaintiffs' FOIA requests as exempt from FOIA under the CIA Information Act.  Id.

On February 18, 2005, the Court denied the CIA's motion for a stay pending appeal. Order Denying Motion for a Stay, dated February 18, 2005 ("February 18, 2005 Order") (Docket No. 57).  In that order, the Court held that the February 2, 2005 Opinion and Order was "limited in scope" and had required that "if the CIA satisfies the procedural requirements of 50 U.S.C. § 431(a), its obligation to search and review will extend, not to operational files, but only to relevant documents that have already been identified and produced to, or otherwise collected by, the CIA's Office of Inspector General."  Id. at 2.

On March 4, 2005, the Court heard oral argument with regard to the CIA's motion for partial reconsideration or, alternatively, partial relief.  At the conclusion of the argument, the Court required the CIA to submit additional evidence establishing that the DCI had satisfied the

procedural requirements for invoking the CIA Information Act.  See March 4, 2005 Transcript

(Docket No. 68) at 31-32.  The CIA submitted additional information in the form of a public

declaration and testimony to the Court by the CIA's declarant, which was received ex parte and

in camera on April 13, 2005.  See Order Granting Central Intelligence Agency's Motion for

Partial Reconsideration, dated April 18, 2005 ("April 18, 2005 Order"), at 2.  During that

testimony, the Court reviewed an internal CIA memorandum classified at the SECRET level that

memorialized the DCI's satisfaction of the procedural requirements for invoking the CIA

Information Act.  Id.

On April 18, 2005, the Court held that "the CIA has satisfied the procedural requirements

of the Central Intelligence Information Act, 50 U.S.C. § 431(a), and has established that

information responsive to plaintiffs' FOIA requests likely would be found in those operational

files that have been designated as exempt from FOIA."  Id. at 3.  The Court further held that, "in

accordance with the remainder of the Court's February 2, 2005 Opinion and Order, the Central

Intelligence Agency's 'obligation to search and review [extends], not to operational files, but

only to relevant documents that have already been identified and produced to, or otherwise

collected by, the CIA's Office of Inspector General.  See 50 U.S.C. § 431(c).'"  Id. (quoting

February 18, 2005 Order) (brackets in original).

**B.      Factual Background**

The CIA is authorized to maintain a terrorist detention and interrogation program.  See

Eighth Declaration of Marilyn A. Dorn, dated January 5, 2007, Docket No. 226 ("Eighth Dorn

Decl."), ¶ 12.  As part of the program, a small number of suspected terrorist leaders and

operatives captured during the war on terrorism have been held and questioned outside the

United States.  Id.

In January 2003, CIA OIG initiated a special review of the CIA terrorist detention and interrogation program.  Declaration of Constance E. Rea, dated January 10, 2008 ("Rea Decl."), ¶ 11.  The review was not initiated in response to an allegation of wrongdoing.  Id.  It was intended to evaluate the CIA's detention and interrogation activities.  Id.  The special review was led by the Deputy Inspector General, and the team was comprised of personnel from across CIA OIG, including the Assistant Inspector General for Investigations, the Counsel to the Inspector General, a senior Investigations Staff manager, three Investigators, two Inspectors, an Auditor, a Research Assistant, and a Secretary.  Id.

In January 2003, the President had not yet publicly acknowledged the existence of the CIA detention and interrogation program, and the fact, nature, and details of the program were tightly compartmented even within the CIA's National Clandestine Service ("NCS").[2]  Id. ¶ 12.  During the course of the special review, CIA OIG learned of the existence of videotapes of the interrogations of detainees.  Id.  CIA OIG arranged with NCS to review the videotapes at the overseas location where they were stored.  Id.

CIA OIG reviewed the videotapes at an overseas NCS facility in May 2003.  Id. ¶ 13.  CIA OIG did not take custody of the videotapes and they remained in the custody of NCS.  Id.  Nor did CIA OIG make or retain a copy of the videotapes for its files.  Id.  CIA OIG did not initiate a separate investigation into the interrogations depicted on the videotapes prior to the destruction of the tapes in 2005.  Id.

_____

[2]        The President acknowledged the existence of the CIA detention and interrogation program in a speech on September 6, 2006.  Eighth Dorn Decl. ¶ 12.

