UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE, POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY, <br><br> Defendants. | DOCKET NO.: 04-CV-4151 (AKH) <br><br><br> **Document Electronically Filed** |
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE AND VETERANS FOR PEACE, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, AND ITS COMPONENT OFFICE OF LEGAL COUNSEL, <br><br> Defendants. | DOCKET NO.: 05-CV-9620 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
FOURTH  MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................3

ARGUMENT....................................................................................................7

I.      THE GOVERNMENT HAS NOT MET ITS BURDEN FOR WITHHOLDING
        THREE OLC MEMORANDA  REPORTEDLY PROVIDING THE CIA WITH
        "EXPLICIT AUTHORIZATION" TO USE HARSH INTERROGATION
        METHODS ABROAD. ...............................................................................7

        A.      The Government's Reliance On An <u>In Camera</u> Declaration In Place Of An
                Adequate Public <u>Vaughn</u> Index And Declaration Is Antithetical To The
                Purposes Of FOIA And The Rationale Of <u>Vaughn v. Rosen</u> ................8

        B.      Defendant CIA Has Not Met Its Burden of Proving Proper Withholding
                Under Exemptions 1 and 3. ........................................................11

                1.      The CIA has failed to demonstrate that the intelligence sources,
                        methods, and foreign activities that it seeks to protect are lawful
                        activities within the CIA's mandate. ...................................11

                2.      The CIA has failed to demonstrate that disclosure reasonably could
                        be expected to result in damage to national security. ...............16

        C.      OLC Has Not Met Its Burden of Proving That Responsive Records May
                Be Withheld Pursuant to Exemption 5 ..........................................20

                1.      Exemption 5 does not apply because the Bradbury Memoranda
                        constitute adopted policy and secret law. .............................20

                2.      The attorney client privilege does not apply because the
                        Government has failed to demonstrate that it has maintained the
                        confidentiality of information contained in the Bradbury
                        Memoranda. .................................................................27

CONCLUSION................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

ACLU v. DOD,
  04-civ-4151, document No. 292 (May 8, 2008) ......................................................................24

ACLU v. DOD,
  389 F. Supp. 2d 547 (S.D.N.Y. 2005) ......................................................................14, 19, 28

ACLU v. DOJ,
  265 F. Supp. 2d  20 (D.C. Cir. 2003)........................................................................9

Allen v. CIA,
  636 F.2d 1287 (D.C. Cir. 1980) ......................................................................10, 19

Amnesty International v. CIA,
  Case No. 07 civ 5435 (LAP)........................................................................6, 9

Assassination Archives and Research Ctr. v. CIA,
  720 F. Supp. 217 (D.C. Cir. 1989)........................................................................14

CIA v. Sims,
  471 U.S. 159 (1985)........................................................................12, 14

Coastal States Gas Corp. v. DEP,
  617 F.2d 854 (D.C. Cir. 1980) ......................................................................20, 21, 27, 28

Davy v. CIA,
  357 F. Supp. 2d 76 (D.C. Cir. 2004)........................................................................14

Dept. of Interior v. Klamath Water Users Protective Ass'n.,
  532 U.S. 1 (2001)........................................................................20

Elec. Privacy Info. Ctr. v. DOJ,
  511 F. Supp. 2d 56 (D.C. Cir. 2007)........................................................................19

Fitzgibbon v. C.I.A.,
  911 F.2d 755 (D.C. Cir. 1990) ......................................................................16

Grand Cent. P'ship, Inc. v. Cuomo,
  166 F.3d 473 (2d Cir. 1999) ......................................................................7

Halpern v. FBI,
  181 F.3d 279 (2d Cir. 1999) ......................................................................7, 8, 9, 19

Hamdan v. Rumsfeld,
  548 U.S. 557 (2006)........................................................................13

John Doe Corporation v. John Doe Agency,
    493 U.S. 146 (1989) ................................................................................10

John Doe Corporation v. John Doe Agency,
    850 F.2d 105 (2d Cir. 1988) ..................................................................10

Judicial Watch, Inc. v. F.D.A.,
    449 F.3d 141 (D.C. Cir. 2006) ..................................................................8

Lawyers Comm. for Human Rights v. INS,
    721 F. Supp. 552 (S.D.N.Y. 1989) ...................................................10, 16

Maynard v. CIA,
    986 F.2d 547 (1st Cir. 1993) ..................................................................12

Mead Data Central, Inc. v. U.S. Dept. of Air Force,
    566 F.2d 242 (D.C. Cir. 1977) ..........................................................27, 28

Military Audit Project v. Casey,
    656 F.2d 724 (D.C. Cir. 1981) ...............................................................12

N.Y. Public Interest Research Group v. U.S. E.P.A.,
    249 F. Supp. 2d 327 (S.D.N.Y. 2003) ...................................................22

Nat'l Council of La Raza v. DOJ,
    411 F.3d 350 (2d Cir. 2005) ............................................................passim

NLRB v. Sears, Roebuck & Co.,
    421 U.S. 132 (1975) ..........................................................................18, 23

Phillippi v. CIA,
    546 F.2d 1009 (D.C. Cir. 1976) .............................................................12

Providence Journal Co. v. U.S. Dept. of Army,
    981 F.2d 552 (1st Cir. 1992) ..................................................................21

Schiller v. NLRB,
    964 F.2d 1205 (D.C.Cir. 1992) ..............................................................18

Sterling Drug, Inc. v. FTC,
    450 F.2d 698 (D.C. Cir. 1971) ...............................................................22

Tax Analysts v. Internal Revenue Services,
    117 F.3d 607 (D.C. Cir. 1997) ...............................................................23

Tax Analysts v. IRS,
    294 F.3d 71 (D.C. Cir. 2002) .................................................................26

Taxation With Representation Fund v. IRS,
    646 F.2d 666 (D.C. Cir. 1981) ...............................................................21

<u>Tenaska Washington Partners II, L.P. v. U.S.</u>,
   34 Fed. Cl. 434 (1995) ...........................................................................................25

<u>U.S. Dept. of Justice v. Tax Analysts</u>,
   492 U.S. 136 (1989) ...............................................................................................7

<u>Vaughn v. Rosen</u>,
   484 F.2d 820 (D.C. Cir. 1973) .................................................................8, 9, 10, 11

<u>Wash. Post v. DOD</u>,
   766 F. Supp. 1 (D.C. Cir. 1991) .............................................................................16

<u>Wood v. F.B.I.</u>,
   432 F.3d 78 (2d Cir. 2005) ....................................................................................20

## **<u>STATUTES</u>**

18 U.S.C. § 2340A ...................................................................................................12

18 U.S.C. § 2441 .....................................................................................................12

18 U.S.C. §§ 2340-2340A at 38 (Aug. 1, 2002) ...................................................3, 4

42 U.S.C. § 2000dd(a) ............................................................................................13

5 U.S.C. § 552(a)(4)(B) .........................................................................7, 11, 26, 27

5 U.S.C. § 552(b)(1) ...............................................................................................11

5 U.S.C. § 552(b)(3) ...............................................................................................12

5 U.S.C. § 552(b)(5) ...............................................................................................20

5 U.S.C.A § 522 (b) ................................................................................................18

50 U.S.C. § 403-1(i)(1) ...........................................................................................12

50 U.S.C.A. § 425 note at 187 (West Supp. 2007) ................................................11

Exec. Order No. 12,958, § 1.1(a) (3) .....................................................................11

