UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION,
et al.,

        Plaintiffs,              04 Civ. 4151 (AKH)

    v.

DEPARTMENT OF DEFENSE, et al.,

        Defendants.

---

## DECLARATION OF LEON E. PANETTA, DIRECTOR, CENTRAL INTELLIGENCE AGENCY

I, LEON E. PANETTA, hereby declare and state:

### I.   INTRODUCTION

1.  I am the Director of the Central Intelligence Agency (CIA).  In my capacity as Director, I lead the CIA and manage the Intelligence Community's human intelligence and open source collection programs on behalf of the Director of National Intelligence (DNI).  I have held this position since 13 February 2009.  I have held a number of positions in the executive and legislative branches, including serving as President Clinton's Chief of Staff from 1994 to 1997, Director of the Office of Management and Budget (OMB) from 1993 to 1994, and congressional representative to California's 16th (now 17th) Congressional District from 1977 to 1993.

2.   I make the following statements based upon my personal
knowledge and information made available to me in my official
capacity.   The judgments expressed in this declaration are my
own.

3.   Through the exercise of my official duties, I have been
advised of this litigation and I am familiar with the CIA
documents and information currently at issue in this case.   I
understand that the Plaintiffs filed this suit on June 2, 2004,
under the Freedom of Information Act (FOIA) seeking, among other
things, CIA records relating to the treatment of detainees in
U.S. custody.   I also understand that on May 7, 2009, the Court
ordered the Government to compile a list of documents related to
the contents of 92 destroyed videotapes of detainee
interrogations that occurred between April and December 2002;
and that pursuant to the Court's Order, the CIA has identified
580 documents.   I further understand that, pursuant to the
Court's Order, a sample of 65 documents was selected for review
for potential release.

4.   The purpose of this declaration and accompanying Vaughn
index (attached and hereby incorporated) is to describe, to the
greatest extent possible on the public record my determination,
that the 65 documents currently at issue must be withheld in
their entirety from public disclosure.   I am also submitting a
classified in camera, ex parte declaration to provide additional

2

details that cannot be discussed on the public record.   Part II of this declaration describes the CIA documents and information at issue; and Part III describes the FOIA exemptions upon which the CIA relies.

## II.   CIA DOCUMENTS AND INFORMATION AT ISSUE

5.   The majority of the documents currently at issue are TOP SECRET communications to CIA Headquarters from a covert overseas CIA facility where interrogations were being conducted. These TOP SECRET communications consist primarily of sensitive intelligence and operational information concerning interrogations of Abu Zubaydah.   Drafted during the timeframe the interrogations were being conducted, these communications are the most contemporaneous documents the CIA possesses concerning these interrogations.   In addition to these TOP SECRET communications, there are also a small number of miscellaneous documents, which include notes of CIA employees who reviewed the 92 videotapes before they were destroyed, logbooks containing details of the interrogations, and a photograph.   These miscellaneous documents, like the operational communications, contain TOP SECRET operational information concerning the interrogations, and were drafted either contemporaneously with the interrogations or with a viewing of the now-destroyed videotapes.

3

6.   I want to emphasize to the Court that the operational
documents currently at issue contain detailed intelligence
information, to include: intelligence provided by captured
terrorists; intelligence requirements that CIA prioritized at
specific points in time; what the intelligence community did not
know about our enemies in certain time frames, i.e.,
intelligence gaps; information concerning intelligence methods,
that would permit terrorists to evade questioning; information
that could identify CIA officers and others engaged in
clandestine counterterrorism operations; and information that
would disclose the locations of covert CIA facilities overseas
and the identities of foreign countries that have assisted the
CIA in collecting information on terrorist organizations.

