## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE, AND VETERANS FOR PEACE, | DOCKET NO.: 04-CV-4151 (AKH) |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF ARMY, DEPARTMENT OF NAVY, DEPARTMENT OF AIR FORCE, DEFENSE INTELLIGENCE AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEPARTMENT OF JUSTICE, AND ITS COMPONENTS CIVIL RIGHTS DIVISION, CRIMINAL DIVISION, OFFICE OF INFORMATION AND PRIVACY, OFFICE OF INTELLIGENCE POLICY AND REVIEW, FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF STATE; AND CENTRAL INTELLIGENCE AGENCY, | **Document Electronically Filed** |
| Defendants. | |
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE, AND VETERANS FOR PEACE, | DOCKET NO.: 05-CV-9620 (AKH) |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF JUSTICE, AND ITS COMPONENT OFFICE OF LEGAL COUNSEL, | |
| Defendants. | |

## PLAINTIFFS' REPLY BRIEF
## IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE
## COURT'S PARTIAL DENIAL OF PLAINTIFFS' FOURTH AND FIFTH
## SUMMARY JUDGMENT MOTIONS

## INTRODUCTION

Plaintiffs American Civil Liberties Union, Center for Constitutional Rights, Physicians for Human Rights, Veterans for Common Sense and Veterans for Peace respectfully submit this reply brief in support of Plaintiffs' Motion for partial reconsideration of the Court's December 29, 2009 Order, denying in part Plaintiffs' Fourth and Fifth Motions for Partial Summary Judgment. These summary judgment motions arise under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and involve the government's redactions of certain information in two publicly released and now-repudiated Office of Legal Counsel ("OLC") memoranda (the Fourth Motion for Partial Summary Judgment), and the government's withholding of approximately 580 documents that relate to the contents of 92 videotapes, which the Central Intelligence Agency ("CIA" or "the agency") destroyed in 2005 (the Fifth Motion for Partial Summary Judgment). After an *in camera* proceeding, in which the Court reviewed a sample of the documents and allowed counsel for the government to present *ex parte* argument, the Court upheld the government's withholding of nearly all of the government's redactions in the OLC memoranda and all documents relating to the contents of the destroyed videotapes. On January 15, 2010, Plaintiffs filed a motion seeking partial reconsideration of the Court's rulings, asserting that the Court overlooked authority indicating that Congress did not intend to authorize the CIA to withhold clearly unlawful, banned, and repudiated "intelligence sources and methods," and that the Court extended an unprecedented and unwarranted level of deference to the government in analyzing its FOIA withholdings, which extended to the *in camera* procedure as well.

In opposing Plaintiffs' motion, the government contends that *ex parte* government argument is an appropriate means of resolving FOIA disputes and that Plaintiffs have not objected to such argument previously in this case. Substantively, the government argues that the

Court correctly determined that the CIA's authority to utilize "intelligence sources and methods" is not limited in any meaningful way and that the CIA may keep "sources and methods" secret even if those methods are banned, repudiated, and illegal.

Because the government's positions are contrary to the FOIA statute, the CIA's authorizing statute, and otherwise lack merit, they should be rejected by this Court. Accordingly, this Court should reconsider its prior order and direct the government to release the information at issue.

## ARGUMENT

I.    **THIS COURT SHOULD REJECT THE GOVERNMENT'S CLAIM THAT RELIANCE UPON *EX PARTE, IN CAMERA* ARGUMENT IS AN APPROPRIATE MEANS OF RESOLVING FOIA DISPUTES BECAUSE IT IS CONTRARY TO THE STATUTE AND THIS COURT'S PREVIOUS EFFORTS TO PRESERVE THE ADVERSARIAL PROCESS UNDER FOIA.**

The government's defense of the *ex parte*, *in camera* argument offered by the government and relied upon by the Court in resolving these summary judgment motions should not dissuade the Court from its initial determination that the *in camera* procedure utilized to resolve these motions "did not permit" the "full adversarial treatment" warranted by the issues of "extraordinary public moment" presented. Order Granting Motion for Reconsideration (Jan. 26, 2010). Specifically, the government's claim that *ex parte*, *in camera* argument by government counsel is an appropriate means of resolving FOIA disputes should be rejected because it is contrary to the FOIA statute and to the FOIA jurisprudence recognizing that *in camera* review should be limited and permitted only to the extent necessary to engender meaningful judicial review while preserving the adversarial process under *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)).

