UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                              :

AMERICAN CIVIL LIBERTIES UNION, et al.,     :

                             :    **ORDER AND OPINION DENYING**

                   Plaintiffs,    :    **PLAINTIFFS' MOTION FOR**

                             :    **RECONSIDERATION:**

   -against-                      :    **FOIA EXEMPTION THREE**

                             :    **APPLIES  DESPITE CLAIMS**

DEPARTMENT OF DEFENSE, et al.,        :    **THAT UNDERLYING**

                             :    **INTELLIGENCE SOURCES OR**

               Defendants.   :    **METHODS VIOLATE THE**

                             :    **CONSTITUTION OR STATUTES**

                             :    **OF THE UNITED STATES**

                             :

                             :    04 Civ. 4151 (AKH)

                             :
------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

        The issue before me is whether, under the Freedom of Information Act (FOIA),

determinations by the Director of the Central Intelligence Agency (CIA), to exempt disclosures

revealing intelligence sources and methods, are subject to review by the district court to ascertain

if those sources and methods were illegal.  I hold that determinations by the CIA Director to

claim such exemptions are not subject to district court review for illegality.

## I.    <u>A Brief History of the Case</u>

        These proceedings under FOIA date back to 2003, when Plaintiffs served FOIA

requests on the Department of Justice (DOJ), the CIA, and other federal agencies, seeking

disclosure of records pertaining to the treatment of detainees, deaths of detainees while in U.S.

custody, and the rendition of detainees and other individuals to countries known to employ

torture.  Thousands of documents were produced, and I have issued orders and opinions ruling on various of the issues presented by the parties.[1]

In 2005, Plaintiffs served a FOIA request on DOJ's Office of Legal Counsel, specifying documents of particular interest.  Defendants produced certain unclassified documents and a Vaughn index providing substantiation why other documents were exempt.  See Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring as justification for claims of exemption "a relatively detailed analysis in manageable segments" and outlining guidelines for indexing). Comparing that which was produced and exempted against published news reports, it became clear to Plaintiffs that OLC had not disclosed certain memoranda that had authorized the use of enhanced interrogation techniques against detainees, and Plaintiffs filed a motion for preliminary injunction to compel such disclosure.  Again, Defendants claimed exemption to withhold the memoranda in their entirety, and provided Vaughn indices in support.

Plaintiffs also moved for summary judgment respecting these documents and others—Plaintiffs' fourth motion for summary judgment in this case.  Meanwhile, during the course of Plaintiffs' demands and motions, a national election ensued, administrations changed, and President Obama, on January 27, 2009, issued Executive Order 13491, which terminated the CIA terrorist detention and interrogation program, ordered the closure of the CIA detention and

---

[1]    See, e.g., ACLU v. Dep't of Def., 339 F. Supp. 2d 501 (S.D.N.Y. 2004) (ordering the Department of Defense to timely comply with FOIA requirements); ACLU v. Dep't of Def., 389 F. Supp. 2d. 547 (S.D.N.Y. 2005) (ordering release of photographs depicting treatment of detainees at Abu Ghraib prison facility in Iraq); ACLU v. Dep't of Def., No. 04 Civ. 4151 (AKH), 2005 U.S. Dist. LEXIS 25814 (S.D.N.Y. Oct. 21, 2005) (rejecting Government's argument that memorandum interpreting the Convention Against Torture involved "intelligence sources and methods" and ordering disclosure of that memorandum); Order Regulating Proceedings, ACLU v. Dep't of Def., No. 04 Civ. 4151 (AKH) (Doc. No. 305) (S.D.N.Y. Aug. 8, 2008); Order Resolving Fourth and Fifth Summary Judgment Motions, ACLU v. Dep't of Def., No. 04 Civ. 4151 (AKH) (Doc. No. 398) (S.D.N.Y. Dec. 29, 2009) (ordering, inter alia, disclosure of certain information contained in legal memoranda prepared by White House Office of Legal Counsel and ruling that Government could withhold certain operational cables).

interrogation program, ordered the closure of CIA detention facilities, prescribed interrogation techniques for individuals in U.S. custody, and revoked any inconsistent executive directives, orders, or regulations.  The Administration also voluntarily released, although with substantial redactions, the OLC memoranda sought by Plaintiffs.  Plaintiffs' motion became limited to two of the memoranda—the "Second OLC Memo," dated May 10, 2005, and the "Fourth OLC Memo," dated May 30, 2005.

