**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE, and VETERANS FOR PEACE,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>DEPARTMENT OF DEFENSE et al.,<br><br>　　　　　　Defendants. | No. 1:04-CV-4151 (AKH) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
SIXTH MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... i

**INTRODUCTION** ..................................................................................................................... 1

**BACKGROUND** ....................................................................................................................... 3

**STATUTORY FRAMEWORK** ................................................................................................ 6

**ARGUMENT** .............................................................................................................................. 7

    I.    FOIA mandates de novo review of the Secretary's determination of harm pursuant to the PNSDA. ............................................................................. 8

    II.    The Secretary's determination of harm is inadequate under Exemption 3. ............................................................................................................................ 12

**CONCLUSION** ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138 (2d Cir. 1994) .................................. 7

*Adamowicz v. Internal Revenue Serv.*, Nos. 10-0263, 10-0265, 2010 WL 4978494
   (2d Cir. Dec. 8, 2010) ........................................................................................................ 10, 11

*Allen v. Cent. Intelligence Agency*, 636 F.2d 1287 (D.C. Cir. 1980) ............................................ 12

*Am. Civil Liberties Union v. Dep't of Def.* (*ACLU I*), 389 F. Supp. 2d 547
   (S.D.N.Y. 2005) ................................................................................................................ 1, 4, 13

*Am. Civil Liberties Union v. Dep't of Def.* (*ACLU II*), 543 F.3d 59 (2d Cir. 2008) .................... 1, 5

*Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) ......................... 3

*Am. Civil Liberties Union v. Dep't of Def.*, No. 1:04-CV-4151, 2006 WL 1638025
   (S.D.N.Y. June 9, 2006) ............................................................................................................ 5

*Am. Civil Liberties Union v. Dep't of Def.*, No. 1:04-CV-4151, 2006 WL 1722574
   (S.D.N.Y. June 21, 2006) .......................................................................................................... 4

*Aronson v. Internal Revenue Serv.*, 973 F.2d 962 (1st Cir. 1992) .................................................. 11

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ......................................................... 12

*Cent. Intelligence Agency v. Sims*, 471 U.S. 159 (1985) ................................................................ 7

*Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir. 1979) .................................................................... 10

*Church of Scientology of Cal. v. Internal Revenue Serv.*, 792 F.2d 146 (D.C. Cir.
   1986) ........................................................................................................................................ 10

*Currie v. Internal Revenue Serv.*, 704 F.2d 523 (11th Cir. 1983) ................................................. 10

*DeSalvo v. Internal Revenue Serv.*, 861 F.2d 1217 (10th Cir. 1988) ............................................ 10

*Grasso v. Internal Revenue Serv.*, 785 F.2d 70 (3d Cir. 1986) ..................................................... 10

*King v. Internal Revenue Serv.*, 688 F.2d 488 (7th Cir. 1982) ...................................................... 11

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ....................................................... 12

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) .............................................................. 12

*Linsteadt v. Internal Revenue Serv.*, 729 F.2d 998 (5th Cir. 1984) ............................................... 10

*Long v. U.S. Internal Revenue Service*, 742 F.2d 1173 (9th Cir. 1984) .................................... 9, 10

*Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455 (D.C. Cir. 1984) ............................................... 13

*Maxwell v. Snow*, 409 F.3d 354 (D.C. Cir. 2005) ..................................................................... 10

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) ..................................... 6

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ........................ 6

*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810 (D.C. Cir. 2008) ................................... 6

*Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) ................................................. 11

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) .................................................... 6, 7

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ..................................................................... 12

*White v. Internal Revenue Serv.*, 707 F.2d 897 (6th Cir. 1983) ................................................ 11

**Statutes**

Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, 95 Stat. 172 ......................................... 9

Freedom of Information Act, 5 U.S.C. § 552 .................................................................... passim

OPEN FOIA Act of 2009, Pub. L. No. 111-83, § 564, 123 Stat. 2142, 2184 ................................ 7

Protected National Security Documents Act of 2009, Pub. L. No. 111-83, § 565,
    123 Stat. 2142, 2184–85 .................................................................................................. passim

