**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION, et al.,

Plaintiffs,

v.

DEPARTMENT OF DEFENSE, et al.,

Defendants.

No. 04 Civ. 4151 (AKH)

**DEFENDANT DEPARTMENT OF DEFENSE'S MEMORANDUM OF LAW IN
SUPPORT OF ITS SEVENTH MOTION FOR PARTIAL SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFFS' SEVENTH MOTION FOR PARTIAL SUMMARY
JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-6559
Facsimile:  (212) 637-2730

TARA M. LaMORTE
AMY A. BARCELO
Assistant United States Attorney
      - Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

   A.   Factual Background ..................................................................................... 2

   B.   The PNSDA ............................................................................................... 3

   C.   The Parties' Sixth Motion for Summary Judgment ................................... 4

   D.   Oral Argument and the Court's Ruling on the Parties' Sixth Motions ............... 6

   E.   The Secretary Issues a Renewal Certification Pursuant to the PNSDA ............ 8

   F.   December 14, 2012 Status Conference ........................................................ 9

ARGUMENT ........................................................................................................... 10

      I.  THE COURT SHOULD CONTINUE TO ADHERE TO ITS RULING THAT
         THE DOD PHOTOS ARE PROPERLY WITHHELD ...........................................10

        A.   Pursuant to the Doctrine of the Law of the Case, the Court Should Order
            that the DoD Photos Are Properly Withheld Pursuant to the PNSDA .........................10

        B.   The DoD Photos Are Exempt from Disclosure Pursuant to
            FOIA Exemption 3.............................................................................................13

            1.  Because the DoD Photos Are "Protected Documents" Within the
                Meaning of the PNSDA They Are Exempt from Disclosure Pursuant
                to FOIA Exemption 3 ............................................................................. 15

            2.  Plaintiffs Are Incorrect to Argue That the DoD Photos Are Not
                Properly Withheld Pursuant to Exemption 3 .................................................. 16

              a.   The Ninth Circuit's Decision in Long Does Not Apply to DoD's
                  Withholding of the DoD Photos ................................................................ 16

                b.   The PNSDA Does Not Require the Secretary to Issue a Separate
                  Certification for Each of the DoD Photos .................................................. 199

        C.   DoD Is Not Required to Prepare a Vaughn Index for the DoD Photos.........................20

        D.   The DoD Photos Are Properly Withheld Pursuant to Exemption 7(F).........................22

      II. IN THE ALTERNATIVE, THE PNSDA OPERATES INDEPENDENTLY
         OF FOIA..........................................................................................................22

**CONCLUSION** ..................................................................................................................... 23

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*A. Michael's Piano, Inc. v. FTC,*
   18 F.3d 138 (2d Cir. 1994)..............................................................................*passim*

*Baldridge v. Shapiro,*
   455 U.S. 345 (1982).................................................................................................15

*Brown v. FBI,*
   658 F.2d 71 (2d Cir. 1981)..............................................................................20, 21

*Christianson v. Colt Industrial Operating Corp.,*
   486 U.S. 800 (1988).................................................................................................10

*Church of Scientology of California v. IRS,*
   792 F.2d 146 (D.C. Cir. 1986)........................................................................20, 21

*Fitzgibbon v. CIA,*
   911 F.2d 755 (D.C. Cir. 1990)...............................................................................14

*Fogel v. Chestnutt,*
   668 F.2d 100 (2d Cir. 1981)..............................................................................11, 13

*Gallant v. NLRB,*
   26 F.3d 168 (D.C. Cir. 1994).................................................................................21

*In re Rezulin Products Liability Litigation,*
   224 F.R.D. 346 (S.D.N.Y. 2004) ....................................................................11, 13

*Krikorian v. Department of State,*
   984 F.2d 461 (D.C. Cir. 1993).................................................................................21

*Long v. IRS,*
   742 F.2d 1173 (9th Cir. 1984) ............................................................................5, 18

*Maydak v. DOJ,*
   218 F.3d 760 (D.C. Cir. 2000).................................................................................21

*NLRB v. Robbins Tire & Rubber Co.,*
   437 U.S. 214 (1978).................................................................................................10

*Official Committee Of the Unsecured Creditors of Color Tile, Inc.*
*v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003).................................................................11

*CIA v. Sims*,
   471 U.S. 159 (1985).................................................................14, 15

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   736 F.3d 198 (2d Cir. 2013).................................................................10, 12

*United States v. Weber Aircraft Corp.*,
   465 U.S. 792 (1984).................................................................15, 16

*Virgin Atlantic Airways, Ltd. v. National Mediation Board*,
   956 F.2d 1245 (2d Cir. 1992).................................................................10, 11

*Webster v. Doe*,
   486 U.S. 592 (1988).................................................................16

*Zdanok v. Glidden Co.*,
   327 F.2d 944 (2d Cir 1964).................................................................12

## FEDERAL STATUTES

5 U.S.C. § 552.................................................................1

5 U.S.C. § 552(a).................................................................10

5 U.S.C. § 552(b)(3).................................................................13

5 U.S.C. § 552(b)(7)(F).................................................................22

2010 Pub. L. No. 111-83, 123 Stat. 2142 .................................................................1

## LEGISLATIVE HISTORY

155 Cong. Rec. S5671-74 (daily ed.) (May 20, 2009).................................................................18, 19

155 Cong. Rec. S5799 (daily ed.) (May 21, 2009).................................................................18

155 Cong. Rec. S5987-88 (daily ed.) (June 3, 2009).................................................................20

Defendant Department of Defense and its components Department of Army, Department of Navy, Department of Air Force, Defense Intelligence Agency (collectively, "DoD" or the "Government"), by and through their attorney, Preet Bharara, the United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to plaintiffs' seventh motion for partial summary judgment dated January 14, 2014 ("Plfs' Mot."), seeking the release of certain photographs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and in support of the Government's seventh motion for partial summary judgment as to those same photographs.