On May 11, 2004, CIA OIG commenced an investigation of allegations of impropriety in Iraq.  Koch Decl. ¶ 21; see also Rea Decl. ¶ 15; Declaration of Mona B. Alderson, dated November 9, 2004, ¶ 5, Docket No. 40;.  The scope of the Iraq investigation changed over time as CIA OIG gathered information.  Rea Decl. ¶ 14.  At times, the scope of the investigation expanded as new information pointed to additional programs, operations, or persons as subjects of inquiry.  Id.  Other times, the scope of the investigation contracted as new information disproved allegations or eliminated subjects of inquiry.  Id.  The initial investigation also gave rise to other related investigations.  Id.

The CIA OIG investigation into allegations of impropriety in Iraq and the other related investigations did not investigate the same activities encompassed by the CIA OIG special review of the CIA terrorist detention and interrogation program.  Id. ¶ 16.  Moreover, the activities depicted on the videotapes that were reviewed in May 2003 were not the specific subject matter of the CIA OIG investigation of allegations of impropriety in Iraq, or any other investigation conducted by CIA OIG.  Id.

The videotapes reviewed by CIA OIG in May 2003 were destroyed by the CIA in 2005. Declaration of Peter M. Skinner, dated January 10, 2008 ("Skinner Decl."), Ex. A (Director's Statement on the Taping of Early Detainee Interrogations, dated December 6, 2007).  On December 6, 2007, the Director of the Central Intelligence Agency, General Michael Hayden, acknowledged the destruction of the videotapes in a statement to CIA employees.  Id.  On December 8, 2007, the Department of Justice, in conjunction with CIA OIG, began a preliminary inquiry into the destruction of the tapes.  Id., Ex. B (DOJ Press Release, dated December 8, 2007); Rea Decl. ¶ 17.  The CIA agreed to preserve any records or documentation that would

8

facilitate the inquiry.  Skinner Decl., Ex. C (Letter from Kenneth A. Wainstein, Assistant

Attorney General, National Security Division, U.S. Department of Justice, to John A. Rizzo,

Acting General Counsel, Central Intelligence Agency, dated December 8, 2007)  On January 2,

2008, DOJ opened a criminal investigation into the destruction of the videotapes.  Id., Ex. D

(DOJ Press Release, dated January 2, 2008); Rea Decl. ¶ 17.  The First Assistant United States

Attorney in the United States Attorney's Office for the District of Connecticut was assigned to

lead the investigation.  Skinner Decl. Ex. D.  The CIA Inspector General has recused himself

from participation in DOJ's criminal investigation.  Rea Decl. ¶ 17.

## ARGUMENT

### THE COURT SHOULD DENY
### PLAINTIFFS' MOTION FOR CONTEMPT

"A contempt order is warranted only where the moving party establishes by clear and

convincing evidence that the alleged contemnor violated the district court's edict."  King v.

Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (citing Hart Schaffner & Marx v.

Alexander's Dep't Stores, Inc., 341 F.2d 101, 102 (2d Cir. 1965) (per curiam)).  The movant

must establish that "(1) the order the contemnor failed to comply with is clear and unambiguous,

(2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently

attempted to comply in a reasonable manner."  Paramedics Electromedicina Comercial, Ltda v.

GE Med. Sys. Info. Technologies, Inc., 369 F.3d 645, 655 (2d Cir. 2004).  A clear and

unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is

addressed," Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988),

who "must be able to ascertain from the four corners of the order precisely what acts are

forbidden," Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n, 889 F.2d

389, 395 (2d Cir. 1989), cert. denied, 494 U.S. 1030 (1990).  Here, Plaintiffs fail to satisfy their

burden to prove a violation of the Court's orders.

**A.      The CIA's Destruction of the Videotapes Did Not Violate the Court's
          Orders Because the Videotapes Were Not Identified and Produced to,
          or Otherwise Collected by, the CIA's Office of Inspector General**

      Plaintiffs claim that the CIA violated the Court's September 15, 2004 Opinion and Order,

which required the defendant agencies, including the CIA, to produce or identify all documents

responsive to Plaintiffs' FOIA requests.  Memorandum of Law in Support of Plaintiffs' Motion

for Contempt and Sanctions, dated December 12, 2007 ("Pls. Br.") at 10-12.  As Plaintiffs are

aware, however, the Court clarified the CIA's obligations under the September 15, 2004 Opinion

and Order in subsequent orders dated February 18, 2005 and April 18, 2005.  Specifically, the

Court ruled that "the Central Intelligence Agency's 'obligation to search and review [extends],

not to operational files, but only to relevant documents that have already been identified and

produced to, or otherwise collected by, the CIA's Office of Inspector General.  See 50 U.S.C.