Exec. Order No. 12,958, § 1.2(4) ...........................................................................18

Exec. Order No. 12,958, § 1.4 (c) ..........................................................................11

Exec. Order No. 12,958, § 1.4 (d) ..........................................................................11

Exec. Order No. 12,958, § 1.7 ................................................................................14

Exec. Order No. 12,958, § 1.7(a) ...........................................................................18

Exec. Order No. 12,958, § 1.7(a) (1) ...........................................................................14

Exec. Order No. 12,958, § 1.8(a)................................................................................18

Exec. Order No. 12,958, 60 Fed. Reg. 19825 (Apr. 17 1995) ......................................11

Exec. Order No. 13,440 ................................................................................................13

Exec. Order No. 13,440, § 3, 72 Fed. Reg. 40707 (Jul. 20, 2007) ................................13

## **OTHER AUTHORITIES**

Central Intelligence Agency, Statement by CIA Director of Public Affairs
    Jennifer Millerwise (Mar. 18, 2005) ......................................................................26

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment
    or Punishment, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, U.N.
    Doc. A/39/51(1984), <u>entered into force</u> June 26, 1987 ............................................13

Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949 ...................13

H.R.Rep. No. 1497, 89th Cong., 2d Sess., 9 (1966) ........................................................7

Randolph D. Moss, <u>Executive Branch Legal Interpretation: A Perspective from
    the Office of the Legal Counsel</u>, 52 ADMIN. L. REV. 1303, 1305 (2000) ................................25

S.Rep. No. 813, 89th Cong., 2nd Sess., 8 (1965) ....................................................7, 26

Verbatim Tr. of House of Rep. Judiciary Committee Hearing, 2008 WL 331459
    (F.D.C.H.) at 8, 9 ................................................................................................26

## **RULES**

Fed. R. Civ. P. 56...........................................................................................................7

## INTRODUCTION

For more than four and a half years, this litigation has sought to vindicate the right of the American public under the Freedom of Information Act ("FOIA") to information regarding the abuse of prisoners held in United States custody abroad and, in particular, the extent of official responsibility for such abuse.  A number of released documents now form part of an important and revealing public record.  While those vindications of the public's right to information are significant, Plaintiffs file the instant Motion because the public record is incomplete with respect to an issue of enormous public importance:  the extent to which United States government officials, as late as May 2005 — and subsequent to the government denouncing the widespread torture at Abu Ghraib prison — secretly authorized abusive interrogation of prisoners held in secret detention abroad in possible violation of domestic and international law.

Specifically, this motion challenges the withholding of three memoranda prepared by the Department of Justice Office of Legal Counsel ("OLC") in May 2005 for the Central Intelligence Agency ("CIA").  Two of these documents were the subject of a front page article in the New York Times on October 4, 2007, which reported that one memorandum explicitly authorized interrogators to use "a combination" of abusive interrogation methods, including waterboarding, head-slapping, and exposure to freezing temperatures.  Another memorandum, which was reportedly issued at a time when Congress was preparing legislation banning "cruel, inhuman and degrading treatment," secretly declared that none of the CIA's interrogation methods violated that standard. Defendants later disclosed the existence of a third memorandum addressed to a similar purpose.

The Government now seeks to withhold these documents from public scrutiny under several FOIA exemptions. It has not, however, met its burden of establishing that it may conceal these documents from the public. Specifically, the Government has failed to demonstrate (1) that it seeks to protect lawful sources, methods and activities within its mandate; (2) that information contained within the memoranda has not been publicly disclosed; and (3) that the memoranda have not been adopted as agency policy or law. The failure of the Government to make these essential showings, defeats each of their claimed exemptions. Accordingly, this Court should grant Plaintiffs' Motion for Partial Summary Judgment and order the Government to release, in unredacted form, the three memoranda. In the alternative, this Court should conduct an in camera review of these documents in order to determine whether they should be released in full or subject to an analysis whereby those portions that ought not be disclosed are segregated, and the rest disclosed.

Disclosure of the three memoranda at issue would further two of the most vital objectives of FOIA: oversight of improper government conduct and exposure of secret law. Specifically, disclosure would illuminate the extent to which high-level U.S. government officials, as late as May 2005, secretly authorized abusive interrogation abroad and would reveal whether secret policies of the government diverged from public law. Most significantly, it would inform the public as to whether the infamous torture memos of 2002 were an ephemeral reaction to the attacks of September 11, or whether the Executive's policy of abusive interrogation secretly endures.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since the commencement of our nation's "War on Terror," the CIA has subjected individuals to a secret program of overseas detention and abusive interrogation. See Declaration of Jennifer B. Condon Dec. 12, 2008 ("Condon Decl.") ¶¶15-16. Throughout the history of the program, the Office of Legal Counsel has played a central role in formulating and endorsing many of the policies authorizing and defining that program.[1] To vindicate the public's right to information about the abuse of prisoners held in United States custody abroad and official responsibility for such acts, on October 7, 2003, Plaintiffs served on the Department of Justice, the CIA, and other Federal agencies a FOIA request seeking the disclosure of records concerning: (1) the treatment of detainees; (2) the deaths of detainees while in United States custody; and (3) the rendition of detainees and other individuals to countries known to employ torture or illegal interrogation techniques. ("Plaintiffs' FOIA request"). See ("Condon Decl.") ¶ 2. On January 31, 2005, Plaintiffs served a FOIA request on OLC that incorporated by reference Plaintiffs' earlier request and enumerated a non-exhaustive list of documents falling with the scope of Plaintiffs' request. Id. ¶ 4.

After Defendants produced certain unclassified documents responsive to Plaintiffs' FOIA request and produced Vaughn Declarations identifying documents it was specifically withholding, the New York Times published a front-page article on October

---

[1] See Memorandum for Alberto Gonzales from Jay S. Bybee Re: Standards of Conduct for Interrogation under 18 U.S.C. §§ 2340-2340A at 38 (Aug. 1, 2002) (stating that torturing suspected al Qaeda members abroad "may be justified" and that international laws against torture "may be unconstitutional if applied to interrogation" conducted against suspected terrorists), available at *http://www.washingtonpost.com/wp-srv/politics/documents/cheney/torture_memo_aug2002*.pdf; Memorandum for Alberto Gonzales, White House Counsel Re: "Protected Persons" In Occupied Iraq (Mar. 18, 2004) (purportedly determining which categories of persons in Iraq qualify for protection under the Geneva Convention).

3

4, 2007, disclosing two OLC memoranda relating to the interrogation of prisoners held by the Central Intelligence Agency ("CIA").  Id. at ¶¶ 5-7, Ex. A (<u>Secret U.S. Endorsement of Severe Interrogations</u>).  These documents were not produced to Plaintiffs or identified in <u>Vaughn</u> Declarations.