7.   Much of the information in the documents is
intelligence that was being provided to the field and
intelligence that was being gathered from the interrogations.
This sensitive intelligence provides important insight into what
the CIA knew--and what the CIA did not know, i.e. intelligence
gaps--at specific points in time on specific matters of
intelligence interest.   I have determined that the disclosure of
intelligence about al-Qai'da reasonably could be expected to
result in exceptionally grave damage to the national security by
informing our enemies of what we knew about them, and when, and
in some instances, how we obtained the intelligence we

possessed. This intelligence information is therefore properly exempt from disclosure under FOIA Exemptions b(1) and b(3).

8. Information concerning the names and titles of CIA personnel, and information concerning CIA organization, functions, and filing information, has also been withheld from the documents at issue based on FOIA Exemptions b(1) and b(3). Names and identifying information of CIA personnel, and CIA contractors and employees of other federal agencies involved in clandestine counterterrorism operations, also has been withheld on the basis of FOIA Exemption b(6), as the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.[1] As I discuss below, disclosing the identities of CIA employees and others involved in clandestine counterterrorism operations could place those individuals, as well as their families and friends, at grave risk from extremists seeking retribution.

9. The documents at issue also disclose the locations of covert CIA facilities and the identities of countries cooperating with the CIA in counterterrorism operations. As I discuss in my classified declaration, such information is properly classified and exempt form disclosure under FOIA Exemptions b(1) and b(3).

---

[1] As described in the attached Vaughn index, 62 of the 65 documents at issue contain names or identifying information of Agency employees or personnel involved in clandestine counterterrorism operations.

5

10.   As the Court knows, on April 16, 2009, the President
of the United States declassified and released in large part
Department of Justice, Office of Legal Counsel (OLC) memoranda
analyzing the legality of specific Enhanced Interrogation
Techniques (EITs).  As the Court also knows, some of the
operational documents currently at issue contain descriptions of
EITs being applied during specific overseas interrogations.
These descriptions, however, are of EITs *as applied* in actual
operations, and are of a qualitatively different nature than the
EIT descriptions *in the abstract* contained in the OLC memoranda.
As discussed below and in my classified declaration, I have
determined that information contained within the operational
documents at issue concerning *application* of the EITs must
continue to be classified TOP SECRET, and withheld from
disclosure in its entirety under FOIA Exemptions b(1) and b(3).

11.   The recently declassified OLC memoranda are legal
analyses by Department of Justice (DOJ) attorneys.  Although
they discuss the legality of specific proposed intelligence
activities, they do not reveal the type of information in the
operational documents at issue:  details of *actual* intelligence
activities, sources, and methods.  Even if the EITs are never
used again, the CIA will continue to be involved in questioning
terrorists under legally approved guidelines.  The information
in these documents would provide future terrorists with a

guidebook on how to evade such questioning.  I elaborate further on this point in my classified declaration.

12.  Additionally, disclosure of explicit details of specific interrogations where EITs were applied would provide al-Qa'ida with propaganda it could use to recruit and raise funds.  Al-Qa'ida has a very effective propaganda operation. When the abuse of Iraqi detainees at the Abu Ghraib prison was disclosed, al-Qa'ida made very effective use of that information in extremist websites that recruit jihadists and solicit financial support.  Information concerning the details of the EITs being applied would provide ready-made ammunition for al-Qa'ida propaganda.  The resultant damage to the national security would likely be exceptionally grave, and the withholding of this information is therefore proper under FOIA Exemption b(1).

13.  A small amount of information has been withheld based on FOIA Exemption b(5), as it is deliberative, attorney-client communications, or attorney work-product.[2]  Eight of the documents at issue contain deliberative process information, to include evaluations, opinions, and recommendations from CIA employees to their management concerning a future policy or course of action; one of those documents also contains an Agency

---

[2] As described in the attached Vaughn index, documents 28, 54, 56, 57, and 59-62 contain deliberative process privileged information; and documents 59 and 60 contain attorney-client communications and attorney work-product.

employee's notes from a discussion with a CIA attorney who reviewed the videotapes to evaluate legal and policy compliance; and another of those documents also contains that attorney's analysis and conclusions to CIA management concerning his legal and policy review.