Indeed, contrary to the government's position that *ex parte* argument is routinely allowed in FOIA cases, such process is not, of course, contemplated by the statute. FOIA, by its terms, only provides authority for district court judges to "examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552 (a)(4)(B). Indeed, many of the very cases cited by the government make clear that the statutory authority to conduct *in camera* review is limited to reviewing the classified record; those cases make no mention of, let alone justify, *ex parte* argument by the government. *See, e.g.*, Defs.' Op. Br. 13 (citing *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (noting district court's "inherent authority to review classified material *ex parte*, *in camera*, as part of its judicial review function")); Defs.' Op. Br. 11 (citing *Stein v. U.S. Dep't of Justice*, 662 F.2d 1245, 1254 (7th Cir. 1981) (noting that "in cases where the public record does not provide sufficient basis for a decision . . . the reviewing court may examine the records *in camera* . . . [and] [i]n some cases, the court may find it necessary to review classified affidavits *in camera*")). This limited statutory authority for *in camera* review explains why so many courts, including this one, have been extremely cautious in determining whether and when to employ *in camera* procedures in FOIA cases. *See, e.g.*, *Peltier v. FBI*, 563 F.3d 754, 759 (8th Cir. 2009) (stating that "[t]he role of *in camera* inspection . . . should be limited" and that the "primary role" of the district court when conducting an *in camera* review is "to review the adequacy of the affidavits and other evidence presented" (internal citation and quotation marks omitted)); *Pollard v. FBI*, 705 F.2d 1151, 1153 (9th Cir. 1983) (noting that the non-adversarial nature of *in camera* proceedings "has prompted courts to proceed with caution in endorsing *in camera* review of documents in FOIA cases").[1]

---

[1] While the government is correct that *Pollard* addressed the failure of a trial court to make a transcript of an *in camera* proceeding, it is nevertheless clear from the court's reasoning that, while it viewed a government official's *ex parte*

The government expends considerable effort in its opposition brief to discuss the ways in which *in camera* proceedings in FOIA cases may be proper. Defs.' Op. Br. 7-16. Plaintiffs do not disagree and, in fact, expressly noted in their motion for reconsideration that *in camera* review can be "appropriate and desirable under FOIA," Pls.' Mot. Rec. 11. Thus, as the government takes great (if unnecessary) pains to point out, Plaintiffs have consistently requested *in camera* review of disputed documents in this matter. But the fact that Plaintiffs have requested *in camera* review of some documents during the course of this matter under 5 U.S.C. § 552 (a)(4)(B), does not, of course, estop them from protesting the particular procedures used by the Court here. To be clear, Plaintiffs do not object to the *in camera* review of classified documents in these, or other, circumstances; rather, they object to the government's *ex parte* argument on the core legal questions at issue in these summary judgment motions, questions which both parties have extensively briefed on the public record.

In blurring this distinction, the government mischaracterizes Plaintiffs' objection as a "newfound position that this Court [is] precluded from discussing the contents of the documents at issue with the Government's attorneys or receiving answers to its substantive questions during the *in camera* session." Defs.' Op. Br. 15. But Plaintiffs' Motion for Reconsideration did not take issue with the Court discussing the content of classified documents with the government *in camera*. Instead, Plaintiffs' motion focuses on a process whereby the government was permitted "to present its arguments regarding the specific documents at issue," Pls.' Mot. Rec. 7 (citing Order Resolving Fourth and Fifth Summ. Mots. 1 (Dec. 29, 2009) (dkt. no. 398)), and, on at least one occasion, was invited to respond *ex parte* to arguments raised by Plaintiffs' briefing, *see*

---

participation in the authentication and description of documents to be appropriate, it would not have considered more extensive *ex parte* involvement to be similarly appropriate, innocuous or non-prejudicial to the other party. *See* 705 F.2d at 1154 (noting lack of "prejudice" where official simply authenticated and described documents).

Pls.' Mot. Rec. 8 (citing *In camera* Hr'g Transcript, Sept. 30, 2009 (Hereinafter "*In camera* Tr.")).