Plaintiffs also filed a fifth motion for summary judgment, focused on documents related to videotapes of interrogations of a particular detainee that had been destroyed, in the face of court orders requiring production of the videotapes.  Allegedly, hundreds of hours of video were destroyed.  Plaintiffs have moved to hold the Government in contempt for the destruction of the video footage.  Motion for Contempt and Sanctions, ACLU v. Dep't of Def., No. 04 Civ. 4151 (AKH) (Doc. No. 254) (Dec. 12, 2007).  In response, I ordered Defendants to produce records relating to the contents of the destroyed tapes, known as "Paragraph 3 Documents," and to the acts of destruction, known as "Paragraph 4 Documents."  Order Regulating Government's Proposed Work Plan, ACLU v. Dep't of Def., No. 04 Civ. 4151 (Apr. 20, 2009) (Doc. No. 339). There are approximately 580 Paragraph 3 Documents, and they include contemporaneous records of interrogations, interrogation logbooks, a photograph, and other documents.  I deferred hearings with regard to the Paragraph 4 Documents pending certain investigations then in progress, and permitted the parties to move forward with motions on the Paragraph 3 Documents.

## II.      In Camera Consideration of Plaintiffs' Motions

On September 30, 2009, I conducted an *in camera*, *ex parte* review of the documents at issue in the fourth and fifth motions for summary judgment.  Government attorneys

and a court reporter were present.  I reviewed the documents and expressed preliminary rulings, and at times, posed questions to the Government attorneys about the documents.   The transcript of this proceeding was classified but was released, in redacted form, several weeks later.[2]  After the *ex parte* session ended, I heard oral argument in open court on various of the legal issues at hand, and expressed initial rulings, in particular, on the issue I am now asked by the Plaintiffs to reconsider, the effect of alleged illegality on Exemption 3 claimed by the CIA for not producing responsive documents.

Regarding the fifth motion for summary judgment, involving documents related to the destruction of the videotapes, I deferred to the security classifications imposed by the CIA Director and, with limited exceptions, I ruled in favor of withholding all Paragraph 3 Documents. Regarding the fourth motion for summary judgment, I ruled that the redacted portions of the two OLC memoranda contained information concerning intelligence activities, sources and methods, and information that would reveal the identities of CIA consultants, and I held that such information is specifically exempted from disclosure by statute.  I ordered disclosure of information in three instances, but gave defendants an opportunity to return in several weeks to offer more persuasive authority to justify withholding the information.  In response, the Government submitted two classified declarations, and I reviewed these *ex parte* and *in camera*, again with Government attorneys and a court reporter present.  After considering the classified

---

[2]      Transcript of Proceedings, <u>ACLU v. Dep't of Def.</u>, No. 04 Civ. 4151 (AKH) (Doc. No. 392) (S.D.N.Y. Sept. 30, 2009).  I conducted the *in camera* proceedings consistent with the protocol described in my February 6, 2008 memorandum, and attached as an annex to my order of May 8, 2008.  <u>See</u> Order Granting Plaintiffs' Motion for Reconsideration, <u>ACLU v. Dep't of Def.</u>, No. 04 Civ. 4151 (AKH) (Doc. No. 292 (S.D.N.Y. May 8, 2008).

declarations, I adhered to my preliminary rulings and ordered disclosure of the information.  The

transcript of the proceedings was made public in redacted form.[3]

Plaintiffs moved for reconsideration of my oral rulings expressed in open court on

September 30, 2009, and in my orders filed October 13, 2009 and December 29, 2009, and I

granted that motion.  The motion gave both sides the opportunity to fully brief the issues on the

basis of the full public record, to express objections, if any, to the proceedings that I had

conducted *in camera*, and to enable me to consider the issue afresh and to express my considered

views in this opinion.