**INTRODUCTION**

This motion concerns the government's continued withholding from the public of photographs that depict the maltreatment and abuse of detainees in U.S. custody throughout Iraq and Afghanistan and that are "the best evidence of what happened, better than words, which might fail to describe, or summaries, which might err in their attempt to generalize and abbreviate." *Am. Civil Liberties Union v. Dep't of Def.* (*ACLU I*), 389 F. Supp. 2d 547, 578 (S.D.N.Y. 2005), *aff'd*, 543 F.3d 59, 87 (2d Cir. 2008). The photographs are manifestly important to an ongoing national debate about governmental accountability for the abuse of prisoners, and yet the government has yet to offer any explanation for their withholding beyond a conclusory certification that they should be withheld.

Both this Court and the Second Circuit recognized the value of the images to public understanding in ordering their release pursuant to Plaintiffs' request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records relating to the treatment of detainees. *ACLU I*, 389 F. Supp. 2d at 578–79; *Am. Civil Liberties Union v. Dep't of Def.* (*ACLU II*), 543 F.3d 59, 87 (2d Cir. 2008). After the government petitioned the Supreme Court for further review, however, Congress passed the Protected National Security Documents Act of 2009 ("PNSDA"), Pub. L. No. 111-83, § 565, 123 Stat. 2142, 2184–85, which authorizes the government to withhold under FOIA a photograph relating to the treatment of detainees if, among other things, "the Secretary of Defense determines that disclosure of that photograph would endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States." *Id*. On November 13, 2009, the Secretary issued a certification purporting to determine as much with respect to all of the photographs at issue in this case, and the Supreme Court subsequently

1

remanded this case for further consideration in light of the PNSDA. Order, *Dep't of Def. v. Am. Civil Liberties Union*, No. 09-160 (Nov. 30, 2009).

The government now invokes the PNSDA as a basis for withholding the requested photographs, but its withholding fails. The Secretary's certification pursuant to the PNSDA is inadequate. The PNSDA is an Exemption 3 statute that "establishes particular criteria for withholding," 5 U.S.C. § 552(b)(3)(B), including the criterion that the Secretary determine that disclosure of each photograph would endanger the lives of U.S. citizens, soldiers, or employees. That determination must be reviewed de novo by this Court, but de novo review is impossible here because the Secretary has offered literally no explanation for his prediction of harm, instead merely reciting the statutory language of the PNSDA. This conclusory certification fails to satisfy the government's burden under FOIA to justify the withholding of each of the requested photographs.

Accordingly, because the government has failed to meet its burden to justify its withholding of the photographs, the Court should order their release. At a minimum, it should allow adversarial testing and meaningful judicial review of the Secretary's determination of harm as required under Exemption 3, by ordering the government to provide Plaintiffs with a *Vaughn* index and declaration describing each withheld record and explaining how release of each individual photograph would endanger U.S. citizens, soldiers, or employees. The *Vaughn* index and declaration are particularly important in this case because of the significant public interest in the misconduct depicted. Moreover, the government cannot justify refusing to provide detailed textual descriptions of the images, because such descriptions would not implicate the PNSDA's protection of only *images*.

## BACKGROUND

On October 7, 2003, Plaintiffs filed a FOIA request with the Department of Defense for all records relating to the treatment, death, or rendition of detainees held in U.S. custody abroad. In August 2004, this Court ordered the government to process Plaintiffs' request and directed Plaintiffs to supply the government with a priority list to aid the government in doing so. *Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501, 502–05 (S.D.N.Y. 2004). On their priority list, Plaintiffs identified, among other records, a set of photographs and videos that Army Specialist Joseph Darby had provided to Army investigators. A subset of Darby's photographs had been published by the media in April 2004; they depicted prisoners at the Abu Ghraib prison in Iraq who had been stripped naked, sexually humiliated, held in "stress positions," and threatened with dogs.