## PRELIMINARY STATEMENT

Plaintiffs' current motion for summary judgment raises the same issue that the Court has already decided adverse to Plaintiffs.  In October 2009, after years of litigation regarding certain photographs contained in or derived from records of investigations into allegations of detainee abuse (the "DoD Photos"), which both this Court and the Second Circuit held were not exempt from disclosure pursuant to FOIA, Congress enacted the "Protected National Security Documents Act of 2009" (the "PNSDA") as Section 565 of the Department of Homeland Security Appropriations Act, 2010 Pub. L. No. 111-83, 123 Stat 2142.  After Congress enacted the PNSDA and the Secretary of Defense (the "Secretary") issued a certification pursuant to the Act to protect the DoD Photos from public disclosure, the Supreme Court and Second Circuit remanded the issue of the withholding to this Court.  Following remand, after extensive briefing by the parties, the Court granted DoD's motion, upholding its withholding of the DoD Photos, and denied Plaintiffs' motion.  Specifically, the Court held that the DoD Photos were exempt from disclosure under FOIA pursuant to Exemption 3 because they fell within the scope of documents that the PNSDA protects from disclosure.

Now, two and a half years later, Plaintiffs again seek the release of the DoD Photos on the same grounds that this Court already rejected.  Pursuant to the doctrine of the law of the case, the Court should maintain its prior ruling.  The purported bases for Plaintiffs' current challenge—the expiration of the Secretary's original certification, the Secretary's issuance of a renewal certification as the PNSDA contemplates, and alleged new facts concerning the United States's military presence abroad—do not provide a legal basis to challenge DoD's withholding. Indeed, for the most part Plaintiffs' seventh motion for partial summary judgment asserts the same legal arguments that Plaintiffs made back in 2010 and 2011, which the Court correctly and squarely rejected.  And to the extent Plaintiffs are advancing new legal arguments, the Court should not consider them because Plaintiffs could have argued those points in  their sixth motion for partial summary judgment, but failed to do so.

Even if the Court were to consider Plaintiffs' arguments on their merits, they fail as a matter of law.  Contrary to Plaintiffs' contentions, pursuant to established Second Circuit precedent as well as the plain language of the PNSDA and its legislative history, there is no basis for the court to conduct a *de novo* review addressing whether the Secretary was correct in his determination of the harms that he documented in the renewal certification.  Accordingly, the Court should grant the Government's motion for partial summary judgment and deny Plaintiffs' motion for partial summary judgment.

## STATEMENT OF FACTS

### A.    Factual Background

The procedural history of the DoD Photos prior to the Court's order of July 21, 2011, which granted DoD's sixth motion for partial summary judgment ("DoD's Sixth Motion") and

denied Plaintiffs' sixth motion for partial summary judgment ("Plaintiffs' Sixth Motion") is set

forth in DoD's Memorandum of Law in support of its Sixth Motion, along with a detailed

account of the legislative history of the PNSDA.  *See* Exhibit A to the Declaration of Amy A.

Barcelo dated February 11, 2014 ("Barcelo Decl.") at 2-13 (Dkt. No. 457).  As that

Memorandum reflects, the PNSDA was enacted in late 2009 after President Obama made public

statements describing the harm that would result from the release of the group of DoD Photos at

issue here.  Congress responded with support for the President's position by enacting the

PNSDA.  *Id.* at 7-12.

## B.    The PNSDA

The PNSDA provides that:

> Notwithstanding any other provision of the law to the contrary, no protected
> document, as defined in subsection (c), shall be subject to disclosure under section
> 552 of title 5, United States Code or any other proceeding under that section.

PNSDA § (b).  To fall within subsection (c)'s definition of a "protected document," a record

must be a "photograph," which the PNSDA defines as "all photographic images, whether

originals or copies, including still photographs, negatives, digital images, films, video tapes, and

motion pictures," *id.* § (c)(2), and must have been created during the period beginning "on

September 11, 2001 through January 22, 2009," *id.* § (c)(1)(B)(i).  The photograph must also

"relate[] to the treatment of individuals engaged, captured, or detained after September 11, 2001,

by the Armed Forces of the United States in operations outside of the United States."  *Id.*

§ (c)(1)(B)(ii).  And finally, a photograph constitutes a protected document where the Secretary

of Defense has issued a certification "stating that disclosure of [the photograph] would endanger

citizens of the United States, members of the United States Armed Forces, or employees of the

United States Government deployed outside the United States." *Id.* § (c)(1)(A). The PNSDA mandates that the Secretary "shall issue [such] a certification" any time that he makes such a determination. *Id.* § (d)(1).

The PNSDA further provides that any such certification "shall expire 3 years after the date on which the certification . . . is issued by the Secretary of Defense." *Id.* § (d)(2). The PNSDA also allows for the Secretary to issue "a renewal of a certification at any time," and may issue "more than 1 renewal of a certification," although, like the original certification, a renewal certification will expire 3 years after the Secretary issues it. *Id.* § (d)(2) & (3).

Finally, the PNSDA provides for direct Congressional oversight of any certification issued under the PNSDA, by requiring the Secretary to provide "timely notice" to Congress when he issues a certification or a renewal certification pursuant to the PNSDA. *Id.* § (d)(4).