§ 431(c).'"  April 18, 2005 Order (quoting February 18, 2005 Order) (brackets in original;

emphasis added).

      The Court's order therefore required the CIA to search CIA OIG's investigative files.  Id.

The Court did not require the CIA to search its operational files.  Id.; see also ACLU, 351 F.

Supp. 2d at 276 (holding that § 431(c)(3) applies only to "documents moved [to investigative

files] from exempted operational files.").  The Court thus exempted CIA's operational files from

search and review in response to Plaintiffs' FOIA requests.  See id.

The videotapes of detainee interrogations were not in CIA OIG's investigative files.  As CIA OIG explains, "OIG did not take custody of the videotapes and they remained in the custody of NCS."  Rea Decl. ¶ 13.  "Nor did OIG make or retain a copy of the videotapes for its files." Id.[3]  The only "evidence" of the CIA's purported contempt included in Plaintiffs' motion is General Hayden's December 6, 2007 statement, which confirms that the tapes were destroyed but says nothing about whether they were produced to CIA OIG.  See Declaration of Amrit Singh, dated December 12, 2007, Ex. H.  The undisputed evidence before this Court thus establishes that the videotapes were contained in operational files that the CIA was not required to search in connection with Plaintiffs' FOIA requests.  Accordingly, the CIA's destruction of the videotapes did not violate the Court's orders.

**B.      The Videotapes Were Not Responsive to Plaintiffs' FOIA Requests**

In addition, the destruction of the videotapes could not violate the Court's September 15, 2004 order to produce responsive records under FOIA because the interrogations depicted on the tapes were not the subject of an OIG or other investigation into impropriety or illegality.

**1.      The Statute's Plain Language Makes Clear That Section 431(c)(3) Is Triggered Only by Investigations into Impropriety or Illegality**

The CIA Information Act "authorizes the 'Director of the Central Intelligence Agency, with the coordination of the Director of National Intelligence,' to exempt the CIA's 'operational files' from 'publication or disclosure' under the Freedom of Information Act, 'or search or

---

[3]      CIA OIG did not bring the videotapes into its files, and thus the scope of FOIA, through a "marker."  See ACLU, 351 F. Supp. 2d at 273-74 (explaining that when a search of a non-exempt file in response to a FOIA request uncovers a "marker reference" that "substitutes" for a record stored in an exempted operational file, the document must be retrieved and processed in response to the FOIA request).  As CIA OIG makes clear, it "does not use 'markers' in its case files to designate records maintained in operational files."  Rea Decl. ¶ 9.

review in connection therewith.'"  ACLU, 351 F. Supp. 2d at 267 (quoting 50 U.S.C. § 431(a)).

The statute further "provides an exception to that exemption where an 'impropriety, or violation

of law, Executive Order, or Presidential directive, in the conduct of an intelligence activity' is

being investigated by the congressional intelligence committees, various agencies of government,

or the 'Office of Inspector General of the Central Intelligence Agency.'"  Id. (quoting 50 U.S.C.

§ 431(c)(3)).  The videotapes did not fall within "an exception to [the] exemption," ACLU, 351

F. Supp. 2d at 267, and thus were not responsive to Plaintiffs' FOIA request.

 The CIA previously established that the DCI designated categories of operational files as

exempt from FOIA pursuant to the CIA Information Act, 50 U.S.C. § 431(a).  See Second

Declaration of Marilyn A. Dorn, dated February 16, 2005 (Docket No. 55), ¶¶ 4-5; Third

Declaration of Marilyn A. Dorn, dated March 9, 2005 (Docket No. 65), ¶¶ 3-6.  The Court ruled

that these categorical designations satisfied the requirements of the CIA Information Act and

encompassed the information sought by Plaintiffs' FOIA requests.  See April 18, 2005 Order at

3.  Thus, the videotapes were exempt from FOIA, and not subject to search and review in

response to Plaintiffs' requests, unless "an exception to the exemption" pulled them back within

FOIA's scope.  ACLU, 351 F. Supp. 2d at 267.