The first memorandum authored by Steven G. Bradbury, now Principal Deputy Assistant Attorney General for the Office of Legal Counsel, was described in the article as an OLC opinion providing "explicit authorization" for the use by the CIA of harsh interrogation techniques on terror suspects.  <u>Id.</u> ¶ 8. This secret opinion was reportedly issued subsequent to the public release of an OLC memo dated December 30, 2004, which declared torture "abhorrent to American law and values" and retracted the earlier, infamous "Torture Memo" of August 1, 2002.  <u>Id.</u>  That discredited 2002 memo had asserted the legality of certain harsh interrogation techniques and defined torture in exceedingly narrow terms.[2]

The second memorandum discussed in the article, also authored by Mr. Bradbury in 2005, reportedly authorized the CIA to use harsh and abusive interrogation techniques based on the conclusion that those methods would not violate prohibitions on "cruel, inhuman, or degrading treatment."  <u>Id.</u> ¶ 9, Ex. A.  The memo reportedly was crafted in response to Congress's consideration of legislation proscribing such treatment.  <u>Id.</u>[3]

---

[2] <u>See</u> Memorandum for Alberto Gonzales from Jay S. Bybee Re: Standards of Conduct for Interrogation under 18 <u>U.S.C.</u> §§ 2340-2340A at 38 (Aug. 1, 2002), *available at* http://www.washingtonpost.com/wp-srv/politics/documents/cheney/torture_memo_aug2002.pdf

[3] Such legislation was passed in the House and Senate in December of 2005 and January of 2006, respectively. *See* P.L. 109-148, Title X § 1003 (2005); P.L. 109-163, Title XIV § 1402 (the "McCain Amendment").

Troubled that memoranda appearing to endorse abusive and possibly unlawful practices by the CIA abroad were not previously disclosed or indexed in the declarations provided by the Government, on October 24, 2007, Plaintiffs filed a Motion For Preliminary Injunction requesting that the Court compel OLC to immediately process the two memoranda. Id. at ¶10. In response to Plaintiffs' Motion, Defendants revealed the existence of a third OLC memorandum dated May 30, 2005, which they acknowledge is similar in substance and purpose to those sought by Plaintiffs. Id. The Government claimed, however, that it had no obligation to process the three so-called "Bradbury Memoranda" because they were created after the search cut-off date utilized by the agency in processing Plaintiffs' FOIA request.

On August 28, 2008, recognizing that the Bradbury Memoranda are "clearly substantively responsive to Plaintiffs' FOIA request," this Court rejected that argument and directed Defendants to either produce the three OLC memoranda or to submit detailed Vaughn declarations claiming exemptions. On September 12, 2008, Defendants filed a motion for partial reconsideration of that order, and on October 29, 2008, this Court denied that motion.

On November 7, 2008, Defendants provided Plaintiffs with Vaughn Declarations and indices from representatives of the CIA and OLC asserting that the Government may withhold all three documents in their entirety pursuant to FOIA Exemptions b(1) b(3), and b(5). Id. at ¶12, Ex. B, Declaration of Windy M. Hilton ("Hilton Decl."); Ex. C, Fourth Declaration of Steven G. Bradbury ("Fourth Bradbury Decl.").[4] According to the

_____

[4]Two of the memoranda are also at issue in the pending case Amnesty International v. CIA, Case No. 07 civ. 5435 (LAP) in the U.S. District Court for the Southern District of New York. In that case, the CIA prepared a Vaughn index and declarations for an

CIA, Exemption b(1) applies because disclosure of the classified memoranda would reveal intelligence sources and methods of the CIA, as well as foreign activities of the United States government.  Hilton Decl. ¶¶ 7-8.  The CIA also claims that the three memoranda are exempt from disclosure under exemption b(3) pursuant to Section 102A(i) (1) of the National Security Act.  Id. ¶¶ 5, 8.  Defendant OLC claims that the three memoranda are exempt under FOIA Exemption b(5) as falling within the deliberative process and attorney-client privileges.  Fourth Bradbury Decl. ¶ 8.  The CIA has also filed with this Court, under seal, a classified in camera, ex parte declaration and exhibits previously filed in Amnesty Int'n'l, et al v. CIA, et al., Case No. 07 civ. 5435 (LAP).  Hilton Decl. ¶ 6.  That declaration apparently relates to the first May 10, 2005 and the May 30, 2005 memoranda.  Hilton Decl. ¶ 4.

Plaintiffs file the instant Motion for Partial Summary Judgment because Defendants have failed to meet their burden under FOIA of establishing that the documents may be properly withheld.

---

agreed-upon sample of documents that included one of the May 10, 2005 memoranda and the May 30, 2005 memorandum.  On April 21, 2008, the CIA filed a Motion for Summary Judgment in that case, along with a Vaughn Declaration and index claiming exemptions for those two documents on the basis of FOIA exemptions b(1), b(3), and b(5).  Those documents are attached to the Hilton Declaration as Exhibit A (the April 21, 2008 Declaration of Ralph S. DiMaio Information Review Officer National Clandestine Service Central Intelligence Agency ("DiMaio Decl.")) and Exhibit B (the April 21 2008 Vaughn index entries for the first 10 May 2005 and the 30 May 2005 memoranda).  For that reason, where appropriate, Plaintiffs' Motion makes reference to the DiMao Declaration.

## **ARGUMENT**

I.   **THE GOVERNMENT HAS NOT MET ITS BURDEN FOR WITHHOLDING THREE OLC MEMORANDA REPORTEDLY PROVIDING THE CIA WITH "EXPLICIT AUTHORIZATION" TO USE HARSH INTERROGATION METHODS ABROAD.**

In enacting FOIA, Congressed intended to "'promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed.'" Nat'l Council of La Raza v. DOJ, 411 F.3d 350, 355 (2d Cir. 2005) (alteration in original) (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999)).  To accomplish that purpose, courts narrowly construe FOIA's exemptions "with doubts resolved in favor of disclosure." Halpern v. FBI, 181 F.3d 279, 287 (2d Cir. 1999) (internal citation omitted).  Under the statute, the burden is squarely and logically on the government to demonstrate that it may properly withhold responsive documents.  U.S. Dept. of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989) (citing S.Rep. No. 813, 89th Cong., 2nd Sess., 8 (1965) ("Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it"); H.R.Rep. No. 1497, 89th Cong., 2d Sess., 9 (1966)).  Accordingly, a plaintiff in a FOIA case is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure — and a district court may order disclosure — where the agency has failed to meet its burden of establishing that its withholdings are justified.  Id. at 142; 5 U.S.C. § 552(a)(4)(B).  Here, because the record establishes that Defendants CIA and OLC have failed to meet their burden for withholding documents under FOIA Exemptions 1, 3, and 5, this Court should grant Plaintiffs' Motion for Summary Judgment and compel the government to release the memoranda.  At a

minimum, this Court should conduct an in camera review of the Memoranda in order to determine whether they should be released in full or in part.

> **A.      The Government's Reliance On An *In Camera* Declaration In Place Of An Adequate Public *Vaughn* Index And Declaration Is Antithetical To The Purposes Of FOIA And The Rationale Of *Vaughn v. Rosen*.**

Apparently recognizing the insufficiency of its public Vaughn Declaration, the Government has filed a supplemental declaration with classified information in camera. See Hilton Decl. ¶ 6. Plaintiffs respectfully submit that the Court should not consider the Government's in camera declaration because doing so would undermine the purposes of FOIA and frustrate the adversarial system designed to further FOIA's essential goals. Rather than consider the Government's classified declaration, if necessary, the Court should undertake an in camera review of the Bradbury Memoranda.

In Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), the court held that the government must justify its withholdings under FOIA by submitting a declaration and index describing the documents "in adequate specificity" and alleging a "proper justification" for its asserted exemptions. That requirement "enables the adversary system to operate by giving the requester as much information as possible," thereby, enabling the court to "fulfill its duty of ruling on the applicability of the exemption." Judicial Watch, Inc. v. F.D.A., 449 F.3d 141, 146 (D.C. Cir. 2006); Halpern, 181 F.3d at 295 (stating that without specific withholding explanations by the government the "adversary process envisioned by FOIA litigation cannot function"). Thus, the basic principles and safeguards of FOIA dictate that Plaintiffs be afforded the opportunity to challenge the CIA's and OLC's withholding of information, and to present evidence to the Court demonstrating that such information was improperly withheld.

8

By submitting a conclusory <u>Vaughn</u> declaration lacking in specificity regarding the contents of the Bradbury Memoranda — and that fails to address whether that content overlaps with publicly disclosed, non-confidential information — the Government has deprived Plaintiffs of that opportunity.  The one-page <u>Vaughn</u> index provided by the OLC, which purports to address all three of the memoranda, describes each of the documents word-for-word, in exactly the same way.  <u>Condon Decl.</u> ¶ 14; Ex. C.  The Index describes each document as an OLC memorandum "providing confidential legal advice and analysis prepared at the request of, and based on facts provided by, the CIA for use in reaching a policy decision." <u>Id.</u>  But the United States Court of Appeals for the Second Circuit found nearly identical language in a <u>Vaughn</u> index to be inadequate under the "reasonable specificity" standard.  <u>See</u> <u>Halpern</u>, 181 F.3d at 292-94.  In <u>Halpern,</u> the Court cautioned against Declarations that "barely pretend[] to apply the terms of [withholding language] to the specific facts of the documents at hand" and that fail to provide a "contextual description" for the information withheld.  <u>Id.</u> at 293; <u>see</u> <u>also</u> <u>ACLU v. DOJ</u>, 265 F. Supp. 2d  20, 29 (D.C. Cir. 2003) (holding that agency's "boilerplate" indices had in "no way been tailored to the particular surveillance tools about which plaintiffs [sought] information," and that they did not "address the specific harm to flow from release").   Here, the Government's boilerplate descriptions are particularly inadequate because they do not permit Plaintiffs to even determine whether the content contained in the three memos varies.

Moreover, by relying on a <u>Vaughn</u> Declaration prepared for the <u>Amnesty In'l v. CIA</u>, Case No. 07 civ. 5435 (LAP) — which is 80 pages long and purports to addresses the entire universe of documents at issue in that case —  the Government has failed to

meet its burden of providing Plaintiffs with specific information about the three documents at issue here.  See DiMaio Decl.  Thus, the Government's Declaration and indices have deprived Plaintiffs of the process contemplated by Vaughn v. Rosen, by failing to clarify "what types of activities, events or policy matters are actually discussed in the documents."  Lawyers Comm. for Human Rights v. INS, 721 F. Supp. 552, 567 (S.D.N.Y. 1989).

Nor does the Government's submission of a classified Vaughn declaration, mitigate that deprivation; it only compounds the error.  Courts disfavor "[i]n camera review of a Vaughn index" because it undermines the adversarial process essential to furthering FOIA's fundamental purposes.  John Doe Corporation v. John Doe Agency, 850 F.2d 105, 110 (2d Cir. 1988) (noting that in camera review of classified Vaughn Declarations and indices are "unusual, and differs significantly from in camera review of the actual requested documents, a procedure expressly authorized by FOIA"); rev'd on other grounds by John Doe Corporation v. John Doe Agency, 493 U.S. 146 (1989); Lawyers Comm. for Human Rights, 721 F. Supp. at 568 ("Recognizing that Plaintiffs will be unable to mount a complete adversarial argument without access to the submitted affidavits, the Court will not examine in camera affidavits unless it is 'absolutely necessary.'") (quoting Allen v. CIA, 636 F.2d 1287, 1298 n.63 (D.C. Cir. 1980)).

Moreover, in camera review of the Government's Vaughn Declaration is not, in this case, absolutely necessary because such review of the "actual requested documents" at issue in this Motion would not be administratively taxing.  See John Doe Corporation, 850 F.2d at 110.  That is, rather than considering the Government's classified Declaration, the Court should review the three Bradbury Memoranda, which are the

actual subjects of Plaintiffs' FOIA request.  That process is expressly authorized by 5 U.S.C. § 552(a)(4)(B) and, in contrast to the Government's in camera Vaughn Declaration, would not put Plaintiffs at a disadvantage in the adversarial process mandated by FOIA.

**B.    Defendant CIA Has Not Met Its Burden of Proving Proper Withholding Under Exemptions 1 and 3.**

**1.    The CIA has failed to demonstrate that the intelligence sources, methods, and foreign activities that it seeks to protect are lawful activities within the CIA's mandate.**

To justify withholding under Exemption 1 the government bears the burden of establishing that the information withheld falls within an applicable Executive Order and that it has been properly classified pursuant to that Order.  5 U.S.C. § 552(b)(1). Defendants invoke Executive Order 12,958, 60 Fed. Reg. 19825 (Apr. 17 1995),[5] which provides a comprehensive system for classifying documents that may be kept secret by the government.  That Order attempts to balance "democratic principles requir[ing] that the American people be informed of the activities of their Government" with the recognition that certain qualifying documents may be kept secret in the national interest. Exec. Order No. 12,958.  Thus, to be properly classified, agency information must fall within an authorized withholding category set forth in the Order.  Exec. Order No. 12,958, § 1.1(a) (3).  Here, the Government invokes two withholding categories under Exemption 1: "intelligence sources or methods" and "foreign activities of the United States."  Exec. Order No. 12,958, § 1.4 (c) & (d).

---

[5] This Order was amended by Executive Order No. 13,292.  See 68 Fed. Reg. 15315 (Mar. 28, 2003).  All citations to Exec. Order No. 12,958 are to the Order as amended by Exec. Order No. 13,292.  See  Exec. Order No. 12,958, 3 C.F.R. § 333 (1995), reprinted as amended in 50 U.S.C.A. § 425 note at 187 (West Supp. 2007).

To justify withholding under Exemption 3, the government bears the burden of establishing that the information is protected from disclosure by statute.  See 5 U.S.C. § 552(b)(3).  Here, the CIA relies upon Section 102A(i)(1) of the National Security Act, 50 U.S.C. § 403-1(i)(1), as a withholding statute.  That provision charges the Director of National Intelligence with "protect[ing] intelligence sources and methods from unauthorized disclosure."   Id.

The Government has failed to establish that the Bradbury Memoranda contain intelligence sources, methods, or foreign activities that may properly be kept secret under FOIA Exemptions 1 and 3.  The United States Supreme Court has made clear that only intelligence sources and methods that "fall within the Agency's mandate to conduct foreign intelligence" may be properly classified and exempted from disclosure.  CIA v. Sims, 471 U.S. 159, 169 (1985).[6]  Here, however, the CIA cannot conceal information related to abusive interrogation methods under Exemption 1 and 3 because such methods were illegal at the time the memoranda were written in 2005 and were, therefore, not within the scope of the CIA's authority.