14.   I have determined that no meaningfully segregable information can be released from the operational documents at issue.   In some instances, relatively innocuous words or sentences, some of which may even have been released in other contexts, are so inextricably intertwined with the classified information that their release would produce only meaningless, incomplete, fragmented, unintelligible words or sentences. Additional justification for denying these documents in full is provided in my classified declaration.   I am not suggesting a blanket CIA policy whereby no communications from the field, or documents containing operational information, could ever be released in part.   The CIA has at times, in its history, released in part such documents and I expect that we will again, even in this case.   The documents at issue, however, were purposefully selected for review based on the sensitive operational information they contain.   Where non-operational documents are at issue, as is the case with a portion of the documents within the scope of the recent remand order, the CIA will consider such documents for release.

15.  Lastly, I also want to emphasize to the Court that my determinations expressed above, and in my classified declaration, are in no way driven by a desire to prevent embarrassment for the U.S. Government or the CIA, or to suppress evidence of any unlawful conduct.  My sole purpose is to prevent the exceptionally grave damage to the national security reasonably likely to occur from public disclosure of any portion of these documents, and to protect intelligence sources and methods.

## III.   FOIA EXEMPTIONS

### A.   FOIA Exemption b(1)

16.  FOIA Exemption b(1) provides that the FOIA does not apply to matters that are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and

> (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1).

17.  The authority to classify information is derived from a succession of Executive orders, the most recent of which is Executive Order 12958.[3]  I have reviewed the documents at issue

---

[3]  Executive Order 12958 was amended by Executive Order 13292.  *See* Exec. Order No. 13292 (Mar. 28, 2003).  All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292.  *See* Exec. Order No. 12,958, 3 C.F.R. 333 (1995), *reprinted as amended in* 50 U.S.C.A. § 435 note at 193 (West. Supp. 2008).

under the criteria established by Executive Order 12958 and have determined that the information withheld on the basis of FOIA Exemption b(1) is in fact properly classified pursuant to the Order.

18. Section 6.1(h) of the Executive Order defines "classified national security information" or "classified information" as "information that has been determined pursuant to this order or any predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form." Section 6.1(y) of the Order defines "national security" as the "national defense or foreign relations of the United States."

19. Section 1.1(a) of the Executive Order provides that information may be originally classified under the terms of this order only if all of the following conditions are met:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order 12958, § 1.1(a).

20.  *Original classification authority* – Section 1.3(a) of the Executive Order provides that the authority to classify information originally may be exercised only by the President and, in the performance of executive duties, the Vice President; agency heads and officials designated by the President in the *Federal Register;* and United States Government officials delegated this authority pursuant to section 1.3(c) of the Order.  Section 1.3(c)(2) provides that TOP SECRET original classification authority may be delegated only by the President; in the performance of executive duties, the Vice President; or an agency head or official designated pursuant to section 1.3(a)(2) of the Executive Order.

21.  In accordance with section 1.3(a)(2), the President designated the Director of the CIA as an official who may classify information originally as TOP SECRET.[4]  Section 1.3(b) of the Executive Order provides that original TOP SECRET classification authority includes the authority to classify information originally as SECRET and CONFIDENTIAL.  With respect to the withheld information for which FOIA Exemption b(1) is

---

[4] Order of President, Designation under Executive Order 12958, 70 Fed. Reg. 21,609 (Apr. 21, 2005), *reprinted in* U.S.C.A. § 435 note at 205 (West Supp. 2008).  This order succeeded the prior Order of President, Officials Designated to Classify National Security Information, 60 Fed. Reg. 53,845 (Oct. 13, 1995), *reprinted in* U.S.C.A. § 435 note at 486 (West 2006), in which the President similarly designated the Director of the CIA as an official who may classify information originally as TOP SECRET.

asserted, I have reviewed the documents at issue and have determined that they contain information that is currently and properly classified SECRET and TOP SECRET.