In fact, the transcripts of prior *in camera* proceedings in this case, which the government cites and appends to their opposition brief, make clear that this Court has historically attempted to limit government involvement during *in camera* proceedings to discussing the content of the relevant documents. *See* Decl. of Sean Lane, Ex. A, Jun. 8, 2006 Hr'g Transcript 6:1-3 (statement of Sean Lane noting that he informed Plaintiffs that the *in camera* procedure to be followed during that hearing would be that the government would "come in, basically, to show [the Court] the photos and answer any question [the Court] might have about the photos"); *id.* at 24:6-7 (noting a representative question by the Court during that *in camera* hearing, "what are the circumstances of taking this picture?"); Ex. B, May 12, 2008 H'rg Tr. 1-42 (reflecting discussions between government counsel and the Court regarding descriptions of documents and which portions of those documents the government sought to redact); Ex. C, Jun 17, 2008 H'rg Tr. (reflecting descriptions by government counsel of classified declarations filed by the government). But here, the *ex parte* involvement of government counsel in the *in camera* review went far beyond the review of documents or of classified affidavits and instead devolved into an *ex parte* argument, including one addressed to key arguments included in Plaintiffs' publicly filed briefs. *See In camera* Tr. at 13:22-25; 14:1-5 (reflecting that the Court asked government counsel to comment on an "anticipated" argument by Plaintiffs, that the government responded that "Your honor, I don't believe they've argued that," even though that precise argument was prominent in Plaintiffs' briefing, and, that after counsel for the government presented non-classified argument on this issue, the Court "defer[red] to the government's position").

While the prior transcripts do, at times, also reflect *ex parte* argument, *see, e.g.*, May 12, 2008 Tr. 22 (discussing position outlined in the government's opposition to Plaintiffs' 2008

motion for reconsideration), that Plaintiffs did not object in these instances once the redacted transcript became available, does not mean, as the government's brief suggests, that Plaintiffs are estopped from doing so now with respect to the September 30, 2009 *in camera* hearing.  Given the prejudice that resulted in this instance from the excessive *ex parte* argument — namely, that the Court overlooked relevant statutory authority and extended unwarranted and even unprecedented deference to the government in analyzing its FOIA withholdings—the Court's reliance on *in camera*, *ex parte* government argument to resolve the instant motions was ,most respectfully, not only improper but also different from other instances in which the Court heard *ex parte* argument, and Plaintiffs have not waived any objections to the harm that was, perhaps uniquely, visited upon them here.

Moreover, contrary to the government's suggestion, Defs.' Op. Br., Plaintiffs have cited extensive authority for the position that *ex parte, in camera* government argument is typically disfavored in FOIA cases.  Those case, cited above and in Plaintiffs reconsideration motion, Pls.' Mot. 14, stress the importance of limited *in camera* review directed to consideration of the documents.  And the language of FOIA itself—which speaks of in camera review of "records," and not of argument, 5 U.S.C. § 552 (a)(4)(B)—further makes clear that *ex parte* argument is not routinely allowed or favored in FOIA cases.  To the extent the government relies upon cases outside of the FOIA context involving the state secrets-privilege, in which government counsel has apparently been permitted to engage in *ex parte, in camera* argument, *see* Defs.' Op. Br. at 14, those cases are inapplicable to this FOIA matter, which is governed by 5 U.S.C. § 552 (a)(4)(B) and the adversarial process set forth in *Vaughn*, 484 F.2d at 824.  Indeed, as other courts have recognized, *in camera* review under FOIA requires a special analysis given that the very same statute in which this *in camera* procedure is provided for is, ironically part of

"legislation intended to open up the workings of executive agencies." *Stein*, 662 F.2d at 1252. For that reason, courts, including this one, have, as noted above, historically been careful to limit *in camera* review and to ensure prompt transcription of such proceedings in order to honor the "obligation to maintain the openness and adversarial nature of judicial proceedings. . . . [while] obtaining sufficient information from the government so as to perform the review function mandated under the Act." *Id.* Sustained, *ex parte*, *in camera* argument by the government prior to a public hearing, like that which took place here, is inconsistent with these principles.

In sum, the government has failed to demonstrate that the *ex parte* argument on the merits of these summary judgment motions was permissible under FOIA. Because those procedures "did not permit" the "full adversarial treatment" warranted by the issues of "extraordinary public moment" presented, *see* Jan. 26, 2010, Order Granting Motion for Reconsideration, (dkt. no. 403), greater scrutiny of the substantive issues and law relevant to this motion is warranted. Accordingly, as set forth below, because the Court overlooked or disregarded authority making clear that Congress did not intend for the government to utilize (and therefore keep secret) any and all intelligence sources and methods, Plaintiffs respectfully submit that the Court should reconsider its previous decision and order the government to release the information withheld.