Plaintiffs' motion seeks disclosure of names of certain detainees and all

contemporaneous cables describing the application of enhanced interrogation techniques against

a specific detainee.[4]  Plaintiffs contend that the Government should not be allowed to withhold

information relating to "intelligence sources and methods" that were illegal, and that the names

of detainees who were subjected to secret detention and the contents of destroyed videotapes

should not properly be considered to be intelligence sources or methods.  Plaintiffs contend that

Congress intended to limit "intelligence sources and methods" to those consistent with the

Constitution and laws of the United States and that only those sources or methods may be

properly withheld in a FOIA action.

---

[3]     Transcript of Proceedings, ACLU v. Dep't of Def., No. 04 Civ. 4151 (AKH) (Doc. No.
408) (S.D.N.Y. Oct. 29, 2009).

[4]     When Plaintiffs first argued their fourth and fifth motions for summary judgment, they
also sought disclosure of (1) names, titles, and other identifying information of certain CIA
consultants in the Second OLC Memorandum at page 29 n.33; (2) certain intelligence methods
described in the Second OLC Memorandum at pages 5 and 29 and in the Fourth OLC
Memorandum at pages 4-5, 7, and 11, and (3) the CIA standard interrogation policy, described in
the Fourth OLC Memorandum at page 32 n.29.
        In the instant motion for reconsideration, Plaintiffs have limited their application to the
names of certain detainees and their dates of capture, in the Second OLC Memorandum at pages
15-16 and 41, and in the Fourth OLC Memorandum at pages 5-8, 11, and 29.

### III.   Standard of Review

To resolve the motions for summary judgment, I must make a *de novo* review of the Government's withholding of the requested information, but in doing so, must accord "substantial weight" to agency affidavits.  Hayden v. National Security Agency, 608 F.2d 1381, 1384 (D.C. Cir. 1979); Weissman v. CIA, 565 F.2d 692, 697 n.10 (D.C. Cir. 1977).  Defendants have the burden of justifying nondisclosure by establishing the applicability of an exemption to the particular material.  5 U.S.C. § 552(a)(3); Hayden, 608 F.2d at 1386.  The exemptions should be interpreted narrowly "to provide the maximum access consonant with the overall purposes of the Act. "  See Hayden, 608 F.2d at 1386; Phillippi v. CIA, 546 F.2d 1009, 1011 n.2 (D.C. Cir. 1976).  As in any other action, summary judgment in a FOIA litigation "may be granted only if the moving party proves that no substantial and material facts are in dispute and that he is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); Founding Church of Scientology v. NSA, 610 F.2d 824, 836 (D.C. Cir. 1979).

### IV.   Discussion

#### a.  FOIA—Basic Policies

FOIA requires each federal agency to make available to the public a wide array of information, and sets out procedures by which requesters may obtain such information.  See 5 U.S.C. § 552(a).  FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies."  Halperin v. F.B.I., 181 F.3d 279, 286 (2d Cir. 1999).   However, FOIA also "represents a balance struck by Congress between the public's right to know and the Government's legitimate interest in keeping certain information confidential."  Ctr. for Nat'l Sec. Studies v. U.S. D.O.J., 331 F.3d 918, 925 (D.C. Cir. 2003).  Though they are narrowly construed, the exemptions "are intended to have

meaningful reach and application." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152

(1989); see Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

      **b.  "Intelligence Sources and Methods"**

      The central issue in the instant motion is whether, notwithstanding prior official

disclosures and an official repudiation of the underlying intelligence programs, the Government may,

under Exemption 3, properly withhold the information at issue in this action.[5]  Under Exemption 3, the

Government may withhold "matters that . . . are specifically exempted from disclosure by statute, . . .

provided that such statute (A) requires that the matters be withheld from the public in such a manner as

to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  In reviewing Exemption 3 claims,

district courts must determine whether there is a withholding statute and, if so, whether the withheld

material is within that statute's coverage.  CIA v. Sims, 471 U.S. 159, 167 (1985); Fitzgibbon v. CIA,

911 F.2d 755, 761-62 (D.C. Cir. 1990).  Here, the parties do not dispute that the first prong is satisfied.

Sims, 471 U.S. at 167; National Security Act, 50 U.S.C § 403-1(i)(1) (providing that "[t]he Director of

National Intelligence shall protect intelligence sources and methods from unauthorized disclosure");

(CIA Act of 1949, 50 U.S.C. § 403g) (same).  The gravamen of the dispute centers on the second

---

[5]     Defendants also argue for withholding the information under Exemption 1.  Exemption 1 provides that the Government is not obligated to disclose records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Since I find that the Government may withhold the requested material under Exemption 3, I need not reach the issue of whether Exemption 1 would also apply.