The government refused to release the remaining Darby images on the basis of FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (7)(C), arguing that the disclosure of the photographs would infringe the privacy interests of the prisoners depicted even if the photographs were redacted to obscure identifying features. Defs.' Mem. of Law in Supp. of Defs.' Mot. for Partial Summ. J. at 57–74 (Mar. 30, 2005) (dkt. no. 80). After oral argument on the parties' cross-motions, the government offered a new justification for withholding the photographs: that they were exempt from disclosure under Exemption 7(F) because they were "compiled for law enforcement purposes" and because disclosure "could reasonably be expected to endanger the life or physical safety of any individual." Defs.' Supplemental Mem. of Law in Supp. of Defs.' Mot. for Partial Summ. J. at 19–27 (July 22, 2005) (dkt. no. 114). The government contended that release of the photographs could reasonably be expected to endanger

the lives or safety of U.S. troops, other coalition forces, and civilians in Iraq and Afghanistan. *Id*.

In September 2005, this Court rejected the government's privacy arguments, finding that the prisoners' privacy interests could be protected by the redaction of identifying features and that any residual privacy interest would be outweighed by the public interest in disclosure. *ACLU I*, 389 F. Supp. 2d at 571–74. The Court also rejected the government's supplemental argument relating to Exemption 7(F). *Id.* at 574–79. It acknowledged the "risk that the enemy will seize upon the publicity of the photographs and seek to use such publicity as a pretext for enlistments and violent acts." *Id.* at 578. But it rejected that speculative harm as a basis for withholding the images: "The terrorists in Iraq and Afghanistan do not need pretexts for their barbarism; they have proven to be aggressive and pernicious in their choice of targets and tactics." *Id*. at 576. The Court also noted that the public interest in the photographs was significant, that disclosure would foster "education and debate," and that the "core values of FOIA [were] very much implicated." *Id.* at 578.

The government appealed from the Court's judgment ordering release of the images, but it withdrew the appeal after a third party published the Darby images on the internet. The government subsequently acknowledged, however, that it possessed twenty-nine other photographs responsive to Plaintiffs' FOIA request. Whereas the Darby photographs involved abuse at the Abu Ghraib prison, the twenty-nine additional photographs were taken, according to the government, in at least seven different locations throughout Afghanistan and Iraq. Relying on the reasoning of its September 2005 order, the Court ordered the government to disclose twenty one of the photographs, all but one in redacted form. *Am. Civil Liberties Union v. Dep't of Def.*, No. 1:04-CV-4151, 2006 WL 1722574, at *1 (S.D.N.Y. June 21, 2006). The Court

found that the remaining eight photographs were not responsive to Plaintiffs' FOIA request. *Am. Civil Liberties Union v. Dep't of Def.*, No. 1:04-CV-4151, 2006 WL 1638025, at *1 (S.D.N.Y. June 9, 2006).[1]

A unanimous panel of the Second Circuit affirmed. Without deciding whether the photographs in fact presented a danger of inciting violence, the Court found that the plain language of Exemption 7(F) required the government to do more than "point to a group composed of millions of people and establish that it could reasonably be expected that someone in that group will be endangered." *ACLU II*, 543 F.3d at 67 & n.3. The Second Circuit denied the government's petition for rehearing en banc on March 11, 2009, and on April 23, 2009, the government informed this Court in writing that it would "not seek certiorari of the Second Circuit's decision." Letter from Lev L. Dassin, Acting U.S. Attorney, to Hon. Alvin K. Hellerstein (Apr. 23, 2009). The Second Circuit issued its mandate on April 27, 2009. On May 13, however, the government announced that it would petition the Supreme Court for review of the Second Circuit's decision. The government filed its petition for a writ of certiorari on August 7, 2009.

During the pendency of the government's petition, Congress passed and the President signed the PNSDA, § 565, 123 Stat. at 2184–85. The Act authorizes the withholding of certain photographs relating to the treatment of detainees in narrow circumstances. After passage of the PNSDA, the government moved the Supreme Court to grant the government's petition, vacate the Second Circuit's judgment, and remand for further proceedings. The Supreme Court did so on November 30, 2009.