**C.    The Parties' Sixth Motion for Summary Judgment**

When the PNSDA was enacted, a petition for *writ of certiorari* was pending with the Supreme Court regarding the propriety of the Government's withholding of the DoD Photos. 130 S. Ct. 777 (2009). Upon the PNSDA's enactment on November 13, 2009, the Secretary issued the certification contemplated by the PNSDA; the Supreme Court then granted *certiorari*, and the case was ultimately remanded to this Court. 130 S. Ct. 777 (2009) (Dkt. No. 419).

From December 2010 to May 2011, the parties briefed their Sixth Motions, which addressed the Government's withholding of the DoD Photos. (Dkt. Nos. 443-444, 456-458, 462, 466). In their briefing, Plaintiffs argued that the PNSDA was properly interpreted as a FOIA Exemption 3 withholding statute, and that the Court was required to conduct a *de novo* review of whether the Secretary had accurately determined that the harms that he described in the

4

certification existed.  Barcelo Decl. Ex B at 8-11 (Plaintiffs' Sixth Motion) (Dkt. No. 444).  To

support their argument, Plaintiffs principally relied on the Ninth Circuit's decision in *Long v.*

*IRS*, 742 F.2d 1173 (9th Cir. 1984), which analyzed a withholding by the Internal Revenue

Service pursuant to section 6103(b)(2) of the Internal Revenue Code and held that to rule on that

withholding a court "must satisfy itself, on the basis of detailed and nonconclusory affidavits,

that the Commissioner is correct in his belief " of the validity of the harms contemplated by the

statute.  742 F.2d at 1182; *see also* Barcelo Decl. Ex. B at 9-11 (Plaintiffs' Sixth Motion).

Relying on *Long*, Plaintiffs asserted that the certification did not survive the *de novo* standard of

review for which they advocated because it did not explain the basis of the harms that the

Secretary stated existed.  *Id.* at 12-13.  Plaintiffs also requested that the Court order DoD to

provide a detailed *Vaughn* index "describing each photograph in adequate factual detail, as well

as a Vaughn declaration explaining how release of each individual photograph would endanger

U.S. citizens, soldiers, or employees."  Barcelo Decl. Ex. B at 12 (Plaintiff's Sixth Motion, citing

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

In its cross-motion in favor of the withholdings, DoD argued that assuming that the

PNSDA is an Exemption 3 statute, the Ninth Circuit's decision in *Long* did not apply to require a

*de novo* review of the harms that the Secretary described in the Certification.  Barcelo Decl. Ex.

A at 14-25 (DoD's Sixth Motion).[1]  Rather, DoD maintained, the framework for analyzing its

---

[1]     Specifically, DoD argued that the holding and analysis in *Long* did not apply because: (1)
*A. Michael's Piano*, rather than *Long*, describes the analysis that courts in the Second Circuit
should apply in ruling on a withholding pursuant to Exemption 3, Barcelo Decl. Ex. A at 14-17,
21-25 (DoD Sixth Motion); (2) there are substantial differences between the PNSDA and section
6103(b)(2) of the Internal Revenue Code, which explain the Court's handling them differently,
*id.* at 23-25; and (3) the Ninth Circuit's holding and analysis in the *Long* case had been both
rejected and called into question by other Circuits, *id.* at 22, Barcelo Decl. Ex. F at 8 (Reply

withholding pursuant to Exemption 3 is set forth in the Second Circuit's decision in *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138 (2d Cir. 1994), which limited the *de novo* review to a determination of "whether the [agency] met its burden of proving that the documents withheld pursuant to Exemption 3 fell within the scope" of the withholding statute.  Barcelo Decl. Ex. A at 15 (DoD's Sixth Motion).  To determine the scope of an Exemption 3 statute, the Second Circuit instructed that a court should "look to the plain language. . . and legislative history" of the statute, with the aim of "determin[ing] legislative purpose."  Barcelo Decl. Ex. A at 16 (quoting *A Michael's Piano*, 18 F.3d at 144).  In line with this precedent, the Government relied on the plain language of the PNSDA and its legislative history, as well as the Secretary's Certification, to argue that Exemption 3 applied to protect the DoD Photos from disclosure.   Barcelo Decl. Ex. A at 16-21 (DoD's Sixth Motion).

Further, the Government argued that because DoD's withholding of the DoD Photos was categorical in nature, DoD was not required to provide detailed *Vaughn* indices describing each of the DoD Photos.  *Id.* at 27-30.  The Government also asserted that the DoD Photos were properly withheld pursuant to FOIA Exemption 7(F).  *Id.* at 30-31.  Finally, the Government argued that the Court should uphold the Government's withholding of the DoD Photos even if it were to find that they were not properly withheld pursuant to the PNSDA when it is construed as a FOIA Exemption 3 Statute.  *Id.* at 31-32.

**D.      Oral Argument and the Court's Ruling on the Parties' Sixth Motions**

The Court held argument on the parties' Sixth Cross-Motions on July 20, 2011.  *See* Barcelo Decl. Ex. C (Transcript of July 20, 2011 Argument ("July 20 Trans.")) (Dkt. No. 474).

---

Brief in Support of DoD's Sixth Motion).