 There are three exceptions to the operational files exemption, see 50 U.S.C. §§ 431(c)(1)–

(3), only the last of which is at issue in this case, see ACLU, 351 F. Supp. 2d at 271.  That

exception provides that otherwise exempt operational files are subject to search and review under

FOIA for information concerning:

the specific subject matter of an <u>investigation</u> by the congressional intelligence committees, the Intelligence Oversight Board, the Department of Justice, the Office of General Counsel of the Central Intelligence Agency, the Office of Inspector General of the Central Intelligence Agency, or the Office of the Director of National Intelligence <u>for any impropriety, or violation of law, Executive order, or Presidential directive</u>, in the conduct of an intelligence activity.

50 U.S.C. § 431(c)(3) (emphasis added).  CIA OIG has confirmed that "the activities depicted on the videotapes that [it] reviewed in 2003 were not the specific subject matter of the OIG investigation of allegations of impropriety in Iraq, or any other investigation conducted by OIG." Rea Decl. ¶ 16.

Rather, CIA OIG reviewed the videotapes during the course of a special review of the CIA terrorist detention and interrogation program, <u>see</u> Rea Decl. ¶¶ 11-13, which is distinct from the investigation contemplated by § 431(c)(3).  Special reviews are akin to audits or inspections. Like audits or inspections, and unlike investigations, special reviews typically do not arise in response to allegations of CIA wrongdoing.  Rea Decl. ¶ 6.  Special reviews are also handled under procedures similar to audits and inspections, and different than investigations.  <u>See</u> Rea Decl. ¶ 7 and Ex. 1.[4]

Neither audits nor inspections trigger § 431(c)(3)'s exception to the exemption.  <u>See</u> 50 U.S.C. § 431(c)(3).  If they did, the exception would swallow the exemption, as the volume of

---

[4]      CIA's conclusion that special reviews are distinct from investigations is entitled to "some deference" from this Court.  As the Supreme Court explained, an internal agency guideline that is not "subject to the rigors of the [APA], including public notice and comment," is entitled to "some deference" if it is a "permissible construction of the statute."  <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) (internal quotation marks omitted).  Here, the CIA has an internal guideline establishing different procedures for handling special reviews and investigations that is a permissible construction of the Inspector General's statutory duties, responsibilities and authorities.  <u>Compare</u> Rea Decl. Ex. 1 (internal guideline) <u>with</u> 50 U.S.C. § 403q.  Accordingly, the CIA's conclusion that special reviews are handled similarly to audits and inspections and differently than inspections is entitled to "some deference" under <u>Koray</u>, 515 U.S. at 61.

operational files reviewed in audits (which address the finances of entire CIA programs and operations) and inspections (which evaluate the efficiency and performance of entire CIA programs and operations) would render virtually no operational files exempt from FOIA.  See Rea Decl. ¶ 5.  Similarly, special reviews, which typically involve a "significant investment in personnel resources, in terms of either the number of personnel or the mix of professional skills required (such as auditors, inspectors, or investigators)," id., cover such a broad range of operational files that they would render the CIA Information Act's exemption largely useless were they to trigger § 431(c)(3).

Furthermore, there can be no doubt that the special review at issue in this case did not trigger Section 431(c)(3).  By its plain terms, the exception encompasses only "investigations" into "impropriety, or violation of law, Executive Order, or Presidential directive, in the conduct of an intelligence activity."  50 U.S.C. § 431(c)(3).  CIA OIG's January 2003 special review into CIA's detention and interrogation program "was not initiated in response to an allegation of wrongdoing."  Rea Decl. ¶ 11.  Rather, it was an internal evaluation of CIA detention and interrogation activities.  Id.  Therefore, under the statute's plain language, CIA OIG's special review did not trigger § 431(c)(3).