Torture and cruel, inhuman and degrading ("CID") treatment are expressly prohibited by both U.S. and international law.  See 18 U.S.C. § 2340A (providing for

_____

[6] Although Sims addresses the scope of protected sources and methods under Exemption 3, it is well settled that the definition of intelligence sources and methods is identical under Exemptions 1 and 3. See, e.g., Maynard v. CIA, 986 F.2d 547, 555 (1st Cir. 1993) (finding review is essentially the same "when Exemptions 1 and 3 are claimed on the basis of potential disclosure of intelligence sources or methods"); Military Audit Project v. Casey, 656 F.2d 724, 736-37 n.19 (D.C. Cir. 1981) (holding Exemption 3 provides overlapping protection with Exemption 1 where disclosure of classified information would reveal intelligence sources and methods); Phillippi v. CIA, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976) (noting where information properly classified to prevent disclosure of intelligence sources and methods "inquiries into the applicability of the two Exemptions [1 and 3] may tend to merge").

prosecution for torture); 18 U.S.C. § 2441 (criminalizing grave breaches of Common Article 3 of the Geneva Convention); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, U.N. Doc. A/39/51(1984), entered into force June 26, 1987; Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949 ("Third Geneva Convention"), art. 3, 6 U.S.T 3316 (prohibiting "cruel treatment and torture," as well as "outrages upon personal dignity, in particular humiliating and degrading treatment"). It is indisputable that the CIA is not exempt from these laws. To the contrary, in 2005, Congress rejected a proposal that would have exempted the CIA from the proscription against CID treatment and instead enacted the McCain Amendment to the National Defense Authorization Act of Fiscal Year 2006. See 109 Cong. Rec. S.14257 (statement of Sen. Carl Levin before H.R. 1815 cleared for White House). The McCain Amendment was later incorporated into the Detainee Treatment Act of 2005 and unequivocally affirmed: "No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment." 42 U.S.C. § 2000dd(a). In addition, in 2006, the Supreme Court in Hamdan v. Rumsfeld, 548 U.S. 557, 629-32 (2006), made clear that Common Article 3 of the Geneva Convention applies to all detainees in the "war on terror." Further affirming that principle, on July 20, 2007, President Bush enacted Executive Order 13,440, stating that Common Article 3 applies to the "program of detention and interrogation operated by the Central Intelligence Agency." Exec. Order No. 13,440, § 3, 72 Fed. Reg. 40707 (Jul. 20, 2007). Thus, to the extent that the Bradbury memoranda describe past or proposed uses of torture or cruel,

inhumane, or degrading treatment of prisoners, they describe conduct that was illegal at that time and is so now.

It follows that the CIA's use or proposed use of illegal conduct may not be properly withheld as "intelligence sources and methods" under FOIA Exemption 1 and 3 because the CIA is only entitled to withhold legitimate sources and methods that "fall within the Agency's mandate." Sims, 471 U.S. at 169. Indeed, Executive Order 12,958 specifically recognizes this limitation, prohibiting classification in order to conceal "violations of law." § 1.7(a) (1). However, this Court need not rule on whether or not CIA intelligence methods described in the Bradbury memoranda are lawful in order to determine that the memoranda are being improperly withheld. As this Court previously noted in this case, a desire to conceal "possible 'violations of the law'" would be enough to "raise concern" that the government's classification and withholding was improper. See ACLU v. DOD, 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005) (citing Exec. Order No. 12,958, § 1.7 and noting that the Government's Vaughn Index failed to "reflect any discussion within the administration whether the particular methods might constitute a "violation[ ] of law"). The relevant inquiry is simply whether the Government has met its burden of demonstrating that it has properly withheld intelligence sources and methods within its mandate, which detailed Vaughn declarations and indices can make clear. See, e.g., Assassination Archives and Research Ctr. v. CIA, 720 F. Supp. 217, 222 (D.C. Cir. 1989) (seeking protection of cryptonyms and covert field installations); Davy v. CIA, 357 F. Supp. 2d 76, 86 (D.C. Cir. 2004) (concluding that words and letter codes constituted protected intelligence methods). Here, the Government does not even describe the nature of the sources and methods at issue in the Bradbury Memoranda — even in generic

terms; instead, it makes only the nonspecific assertion that their disclosure would "degrade the CIA's ability to effectively question terrorist detainees and elicit information necessary to protect the American people." See DiMaio Decl. ¶ 115. This fails to establish that the methods it seeks to protect are within its mandate and, therefore, properly withheld.

In addition, while the DiMaio Declaration provides generic background explanations regarding the dangers of disclosing "human source[s]" DiMaio Decl. ¶61-63, 65-73, — in this context, a term apparently intended to mean any current or former detainee —  the Government has not met its burden to demonstrate that the Bradbury Memoranda contain information about properly classified intelligence "sources." See DiMaio Decl. ¶61-63, 65-73.  Neither the Government's Vaughn Declarations, nor the specific indices addressing the Bradbury Memoranda specify whether particular human sources are discussed in the three documents at issue and if so, whether or not the identity of those "sources" have already been publicly revealed.  See DiMaio Decl. ¶ 58-64 (generally describing dangers of "releasing information that would or could identify an intelligence source").  But the identity of a particular intelligence "source," would only be "revealed" via disclosure of the memoranda if the following is true: 1) the individual is discussed in the memoranda, 2) his detention and interrogation were not already officially acknowledged, and 3) the individual's identity could not be reasonably segregated.  Without addressing any of these issues, the Government summarily concludes that disclosure would reveal classified intelligence sources and that no information can be segregated.  DiMaio Decl. ¶ 172.  Thus, because the Government has failed to address "what types of activities, events or policy matters are actually discussed

in the documents," it has failed to meet its burden to establish proper withholding under

Exemption 1 and 3.  See Lawyers Comm. for Human Rights, 721 F. Supp. at 567.

> **2.    The CIA has failed to demonstrate that disclosure reasonably could be expected to result in damage to national security.**

To justify withholding under Exemption 1 the Government also bears the burden

of establishing that disclosure 'reasonably could be expected to result in damage to the

national security," which danger it must be "able to identify or describe." Exec. Order

No. 12,958.   Courts have recognized that where an agency's asserted intelligence

methods and interests in foreign affairs have already been revealed to the public, there is

no basis for withholding the responsive material on the basis of potential damage posed

by disclosure.  See Fitzgibbon v. C.I.A., 911 F.2d 755, 765 (D.C. Cir. 1990) ("[W]hen

information has been 'officially acknowledged,' its disclosure may be compelled even

over an agency's otherwise valid exemption claim.").  Thus, once a plaintiff "point[s] to

specific information in the public domain that appears to duplicate that being withheld,"

the agency then "bear[s] the burden of comparing the proffered information with the

information being withheld, determining whether the information is identical, and, if it is

not, determining whether release of the perhaps only slightly different information being

withheld would harm national security."  Wash. Post v. DOD, 766 F. Supp. 1, 12-13

(D.C. Cir. 1991) (as amended) (internal quotation marks omitted).