22.  *U.S. Government information* - Information may be originally classified only if the information is owned by, produced by or for, or is under the control of the United States Government.  With respect to the withheld information for which FOIA Exemption b(1) is asserted, I have reviewed the documents at issue and have determined that they are owned by the U.S. Government, produced by the U.S. Government, and under the control of the U.S. Government.

23.  *Categories of classified information* - Information may be classified only if it concerns one of the categories of information set forth in section 1.4 of the Executive Order. With respect to the withheld information for which FOIA Exemption b(1) is asserted, I have reviewed the documents at issue and have determined that they contain information that concerns one or more of the following classification categories in the Executive Order:

(a)  Information concerning intelligence activities (including special activities), or intelligence sources or methods [§ 1.4(c)]; and

(b)  Information concerning foreign relations or foreign activities of the United States, including confidential sources [§ 1.4(d)].

24. *Damage to the national security* - Section 1.2(a) of
the Executive Order provides that information shall be
classified at one of three levels if the unauthorized disclosure
of the information reasonably could be expected to cause damage
to the national security, which includes defense against
transnational terrorism, and the original classification
authority is able to identify or describe the damage.
Information shall be classified TOP SECRET if its unauthorized
disclosure reasonably could be expected to result in
*exceptionally grave damage* to the national security; SECRET if
its unauthorized disclosure reasonably could be expected to
result in *serious damage* to the national security; and
CONFIDENTIAL if its unauthorized disclosure reasonably could be
expected to result in *damage* to the national security.

25. With respect to the withheld information for which
FOIA Exemption b(1) is asserted, I have reviewed the documents
at issue and have determined that the unauthorized disclosure of
the withheld information reasonably could be expected to result
in serious or exceptionally grave damage to the national
security, including damage to the United States' defense against
transnational terrorism and to the foreign relations of the
United States, and thus the information is classified SECRET or
TOP SECRET, respectively.  The damage to national security that
reasonably could be expected to result from the unauthorized

disclosure of this classified information is described in the relevant paragraphs above, and my classified declaration.

26.  *Proper purpose* - I have reviewed the documents at issue and have determined that the withheld information has been classified for a proper purpose and that no information has been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security.

27.  *Marking* - I have reviewed the documents at issue and have determined that the classified versions of these documents are properly marked in accordance with section 1.6 of the Executive Order.[5]  Each document bears on its face a classification level; the identity, by name or personal identifier and position, of the original classification authority; the agency and office of origin, if not otherwise evident; declassification instructions; and a concise reason for classification that, at a minimum, cites the applicable classification categories of section 1.4.

---

[5] Many of the operational communications were originally marked as SECRET in our communications database even though they should have been marked as TOP SECRET, and some of the miscellaneous documents were not properly marked. While we are not altering original electronic copies, this error is being corrected for copies printed for review in this case.

28. *Proper classification* – I have reviewed the documents at issue and have determined that the information withheld pursuant to Exemption (b)(1) has been classified in accordance with the substantive and procedural requirements of Executive Order 12958 and that, therefore, the withheld information is currently and properly classified.

29. *Special access program* – Section 6.1(kk) of the Executive Order defines a "special access program" as "a program established for a specific class of classified information that imposes safeguarding and access requirements that exceed those normally required for information at the same classification level." Section 4.3 of the Order specifies the U.S. Government officials who may create a special access program. This section further provides that for special access programs pertaining to intelligence activities (including special activities, but not including military operations, strategic, and tactical programs), or intelligence sources or methods, this function shall be exercised by the Director of the CIA. This section specifies that special access programs shall be established only when the program is required by statute or upon a specific finding that the vulnerability of, or threat to, specific information is exceptional; and the normal criteria for determining eligibility for access applicable to information

15

classified at the same level are not deemed sufficient to
protect the information from unauthorized disclosure.