## II.    THE GOVERNMENT'S CONTENTION THAT THE CIA'S AUTHORITY TO UTILIZE "INTELLIGENCE SOURCES AND METHODS" IS NOT LIMITED IN ANY MEANINGFUL WAY WHOLLY IGNORES LIMITING LANGUAGE IN THE CIA'S WITHHOLDING STATUTE.

In arguing that the CIA's authority to utilize "intelligence sources and methods" in furtherance of intelligence gathering is not limited in any meaningful way, the government ignores the clear limiting language within the CIA's withholding statute, the National Security Act of 1947. That statute, as amended, states that while the Director of National Intelligence ("DNI") may "protect intelligence sources and methods from unauthorized disclosure," 50

U.S.C. § 403-1(i)(1), he also "shall ensure compliance with the Constitution and laws of the United States by the Central Intelligence Agency," 50 U.S.C. § 403-1(f)(4).

Rather than explain why the Court should not interpret the CIA's withholding statute in light of this clear limiting language, contained within the very same statutory section upon which the government relied in support of its withholdings, the government instead maintains that FOIA does not permit the Court "to decide the legality or propriety of the government's intelligence activities in this FOIA case." Defs.' Op. Br. 18. But contrary to Defendants' suggestion, Plaintiffs do not argue that a finding of illegality is the touchstone for disclosure in FOIA cases. See Defs.' Op. Br. 17. Rather, Plaintiffs simply contend that the CIA may not keep secret, as "sources and methods," techniques that do not qualify as such because the CIA has no authority under its authorizing statute to use those sources and methods in the first place. This reading is supported by the withholding statute itself 50 U.S.C. § 403-1(f)(4) (requiring CIA's compliance with "the Constitution and laws of the United States"), as well as by FOIA precedent which, as Plaintiffs argue, was overlooked by the Court. See Navasky v. CIA, 499 F. Supp. 269, 274 (S.D.N.Y. 1980) (concluding, after reviewing the text of the CIA's withholding statute, its legislative history, and other sources of legislative intent, such as the Senate's 1976, Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities, that book publishing propaganda was not an intelligence method "contemplated by Congress" and thus could not be kept secret under FOIA); Weissman v. CIA, 565 F.2d 692 (D.C. Cir. 1977) (concluding that 50 U.S.C. § 403(d)(3)'s provision allowing the CIA to maintain the secrecy of "intelligence source and methods" did not extend to domestic law-enforcement functions given that "the prohibition against internal security functions" in the text of the

National Security Act of 1947 made clear that such activities were not within the CIA's mandate).

Tellingly, the government's opposition brief does not address these cases, which stand as examples of circumstances in which courts have, in the exercise of their obligations under FOIA, questioned whether "intelligence sources and methods" were within the CIA's mandate, concluding in both instances that because they were not, they could not be kept secret. Indeed, the government fails to explain why if courts presiding over FOIA disputes in *Navasky* and *Weissman* were able to conclude, based upon an analysis of the CIA's authorizing statutes and the legislative record informing them, that book publishing and domestic surveillance were not within the CIA's mandate, this Court lacks the same authority to determine whether Congress intended to authorize the CIA to engage in such patently unlawful activities as enforced disappearance, secret detention, and enhanced interrogations.

In fact, the government has failed to identify a single case that would support its position that the CIA may keep secret clearly illegal, banned, and improper "intelligence sources and methods." Instead, the government again relies upon inapposite cases which conclude that the illegality of a government program or the fact that a document contains information regarding illegal acts does not mean that the government may not maintain the secrecy of actual intelligence or valid intelligence sources and methods that might be revealed through disclosure of the document. *See* Defs.' Op. Br. 21 (citing *Agee v. CIA*, 524 F. Supp. 1290, 1292 (D.D.C. 1981); *Lesar v. Dep't of Justice*, 636 F.2d 472,483 (D.C. Cir. 1980); *Bennett v. Dep't of Def.*, 419 F. Supp. 663, 666 (S.D.N.Y. 1976)). Here, by contrast, the question is whether the CIA has may maintain the secrecy of programs of enforced disappearance, secret detention, and abusive interrogation as "intelligence sources and methods." Plaintiffs contend that it does not, because

it had no authority to engage in such acts in the first place, and they have already been revealed, banned and repudiated by the President himself. The government seems not to appreciate, and certainly does not offer a meaningful response to, this critical distinction, which is discussed throughout Plaintiffs' motion.