     In any event, I hold that, under Exemption 1, the Government is entitled to withhold the information.  The requirements of Executive Order 12958, which governs the classification of national security information, have been satisfied.  68 Fed. Reg. 15315-34 (Mar. 28, 2003).  Accordingly, the Government is specifically authorized to withhold the information in the interest of national security.  5 U.S.C. § 552(b)(1)(A).  The records at issue logically fall within the scope of Executive Order 12958 and the CIA has followed the proper procedure in classifying those records.  Id. § 552(b)(1)(B).

prong—that is, whether the withheld material constitutes an "intelligence source [or] method" within the meaning of the National Security Act and the CIA Act.

Defendants have the burden to show that the "release of the requested information can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." Phillippi, 546 F.2d at 1015 n.14.  The Director of National Intelligence has "very broad authority to protect all sources of information," and the Director, not the judiciary, must determine "whether disclosure . . . may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process."  Sims, 471 U.S. at 168-69, 180.[6]

Plaintiffs contend that the detention and interrogation programs violate domestic and international law and have been officially repudiated, and therefore are not "intelligence sources and methods" that may be withheld in a FOIA action.  Plaintiffs also contend that the Government, through prior official disclosures, waived its right to withhold information about the underlying programs. Plaintiffs maintain that, if construed in the manner advanced by Defendants, the withholding statute would be "entirely unbounded," and would allow the Government to withhold evidence of any "intelligence" technique, no matter how patently unconstitutional, illegal, or inhumane.  Plaintiffs note that although Congress authorized the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," Congress also charged the Director with "ensur[ing] compliance with the Constitution and laws of the United States."  50 U.S.C. § 403-1(f)(4), § 403-

---

[6]    In Sims, the Supreme Court ruled on the importance of vesting this decision-making power in the Director of Central Intelligence, rather than the courts or Congress.  471 U.S. at 170 ("The legislative history of [Exemption 3] also makes clear that Congress intended to give the Director of Central Intelligence broad power to protect the secrecy and integrity of the intelligence process.  The reasons are too obvious to call for enlarged discussion; without such protections the Agency would be virtually impotent."); see also Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns.").

1(i)(1).  The Director is also instructed to "collect intelligence through human sources and by other appropriate means."  Id. § 403-4a.  Plaintiffs argue that the statute should not be read to shield from disclosure illegal, banned, or repudiated "intelligence sources and methods" in one provision, while in another provision requiring compliance with the Constitution and laws of the United States" and the use of "appropriate" means to gather intelligence.

       As an initial matter, contrary to Plaintiffs' assertion, Exemption 3 is not "totally unbounded."  The Director of National Intelligence must swear that "disclosure . . . may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process."  Sims, 471 U.S. at 180.  The Director's affirmation is subject to judicial review, albeit, a review that is limited and deferential, in light of the responsibilities for national security of the Director and the agency over which he presides, and the limited competence of courts in relation to this responsibility.  Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978); see Sims, 471 U.S. at 179 ("The decisions of the Director, who must of course be familiar with the 'whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake.").

       Plaintiffs also conflate the question whether the conduct of the Agency or its personnel is consistent with the Constitution and laws of the United States, and the question of disclosures under FOIA.  The Director's obligation to "ensure compliance with the Constitution and laws of the United States" is the Director's obligation, and not necessarily the district court's prophylaxis.  Exemption 3 should not be a means for a district judge to second-guess the CIA Director's judgment regarding what constitutes an "unacceptable risk . . . [to] the Agency's intelligence-gathering process," or to require the Director to give detailed account to the judiciary that would analyze the nature of the intelligence source or method, the value to the

overall CIA program, and the risk that disclosure might pose to national security.  See Sims, 471
U.S. at 180; Ray, 587 F.2d at 1195.