---

[1] The government informed Plaintiffs on June 29, 2006 that it possessed an additional twenty-three images responsive to Plaintiffs' request, *ACLU II*, 543 F.3d at 65 n.2, and on May 28, 2009, it acknowledged the existence of an unspecified but "substantial number" of additional responsive images, Decl. of Gen. David H. Petraeus ¶ 2, Mot. to Recall the Mandate, *Am. Civil Liberties Union v. Dep't of Def.*, No. 06-3140 (2d Cir. May 28, 2009).

On remand, the government claims that the PNSDA authorizes it to withhold the photographs pursuant to the Secretary of Defense's determination that "public disclosure of these photographs would endanger" U.S. citizens, soldiers, or employees.[2] The government has not, however, offered any explanation whatsoever for that determination. Plaintiffs now move for partial summary judgment and an order that the Secretary's certification fails to satisfy the government's burden under FOIA to justify its withholding of the photographs. In the alternative, Plaintiffs request that the Court order the government to provide Plaintiffs with a *Vaughn* index and declaration describing each withheld photograph and explaining how release of each individual photograph would endanger U.S. citizens, soldiers, or employees.

## STATUTORY FRAMEWORK

Congress enacted FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "Although Congress enumerated nine exemptions from the disclosure requirement, 'these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'" *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)) (internal quotation marks omitted). "Accordingly, FOIA's exemptions are to be narrowly construed." *Id.* "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). Accordingly, a FOIA plaintiff is entitled to summary judgment under Federal Rule of Civil Procedure 56—and a district court

---

[2] The Secretary's certification is attached as Appendix B to the government's supplemental brief to the Supreme Court. Supplemental Br. for Pet'rs App. B, *Dep't of Def. v. Am. Civil Liberties Union*, No. 09-160 (Nov. 13, 2009). For the convenience of the Court, it has also been appended directly to this memorandum as Exhibit A.

may order disclosure—where the agency fails to meet its burden of establishing that its withholdings are justified. *Tax Analysts*, 492 U.S. at 142; 5 U.S.C. § 552 (a)(4)(B).

The sole exemption to FOIA at issue in this motion is Exemption 3, which authorizes the government to withhold a record otherwise subject to disclosure if the record is "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), and "if that statute . . . establishes particular criteria for withholding," *id*. § 552(b)(3)(A)(ii).[3] The Supreme Court has set forth a two-part test for Exemption 3 withholdings: first, the government must establish that the statute in question is in fact an Exemption 3 withholding statute, and second, the government must establish that the withheld records fall within the statute's protection. *Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 167 (1985); *accord A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 143 (2d Cir. 1994). Review of both of those determinations is de novo. *A. Michael's Piano*, 18 F.3d at 144.

## ARGUMENT

Plaintiffs do not dispute that the PNSDA is an Exemption 3 withholding statute, as it "establishes particular criteria for withholding" records otherwise subject to disclosure under FOIA. *See* 5 U.S.C. § 552(b)(3)(A)(ii). Specifically, the PNSDA allows the withholding of a photograph otherwise "subject to disclosure under section 552 of title 5, United States Code or any proceeding under that section" if: (1) "the Secretary of Defense determines that disclosure of that photograph would endanger" U.S. citizens, soldiers, or employees; (2) the Secretary has issued a certification to that effect; (3) the photograph "was taken during the period beginning on September 11, 2001, through January 22, 2009"; and (4) the photograph "relates to the treatment

---

[3] Exemption 3 was modified by the OPEN FOIA Act of 2009, Pub. L. No. 111-83, § 564, 123 Stat. 2142, 2184, to encompass only those statutes that, if enacted after the OPEN FOIA Act of 2009, "specifically cite[] to this paragraph." 5 U.S.C. § 552(b)(3)(B). Because the PNSDA was enacted concurrently with the OPEN FOIA Act of 2009, that limitation does not apply here. In any event, the PNSDA does explicitly state that it operates as an exemption to disclosure otherwise mandated by FOIA.

of individuals engaged, captured, or detained after September 11, 2001, by the Armed Forces of the United States in operations outside of the United States." PNSDA § 565(b)–(d).