During that argument, the Court noted the import of both the President and Congress having taken action to ensure that the DoD Photos would be withheld. *Id.* at 38 ("[W]here, as here, the Executive branches and the Legislative branches have spoken clearly as to the appropriateness of exempting these photographs," it was the Court's "obligation [] to follow" that determination); *id.* at 7 ("And then we have this presidential order, and an act of Congress. What more could I do?"); *id.* at 8 ("It's the same concern about harm that's been expressed throughout the case, which I did not follow but which Congress commands me to follow. I'm just a judge."); *id.* at 15 ("[T]here's now a specific statute that says that these kinds of certifications need to be given conclusive respect.").

At the end of the July 20, 2011 argument, the Court granted DoD's Sixth Motion and denied Plaintiffs' Sixth Motion. *Id.* at 29. In so ruling, the Court held that the Ninth Circuit's holding in *Long* did not "appl[y]" to the instant case. *Id.* at 37. Rather, the Court concluded that the Second Circuit's decision in *A. Michael's Piano* governed. *Id.* Accordingly, the Court held that to determine whether a record was properly withheld pursuant to Exemption 3, a court should "look . . .to the plain language of the statute and its legislative history in order to determine its legislative purpose." *Id.* Applying that analysis, the Court found that "the legislative purpose [in enacting the PNSDA] was to provide authorizing legislation to support the President's determination that these images should not be disclosed, should be exempt from FOIA." *Id.* Accordingly, the Court found that the DoD Photos fell within the scope of the PNSDA. *Id.* at 37-38.

At other points in the argument, the Court explained that it "c[ould not] say that there is a lack of a rational basis for what [the] Secretary. . . ha[d] certified, and if you want me to do a *de*

*novo* review, I've done it, by reason of my familiarity with the case." *Id.* at 23; *see also id.* at 36

("[I]t was clear to me that Secretary Gates had a rational basis for his certifications and that I

could not second-guess it. . . . ").

The next day, on July 21, 2011, the Court entered an order granting the Government's

Sixth Motion denying Plaintiffs' Sixth Motion.  (Dkt. 469).  Plaintiffs have not sought appeal of

the Court's order.

**E.      The Secretary Issues a Renewal Certification Pursuant to the PNSDA**

On November 9, 2012, a few days before the original certification, dated November 13,

2009, was to expire, Leon Panetta, the Secretary, signed a renewal certification as provided for

under section (d)(3) of the PNSDA (the "Renewal Certification").  *See* Barcelo Decl. Ex. D.

Like the original certification, the Renewal Certification states that it pertains to "photographs

[that] are contained in, or derived from, records of investigations of allegations of detainee

abuse, including the records of investigation processed and released in *American Civil Liberties*

*Union v. Department of Defense*, 04 Civ. 4151 (AKH) (S.D.N.Y.)," and "include but are not

limited to the 44 photographs referred to in the decision of the United States Court of Appeals

for the Second Circuit in *American Civil Liberties Union v. Department of Defense*, 543 F.3d 59,

65 & n.2 (2d Cir. 2008), *vacate and* remanded, 130 S. Ct. 777(2009)."  The Certification also

states that the photographs "relate to the treatment of individuals engaged, captured or detained

after September 11, 2001 by the Armed Forces of the United States in operations outside the

United States" and "were taken in the period between September 11, 2001 and January 22,

2009."  *Id.*

The Renewal Certification explains that before it was issued, the Secretary consulted with

8

"the Chairman of the Joint Chiefs of Staff, the Commander of the U.S. Central Command, and the Commander of International Security Assistance Force/United States Force Afghanistan," *id.*, each of whom agreed with the Secretary's determination that "public disclosure of these photographs would endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States." *Id.* Finally, and as contemplated by the PNSDA, the Renewal Certification directs that notice of the Secretary's re-certification be provided to Congress. *Id.*

**F.      December 14, 2012 Status Conference**

In a status conference before the Court a month later on December 14, 2012, Plaintiffs raised the issue of the Renewal Certification and DoD's continued withholding of the DoD Photos.  Barcelo Decl. Ex. E (Transcript of Conference held December 14, 2012).  When Plaintiffs first mentioned the DoD Photos, the Court reiterated that "The Congress and the President took the case away from us," and that the Court had "ruled. . . [that it] was bound" by the determinations made by Congress and the President.  *Id.* at 5.  Plaintiffs' counsel agreed, and described Plaintiffs' argument in their Sixth Motion as being "that the mere conclusory statement by the Secretary that there will be harm caused is insufficient, that there has to be – consistent with the other types of declarations that are required in Freedom of Information Act cases, there has to be a sufficiently detailed showing so that that matter could be reviewed." *Id.* at 6.  As Plaintiffs' counsel recognized that at that conference, the Court previously "rejected" those arguments.  *Id.*

**ARGUMENT**

## I.  THE COURT SHOULD CONTINUE TO ADHERE TO ITS RULING THAT THE DOD PHOTOS ARE PROPERLY WITHHELD

FOIA was enacted to "ensure an informed citizenry, . . . needed to check against corruption and hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).  FOIA requires each federal agency to make available to the public a wide array of information, and sets forth procedures by which requesters may obtain such information.  *See* 5 U.S.C. § 552(a).  At the same time, FOIA exempts nine categories of information from disclosure.  At issue here are FOIA Exemptions 3 and 7(F).