This case is thus akin to Sullivan v. CIA, where the First Circuit held that a "Senate Select Committee (the Church Committee) inquir[y] into certain covert operations against Cuba" did not "fall within the exception's province."  992 F.2d 1249, 1254 (1st Cir. 1993) (citing 50 U.S.C. § 431(c)(3)).  As the court reasoned, to fall within the scope of the exception, an investigation must "relate to CIA wrongdoing, that is, some 'impropriety' or 'violation of law' in the conduct of the designated intelligence activity."  Id. at 1255.  The court found that the Church

14

Committee inquiry did not satisfy this requirement, because "it was not a direct investigation into CIA wrongdoing."  Id.; see also ACLU, 351 F. Supp. 2d at 277 (there "was not 'a direct investigation [by the committee, as section 431(c)(3) requires,] into CIA wrongdoing'") (quoting Sullivan, 992 F.2d at 1255; brackets in original).  Similarly, in this case, CIA OIG's special review was not investigating an allegation of wrongdoing, Rea Decl. ¶ 11, and thus was not within the scope of § 431(c)(3), see Sullivan, 992 F.2d at 1255.  See also Morley v. CIA, — F.3d —, 2007 WL 4270576, at *6 (D.C. Cir. Dec. 7, 2007) (§ 431(c)(3) satisfied "when a congressional investigation is spawned by alleged improprieties and seeks to uncover them").[5]

Therefore, under the plain language of the CIA Information Act, the CIA OIG special review did not bring the videotapes, which were otherwise exempt from search, within FOIA's scope.

### 2.    The Legislative History Demonstrates That Section 431(c)(3) Is Only Triggered by Investigations into Allegations of Impropriety or Illegality

The legislative history to the CIA Information Act further demonstrates that only investigations into impropriety or illegality trigger Section 431(c)(3).[6]  Indeed, the House Report

---

[5]    In Morley, the D.C. Circuit disagreed with the First Circuit in Sullivan and held that the Church Committee inquiry satisfied § 431(c)(3)'s requirements.  2007 WL 4270576, at *6.  The court reasoned that "[a]n investigation of an illegal agency operation satisfies the dictates of § 431(c)(3)."  Id.  Under Morley's interpretation of the statute as well, however, the CIA OIG's special review did not trigger § 431(c)(3), because the special review was not an investigation of "wrongdoing," and it did not result in a separate investigation into the interrogations depicted on the videotapes prior to their destruction.  Rea Decl. ¶¶ 11, 13.  Therefore, unlike the Church Committee inquiry, CIA OIG's special review was not "an investigation of an illegal agency operation."  Morley, 2007 WL 4270576, at *6.

[6]    Because the statute unambiguously provides that the exception to the exemption is triggered only by investigation into illegality or impropriety, the CIA cites the legislative history merely as additional support for the proposition that the CIA OIG special review did not implicate § 431(c)(3).  See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (first step in

to the Act makes clear that in the context of internal investigations, such as those by CIA OIG,

the exception is implicated by "allegations" of impropriety or illegality:

> When CIA conducts an <u>internal investigation of allegations of impropriety or illegality</u> in the conduct of an intelligence activity, whether through the Office of the Director, the Inspector General, or the General Counsel, all CIA files, including exempted operational files, will remain subject to FOIA searches and review requirements in response to requests for information concerning the specific subject matter of the investigation.

H.R. Rep. 98-726, pt. 1, at 28 (1984).  Such allegations may arise from outside the agency, in the

form of a "letter contain[ing] allegations of abuse, impropriety or illegality."  <u>Id.</u> at 29.  They may

also arise from inside the agency, "as CIA regulations . . . require [that] agency employees report

any past, current, or proposed CIA activities that might be construed to be illegal, improper,

questionable, or not authorized by applicable law, Presidential Directive, Executive Order or

regulation."  <u>Id.</u> at 28.  They may also arise from CIA OIG's periodic inspections, which involve

"multi-disciplinary teams [that] thoroughly examine every aspect of a CIA component's

activities," <u>id.</u>, like the special review of the detention and interrogation program at issue in this