Here, in spite of the Government's claim that disclosure of the Bradbury

Memoranda would damage national security by revealing secret information regarding

the CIA's detention and interrogation program, high level public officials have already

publicly disclosed extensive information about that subject.  For example, the

Government has acknowledged:  the existence of the CIA's secret detention and

enhanced interrogation program, <u>Condon Decl.</u> ¶¶ 15-17; the CIA's use of an "alternative set of procedures," a "new interrogation program," "enhanced interrogation techniques" and "special methods of questioning" on detainees, <u>Id.</u> ¶¶ 16, 19; Ex.G; the role of government lawyers in "approving" and "authorizing" the CIA's use of "enhanced interrogation techniques," <u>Id.</u> ¶¶ 20, 22, 26; Exs. H, J, M; that government lawyers reviewed methods proposed by the CIA and deemed waterboarding legal, <u>Id.</u> ¶ 20; Exs. H, I; that the CIA used waterboarding on three identified detainees; <u>Id.</u> at ¶ 21; Ex. I; the names of specific individuals subjected to "enhanced interrogation techniques," included several of the fourteen individuals transferred from secret CIA prisons to Guantanamo; <u>Id.</u> ¶ 16; 27, 28; Ex.E;  and information about specific individuals' captures and interrogations during secret detention, including that of Khalid Sheikh Mohammed, <u>Id.</u> ¶21; Ex.I. This information, already in the public domain, describing the CIA's "enhanced interrogation" program — a portion of which has even been acknowledged by the President — undermines the CIA's claim that disclosure of legal memoranda purportedly authorizing the program's methods would result in damage to national security.

The Government's failure to address the issue of public disclosures is in contrast with its previous acknowledgement that it has an obligation to do so and its recognition that information about waterboarding, in particular, may not be withheld. <u>See</u> <u>Condon Decl.</u> ¶ Ex. K (citing February 5, 2008 letter from Sean H. Lane, Assistant United States Attorney for the Southern District of New York, apprising the Court that disclosures by the Director of the CIA to the Senate Select Committee on Intelligence could "affect the CIA's positions in this litigation").  Specifically, the Government has recognized that

because information related to the CIA's use of waterboarding has been officially acknowledged, disclosure of information related to that topic may no longer be withheld. See Condon Decl. ¶ Ex. L (May 23, 2008 letter from Sean H. Lane, to Gibbons PC, reporting that the CIA had determined segregable information could be produced in light of CIA Director's disclosures "concerning the CIA's past use of an interrogation technique know as waterboarding").  According to the New York Times article, the Bradbury Memoranda specifically address waterboarding.  See Condon Decl., Ex. A, Secret U.S. Endorsement of Severe Interrogations (reporting that one Bradbury Memorandum concluded that waterboarding could be legal in particular circumstances and another authorized its use in combination with other interrogation techniques).  But the Government's Vaughn declarations wholly fail to address the effect of the Government's official acknowledgements on whether any portion of the three memoranda must be disclosed.  Not only has the Government potentially failed to disclose segragable information, see Schiller v. NLRB, 964 F.2d 1205, 1209-10 (D.C. Cir. 1992) (describing Government's obligation to engage in a meaningful segrability analysis so that a court may "enter a finding of segrability or lack thereof"); see also 5 U.S.C.A § 522 (b), it has also failed to meet its burden of identifying and describing the damage that would result from release of the memoranda, see Exec. Order No. 12,958, § 1.2(4).

Moreover, this Court should be wary of deferring to the blanket claims of "damage to national security" in the Government's Vaughn declarations, given that the agency has significant incentives to conceal illegal conduct and avoid embarrassment — an invalid basis for both classifying information under Executive Order No. 12,958, §

18

1.8(a) and withholding information under FOIA.  See ACLU v. DOD, 389 F. Supp. 2d at

564-65 (citing Executive Order No. 12,958, § 1.7(a) (prohibiting classification in order to

conceal "violations of law")).  Deference to these claims is also unwarranted given that

the agency has  voluntarily released similar legal memoranda,[7] apparently recognizing

that their disclosure would not pose a threat to national security.

In short, the Government has failed to meet its burden of establishing that

disclosure of the Bradbury memoranda would pose a threat to national security because it

has not shown that they contain information  materially distinct from that in the public

domain.  Accordingly, this Court should order release of the documents.  At the very

least, the Court should review the three documents in camera to assess the applicability of

Exemption 1.  Indeed, Congress has made clear that  in camera review  is particularly

warranted when the government asserts Exemption 1 withholdings.  See Halpern v.

DOD, 181 F.3d at 291; see also, Allen, 636 F.2d at 1295.   Such review is particularly

appropriate with respect to the Bradbury Memoranda given that "the conclusory nature of

the  [CIA's]  segregability  determination"  prevents  meaningful  review  of  the

Government's claimed exemptions, Elec. Privacy Info. Ctr. ("EPIC") v. DOJ, 511 F.

---

[7] See Press Briefing by White House Counsel Judge Alberto Gonzales et al, June 22, 2004, *available at http://www.whitehouse.gov/news/releases/2004/06/20040622-14.html* (announcing the release of "two distinct set of documents, those that were generated by government lawyers to explore the limits of the legal landscape as to what the Executive Branch can do within the law and the Constitution as an abstract matter [as well as] documents that reflect the actual decisions issued by the President and senior administration officials directing the policies that our military would actually be obliged to follow").  On April 1, 2008, the government released in its entirety an 81 page March 14, 2003 memo addressed to the General Counsel of the Defense Department that, until its release, had been claimed by the Department of Defense to be immune from disclosure  under  FOIA  exemptions  1,  3  and  5.  *available  at http://media.washingtonpost.com/wp-srv/nation/pdfs/OLCMemo1-19.pdf*.

Supp. 2d 56, 70-71 (D.C. Cir. 2007), and the public interests served by disclosure, see Founding Church of Scientology v. Smith, 721 F.2d 828 (D.C. Cir. 1983) (recognizing that in camera review is particularly appropriate when strong public interest is at stake).

### C.  OLC Has Not Met Its Burden of Proving That Responsive Records May Be Withheld Pursuant to Exemption 5

Exemption 5 applies only to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This exemption has been interpreted to apply to information that would be privileged in the civil discovery context, including information protected under the attorney work product, deliberative process, and attorney-client privileges. Dept. of Interior v. Klamath Water Users Protective Ass'n., 532 U.S. 1, 8 (2001).; Wood v. F.B.I., 432 F.3d 78, 83 (2d Cir. 2005).  Here, OLC invokes the attorney-client and the deliberative process privileges as a basis for withholding the memoranda. Fourth Bradbury Decl. ¶ 11. However, because the Bradbury Memoranda appear to be the adopted policy or working law of the OLC and CIA, the Government has not sustained its burden of showing that either privilege applies.

### 1.  Exemption 5 does not apply because the Bradbury Memoranda constitute adopted policy and secret law.

The attorney-client privilege protects "a client's confidences to his or her attorney" made for the purpose of securing legal advice. Coastal States Gas Corp. v. DEP, 617 F.2d 854, 862 (D.C. Cir. 1980).  This privilege, however, "is narrowly construed and is limited to those situations in which its purposes will be served." Id. In addition, the deliberative process privilege protects the internal deliberations of the Government from public disclosure. La Raza, 411 F.3d at 356.  An agency invoking the privilege must demonstrate that a document is "(1) predecisional, i.e. prepared in order to

20

assist an agency decisionmaker in arriving at his decision, and (2) deliberative, i.e., actually . . . related to the process by which policies are formulated." Id. at 356 (alternation in original and internal quotations omitted).  Thus, neither privilege protects final agency policy, opinions with the force of law, or "communications that implement an established policy of an agency." Taxation With Representation Fund v. IRS, 646 F.2d 666, 677 (D.C. Cir. 1981).