30.  Officials of the National Security Council (NSC)
determined that in light of the extraordinary circumstances
affecting the vital interests of the United States and the
sensitivity of the activities contemplated in the CIA terrorist
detention and interrogation program, it was essential to limit
access to the information in the program.  NSC officials
established a special access program[6] governing access to
information relating to the CIA terrorist detention and
interrogation program.  As the executive agent for implementing
the terrorist detention and interrogation program, the CIA is
responsible for limiting access to such information in
accordance with the NSC's direction.  While CIA is no longer
using EITs or operating detention facilities, certain
information related to the program remains classified TOP
SECRET.  I explain this information in greater detail in my
classified declaration.

**B.   <u>FOIA Exemption b(3)</u>**

31.  FOIA Exemption b(3) provides that the FOIA does not
apply to matters that are:

> specifically exempted from disclosure by statute (other
> than section 552b of this title), provided that such
> statute

---

[6] The name of the special access program is itself classified SECRET.

        (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or

        (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . .

5 U.S.C. § 552(b)(3). I have reviewed the documents at issue and have determined that there are two relevant withholding statutes.

    32. *National Security Act of 1947* - Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1), provides that the DNI shall protect intelligence sources and methods from unauthorized disclosure. I have reviewed the documents at issue and have determined that they contain information, including information that remains classified, that if disclosed would reveal intelligence sources and methods. The CIA, therefore, relies on the National Security Act of 1947 to withhold any information that would reveal intelligence sources and methods.

    33. In contrast to Executive Order 12958, the National Security Act's statutory requirement to protect intelligence sources and methods does not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from their unauthorized disclosure. In any event, the information relating to intelligence sources and

17

methods in the documents at issue that is covered by the
National Security Act is the same as the information relating to
intelligence activities, sources, and methods that is covered by
the Executive Order for classified information.  Therefore, the
damage to the national security, including damage to the United
States' defense against transnational terrorism and to the
foreign relations of the United States, that reasonably could be
expected to result from the unauthorized disclosure of such
information relating to intelligence sources and methods is co-
extensive with the damage that reasonably could be expected to
result from the unauthorized disclosure of classified
information, which is described above, and in my classified
declaration.

34.  *Central Intelligence Agency Act of 1949* – Section 6 of
the Central Intelligence Agency Act of 1949, as amended,
50 U.S.C. § 403g, provides that in the interests of the security
of the foreign intelligence activities of the United States and
in order to further implement section 403-1(i) of Title 50,
which provides that the DNI shall be responsible for the
protection of intelligence sources and methods from unauthorized
disclosure, the CIA shall be exempted from the provisions of any
law which requires the publication or disclosure of the
organization, functions, names, official titles, salaries, or
numbers of personnel employed by the CIA.  In accordance with

section 403-4a(d) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-4a(d), foremost among the functions of the CIA is the collection of intelligence through human sources and by other appropriate means.

35. I have reviewed the documents at issue and have determined that they contain information, including information that remains classified, that if disclosed would reveal the organization and functions of the CIA, including the conduct of clandestine intelligence activities to collect intelligence from human sources using interrogation methods. In the interests of the security of the foreign intelligence activities of the United States and in order to further implement the DNI's statutory responsibility to protect intelligence sources and methods from unauthorized disclosure, the CIA relies on the Central Intelligence Agency Act of 1949 to withhold any information that would reveal the organization, functions, names, and official titles of personnel employed by the CIA, including the collection of foreign intelligence through intelligence sources and methods--such as the conduct of clandestine intelligence activities to collect intelligence from human sources using interrogation methods.

36. Again, in contrast to Executive Order 12958, the CIA Act's statutory requirement to further protect intelligence sources and methods by protecting the organization, functions,

19

names, and official titles of persons employed by the CIA, does
not require the CIA to identify or describe the damage to
national security that reasonably could be expected to result
from their unauthorized disclosure.  In any event, the
information relating to the organization and functions of the
CIA and intelligence sources and methods contained in the
documents at issue that is covered by the CIA Act's statutory
requirement is the same as the information relating to
intelligence activities, sources, and methods that is covered by
the Executive Order for classified information.  Therefore, the
damage to national security, including damage to the United
States' defense against transnational terrorism and to the
foreign relations of the United States, that reasonably could be
expected to result from the unauthorized disclosure of the
organization and functions of the CIA and intelligence sources
and methods is co-extensive with the damage that reasonably
could be expected to result from the unauthorized disclosure of
classified information, which is described above and in my
classified declaration.