The government's failure to account for the plain language of 50 U.S.C. § 403-1(f)(4) is also revealed in its attempt to portray Plaintiffs' reconsideration argument as a claim that the Intelligence Reform and Terrorism Prevention Act ("IRTPA") "implicitly overturned" the broad interpretation of "intelligence sources and methods" in *CIA v. Sims*, 471 U.S. 159, 169 (1985).[2] Defs.' Op. Br. 23. Specifically, the government suggests that by asserting that the CIA's mandate is limited by the requirement of 50 U.S.C. § 403-1(f)(4) that the CIA must comply with "the Constitution and laws of the United States" — a requirement which was enacted as part of the IRTPA in 2004 — Plaintiffs are effectively claiming that IRTPA overturned *Sims*. Defs.' Op. Br. 23-25. The government contends that such a reading of IRTPA should be rejected because Congress could not have intended to overturn *Sims* without stating its explicit intent to do so. Defs.' Op. Br. 24.

But contrary to the government's position, this Court could certainly conclude that the CIA's mandate is limited by 50 U.S.C. § 403-1(f)(4), without holding that in enacting that provision, Congress overturned *Sims*. In fact, *Sims* narrowly addressed whether protected

---

[2] Significantly, in its opposition brief, the government never acknowledges 50 U.S.C. § 403-1(f)(4) directly and suggests that the only relevant change when IRTPA was enacted in 2004 was that "the authority for protecting intelligence sources and methods" was transferred from the Director of Central Intelligence to the Director of National Intelligence ("DNI"). Defs.' Op. Br. 23-24 (comparing 50 U.S.C. § 403(d)(3) (1988) with 50 U.S.C. § 403-1i (2006)). But the government strikingly leaves out a critical focus of Plaintiffs' reconsideration argument, that in transferring that authority to the DNI, Congress also included a new provision within that very same statute, requiring that the DNI ensure that CIA activities "compl[y] with the Constitution and laws of the United States." 50 U.S.C. 403-1(f)(4).

"intelligence sources" under the National Security Act of 1947 were limited to sources who provided information that the agency could not obtain "without guaranteeing the confidentiality of those who provide it." *Sims*, 471 U.S. at 164 (rejecting the lower court's view that the statute only protected sources that required confidentiality).  While the Court used expansive language in describing the CIA's authority to engage intelligence sources and methods, it did not exhaustively address all "sources and methods" within the CIA's mandate.  Even more importantly, the Court certainly did not address whether the CIA could keep secret patently unconstitutional conduct such as torture or secret detention on the grounds that there were legitimate "sources and methods."[3]  Because these questions were not before the Court, the authority cited by the government for the proposition that "Congress cannot be found to have overturned a Supreme Court decision, where it did not 'expressly change[] the statutory provision the Court had interpreted to achieve the opposite result," Defs. Op. Br. 24 (quoting *Agri Processor Co. v. NLRB*, 514 F.3d 1, 7  (D.C. Cir. 2008)), is simply inapposite.  That is, because *Sims* did not address the question presented here and thus never concluded that the CIA in fact had the authority to utilize "intelligence sources and methods" that violate "the Constitution and laws of the United States," *see* 50 U.S.C. § 403-1 (f)(4), there is simply no "repeal" or "overturning" at issue.[4]

_____

[3]    Moreover, as Plaintiffs have argued, in *Sims* the Supreme Court made clear that only intelligence sources and methods that "fall within the Agency's mandate to conduct foreign intelligence" may be properly classified and exempted from disclosure.  Pls.' Fourth Mot. for Partial Summ J. 12 (quoting *Sims*, 471 U.S. at 169).

[4]    By analogy, courts have concluded that when new statutory provisions simply place further limitations on an original statute, a "repeal" is not even at issue.  *See Harris v. Owens*, 264 F.3d 1282, 1296 (10th Cir. 2001) (stating there would be "no repeal-by-implication problem" when a "later statute simply addresses one particular application [of the former statute] and carves out an exception"); *Greenless v. Almond*, 277 F.3d 601, 608 (1st Cir.2002) ("The 'implied repeal' argument is an odd one because at issue is not whether Congress totally repealed [the statute], but whether it intended to carve out [a certain application] from the reach of that provision.").