       Plaintiffs' contention, to limit Exemption 3 to "lawful" intelligence sources and
methods, finds no basis in the statute.  Congress demonstrated its ability to qualify and limit
other FOIA exemptions in such a manner, but did not do so in Exemption 3.  For example,
Exemption 1 shields from disclosure only those documents that are "*properly* classified pursuant
to [an] Executive Order."  5 U.S.C. § 552(b)(1) (emphasis added).  Exemption 7 permits
withholding information furnished by a confidential source pursuant to a "*lawful* national
security investigation."  Id. § 552(b)(7)(D) (emphasis added).  In contrast, Exemption 3 permits
Defendants to withhold information that is "specifically exempted from disclosure by statute,"
provided that the statute "leave[s] no discretion on the issue [of disclosure]" or if the statute
"refers to particular types of matters to be withheld."  Id. § 552(b)(3)(A)(i-ii).  Here, the
withholding statutes require the Director of National Intelligence to "protect intelligence sources
and methods from unauthorized disclosure."  50 U.S.C § 403-1(i)(1), § 403g.

       Case law also supports the Government's position.  In Sims, the Supreme Court
permitted the Government to withhold identifying information of scientists involved in a covert
CIA program researching the use of chemical, biological, and radiological materials to control
human behavior.  471 U.S. at 161.  The Supreme Court reversed a Court of Appeals' decision
that tied withholding the information to whether the Government needed to guarantee
confidentiality to the scientists who worked on the program.  Id. at 164.  Sims rejected the Court
of Appeals' construction because it would have inserted limiting language into Exemption 3.
The Court explained:

           [Exemption 3] does not state . . . that the Director of Central
           Intelligence is authorized to protect intelligence sources only if such

protection is needed to obtain information that otherwise could not be acquired. Nor did Congress state that only confidential or nonpublic intelligence sources are protected. [Exemption 3] contains no such limiting language. Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence. The plain statutory language is not to be ignored.

Id. at 169-70.

Here, Plaintiffs similarly seek to insert "limiting language" into Exemption 3 that would tie the withholding statute to questions of legality of the particular intelligence source or method employed, and confer an unwarranted competence to the district court to evaluate national intelligence decisions.  Id. at 169.  This approach was rejected in Sims, and I do not accept it here.  It is also worth noting that Sims upheld an Exemption 3 withholding despite an Executive Order officially repudiating parts of the underlying program that led to the death of human test subjects.  Id. at 162 n.2 (citing Exec. Order No. 12333, § 2.10, 3 C.F.R. 213 (1982)).

In Wilner v. NSA, the Court of Appeals was confronted with a FOIA request to disclose whether the Government, under the auspices of the Terrorist Surveillance Program, intercepted communications between detainees held in Guantanamo Bay, Cuba, and their attorneys.  592 F.3d 60, 64 (2d Cir. 2009).   In response to the FOIA request, the Government filed "Glomar" responses[7]—neither confirming nor denying the existence of records showing whether such communications were intercepted—pursuant to Exemptions 1 and 3.  Id.  As in Sims, and the instant action, the court reviewed the FOIA action after an official disclosure and repudiation of the program at issue.  Id. at 66.  The Court of Appeals affirmed the District Court's decision permitting the Government to withhold the information and declining to address

---

[7]      The Government's refusal to confirm or deny the existence of records is known as a "Glomar response."  See Phillippi v. CIA, 546 F.2d 1009, 1011 (1976) (upholding CIA refusal to confirm or deny existence of records of CIA connection to activities of ship named the Hughes Glomar Explorer).

the legality of the surveillance program, since the latter issue was "beyond the scope" of the FOIA action.  Id. at 77.

Navasky v. CIA is distinguishable.  499 F. Supp. 269, 274 (S.D.N.Y. 1980).  In Navasky, the district court rejected the CIA's contention that Exemption 3 shielded from disclosure the names of authors and titles of books associated with the CIA's clandestine book publishing activities.  Id. at 274.  The court found that such "covert propaganda activities" were not properly considered "intelligence," which the court defined as "a product resulting from the original collection of information."  Id. at 274-75.  Since, the court held, the book publishing program was not "intelligence," information about the program could not be withheld as an intelligence source or method under Exemption 3.  Id.  In contrast, the case on which I am asked to rule clearly involves "intelligence sources or methods."