The only question, therefore, is whether the government has satisfied the criteria set forth by the PNSDA. The first of those criteria has not been satisfied because the government has yet to offer—either through the Secretary's certification or through a required *Vaughn* index and declaration—any explanation at all as to why release of each or any of the photographs at issue would endanger U.S. citizens, soldiers, or employees. Without such an explanation, the Court cannot conduct de novo review of the Secretary's determination, as required by FOIA and Exemption 3. Accordingly, the Court should order the government to release the withheld images. At a minimum, it should require the government to produce a *Vaughn* index describing each withheld image and a *Vaughn* declaration explaining how release of each of the photographs would endanger U.S. citizens, soldiers, or employees.

### I. FOIA mandates de novo review of the Secretary's determination of harm pursuant to the PNSDA.

The PNSDA authorizes the withholding of an image under Exemption 3 only if the Secretary of Defense "determines that disclosure of that photograph would endanger" U.S. citizens, soldiers, or employees. PNSDA § 565(d)(1). The Secretary has made such a determination in this case, and the government maintains that the Court may enter judgment accordingly, apparently without the need for further review. Joint Letter to Hon. Alvin K. Hellerstein at 3 (Oct. 6, 2010) ("It is the Government's position that pursuant to Section 565 of the Act and the Secretary's certification, the DoD Photos have been properly withheld under the Act and Exemption 3 of FOIA, and this Court should enter judgment accordingly."). This is incorrect. Under FOIA, the Court is obligated to review the Secretary's determination of harm de novo, *see* 5 U.S.C. § 552(a)(4)(B), and, as discussed in Part II, the Secretary's conclusory

determination in this case is deficient because it does not permit the Court to conduct de novo review.

It is well established that when Congress authorizes an agency to withhold records pursuant to statutory criteria, the determination as to whether the records actually meet the statutory criteria is subject to de novo review under FOIA. For instance, in *Long v. U.S. Internal Revenue Service*, 742 F.2d 1173 (9th Cir. 1984), the Ninth Circuit confronted a situation virtually identical to the one before this Court. A FOIA requester had previously sought certain tax-related information from the Internal Revenue Service ("IRS"), and the Ninth Circuit had ordered its release. *Id.* at 1175–76. During the pendency of Supreme Court review, however, Congress passed the Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, 95 Stat. 172, which, in relevant part, is nearly indistinguishable from the PNSDA. It authorized the IRS to withhold certain tax-related information "if the Secretary [of the Treasury] determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws." Pub. L. No. 97-34, § 701(a) (codified at 26 U.S.C. § 6103(b)(2)). The Supreme Court remanded the case for consideration in light of the Act.

On remand, the government argued—as it intimates here—that statutes like 26 U.S.C. § 6103(b)(2) operate independently of FOIA, rendering de novo review inappropriate, and that, alternatively, de novo review under FOIA is limited "merely to establishing the factual existence of the . . . finding that disclosure would seriously impair tax collection." *Long*, 742 F.2d at 1177. The Ninth Circuit rejected both arguments. First, it held that § 6103(b)(2) is indeed an Exemption 3 statute because it is not irreconcilable with FOIA and because its legislative history does not indicate that it should nonetheless operate independently of FOIA. *Id.* 1177–78.

Second, the Court emphatically rejected the government's claim that de novo review under FOIA was limited merely to establishing the existence of the Secretary's determination of harm:

> It is totally inconceivable that Congress, on the one hand, would seek to limit discretion by requiring that it be exercised according to particular criteria spelled out in the statute and, on the other hand, would render its exercise completely unreviewable, even where it had been clearly abused. We refuse to give the statute such an irrational construction.

*Id*. at 1181. Rather, the Court concluded that the Secretary's "determination that disclosure of [the requested records] would seriously impair the assessment, collection, or enforcement of the tax laws is subject to de novo review by the district court." *Id*. at 1182.