### A.  Pursuant to the Doctrine of the Law of the Case, the Court Should Order that the DoD Photos Are Properly Withheld Pursuant to the PNSDA

Plaintiffs' arguments in their Seventh Motion should be rejected pursuant to the law of the case doctrine.  The "law of the case" is a discretionary doctrine that "counsels a court against revisiting its prior rulings in subsequent states of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.") (internal citation omitted); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

10

injustice.") (internal citations omitted).[2]  That the party seeking consideration wishes to make a

more "persuasive" argument the second time does not constitute a cogent or compelling reason

to revisit a prior ruling.  *See Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981); *see also In re*

*Rezulin Products Liab. Litig.*, 224 F.R.D. 346, 349, 352 (S.D.N.Y. 2004) (denying motion for

reconsideration of class certification because, under law of the case doctrine, plaintiffs

"advanced no persuasive basis for relitigating the . . . issue on the basis of arguments that they

previously elected not to make").

Here, pursuant to the law of the case doctrine, the Court should adhere to its previous

holding that the DoD Photos are exempt from release pursuant to the PNSDA.  The Court

previously rejected Plaintiffs' current argument that the Court should rely on the Ninth Circuit's

decision in *Long* as a basis to conduct a *de novo* review of the existence of the harms that the

Secretary described in the certification.  *Compare* Plfs' Mot. at 16-22 (arguing for the application

of the holding and analysis in the *Long* case here) *with* Barcelo Ex. C at 37 (July 20 Trans.)

(*Long* does not "appl[y]" to DoD's withholding under the PNSDA and the Court should instead

look to *A. Michael's Piano* to determine whether the Government's withholding of the DoD

Photos was proper).  And Plaintiffs have not set forth any "compelling" reasons why the Court

should reconsider this legal ruling.  Specifically, Plaintiffs do not argue that the Court's reliance

---

[2]      Although Fed. R. Civ. P. Rule 54(b) provides that an "order or other form of decision is
subject to revision at any time before the entry of judgment," courts in the Second Circuit have
limited the application of Rule 54(b) by "treating those decisions as laws of the case."  *Official*
*Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d
147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they
should neither be required, nor without good reason permitted, to battle for it again.") (internal
citation omitted); *see also Virgin*, 956 F.2d at 1255 ("[E]ven if Rule 54(b) allows parties to
request district courts to revisit earlier rulings, the moving party must do so within the strictures
of the law of the case doctrine.").

on *A. Michael's Piano* constituted "clear error" or caused a "manifest injustice," nor do they (or can they) point to any intervening change of controlling law. *Starbucks*, 736 F.3d at 208. While Plaintiffs may intend to argue that the changes in the military presence of the United States abroad constitute "new evidence" pursuant to the law of the case doctrine, Plfs' Mot. at 10-11, 23-24, the Court's ruling on the legal issue of whether *Long* or *A. Michael's Piano* controls is not a question to which "evidence" has any bearing. *See Zdanok v. Glidden Co.*, 327 F.2d 944, 950 (2d Cir 1964) (district court erred when, on remand, it considered evidence to refute a point of law on which the Second Circuit had already ruled).

Moreover, the Government disagrees with Plaintiffs' characterization of this Court's July 20, 2011 ruling as holding that a Court "is required to do something more than verify the fact of the Secretary['s] certification" in order to uphold DoD's withholding pursuant to the PNSDA. Plfs' Mot. at 17. On the contrary, the Government understands the rational basis review that the Court explained it performed to be in the alternative, because the Court's rejection of *Long* and endorsement of *A. Michael's Piano* is not consistent with requiring any inquiry into the accuracy of the Secretary's determinations stated in a certification issued pursuant to the PNSDA. That is because pursuant to *A. Michael's Piano*, in a FOIA Exemption 3 case *de novo* review is limited to determining "whether the [agency] met its burden of proving that the documents withheld pursuant to Exemption 3 fell within the scope" of the withholding statute, and neither the plain language of the PNSDA nor its legislative history suggest that Congress contemplated any review of the accuracy of the harm determination in the certification. *See* Barcelo Decl. Ex. A at 7-12 (DoD's Sixth Motion, describing legislative history of PNSDA); *see also id.* at 14-25 (discussing *A. Michael's Piano* and how its analysis and holding apply to the PNSDA); *see also*

*infra* Point I(B)(1).  Indeed, the Act provides no standards for a court to apply against the Secretary's determination of endangerment.

Accordingly, pursuant to the doctrine of the law of the case the Court should likewise decline to consider Plaintiffs' new argument—not raised in support of their Sixth Motion—that the Renewal Certification is not sufficient because it does not address each of the DoD Photos on an individual basis.  Plfs' Motion at 15-16.   Given the almost identical language of the original certification and the Renewal Certification, Plaintiffs do not (and indeed cannot) set forth a compelling reason for why the Court should consider this new argument now, when it could have been raised in support of their Sixth Motion.  *See Fogel*, 668 F.2d 109 (a party's more "persuasive" argument is not grounds to disregard court's previous determination of an issue); *see also In re Rezulin Products*, 224 F.R.D. at 352 (party had not set forth any "persuasive basis" to allow the court to relitigate an issue "on the basis of arguments that they previously elected not to make").

Accordingly, the Court should decline to reconsider its ruling on the parties' Sixth Motions and should uphold DoD's withholding of the DoD Photos.

**B.     The DoD Photos Are Exempt from Disclosure Pursuant to FOIA Exemption 3**

Even if the Court were to find that law of the case does not counsel in favor of declining to consider Plaintiffs' current arguments (which it does), the Court nevertheless should grant DoD's Seventh Motion, deny Plaintiffs' Seventh Motion and uphold DoD's withholding of the DoD Photos.  As the Government explained in its Sixth Motion and as is discussed above, FOIA Exemption 3 permits the withholding of records where that withholding is authorized by a separate statute.  *See* 5 U.S.C. § 552(b)(3).  Exemption 3 is unique among the FOIA exemptions,

because its applicability is not "defined by FOIA itself," but rather by the statute that forms the basis for the withholding. *A. Michael's Piano*, 18 F.3d at 143 (FOIA Exemption 3 "incorporates the policies of other statutes"); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990) (Exemption 3 is "'differ[ent] from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'") (quoting *Ass'n of Ret. R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) and *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978)).