---

statutory analysis is to determine whether the "language at issue has a plain and unambiguous meaning"); <u>Greenery Rehab. Group, Inc. v. Hammon</u>, 150 F.3d 226, 231 (2d Cir. 1998) (same). The Court need not— and, given the plain meaning of the statute, should not — rely upon the legislative history alone.  <u>See Lee v. Bankers Trust Co.</u>, 166 F.3d 540, 544 (2d Cir. 1999) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous."); <u>In re Olga Coal Co.</u>, 159 F.3d 62, 67 (2d Cir. 1998) (noting that resort to legislative history is inappropriate when "the meaning of the statutory provision is otherwise unambiguous").  Nevertheless, because legislative history may in rare cases rebut a statute's plain meaning, <u>see, e.g.</u>, <u>Ardestani v. INS</u>, 502 U.S. 129, 135-36 (1991) ("The strong presumption that the plain language of the statute expresses congressional intent is rebutted only in rare and exceptional circumstances when a contrary legislative intent is clearly expressed.") (internal quotations and citation omitted), the CIA reviews the legislative history to demonstrate that it is consistent with the clear congressional intent expressed in the statute, <u>see</u> <u>Devine v. United States</u>, 202 F.3d 547, 552 (2d Cir. 2000) (despite holding that statute's meaning was plain, examining legislative history to determine whether it "alters our understanding of the statute's language").

16

case, see Rea Decl. ¶ 11.  But regardless of the source, the House Report makes plain that the exception is implicated only where there is an investigation into "allegations of impropriety or illegality in the conduct of an intelligence operation."   H.R. Rep. 98-726, at 28-29.

In this case, CIA OIG's special review of the detention and interrogation program "was not initiated in response to an allegation of wrongdoing."  Rea Decl. ¶ 11.  Nor did CIA OIG's review of the videotapes lead to a separate investigation into the interrogations depicted on the videotapes prior to their destruction.  Id. ¶ 13.[7]  The CIA OIG special review was thus not an investigation into "allegations of impropriety or illegality" contemplated by the legislative history to the statute.

For all of these reasons, Plaintiffs are incorrect to claim that the CIA's destruction of the videotapes is "clear and convincing proof" of the CIA's non-compliance with the Court's September 15, 2004 Opinion and Order, see Pls. Br. at 12, as the videotapes were not responsive to Plaintiffs' FOIA requests.[8]

_____

[7]         As the House Report makes clear, CIA OIG would have initiated an investigation had the special review revealed allegations of impropriety or illegality.  H.R. Rep. 98-726, pt. 1, at 29 ("Allegations which arise internally at the CIA are never dismissed without some recorded inquiry.  Hence, they are never determined not to warrant a documented investigation.").

[8]         For the same reasons, the CIA has not violated its obligation under FOIA to preserve all responsive records after a FOIA request has been filed.  See Pls. Br. at 13-15.  Indeed, given that FOIA does not apply to the videotapes, the CIA had no obligation under FOIA to preserve the videotapes.

Nor is this situation analogous to the spoliation of evidence in civil litigation.  See id. at 14-15.  This is a FOIA suit.  FOIA provides the Court with jurisdiction to enjoin agencies "from withholding agency records and to order the production of agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B).  FOIA defines a "record" as "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format."  5 U.S.C. § 552(f)(2) (emphasis added).  Since the videotapes were exempt from FOIA, they were not "records" subject to this Court's jurisdiction.

**C.     If the Court Does Not Deny Plaintiffs' Contempt Motion Outright, It Should Stay Any Contempt Proceedings Pending Resolution of DOJ's Criminal Investigation**

Plaintiffs' request for coercive and compensatory sanctions should be denied because the CIA has not violated the Court's orders.  If the Court, however, is not inclined to deny Plaintiffs' motion outright, it should stay these proceedings pending resolution of DOJ's criminal investigation into the destruction of the tapes.

The Court's power to grant a stay of proceedings in this case is indisputable.  As the Supreme Court recognized in Landis v. North American Co.:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

299 U.S. 248, 254-55 (1936).  A Court has broad discretion to grant or deny a stay, and its decision will not be disturbed absent an abuse of discretion.  Id.