As the Second Circuit made clear in La Raza, 411 F.3d at 357, the principal reason for withholding a document under FOIA Exemption 5 — to avoid chilling agency deliberation and open communication between clients and their attorneys — is not served once a document is adopted or incorporated into agency policy.  Thus, courts have reasoned that the exemption was never intended to protect an agency's "secret" or "working" law.  See e.g., Coastal States, 617 F.2d at 866; Providence Journal Co. v. U.S. Dept. of Army, 981 F.2d 552, 556 (1st Cir. 1992) ("FOIA was designed to expose the operations of federal agencies to public scrutiny without endangering efficient administration, as a means of deterring the development and application of a body of 'secret law.'").

Here, the Government's withholding of the Bradbury Memoranda is improper because the record  indicates that the Memoranda reflect the Department of Justice's adopted policy with respect to interrogation of CIA detainees.  Based on descriptions provided by current and former justice department officials, the New York Times reported that the memoranda are legal "opinions" providing "explicit authorization" for some of the harshest interrogation techniques used by the CIA, and notes that the opinions "remain in effect."  Condon Decl. ¶ Ex.A.  In addition, CIA Director General

21

Hayden has publicly acknowledged that the Department of Justice "approved" the CIA's interrogation methods.  See id. ¶ 22; Ex. J.  Such documents, reportedly authored by "top officials" in the Department of Justice, "approved" by then-Attorney General Alberto Gonzalez, and purportedly sanctioning specific interrogation techniques, appear to reflect the DOJ's binding opinion on permissible interrogation methods.  See Coastal States, 617 F.2d at 868 (noting that a document from a superior official "is more likely to contain instructions to staff explaining the reasons for a decision already made"); N.Y. Public Interest Research Group v. U.S. E.P.A., 249 F. Supp. 2d 327, 337 (S.D.N.Y. 2003) (stating Exemption 5's privileges only apply where disclosure would "reflect the personal opinions of the writer rather than the policy of the agency").

Moreover, while the Government's Vaughn Declaration asserts in conclusory terms that each of the memoranda "is deliberative in nature [because] each reflects the Office's confidential legal advice to the CIA regarding the development of interrogation policies for al Qaeda terrorists," Fourth Bradbury Decl. ¶ 11, the Government also suggests that the Bradbury Memoranda came to conclusions regarding the legality of methods *already* being utilized by the CIA.  See Fourth Bradbury Decl., ¶ 5 (stating that the memoranda were issued in response to request by CIA for "legal advice . . . on whether its procedures for interrogating high-level al Qaeda operatives complied with a particular federal law and treaty provision").  But the courts have recognized that agency memoranda reflecting such final legal opinions applying the law to particular facts are not deliberative in nature.

For example, in Sterling Drug, Inc. v. FTC, 450 F.2d 698, 708 (D.C. Cir. 1971), the United States Court of Appeals for the D.C. Circuit held that two memoranda issued

by the Commissioner of the Federal Trade Commission in response to particular cases reflected final legal opinions applying law to specific facts.  The Court held that rather than reflecting "ideas and theories which go into the making of the law," such memoranda "are the law itself, and as such should be made available to the public."  Id. Likewise in Tax Analysts v. Internal Revenue Services, 117 F.3d 607, 619 (D.C. Cir. 1997), the Court held that answers of the national office of the IRS's Office of Chief Counsel to legal questions submitted by the IRS and Chief Counsel personnel in the field could not be withheld under Exemption 5 because they "created a body of private law, applied routinely as the government's legal positioning in its dealings with taxpayers." Id.  Even more on point, in La Raza, 411 F.3d at 357, the Second Circuit held that OLC memoranda did not qualify for protection under Exemption 5, given that the evident intent of the Agency was "to assure third parties as to the legality of the actions the third parties were being urged to take."  That case involved an OLC memorandum providing that state and local law enforcement officials could lawfully enforce the civil provisions of federal immigration law.  Id. at 352.  The court concluded that the memorandum could not be withheld under FOIA Exemption 5 because DOJ statements made clear that the Agency intended its memorandum to be followed.  Id. at 358.

Similarly here, there is no evidence in the public record, or in the OLC's Vaughn Declaration, that the views contained in the Bradbury Memoranda and shared with the CIA were tentative or unofficial in nature, or that those views did not express the OLC's final legal position on the CIA's authority to engage in the particular interrogation techniques addressed.  See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975);

La Raza, 411 F.3d at 356.  Accordingly, the record suggests that the OLC memoranda served as the final agency position on the legality of the CIA's procedures.

  This Court has previously recognized these principles when it concluded that another, similar OLC legal memorandum — referenced as item 29 in this litigation — "may have been incorporated into official practice and policy, or as justification" for interrogation policy.  See ACLU v. DOD, 04-civ-4151, document No. 292 (May 8, 2008 Order Granting Plaintiffs' Motion for Reconsideration and requiring in camera-review of August 2002 OLC memorandum).  The Court concluded that Exemption 5 did not protect disclosure of this document in light of the February 7, 2008 testimony of Attorney General Mukasey in an oversight hearing before the House Judiciary Committee, in which he explicitly acknowledged that OLC had issued an opinion defining and "authorizing" the limits of the CIA interrogation program, and that the Justice Department would not prosecute CIA personnel because they had followed the OLC's opinion.  See id.; Plaintiffs' Supplemental Reply Br. In Further Support Of Third Motion For Partial Summary Judgment (Apr. 18, 2008) (citing Verbatim Tr. of House of Rep. Judiciary Committee Hearing, 2008 WL 331459 (F.D.C.H.) at 8, 9); Condon Decl. ¶20; Ex. H.  The Attorney General's disclosure is also relevant here:  it supports Plaintiffs' position that the Memoranda set forth Government policy, and undermines any argument that they are, in fact, deliberative.

  Given the official acknowledgment that the August 2002 memorandum reflected DOJ policy on the subject of CIA interrogation, subsequent memoranda addressing the same subject or refining OLC positions should presumptively be considered the "working law" and policy of the agency, as well.  That is true particularly where public accounts of

the Bradbury Memoranda describe them as providing "explicit authorization" for the use of harsh interrogation techniques on terror suspects by the CIA — consistent with previous practice of the OLC.  See Condon Decl. Ex. A, Secret U.S. Endorsement of Severe Interrogations.  Given the official acknowledgement that OLC had already set the boundaries of CIA interrogation policy in 2002, this Court should reject the Government's argument that in issuing the Bradbury Memoranda in 2005, the agency was merely deliberating or providing "legal advice" with respect to the "development of interrogation policies for al Qaeda terrorists."  See Fourth Bradbury Decl. ¶ 11.  The history and role of the OLC in setting interrogation policy suggests otherwise.  See La Raza, 411 F.3d at 357 n.5 (stating that "courts must examine all the relevant facts and circumstances in determining whether express adoption or incorporation by reference has occurred").