### C.  FOIA Exemption b(5)

37.  FOIA Exemption b(5) provides that the FOIA does not
apply to matters that are inter-agency or intra-agency
memorandums or letters which would not be available by law to a
private party other than an agency in litigation with the

20

Agency.  I have reviewed the documents at issue and determined that eight are intra-agency memoranda that contain information that is protected from disclosure under the deliberative process privilege (pre-decisional deliberations, preliminary evaluations, opinions, and recommendations from CIA employees to their management concerning a future policy or course of action); and two of those contain information that is protected from disclosure as attorney work-product and attorney-client confidential communications (notes from a CIA employee's discussion with a CIA attorney about the attorney's review, at management request, of the videotapes to evaluate legal and policy compliance; and the CIA attorney's legal analysis and conclusions to CIA management concerning his legal and policy review).  Disclosure of deliberative process information would discourage open, frank discussions on matters of policy between subordinates and superiors.  Disclosure of attorney-client communications and attorney work-product would discourage CIA managers from seeking the advice of CIA lawyers, and could inhibit CIA lawyers from issuing opinions to CIA managers concerning complex and unsettled areas of law.

D.   **FOIA Exemption b(6)**

38.   FOIA Exemption b(6) provides that the FOIA does not apply to personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy. I have reviewed the documents at issue and determined that sixty-two contain personal information, and that the disclosure of that information would constitute a clearly unwarranted invasion of personal privacy. Disclosing information that could identify CIA employees and other personnel engaged in clandestine counterterrorism operations could place those individuals, and their families and friends, at grave risk from extremists seeking retribution. There is no legitimate countervailing public benefit that could come close to outweighing this paramount concern to protect U.S. Government employees and their associates.

## IV.   CONCLUSION

39.   The CIA has withheld from the 65 sampled documents information that concerns intelligence activities, sources, and methods, and foreign relations and foreign activities of the United States, primarily on the bases of FOIA Exemptions b(1), and b(3) in conjunction with the National Security Act of 1947 and the Central Intelligence Agency Act of 1949. Relatively small amounts of information have also been withheld pursuant to FOIA Exemptions b(5) and b(6), as they pertain to the deliberative process, attorney work-product, and attorney-client communications; and information the disclosure of which would be a clearly unwarranted invasion of personal privacy. With

respect to my decision that the documents at issue must remain
classified TOP SECRET in their entirety, and that no reasonably
segregable information can be released, I have duly considered
that small amounts of similar information have been released in
other contexts.  Because the operational documents at issue are
of a qualitatively different nature than the declassified OLC
memoranda and, as discussed in greater detail in my classified
declaration, because of the exceptionally grave damage to
clandestine human intelligence collection and foreign liaison
relationships reasonably likely to occur from releasing any
portion of them, they must continue to be classified in their
entirety.

40.  The CIA's primary mission is to gather the human
intelligence necessary to prevent terrorist attacks targeting
U.S. persons, property, and interests.  It is important to note
that the disruption of terrorist plots is rarely the dramatic
last minute heroism displayed in popular culture, television,
and movies.  Instead, careful intelligence collection and
analysis is designed to identify plotters and their objectives
and neutralize them before their plans can materialize.  Often
this involves identifying and focusing intelligence collection
efforts on specific individuals who are involved in nefarious
activities.  This targeting would be greatly diminished without
clandestine human sources, robust liaison relationships, and the

cooperation of foreign countries, all of which require the Agency and our Government to maintain the trust and secrecy necessary for these relationships to exist.

*   *   *   *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of June, 2009.


Leon E. Panetta
Director
Central Intelligence Agency

24