Nevertheless, this Court is now confronted with an amended withholding statute that, beyond simply transferring authority for protecting intelligence sources and methods from the Director of the CIA to the DNI, also expresses, within the very same statutory section, Congress's unambiguous intent that CIA activities "compl[y] with the Constitution and laws of the United States." 50 U.S.C. § 403-1(f)(4). The government urges the Court to ignore that language, but has failed to present any justification for why it should do so, particularly where it is found within the very same withholding statute upon which the government relies in keeping the documents secret.

Moreover, none of the cases cited by the government for its claim that the amended National Security Act "continues to afford the same broad powers to protect intelligence sources and methods from disclosure in FOIA cases as it did prior to the reorganization of the intelligence community," Defs. Op. Br. 24-25, actually address the impact of 50 U.S.C. § 403-1(f)(4) upon the CIA's authority to utilize and maintain secret intelligence sources and methods. *See Lahr v. NTSB*, 453 F. Supp. 2d 1153, 1190-91 (C.D. Cal. 2006); *Larson v. Department of State*, 565 F.3d 857 (D.C. Cir. 2009); *Moore v. Bush*, 601 F. Supp. 2d 6 (D.D.C. 2009); *James Madison Project v. CIA*, 607 F. Supp. 2d 109 (D.D.C. 2009); *Gerstein v. CIA*, C-06-4643, 2008 WL 4415080, at *9 (N.D. Cal. Sept. 26, 2008). One decision cited by the government inaccurately states, without even acknowledging 50 U.S.C. § 403-1(f)(4), that Congress "to date left the NSA materially unaltered and so we must continue to afford the CIA broad deference." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007). And several of the decisions cited by the government actually support Plaintiffs' position that Congress could not have intended to allow the CIA to withhold sources or methods that are patently unconstitutional, illegal, or inhumane.

---

Because the same is necessarily true when a statute overrules Supreme Court precedent, the government's argument is unavailing.

- 13 -

See Terkel v. AT&T Corp., 441 F. Supp. 2d 899, 905 (N.D. Ill. 2006) (stating that the government's proposition if "taken to its to its logical conclusion . . . would allow the federal government to conceal information regarding blatantly illegal or unconstitutional activities simply by assigning these activities to the NSA [National Security Agency] or claiming they implicated information about the NSA's functions" and that the court was "hard-pressed to read section 6 [the relevant withholding statute] as essentially trumping every other Congressional enactment and Constitutional provision"); People for the Am. Way v. NSA, 462 F. Supp. 2d 21, 31 (D.C. Cir. 2006) (noting court's agreement with Terkel "that the scope of Section 6 is not without limits"). In sum, the government has failed to offer any sound justification, as there is none, for the proposition that this Court should ignore the requirement of 50 U.S.C. § 403-1(f)(4) that the CIA comply "with the Constitution and laws of the United States."

Finally, while the government contends that the Court has previously rejected Plaintiffs' argument regarding the CIA's lack of authority to engage in and maintain the secrecy of patently unauthorized "sources and methods," the transcript quoted by the Government reveals that the Court has not in fact resolved the arguments presented here. Rather, it is clear from the transcript that the Court was previously operating under the misimpression that it lacked the power to question whether the "sources and methods" that the CIA sought to protect were properly within the CIA's mandate. See Defs.' Op. Br. at 17 (quoting Jan. 17, 2008 Hr'g). But in so reasoning, as discussed in greater detail above, this Court did not consider Navasky, 499 F. Supp. at 274, or Weissman, 565 F.2d at 692, both of which provide clear examples of courts as part of their FOIA review, questioning whether the particular "intelligence sources" and methods at issue were within the CIA's mandate, and concluding in both instances that because they were not, such "sources and methods" could not be properly withheld. Nor did the Court consider 50

U.S.C. § 403-1 (f)(4), which again makes clear that the same Director tasked with withholding legitimate intelligence "sources and methods" must also ensure that the CIA "compl[ies] with the Constitution and laws of the United States."

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court, having determined to reconsider its disposition of these motions, should reconsider its prior order and direct the government to release the withheld information here at issue.

Respectfully submitted,


_\_/s/_ _Lawrence S. Lustberg_
Lawrence S. Lustberg
Jennifer B. Condon
GIBBONS, P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

Jameel Jaffer
Alexander A. Abdo
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004

Michael Ratner
Gitanjali Gutierrez
Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Beth Haroules
Arthur Eisenberg
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004

Dated: March 12, 2010

*Attorneys for Plaintiffs*