The case law and the plain language of the statutes are clear.  Courts are not invested with the competence to second-guess the CIA Director regarding the appropriateness of any particular intelligence source or method.  Exemption 3 is not qualified in the way Plaintiff suggests.  Declining to reach the legality of the underlying conduct is not, as Plaintiffs asserted at oral argument, an "abdication of . . . the Court's responsibility . . . under the statutory structure."  Oral Arg. Tr. at 18 (Mar. 24, 2010).  It is the result commanded by the statute.

### c.  Prior Official Disclosures

Plaintiffs contend that prior official disclosures prevent Defendants from withholding the records at issue.  Plaintiffs contend that public disclosures provide more than mere "abstract discussions" and convey "what the CIA actually did" to certain detainees. Plaintiffs point to the First OLC Memorandum, dated August 1, 2002, which describes the "enhanced interrogation techniques" that the CIA requested permission to use on Abu Zubaydah.

Plaintiffs also cite a report officially released by the Office of Inspector General on August 24, 2009 which describes enhanced interrogation techniques as applied to a detainee identified as Al-Nashiri.

A strict test applies for any claim of waiver by prior disclosure.  Wilson v. CIA, 586 F.3d 171, 186 (2d Cir. 2009).  Information is officially disclosed only if the information at issue is as specific as the information previously released, the information at issue matches the information previously disclosed, and the prior disclosure was made through an official and documented release.  Id.

The Government has not waived its right to withhold, for the information at issue is more extensive and more detailed than the previous disclosures.  The contemporaneous communications shown to the Court *in camera* show intelligence sources and methods utilized with respect to a specific detainee.  These documents go substantially beyond the Inspector General's report and the OLC legal memoranda.  As attested by Director Leon E. Panetta, none of the previously disclosed documents "were records generated during the course of CIA operations, or their equivalents."  Supp. Panetta Decl. ¶ 5.  Director Panetta also declared that disclosure would result in "exceptionally grave damage to clandestine human intelligence collection and foreign liaison relationships."  Supp. Panetta Decl. ¶¶ 4-7; First Panetta Decl. ¶¶ 10-12, 25.

That some information concerning the interrogation and detention programs has been released does not mean that "releasing the documents poses any less of a threat to national security." Elec. Privacy Info. Ctr. v. DOJ, 584 F. Supp. 2d 65, 71 (D.D.C. 2008); see also ACLU v. Dep't of Def., 664 F. Supp. 2d 72 (D.D.C. 2009) (rejecting ACLU's argument that prior disclosures and official repudiation prevents assertion of Exemption 3; finding that "[t]he President never authorized full

disclosure of [the] interrogation program; he merely ended it"). Moreover, the "judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." Id. (citing Ctr. for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 926-27 (D.C. Cir. 2003).

The descriptions of the enhanced interrogation techniques contained in the OLC memoranda and the Office of Inspector General report are substantially different from the CIA cables. The release of operational documents, unlike any other prior disclosures, would provide a multitude of operational details involving the application of various interrogation techniques in various circumstances, albeit to a particular detainee. The difference between the information officially released and the CIA operational records here is different in quality, degree, and kind. Accordingly, Defendants have not waived their right to withhold the information at issue.

## V.    Conclusion

For the reasons stated, I adhere to the rulings expressed in my previous orders resolving the fourth and fifth cross-motions for summary judgment.[8]

The Clerk shall mark the motion (Doc. No. 399) terminated.

SO ORDERED.

Dated:    July 15, 2010
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

[8]    Order Resolving Fourth and Fifth Summary Judgment Motions, ACLU v. Dep't of Def., No. 04 Civ. 4151 (AKH) (Doc. No. 389) (S.D.N.Y. Oct. 13, 2009) (Doc. No. 389); Order Resolving Fourth and Fifth Summary Judgment Motions, No. 04 Civ. 4151 (AKH) (Doc. No. 398) (S.D.N.Y. Dec. 29, 2009).