The majority of other circuit courts to have addressed the issue—the D.C., Third, Fifth, and Tenth Circuits—agree with both of the principal holdings of the Ninth Circuit in *Long*: (1) that § 6103(b)(2) is an Exemption 3 withholding statute that does not operate independently of FOIA[4]; and (2) that de novo review of its applicability includes de novo review of the Secretary's determination of harm.[5] More recently, the Second Circuit implicitly embraced the proposition that § 6103 is an Exemption 3 withholding statute. *See Adamowicz v. Internal Revenue Serv.*, Nos. 10-0263, 10-0265, 2010 WL 4978494, at *2 (2d Cir. Dec. 8, 2010) (unpublished decision) ("Because these withholdings [of tax return information pursuant to 26

---

[4] *See, e.g.*, *Church of Scientology of Cal. v. Internal Revenue Serv.*, 792 F.2d 146, 149–50 (D.C. Cir. 1986) (Scalia, J.) (holding that "Section 6103 does not supersede FOIA but rather gives rise to an exemption under Exemption 3"); *Maxwell v. Snow*, 409 F.3d 354, 355 (D.C. Cir. 2005) (same); *Currie v. Internal Revenue Serv.*, 704 F.2d 523, 527 (11th Cir. 1983) (same); *Linsteadt v. Internal Revenue Serv.*, 729 F.2d 998, 999 (5th Cir. 1984) (same); *Grasso v. Internal Revenue Serv.*, 785 F.2d 70, 74–75 (3d Cir. 1986) (same); *DeSalvo v. Internal Revenue Serv.*, 861 F.2d 1217, 1221 (10th Cir. 1988) (same); *see id*. at 1219 (collecting cases).

[5] *See, e.g.*, *Currie*, 704 F.2d at 527 (withholding under Exemption 3 is proper "where the IRS can demonstrate the release of the information would seriously impair federal tax administration" (citing *Chamberlain v. Kurtz*, 589 F.2d 827, 841 (5th Cir. 1979)); *Linsteadt*, 729 F.2d at 1001–02 (same); *Grasso*, 785 F.2d at 77 (reviewing and rejecting the Secretary's determination of harm); *DeSalvo*, 861 F.2d at 1221–22 (requiring the district court to "require the IRS to provide sufficient information to allow the court to determine independently . . . whether the release of [the requested records] will 'seriously impair Federal tax administration'").

U.S.C. § 6103] were expressly mandated by statute, they clearly fall within FOIA Exemption 3.").[6]

This majority view is critical to the interpretation of the PNSDA, because the PNSDA is virtually identical to § 6103(b)(2) in relevant part. Both statutes were passed by Congress in response to particular FOIA lawsuits, and both predicate withholding on a determination of harm by the relevant agency head. Indeed, the differences between the statutes only strengthen the argument that the PNSDA is an Exemption 3 statute subject to de novo review: the PNSDA, unlike § 6103(b)(2), specifically references FOIA, stating that it operates to protect documents from "disclosure under section 552 of title 5, United States Code or any proceeding under that section." PNSDA § 565(b). Moreover, the fact that Congress enacted the PNSDA against the backdrop of *Long* and three decades of related case law further supports the conclusion that, like § 6103(b)(2), Congress intended invocation of the PNSDA to be subject to de novo review under FOIA. Congress should not be presumed to have intended a *different* interpretation for the PNSDA than the majority of courts have accorded to virtually identical language in § 6103(b)(2). *See Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 147 (2d Cir. 1999) ("Congress is presumed also to be aware of prior judicial interpretations of similar statutory provisions.").

For these reasons, this Court should hold that the PNSDA, like § 6103(b)(2), is an Exemption 3 withholding statute and that the Secretary of Defense's determination of harm pursuant to the PNSDA is subject to de novo review.

---

[6] Two circuits have held that § 6103(b)(2) operates independently of FOIA and is not, therefore, an Exemption 3 withholding statute. *Aronson v. Internal Revenue Serv.*, 973 F.2d 962 (1st Cir. 1992); *King v. Internal Revenue Serv.*, 688 F.2d 488 (7th Cir. 1982); *see also White v. Internal Revenue Serv.*, 707 F.2d 897, 900 (6th Cir. 1983) ("We are disposed to affirm the district court on the basis of the *Zale* and *King* rationale expressed in its decision."). This Court should reject that approach and follow the majority view, which the Second Circuit implicitly embraced in *Adamowicz*, 2010 WL 4978494, at *2.