Accordingly, a withholding under Exemption 3 will be upheld if: "(1) the statute invoked qualifies as an exemption 3 withholding statute, and (2) the materials withheld fall within the statute's scope." *A. Michael's Piano*, 18 F.3d at 143; *see also Fitzgibbon*, 911 F.2d at 761-62.  In reviewing an agency's withholding of records pursuant to an Exemption 3 statute, FOIA principles of *de novo* review are therefore limited to determining "whether the [agency] met its burden of proving that the documents withheld pursuant to Exemption 3 fell within the scope" of the withholding statute. *A. Michael's Piano*, 18 F.3d at 144.

To answer that question and determine the scope of an Exemption 3 statute, the Second Circuit has followed the "approach taken by the Supreme Court" and will "look[] to the plain language . . and . . . legislative history" of the Exemption 3 statute, with the aim of "determin[ing] legislative purpose." *Id.* (citing *CIA v. Sims*, 471 U.S. 159, 168-73 (1985)); *id.* at 145 (in construing an Exemption 3 statute courts should be "guided by Congress' aim"); *id.* at 145-46 (examining legislative history to determine scope of the

14

Exemption 3 withholding statute); *see also Baldridge v. Shapiro*, 455 U.S. 345, 355-59

(1982) (interpreting the scope of a FOIA Exemption 3 statute based on the statute's

legislative history even after determining that the language of the withholding statute was

"unambiguous").

> **1. Because the DoD Photos Are "Protected Documents" Within the Meaning of the PNSDA They Are Exempt from Disclosure Pursuant to FOIA Exemption 3**

As the Court previously held, the DoD Photos fall squarely within the plain meaning of

"protected documents" as defined in the PNSDA.  PNSDA § (c).  As the Renewal Certification

sets forth, and as Plaintiffs do not dispute, the DoD Photos: (1) are "photographs" within the

meaning of the PNSDA taken during the period from "September 11, 2001 through January 22,

2009" (PNSDA § (c)(1)(B)(i), (c)(2); Renewal Certification, Barcelo Decl. Ex. D); (2) they

"relate[] to the treatment of individuals engaged, captured, or detained after September 11, 2001,

by the Armed Forces of the United States in operations outside of the United States" (PNSDA §

(c)(1)(B)(ii); Renewal Certification, Barcelo Decl. Ex. D); and, (3) the Secretary has "issued a

certification," (in this case a "renewal certification") based on his own determination "that

disclosure of [the DoD Photos] would endanger citizens of the United States, members of the

United States Armed Forces, or employees of the United states Government deployed outside the

United States."  (Renewal Certification, Barcelo Decl. Ex. D; PNSDA §§ (c)(1)(A), (d)(1)).

Because the DoD Photos therefore qualify as "protected documents" as defined in subpart (c) of

the PNSDA, they are properly withheld under the PNSDA.  *Sims*, 471 U.S. at 190 (In

determining whether a document falls within the scope of an Exemption 3 statute, "[t]he plain

statutory language is not to be ignored.") (citing *United States v. Weber Aircraft Corp.*, 465 U.S.

792, 798 (1984)).

Indeed, as DoD argued in support of its Sixth Motion, the language and structure of the

PNSDA further confirms Congress's intent that the Secretary's determination that releasing the

DoD Photos "would endanger citizens of the United States, members of the United States Armed

Forces, or employees of the United States Government deployed outside the United States,"

PNSDA § (d)(1), is not subject to judicial review.  *See* Barcelo Decl. Ex. A at 18-21 ((DoD's

Sixth Motion, describing how language and structure of the PNSDA provides support for

affirming DoD's withholding).  Moreover, the Act's legislative history makes clear that it was

passed specifically with the DoD Photos in mind and to ensure that they would not be released

where, as here, the Secretary has issued a certification.  *See id.*  at 7-12, 25-26.  Additionally, the

subject matter of the PNSDA—implicating matters of national security—makes judicial review

of the Secretary's determination that formed the basis for the Renewal Certification to be

particularly inappropriate.  *Id.* at 20-21. [3]

### 2. Plaintiffs Are Incorrect to Argue That the DoD Photos Are Not Properly Withheld Pursuant to Exemption 3

#### a. The Ninth Circuit's Decision in Long Does Not Apply to DoD's Withholding of the DoD Photos

Plaintiffs are wrong to argue that that the Court may only affirm DoD's withholding if

after conducting an "independent review of the Secretary's determination of harm" as set forth in

---

[3]      As the Government explained in its Sixth Motion, the subject matter of the PNSDA is quite relevant.  DoD's Sixth Motion at 21-22.  The Supreme Court has consistently declined to review exercises of discretion by national security officials where the "language and structure" of the statute pursuant to which the official exercised his discretion "indicate that Congress meant to commit [the decision] to the [official]'s discretion" in matters of national security. *Webster v. Doe*, 486 U.S. 592, 601 (1988) (relying on the plain language of the statute and the subject matter at issue of the "Nation's security" to hold that Congress granted unreviewable deference to the Director of the CIA to "deem . . . termination [of CIA employee] necessary or advisable in the interests of the United States").  DoD's Sixth Motion at 21-22 (citing additional cases).

the Renewal Certification, it determines that the Secretary's determination was accurate.  Plfs'

Mot. at 18-22.  To make that argument Plaintiffs again rely almost exclusively on the *Long* case,

but the Ninth Circuit's holding and analysis cannot be reconciled with the Second Circuit's

ruling in *A. Michael's Piano*, as this Court already recognized.  *See* Barcelo Decl. Ex. B at 21-25

(Plaintiffs' Sixth Motion), Ex. C at 37 (July 20 Trans.).