Civil proceedings should be stayed in deference to parallel criminal investigations "when special circumstances so require in the interests of justice."  United States v. Lot 5, Fox Grove, Alachue County, Fl., 23 F.3d 359, 364 (11th Cir. 1994), cert. denied, 513 U.S. 1076 (1995).  Courts routinely exercise their discretion to stay civil proceedings, or at least to stay discovery, when civil actions threaten to interfere with related investigations.  See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (affirming stay of discovery and recognizing governmental interest in "prevent[ing] discovery in the civil case from being used to circumvent the more

_____

The CIA therefore had no duty to preserve the videotapes due to the initiation of this lawsuit.  See Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) (court may sanction "party's intentional destruction of evidence relevant to proof of an issue at trial") (emphasis added).

limited scope of discovery in the criminal matter"); <u>Philip Morris v. Heinrich</u>, No. 95 Civ. 0328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay and stating that, without stay, targets "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); <u>see also</u> <u>Campbell v. Eastland</u>, 307 F.2d 478, 487 (5th Cir. 1962) ("The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement."), <u>cert. denied</u>, 371 U.S. 955 (1963); <u>In re Ivan F. Boesky Securities Litig.</u>, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("<u>Boesky</u>") ("the <u>public interest</u> in the criminal case is entitled to precedence over the civil litigant") (emphasis in original). Although these cases generally involved a subject or target of the criminal investigation, the same animating principle — concern for the integrity of an ongoing investigation — applies here, where there is a risk that proceeding forward in this case will undermine the investigation into the destruction of the videotapes by releasing information about their destruction into the public domain.

For example, Plaintiffs seek all records "relating to the destruction or contemplated destruction of the CIA interrogation videotapes." Supplemental Submission Clarifying Relief Sought in Plaintiffs' Motion for Contempt and Sanctions, dated December 19, 2007, at 4. Putting aside questions about Plaintiffs' entitlement to such records, the disclosure at this time of the records requested could interfere with the criminal investigation because witnesses could seek to conform their testimony to the documents produced. <u>Cf.</u> <u>SEC v. Downe</u>, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at **12-13 (S.D.N.Y. Jan. 26, 1993) (granting stay and stating that a "stay of discovery is often necessary where liberal discovery rules will allow a litigant to

undermine . . . a potential criminal prosecution"); Boesky, 128 F.R.D. at 50-51 (staying

document disclosures in civil case prior to disclosures in criminal case).  Similarly, witnesses

could seek to conform their testimony to any testimony offered in the course of these contempt

proceedings.  Cf. Founding Church of Scientology of Washington, D.C. v. Kelley, 77 F.R.D.

378, 381 (D.D.C. 1977) (refusing to compel federal officials to answer interrogatories during

pendency of federal grand jury investigation); Board of Governors of Fed. Reserve Sys. v.

Pharaon, 140 F.R.D. 634, 640 (S.D.N.Y. 1991) (granting stay and stating that a "delay in the

depositions will . . . ensure that relevant evidence is not disclosed prematurely").  Therefore,

these proceedings pose a risk to the integrity of the pending criminal investigation.

Further, the DOJ criminal investigation is considering, inter alia, whether the destruction

of the tapes was inconsistent with or violated any legal obligations, including those arising out of

civil matters such as this Court's orders.  As another district court recently reasoned in denying

relief similar to that sought by Plaintiffs in this case:

> The court's decision to deny petitioners' motion is also influenced by the
> assurances of the Department of Justice that its preliminary inquiry — now a
> criminal investigation — into the destruction of the videotapes by the CIA will
> include the issue of whether their destruction was inconsistent with or violated
> any legal obligations, including those arising out of civil matters such as this
> court's [orders].

Skinner Decl., Ex. E (Memorandum and Order in Abdah v. Bush, 04-01254 (HHK), at 2-3

(D.D.C. January 9, 2008)).

Accordingly, in the event the Court does not deny Plaintiffs' contempt application

outright, it should stay any further proceedings with regard to the application until resolution of

the criminal investigation.  At that time, the parties can address the issue of what information

about the destruction of the tapes, if any, remains to be disclosed, and whether Plaintiffs are entitled to any relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' application to hold the CIA in contempt or, alternatively, stay these contempt proceedings pending resolution of DOJ's ongoing criminal investigation.

Dated:  New York, New York
   January 10, 2008

            Respectfully submitted,

            MICHAEL J. GARCIA
            United States Attorney for the
            Southern District of New York
            Attorney for Defendants

By:    S/ _____
            SEAN H. LANE
            PETER M. SKINNER
            Assistant United States Attorneys
            86 Chambers Street, 5th floor
            New York, N.Y. 10007
            Assistant United States Attorneys
            Telephone: (212) 637-2601
            Facsimile: (212) 637-2730
            Email:  Peter.Skinner@usdoj.gov