Moreover, while the OLC claims in its Vaughn Declaration that the OLC's legal advice to the CIA is "not itself dispositive as to any policy adopted by the Executive Branch, including the CIA [because the] OLC itself does not purport, and in fact lacks authority, to make any policy decisions," Fourth Bradbury Decl. ¶ 12, the record suggests that the CIA adopted the OLC directive as its policy, as well.  As a threshold matter, the views of the OLC are considered binding opinions by the executive branch.  See Cf Tenaska Washington Partners II, L.P. v. U.S., 34 Fed. Cl. 434, 439 (1995) ("Memoranda issued by the OLC . . . are binding on the Department of Justice and other Executive Branch agencies and represent the official position of those arms of government."); Randolph D. Moss, Executive Branch Legal Interpretation: A Perspective from the Office of the Legal Counsel, 52 ADMIN. L. REV. 1303, 1305 (2000) ("When the views of the

Office of Legal Counsel are sought on the question of the legality of a proposed executive branch action, those views are typically treated as conclusive….).  And, as the Attorney General made clear in his February 2008 testimony, the CIA had looked to the OLC to determine permissible interrogation policy previously and had followed the OLC's directives in the past.  See Condon Decl. ¶ 20, Ex. H; Verbatim Tr. of House of Rep. Judiciary Committee Hearing, 2008 WL 331459 (F.D.C.H.) at 8, 9; see also Press Release, Central Intelligence Agency, Statement by CIA Director of Public Affairs Jennifer Millerwise (Mar. 18, 2005), *available at https://www.cia.gov/news-information/press-releases-statements/press-release-archive-2005/pr03182005.html* ("CIA policies on interrogation have always followed legal guidance from the Department of Justice.").  Accordingly, "examin[ing] all the relevant facts and circumstances in determining whether express adoption or incorporation by reference has occurred" it is clear that the CIA adopted the Bradbury Memoranda as its policy and working law.[8]  See La Raza, 411 F.3d at 357 n.5.  Nonetheless, whether the CIA followed the OLC's memoranda or deviated from that policy does not degrade the status of the Memoranda as final DOJ policy.  See Tax Analysts v. IRS, 294 F.3d 71, 81 (D.C. Cir. 2002) (holding memos from Office of Chief Counsel to IRS field officers were "final

---

[8] No court has specifically addressed the question of which party has the burden of establishing adoption or incorporation by reference in the FOIA context.  In light of the fact that FOIA generally places the burden on the government to demonstrate why records should be withheld, *see* 5 U.S.C. § 552(a)(4)(B); Halpern v. DOD, 181 F.3d at 287, and the fact that a Defendant agency is far better placed than a FOIA Plaintiff for accessing information relating to the agency's adoption, S.Rep. No. 813, 89th Cong., 2nd Sess., 8 (1965) ("Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it"), it is appropriate for the FOIA defendant to demonstrate that a record has not been adopted or incorporated by reference into its policy.  However, even if the burden were to rest on Plaintiffs, they have amply met that burden here.

legal position[s]" of the Agency even though the memos did not necessarily "reflect the final programmatic decisions of the program officers that request[ed] them"). Rather, the central role of the OLC in adopting recent policy governing the legality of CIA interrogation methods, and the CIA practice of following OLC directives, presumptively establish that the Bradbury Memoranda constituted the agencies' adopted policy and working law. At the very least, it is the agencies' burden to demonstrate otherwise, 5 U.S.C. § 552(a)(4)(B), which their <u>Vaughn</u> Declarations have failed to do.

> **2.    The attorney client privilege does not apply because the Government has failed to demonstrate that it has maintained the confidentiality of information contained in the Bradbury Memoranda.**

In order to invoke the attorney-client privilege pursuant to Exemption 5, the agency has the burden of demonstrating that confidentiality was maintained at the time of the communication and thereafter. See <u>Coastal States</u>, 617 F.2d at 863 (stating agency must show it was "reasonably careful to keep this confidential information protected from general disclosure"). If the information "is later shared with third parties, the privilege does not apply." <u>Mead Data Central, Inc. v. U.S. Dept. of Air Force</u>, 566 F.2d 242 (D.C. Cir. 1977). Given the record of extensive public disclosures regarding the CIA's secret detention and interrogation program, the OLC has not met its burden.

In particular, CIA Director Hayden, has acknowledged that:

> CIA officers have testified in 57 congressional hearings, and [were] responding to 29 congressionally legislated requests for information — as well as 254 other letters, questions and requests. CIA experts have given more than 500 briefings to members of Congress and their staffs. We have issued some 100 congressional notifications about our sensitive programs. Everything is on the table. I personally briefed the Hill nine times since last September on renditions, detentions, and interrogations.

[Condon Decl. ¶ 17, ex. F.]

Given the extensive information revealed to third parties regarding the CIA's detention and interrogation practices, the Government has not met its burden of establishing that it has maintained the confidentiality of allegedly privileged information contained in the Bradbury Memoranda.  See Coastal States Gas Corp., 617 F.2d at 863. That Members of Congress who received information from the CIA about interrogations may have had security clearance is, of course, no answer to the Exemption 5 question of whether the privilege was destroyed by the communication of allegedly privileged information to parties outside the attorney-client relationship.  See Mead Data Central, Inc., 566 F.2d at 253.  Indeed, the extent of these disclosures suggests that the privilege does not apply.

At the very least, OLC has completely failed to demonstrate that non-privileged information within the Bradbury Memoranda that could be segregated has, in fact, been. Without addressing these disclosures to third parties, the Government summarily concludes that "no portions of the documents can be released without disclosing information protected under FOIA Exemption Five."  Fourth Bradbury Decl., ¶ 14.  But this Court has previously rejected similarly vague language as an inadequate basis for withholding documents.  See ACLU v. DOD, 389 F. Supp. 2d at 567 (concluding that declaration's generalized assertion of "no meaningful, reasonably segregable, non-exempt portions" provided "no feasible way for [court] to evaluate the conclusory determination of lack of segregability" and, therefore, finding in camera review appropriate).  It should do so again here.

In sum, because the Government has failed to demonstrate that it has maintained the confidentiality of information contained in the Bradbury Memoranda, and has failed

to address whether non-privileged portions of the memoranda may be segregated, the Government has failed to meet its burden of establishing proper withholding under FOIA Exemption 5.  Accordingly, this Court should order disclosure or conduct an in camera review.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court order Defendants OLC and CIA to release in unredacted form the three Bradbury Memoranda at issue in this motion.  In the alternative, this Court should conduct an in camera review of these documents in order to determine whether they should be released in full or subject to an analysis whereby those portions that ought not be disclosed are segregated, and the rest disclosed.

Respectfully submitted,

_____/LSL/_____
Lawrence S. Lustberg
Jennifer B. Condon
GIBBONS, P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

Jameel Jaffer
Amrit Singh
Judy Rabinovitz
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION*
125 Broad St.
New York, New York 10004

Michael Ratner
Gitanjali Gutierrez
Emilou MacClean
Shayana Kadidal
CENTER FOR CONSTITUTIONAL
RIGHTS

666 Broadway, 7th Floor
New York, New York 10012

Beth Haroules
Arthur Eisenberg
New York Civil Liberties
Union Foundation
125 Broad Street
New York, NY 10004

Dated: December 12, 2008

*Attorneys for Plaintiffs*