## II. The Secretary's determination of harm is inadequate under Exemption 3.

The Secretary's determination of harm cannot survive de novo—or any other—review, because it is wholly conclusory, and provides no explanation for withholding the photographs. Instead, the Secretary merely recites the statutory language of the PNSDA: "I have determined that public disclosure of these photographs would endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States." *See* Ex. A. This conclusory statement fails to satisfy the government's burden under FOIA to justify its withholdings. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (the agency must provide "reasonably detailed explanations why any withheld documents fall within an exemption"); *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) ("[C]onclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden."); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) ("To accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a de novo review.'" (quoting *Allen v. Cent. Intelligence Agency*, 636 F.2d 1287, 1293 (D.C. Cir. 1980))).

Because the government has failed to meet its burden to show that the requested documents are exempt from FOIA, the Court should order the government to release the withheld images of abuse. At a minimum, the Court should allow adversarial testing and meaningful judicial review of the government's withholdings by ordering the government to provide Plaintiffs with a *Vaughn* index describing each photograph in adequate textual detail, as well as a *Vaughn* declaration explaining how release of each individual photograph would endanger U.S. citizens, soldiers, or employees. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *King*, 830 F.2d at 218 ("Affidavits submitted by a governmental agency in justification

for its exemption claims must therefore strive to correct, however, imperfectly, the asymmetrical distribution of knowledge that characterizes FOIA litigation."); *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984) (The *Vaughn* procedure "serves at least three purposes: it forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court."). A categorical and conclusory explanation will not do. The PNSDA requires the Secretary to consider each photograph individually in order to determine whether "disclosure of *that* photograph would endanger" U.S. citizens, soldiers, or employees. PNSDA § 565(d)(1) (emphasis added).

The requirements of *Vaughn* have particular importance in this case. As this Court has recognized, the images at issue depict "flagrantly improper misconduct," *ACLU I*, 389 F. Supp. 2d at 578, the disclosure of which is "central to the purposes of FOIA," *id.* The government should therefore be required to disclose as much detail as possible about the photographs, consistently with *Vaughn* and with the interests set forth in the PNSDA. Disclosure, in the form of a *Vaughn* index, should reflect Congress's limited concern in enacting the PNSDA: that *photographic* evidence of misconduct is uniquely powerful. Textual descriptions of that misconduct, by contrast, are not protected under any circumstances by the PNSDA, and the government accordingly has no legitimate justification in refusing to provide detailed textual descriptions in its *Vaughn* index of each withheld photograph. *See, e.g.*, *Lykins*, 725 F.2d at 1463 ("we have required that as much information as possible be made public" in *Vaughn* indices).[7]

---

[7] Notably, Congress could have enacted a statute that required the Department of Defense to withhold the photographs at issue, leaving no discretion to the Secretary and providing no criteria for this Court to review.

13

## CONCLUSION

For these reasons, the Court should order the government to disclose the withheld images of prisoner abuse. At a minimum, it should order the government to provide Plaintiffs with a *Vaughn* index describing each photograph in adequate textual detail as well as a *Vaughn* declaration explaining how release of each individual photograph would endanger U.S. citizens, soldiers, or employees.

December 17, 2010                          Respectfully submitted,

/s/ Alexander A. Abdo
Alexander A. Abdo
Jameel Jaffer
Judy Rabinovitz
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2517
Fax: (212) 549-2654
aabdo@aclu.org

Lawrence S. Lustberg
Alicia L. Bannon
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310

Michael Ratner
Gitanjali Gutierrez
Emilou MacClean
Shayana Kadidal
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Beth Haroules
Arthur Eisenberg

---

Congress chose instead to tether withholding to criteria that must be reviewed de novo in accordance with the time-tested *Vaughn* protocol.

NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004

*Counsel for Plaintiffs*