Most fundamentally, the two holdings cannot be reconciled because the Ninth Circuit's

holding in *Long* examined the legislative history of FOIA Exemption 3 to determine whether the

records at issue there were properly withheld pursuant to section 6103(b)(2), with the aim of

imposing FOIA's general principles of judicial review on the IRS's withholding.  *See*  Plfs' Mot.

at 19-20.  In *A. Michael's Piano*, on the other hand, the Second Circuit rejected imposing the

policy behind "FOIA disclosure and review requirements" onto an analysis of an Exemption 3

withholding, and instead held that the scope of records properly withheld pursuant to a FOIA

Exemption 3 statute is defined by the terms of the withholding statute rather than the policies

underlying FOIA.  18 F.3d at 143-44.[4]  Here, the plain language of the PNSDA as well as its

legislative history confirm that the DoD Photos are properly withheld.

Plaintiffs are likewise wrong to suggest that the Ninth Circuit's ruling in *Long* should

control here simply because both the PNSDA and section 6103(b)(2) of the Internal Revenue

Code were enacted in response to a "specific court-ordered disclosure of governmental records"

and have a similar statutory structure.  Plfs' Mot. at 18.   In fact, as DoD argued in support of its

---

[4]      Notably, the cases Plaintiffs cite to support their claim that "[f]our other circuits have
held that review of withholdings under § 6103 includes a review of determination of harm," Plfs'
Mot. at 20 & n.10, are the very cases that the Second Circuit rejected in *A. Michael's Piano*
because they focused on "FOIA disclosure and review requirements" in interpreting the scope of
a withholding under Exemption 3 rather than "looking to the plain language of the statute and its
legislative history."  *See A. Michael's Piano*, 18 F.3d at 144.

Sixth Motion, the two statutes are quite different in a number of important respects, including: (1) the PNSDA's inclusion of a Congressionally-mandated certification process, including a three-year time limit for each certification and Congressional oversight of the certification process, *see* Barcelo Decl. Ex. A at 18-20, 23 (DoD's Sixth Motion); (2) the different subject matters addressed by the two laws address—administration of tax laws versus matters of national security and the lives of U.S. Armed Forces as well as U.S. citizens, *See id.* at 20-21, 23-24;[5] and (3) the limited nature of the documents that can possibly constitute "protected documents" under the PNSDA, *see id.* at 24-25.

Finally, the PNSDA also expressly addresses Plaintiffs' concern that it may not be appropriate for the DoD Photos to be withheld "forever." Plfs' Mot. at 24. As Plaintiffs acknowledge, the PNSDA requires the Secretary to reconsider the existence of the harms that the PNSDA contemplates every three years. Plfs' Mot. at 23; PNSDA § (d)(2). Moreover, and as Plaintiffs also note, prior to its passage the PNSDA provide for a five-year duration for the certification but that period was shortened to three years. Plfs' Mot. at 23 (comparing 155 Cong. Rec. S5673 (daily ed.) (May 20, 2009) with 155 Cong. Rec. S5799 (daily ed.) (May 21, 2009)). This reflects Congress's considered determination that it is appropriate for the DoD Photos to be withheld for at least three years from the date of the Secretary's last certification or, in this case, Renewal Certification.

---

[5]     Indeed, even the Ninth Circuit's opinion in *Long* recognized that "special deference" is afforded to agencies in "particularly sensitive areas such as national security" that is not due in the administration of tax laws. 742 F.2d at 1182.

18

**b. The PNSDA Does Not Require the Secretary to Issue a Separate Certification for Each of the DoD Photos**

The Court should likewise reject Plaintiffs' new argument that the Renewal Certification is deficient because it does not state either "how many photographs are in the collection" or "that disclosure of each would—even if released in isolation—endanger Americans." Plfs' Mot. at 15. Plaintiffs' argument is incorrect, because on its face the PNSDA does not require that a certification address either of those points in order to provide a basis for withholding. *See supra* pp. 3-4 (listing elements necessary for a certification). Assuming that the PNSDA is an Exemption 3 statute, the DoD Photos "fall within the scope" of the PNSDA because the Renewal Certification covers each of the DoD Photos, and contains the language that the PNSDA requires with respect to each of those photos. *See supra* pp. 8-9. Because the PNSDA does not require that the Secretary issue a separate certification for each photograph, identify the number of photographs that are covered in a certification, or state that none of the individual photographs, in isolation, could be released, the DoD Photos fall "within the scope" of the PNSDA based on the Renewal Certification without any additional information. *A. Michael's Piano*, 18 F.3d at 144.

Indeed, in addition to the plain language of the PNSDA, the legislative history of the Act makes clear that both President Obama and Congress understood that the Act would protect a group of photographs from disclosure—that is, the very photographs at issue in this case. That was the case on May 20, 2009 when legislation to address the withholding of the DoD Photos was first introduced. *See* 155 Cong. Rec. S5671-74, S5672 (daily ed.) (May 20, 2009) (statement by Sen. Graham) ("The President of the United States has decided to stand for the proposition that releasing these photos would jeopardize the safety of our men and women

serving overseas and Americans abroad, as well as civilians serving in the war zones."); *id.* (statement by Sen. Graham) ("[W]e came up with an amendment that addresses the lawsuit before our judicial system about the photos."); *see also* Barcelo Decl. Ex. A at 7-8 (including additional cites to the PNSDA's legislative history from May 20, 2009).  And it remained the case when the Senate again discussed passing legislation to protect the DoD Photos from release in June 2009, at which point Senator Graham stated his explicit instructions to any court reviewing a withholding pursuant to the PNSDA:  that Congress's intent was to "change[] the law, directly on point, to give legislative backing to the idea that these particular photographs, and those like these photographs, should not be released for a period of 3 years, and that is in our national security interests to do so."  155 Cong. Rec. at S5987, S5988 (daily ed.) (June 3, 2009); *see also* Barcelo Decl. Ex. A at 8-12 (DoD's Sixth Motion, including further discussion of the PNSDA's legislative history).

**C.      DoD Is Not Required to Prepare a Vaughn Index for the DoD Photos**

As DoD already successfully argued to the Court in its Sixth Motion, in a FOIA Exemption 3 case where, as here, "a claimed FOIA exemption consists of generic exclusion, dependent upon the category of records rather than the subject matter with which each individual record contains, resort to a *Vaughn* index is futile."  *See Church of Scientology of California v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986) (no *Vaughn* index required in a FOIA Exemption 3 case if the agency has otherwise sufficiently established "that the document or group of documents in question actually falls into the exempted category"); *accord Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981) ("[W]hen the facts in plaintiff's possession are sufficient to allow an effective presentation of its case, an itemized and indexed justification of the specificity contemplated by

20

Vaughn may be unnecessary."); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993) ("In reviewing an exemption 3 claim," a court should "not closely scrutinize the contents of a withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute."); Barcelo Decl. Ex. A at 27-30 (DoD's Sixth Motion).

This general rule has also consistently been applied to FOIA exemptions other than Exemption 3 where, as here, a categorical or generic description of the records provides a sufficient basis to justify their withholding. *See, e.g., Church of Scientology*, 792 F.2d at 152 (listing cases); *Maydak v. DOJ*, 218 F.3d 760, 766 (D.C. Cir. 2000) ("generic, categorical showings" by the agency can justify withholding under Exemption 7(A)); *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) ("'[T]he government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document,' so long as its definitions of relevant categories . . . 'allow a court to determine . . . whether the specific claimed exemptions are properly applied.'") (quoting *Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir. 1991)); *Brown*, 658 F.2d at 73-74 (rejecting plaintiff's request for a "detailed justification for withholding the requested information, including an itemization and index which would correlate specific statements in the justification with actual portions of the requested documents" in FOIA action challenging withholdings under Exemptions 6 and 7).

Here, all of the DoD Photos are categorically withheld pursuant to Exemption 3 because they fall within the PNSDA's definition of a "protected document," and are all covered by the Secretary's Renewal Certification. *See supra* Point I(B)(1). Accordingly, as this Court has already ruled, no *Vaughn* index is required beyond the Vaughn indexes DoD already prepared in

21

connection with its invocation of Exemption 7(F).  *Church of Scientology*, 792 F.2d at 152.

**D.      The DoD Photos Are Properly Withheld Pursuant to Exemption 7(F)**

The DoD Photos are also properly withheld under Exemption 7(F).  That exemption

provides that documents may be exempt from disclosure under FOIA if they are "records or

information compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information . . . could reasonably be expected to endanger the

life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  The Government maintains

its argument that Exemption 7(F) justified its withholding of the DoD Photos, and that no

additional Vaughn indexes are necessary to invoke this exemption.  *See* Barcelo Decl. Ex. A at

30-31 (DoD's Sixth Motion, citing Defendants' Supplemental Memorandum of Law in Further

Support of Defendants' Motion for Partial Summary Judgment dated July 22, 2005 (Dkt. No.

114)).

**II. IN THE ALTERNATIVE, THE PNSDA OPERATES INDEPENDENTLY OF FOIA**

Finally, and as DoD argued in its Sixth Motion, because of the PNSDA's unequivocal

language prohibiting release of the DoD Photos, the Court should uphold the Government's

withholding even if it finds that the DoD Photos are not properly withheld pursuant to the

PNSDA when it is construed as a FOIA Exemption 3 statute.  *See* Barcelo Decl. Ex. A at 31-32

(DoD's Sixth Motion).[6]

---

[6]      The Government did not "concede" that the PNSDA is an Exemption 3 statute in the July
20, 2011 argument.  *See* Plfs' Mot. at 16 (arguing that it did).  The statements that Plaintiffs
claim constituted a Governmental concession did no such thing.  By discussing the PNSDA as an
Exemption 3 statute the Government did not concede that the PNSDA could only be viewed as
an Exemption 3 statute.  Rather, the Government addressed the points that the Court had
previously been discussing with Plaintiffs' counsel, which concerned FOIA Exemption 3.

**CONCLUSION**

For the forgoing reasons, the Court should enter partial summary judgment in favor of the Government on its seventh motion for partial summary judgment and deny plaintiffs' seventh motion for partial summary judgment.

Date:   New York, New York
        February 11, 2014

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for DoD*

                                By: */s/ Amy A. Barcelo*
                                        TARA M. La MORTE
                                        AMY A. BARCELO
                                        Assistant United States Attorneys
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Tel: (212) 637-6559
                                        Fax: (212) 637-2730
                                        amy.barcelo@usdoj.gov