UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/27/14

--------------------------------------------------------------- x

AMERICAN CIVIL LIBERTIES UNION et al,

                Plaintiffs,

    -against-

DEPARTMENT OF DEFENSE et al,

                Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**ORDER AND OPINION
GRANTING, IN PART,
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT**

04 Civ. 4151 (AKH)

--------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

        In September 2005 and June 2006, I ruled that the Department of Defense was required by the Freedom of Information Act ("FOIA") to release photographs depicting the prisoners at Abu Ghraib prison and other sites in degrading portrayals. All photographs had been redacted to mask individual identities. *See Am. Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 571 (S.D.N.Y. 2005) ("*ACLU I*"); *Am. Civil Liberties Union v. Dep't of Def.*, 2006 WL 1638025 (S.D.N.Y. June 9, 2006); *Am. Civil Liberties Union v. Dep't of Def.*, 2006 WL 1722574 (S.D.N.Y. June 21, 2006). The Court of Appeals affirmed. *Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59 (2d Cir. 2008) ("*ACLU II*"). At that point, President Obama announced that the photographs would be made public. At that time, large numbers of similar photographs were then freely circulating on the internet.

        In that context, Nouri al-Maliki, Prime Minister of Iraq, asked President Obama not to release the photographs for fear of the consequences. The government filed a petition for *certiorari* and, at President Obama's request, Congress enacted the Protected National Security

Documents Act ("PNSDA").[1] The law amended FOIA to provide that the photographs could be made exempt from disclosure for a three-year certification by the Secretary of Defense to the effect that publication would endanger American lives.

In a previous order, I upheld the certification of Secretary of Defense Robert Gates of November 13, 2009. *See* Dkt. Nos. 469, 474. The issue now at hand is whether or not I should uphold Secretary of Defense Leon Panetta's Certification of November 9, 2012. Both sides tender the issue to me by separate motions for summary judgment.

I hold, for the reasons discussed below, that Secretary Panetta's certification is not sufficient to prevent publication of redacted photographs. It was conclusory as to all, when it should have been focused on each separate photograph as the PNSDA requires. And the government failed to show that it had adequate basis for the certification.

## BACKGROUND

This litigation has its origin in FOIA requests the plaintiffs filed on October 7, 2003, seeking records related to the treatment and death of prisoners held in United States custody abroad after September 11, 2001, and records related to the practice of "rendering" those prisoners to countries known to use torture. On June 2, 2004, having received no records in response to the requests, the plaintiffs filed their complaint in this case, alleging that the defendant agencies, the Central Intelligence Agency, the Department of Homeland Security, the Department of Justice, the Department of Defense, Department of State (and some of their components) had failed to comply with the law. I held that defendants were required by FOIA to

---

[1]     Section 565 of the Department of Homeland Security Appropriations Act, 2010, Pub.L. 111–83, Title V, § 565, Oct. 28, 2009, 123 Stat. 2184-85.

identify responsive documents, and to produce those that were not covered by exemptions. *Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004).

In August 2004, the plaintiffs provided the defendants with a set of documents to illustrate the type of records that would be responsive to their request, including photographs and videos that Army Specialist Joseph Darby had provided to the Department of the Army Criminal Investigative Command ("Darby Images"). The Darby Images were taken at Abu Ghraib prison in Iraq and included images of unclothed detainees posed in "dehumanizing, sexually suggestive ways." *ACLU II*, 543 F.3d at 64. In March 2006, the Darby Images, and others like them, were published by a third-party on the internet and the government stopped fighting their release. *Id.* at 65.

In April 2006, the government acknowledged that it possessed 29 additional photographs responsive to the plaintiffs' FOIA request. These 29 photographs "were taken in at least seven different locations in Afghanistan and Iraq," and involved additional detainees and different U.S. U.S. military personnel. *Id.* The government is believed to possess many more, perhaps hundreds or thousands of such photographs.[2] It has agreed that any additional responsive documents that it has withheld on the same basis as the 29 images would also be governed by any final ruling on appeal regarding those 29.

In June 2006, I supervised redactions to eliminate the possibility of identification of the individuals who were depicted in the photographs, and I ordered the release of 21 of the disputed photographs. The Second Circuit affirmed my decision on September 22, 2008. *Id.* In its affirmance, the Second Circuit rejected the government's arguments that these photographs

---

[2]     Senator Lieberman stated that the government had "nearly 2,100 photographs depicting the alleged mistreatment of detainees in U.S. custody. 155 Cong. Rec. S5987 (daily ed. June 3, 2009). The executive branch has not specified how many photographs they are withholding.

3

should not be disclosed under FOIA. Among the arguments rejected by the Second Circuit was
the government's argument that the photographs fell under FOIA Exemption 7(F), because their
disclosure could reasonably be expected to incite violence against United States troops, other
Coalition forces, and civilians in Iraq and Afghanistan. *Id.* at 67.

The government filed a petition to the United States Supreme Court for *certiorari*
on August 7, 2009. However, on October 28, 2009, the PNSDA became law, as part of the
Department of Homeland Security Appropriations Act of 2010, providing a framework for
withholding publication of the photographs.

Secretary of Defense Robert Gates then certified, on November 13, 2009,
pursuant to the PNSDA, that "a collection of photographs . . . assembled by the Department of
Defense that were taken in the period between September 11, 2001 and January 22, 2009, and
that relate to the treatment of individuals engaged, captured or detained after September 11, 2001
by the Armed Forces of the United States in operations outside the United States," not be
published. The photographs covered by the Secretary's certification included the photographs
that were mentioned in the Second Circuit's decision, *ACLU II*, 543 F.3d 59. Secretary Gates
certified that "[u]pon the recommendations of the Chairman of the Joint Chiefs of Staff, the
Commander of U.S. Central Command, and the Commander of the Multi-National Forces-Iraq,"
he had determined that "public disclosure of the photographs would endanger citizens of the
United States, members of the United States Armed Forces, or employees of the United States
government deployed outside the United States." Secretary Gate's certification did not elaborate
on the bases of the recommendations given to him by the Joint Chiefs of Staff, the Commander
of U.S. Central Command, and the Commander of the Multi-National Forces-Iraq.

4

Following Secretary Gate's Certification, the United States Supreme Court granted *certiorari* and remanded this case to the Second Circuit for further proceedings in light of the PNSDA and the certification. *See Dep't of Def. v. Am. Civil Liberties Union*, 558 U.S. 1042 (2009).  On July 7, 2010, the Second Circuit then remanded the case to me.

The parties again cross-moved for partial summary judgment, to uphold and to impeach, the Secretary's Certification.  The plaintiffs argued that the Court was required to conduct a review, *de novo*, of the Secretary of Defense's determination that release of the photographs would endanger U.S. citizens, service members, or employees.  The government argued that the Court's only role was to establish that the Secretary of Defense had issued a certification.

On July 20, 2011, after oral arguments on that motion, I denied the plaintiffs' motion, and granted the government's motion.  Without specifically ruling on the standard of review I should apply, I ruled that "it [i]s clear to me that Secretary Gates had a rational basis for his certifications and that I could not second guess-it." Tr. at 36:6-8.  I stated that, "by reason of my familiarity with the case," I had effectively conducted a *de novo* review of Secretary Gates's decision, had found that there was a rational basis for it, and would not 'opine' on whether there is or is not a danger in the battlefield because of the disclosure of pictures of this sort." Tr. at 23:21-24:2.  I ruled that the legislative history of the statute, especially statements by Senators Lieberman and Graham who sponsored the bill, made clear that the PNSDA was passed in order "to provide authorizing legislation to support the President's determination that these images should not be disclosed."  Tr. at 37:16-19.  The Obama administration had changed its attitude following a request from the Prime Minister of Iraq that the United States government not publish the photographs for fear that their publication would fuel insurrection and make it

5

impossible to have a functioning government. *See* Tr. at 34:7-23. From that history, I upheld

Secretary Gates' certification.

Under the PNSDA, Secretary Gate's 2009 Certification was to expire on

November 13, 2012. Several days before expiration, Secretary of Defense Leon E. Panetta

issued his certification ("the 2012 Certification), virtually identical to the 2009 Certification.

Referring to the Second Circuit opinion and the photographs it identified, the 2012 Certification

stated that "[u]pon the recommendations of the Chairman of the Joint Chiefs of Staff, the

Commander of the U.S. Central Command, and the Commander, International Security

Assistance Force/United States Forces-Afghanistan," Secretary Panetta had determined that

"public disclosure of the photographs would endanger citizens of the United States, members of

the United States Armed Forces, or employees of the United States government deployed outside

the United States." It did not elaborate on the bases of those recommendations.

The parties again move for partial summary judgment upholding and impeaching

the Secretary's 2012 Certification.[3]

## DISCUSSION

The current dispute concerns the legal effect of Secretary Panetta's 2012

Certification. Since my review in this case is to determine whether the 2012 Certification was

properly issued and justifies the withholding of the photographs, the 2012 Certification must be

judged as of its date, November 9, 2012.

---

[3]     The government asserts that the photographs in question can also be withheld under
FOIA Exemption 7(F), an argument which this Court rejected in *Am. Civil Liberties Union v.
Dep't of Def.*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005), and the Second Circuit rejected in *Am. Civil
Liberties Union v. Dep't of Def.*, 543 F.3d 59 (2d Cir. 2008). The government does not present
any legal arguments as to why I should not adhere to those decisions and appears to raise this
point only for purposes of preserving its position.

FOIA calls for "broad disclosure of Government records." *CIA v. Sims*, 471 U.S.

159, 166 (1985). To that end, the Act "requires the government to disclose its records unless its

documents fall within one of the specific, enumerated exemptions set forth in the Act." *Nat'l*

*Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005) (citation omitted).

FOIA contains nine exemptions against disclosure. *See* 5 U.S.C. § 552(b)(1)-(9). The third is

pertinent here. Exemption (3) applies to documents that are:

> specifically exempted from disclosure by statute (other than
> section 552b of this title), if that statute—
> (A)(i) requires that the matters be withheld from the public in such
> a manner as to leave no discretion on the issue; or (ii) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld; and
> (B) if enacted after the date of enactment of the OPEN FOIA Act
> of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). The PNSDA is an exemption (3) statute, since it provides criteria for the

withholding of certain documents from the public under FOIA and it was enacted before the

OPEN FOIA Act of 2009.

> The PNSDA provides that:

> Notwithstanding any other provision of the law to the contrary, no
> protected document, as defined in subsection (c), shall be subject
> to disclosure under section 552 of title 5, United States Code or
> any proceeding under that section.

Subsection (c) defines protected documents as photographs, taken between September 11, 2001

and January 22, 2009, relating to the treatment of individuals by the United States military

abroad "for which the Secretary of Defense has issued a certification, as described in subsection

(d), stating that disclosure of that record would endanger citizens of the United States, members

of the United States Armed Forces, or employees of the United States Government deployed

outside the United States." Subsection (d) provides that

> [T]he Secretary of Defense shall issue a certification if the
> Secretary of Defense determines that disclosure of that photograph
> would endanger citizens of the United States, members of the
> United States Armed Forces, or employees of the United States
> Government deployed outside the United States.

The PNSDA provides further that each certification expires after three years, but can be renewed

at any time.  PNSDA § (d)(2), (3).

"The agency asserting the exemption [from FOIA] bears the burden of proof, and

all doubts as to the applicability of the exemption must be resolved in favor of disclosure."

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009).  To meet its burden of proof, the

agency can submit "[a]ffidavits or declarations giving reasonably detailed explanations why any

withheld documents fall within an exemption."  *Am. Civil Liberties Union v. Dep't of Justice*,

681 F.3d 61, 69 (2d Cir. 2012) (internal quotation marks omitted).

The government contends that Secretary Panetta's 2012 Certification satisfies its

burden why the photographs in issue should not be produced.  The 2012 Certification is

practically identical to the certification given by Secretary Gates three years earlier.[4]  The

certifications are expressed in conclusory fashion, and relate to all the photographs at issue—

likely hundreds or thoursands. The certifications track the language of the statute, without

providing any specific explanation for why the Secretary certified the photographs, except to

state that based on the recommendations of certain senior military officials, the Secretary

determined that the photographs met the criteria of the statute.

Two issues are presented.  Plaintiffs contend that Secretary Panetta's 2012

Certification is inadequate because it fails to address the photographs on an individualized basis

and because it does not provide sufficient information to allow the court to determine if

---

[4]     Copies of the certifications are appended to this order.

disclosure of each photograph would endanger the citizens, armed forces, or employees of the United States. The government contends that the PNSDA allows the Secretary of Defense to issue a single certification for all of the photographs and that this Court may not, and should not, review the basis for the Secretary of Defense's decision.

## A.    The Law of the Case Doctrine Regarding my Ruling of July 20, 2011:

The PNSDA was enacted on October 28, 2009. Secretary of Defense Gates issued his certification on November 13, 2009. On July 20, 2011, I ruled that Secretary Gates' certification, coming so soon after the intervention of Prime Minister Maliki with President Obama and the resulting enactment of the PNSDA, was adequate and justified the government's withholding the photographs. I held that my familiarity with the entire record of these photographs was the equivalent of a *de novo* review.

The PNSDA was enacted in the context of the ongoing war in Iraq, in which the United States military was involved in active military operations. As I noted on July 20, 2011, the statute was passed in response to a request from the Prime Minister of Iraq that the United States government not publish the photographs for fear that their publication would fuel insurrection and make it impossible to have a functioning government. *See* Tr. at 34:7-23. The legislative history of the statute—especially statements by Senators Lieberman and Graham who sponsored the bill—made clear that the PNSDA was passed in order "to provide authorizing legislation to support the President's determination that these images should not be disclosed." Tr. at 37:16-19.[5]

---

[5]      For example, on the Senate floor, Senataor Lieberman stated that "the language in the bill . . . is clear . . . in that it would apply to [this] lawsuit and block the release of these photographs, preventing the damage to American lives that would occur from that release," 155 Conf. Rec. S5987-88 (daily ed. June 3, 2009), and Senator Graham stated that the PNSDA would "help the President win [this lawsuit]," *id.* at S5674 (daily ed. May 20, 2009).

9

Given that history, I concluded that "it was clear to me that Secretary Gates had a rational basis for his certifications and that I could not second guess-it." Tr. at 36:6-8. I also commented that, "by reason of my familiarity with the case," I had effectively conducted a *de novo* review of Secretary Gates's decision, had found that there was a rational basis for it, and would not "opine" on whether there is or is not a danger in the battlefield because of the disclosure of pictures of this sort." Tr. at 23:21-24:2.[6]

The government contends that, under the law of the case doctrine, I should reach the same result now. The law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). But, the doctrine is "flexible" and allows courts to modify or reconsider their rulings on the basis of new evidence. *Id.*

Three years is a long time in war, the news cycle, and the international debate over how to respond to terrorism. Secretary of Defense Panetta's certification of November 9, 2012, was issued under different circumstances from the 2009 certification of Secretary Gates. On November 9, 2012, the United States' combat mission in Iraq had ended (in December 2011), and all (or mostly all) American troops had been withdrawn from Iraq. I am aware of no impassioned plea from the Prime Minister of Iraq relating to the photographs made at that time. The 2009 Certification was based on the recommendation of the U.S. Commander responsible for the continuing deployments on active battlefields of our forces in Iraq. The 2012

---

[6]    In addition to the 2009 Certification, defendants had also submitted for my consideration a May 27, 2009 declaration by General David H. Petraeus, the then Commander of the United States Central Command, and a May 27, 2009 declaration by General Raymond T. Odierno, the Commander of the Multi-National Force-Iraq. These declarations put on the record some of the United States military's reasons for concluding, in 2009, that the release of the photographs would cause harm.

10

Certification was based on the recommendation of the U.S. Commander responsible for the deployment of our troops in Afghanistan. Given the passage of time, I have no basis for concluding either that the disclosure of photographs depicting the abuse or mistreatment of prisoners would affect United States military operations at this time, or that it would not.

In short, while the entire legislative history of the PNSDA supported the 2009 certification, the factual basis for the 2012 recertification is uncertain. As John Maynard Keynes supposedly quipped, "When the facts change, I change my mind. What do you do, sir?" My July 20, 2011 decision does not compel any result in this case.

**B.     The Adequacy of the Certification:**

I now turn to the parties' dispute regarding the adequacy of the Secretary of Defense's certification. The government bears the burden of showing that the photographs withheld fall within the PNSDA's scope. *See A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 143 (2d Cir. 1994). To invoke the statute, the government must establish that "(1) the statute invoked qualifies as an exemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope." *Id.*

The parties agree that the Court should conduct a *de novo* review of the government's claim to entitlement to an exemption. *See id.* at 143 ("It is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure."); *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999) (applying a *de novo* review); 5 U.S.C. § 552(a)(4)(B) (providing for *de novo* review). But, they disagree as to what that *de novo* review means in the context of the PNSDA. The government contends that my *de novo* review is limited to determining whether a certification has issued. Plaintiffs contend that I must review the adequacy of the certification: to

11

determine if the Secretary of Defense's review was of each photograph individually, and if the

Secretary was correct in invoking the risk of harm to American lives as a basis for withholding

that individual photograph.

## I.      Judicial review of the basis for the Secretary of Defense's certification:

The parties first ask me to address whether the PNSDA requires judicial review of

the basis for the Secretary of Defense's determination that a "photograph would endanger

citizens of the United States, members of the United States Armed Forces, or employees of the

United States Government deployed outside the United States." PNSDA § (d)(1).  The

government contends that *de novo* review requires the Court merely to ascertain whether the

Secretary of Defense issued a certification.  Plaintiffs contend that the Court should review the

basis for the Secretary of Defense's certification and make a *de novo* determination of whether

the Secretary of Defense was correct in determining that the photograph would endanger United

States citizens, military personnel or employees.

To resolve this issue, I must interpret the PNSDA.  Because the PNSDA is an

exemption (3) withholding statute, I follow the Second Circuit's decision in *A. Michael's Piano*

and construe the PNSDA by "looking to the plain language of the statute and its legislative

history, in order to determine legislative purpose."  18 F.3d at 144.[7]  This is in accord with the

---

[7]      Plaintiffs argue that my interpretation of the PNSDA should be informed by the Ninth
Circuit's decision in *Long v. Internal Revenue Serv.*, 742 F.2d 1173 (9th Cir. 1984), in addition
to *A. Michael's Piano*.

*Long* was premised on the Ninth Circuit's conclusion that, as a rule, FOIA exemption (3)
statutes should be interpreted in line with the legislative history indicating Congress' intent when
it created exemption (3).  *Id.* at 1180-81.  However, in *A. Michael's Piano*, the Second Circuit
explicitly declined to follow decisions that, like *Long*, adopted a *per se* rule about how
exemption (3) statutes should be construed. *See* 18 F.3d at 144 (declining to follow courts giving
a narrow reading to FOIA exemption (3) statutes based on because "the Supreme Court has
never applied a rule of narrow or deferential construction to withholding statutes").  As a
Southern District Judge, I follow *A. Michael's Piano* and therefore do not rely on *Long*.

12

Second Circuit's more recent guidance about how to construe statutes: "In construing a statute,

we begin with the plain language, giving all undefined terms their ordinary meaning. . . We will

resort to legislative history and other tools of statutory interpretation only if we conclude that the

text is ambiguous." *United States v. Desposito,* 704 F.3d 221, 226 (2d Cir. 2013) (citations

omitted). Accordingly, I begin with the PNSDA's language.

        The PNSDA limits the government's disclosure obligations as to photographs

taken between September 11, 2001 and January 22, 2009 relating to the treatment of individuals

by the United States military abroad. The PNSDA provides that those photographs that are

subject to a certification issued by the Secretary of Defense need not be disclosed. *See* PNSDA §

(c)(1). Regarding certifications, the statute provides that,

> For any photograph described under subsection (c)(1), the
> Secretary of Defense shall issue a certification if the Secretary of
> Defense determines that disclosure of that photograph would
> endanger citizens of the United States, members of the United
> States Armed Forces, or employees of the United States
> Government deployed outside the United States.

PNSDA § (d)(1). Every three years, a fresh certification is to be given. PNSDA § (d)(2), (3).

---

        Plaintiffs also cite five other cases which reached a similar result to *Long. Currie v.
Internal Revenue Serv.*, 704 F.2d 523 (11th Cir. 1983); *Linsteadt v. Internal Revenue Serv.*, 729
F.2d 998 (5th Cir. 1984); *Grasso v. Internal Revenue Serv.*, 785 F.2d 70 (3d Cir. 1986); *DeSalvo
v. Internal Revenue Serv.*, 861 F.2d 1217 (10th Cir. 1988); *Seaco, Inc. v. Internal Revenue Serv.*,
No. 86 Civ. 4222, 1987 WL 14910 (S.D.N.Y. July 21, 1987).

        I cannot rely on the reasoning of those cases for the same reason that I cannot rely on the
reasoning of *Long.* Three of these cases (*Currie, Linsteadt*, and *Grasso*) were expressly
mentioned in *A. Michael's Piano* as cases that the Second Circuit declined to follow. 18 F.3d at
144. The fourth case (*DeSalvo*), used the same methodology as *Long.* And the fifth case
(*Seaco*), which this Court decided seven years prior to the Second Circuit's decision in *A.
Michael's Piano*, expressly relied on *Long.*

[7]     The parties agree that the disputed documents are all photographs, taken between
September 11, 2001 and January 22, 2009 and relating to the treatment of individuals by the
United States military abroad.

In this case, the plain language of the PNSDA does not address the question of judicial review, and the structure of the PNSDA is ambiguous. On one hand, the PNSDA is structured to condition disclosure on a determination by the Secretary of Defense to issue a certification. He determines, and then has to certify, that "disclosure of [a] photograph would endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States." One could argue that, by placing the decision whether to issue a certification in the executive branch's hands, Congress intended to give the executive branch the final say over whether withholding is appropriate. But, on the other hand that same subsection also provides strict criteria for when photographs should be certified by the Secretary of Defense. Subsection (d)'s use of the word "shall" in the phrase "the Secretary of Defense shall issue a certification" if certain criteria are met, suggests that certification is a mandatory act, not a discretionary one, and is therefore particularly apt for judicial review.

The legislative history of the PNSDA is not much clearer. The statute was enacted by Congress in order to allow the government to withhold the disputed photographs in 2009 even though the decision of the Second Circuit Court of Appeals mandated their disclosure. However, the PNSDA did not simply suspend the obligation to disclose. It attached a condition—the Secretary's certification—and it limited the effect of the certification to three years. But Congress did not say if it expected the Secretary of Defense's certification to be subject to judicial review.

Since the text, structure and legislative history of the statute are unclear, I turn to familiar cannons of interpretation. *See Desposito*, 704 F.3d at 226. First, it is well-established that statutes should be interpreted in line with other similar statutes. *See* ANTONIN SCALIA &

14

BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at § 39 (2012)
(noting the "Related-Statutes Canon": that "Statutes *in pari material* are to be interpreted
together, as though they were one law). This is because courts "generally presume that Congress
is knowledgeable about existing law pertinent to legislation it acts." *Goodyear Atomic Corp. v.
Miller*, 486 U.S. 174, 184-85 (1988). Accordingly, I presume that Congress was aware that
Court had construed FOIA as creating a background norm of "broad disclosure of Government
records," *Sims*, 471 U.S. at 166, and provided for *de novo* judicial review of agency invocations
of FOIA exceptions, *see Halpern*, 181 F.3d at 287,[8] when it enacted the PNSDA. While the
PNSDA was meant to place a limit on the documents that would be disclosed under FOIA,
nothing in the statute or its legislative history indicates that Congress intended for the PNSDA to
depart from those norms.

Second, I turn to the general principles of judicial review that exist in our legal
system. There is a "strong presumption that Congress intends judicial review." *Bowen v. Mich.
Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) (considering whether a statute created an
exception to judicial review under the Administrative Procedures Act and concluding that the
statute did not because of the presumption of judicial review). For example, in *Gutierrez de*

---

[8]      In *Halpern*, the Second Circuit explained the importance of *de novo* review to the FOIA
framework by quoting *A. Michael's Piano*, 18 F.3d at 141:

> In striking a balance between the incompatible notions of disclosure and privacy when it
> enacted FOIA in 1966, Congress established—in the absence of one of that law's clearly
> delineated exemptions—a general, firm philosophy of full agency disclosure, and
> provided *de novo* review by federal courts so that citizens and the press could obtain
> agency information wrongfully withheld. *De novo* review was deemed essential to
> prevent courts reviewing agency action from issuing a meaningless judicial imprimatur
> on agency discretion.

181 F.3d at 288.

*Martinez v. Lamagno*, the Supreme Court considered a statutory scheme which made an executive branch official responsible for certifying whether a tort committed by a federal employee was committed in the scope of the employee's employment. 515 U.S. 417 (1995). Because the statutory scheme was ambiguous and "reasonably susceptible to divergent interpretation" as to whether the certification was subject to judicial review, the Supreme Court "adopt[ed] the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render." *Id.* at 434; *see also id.* at 429 (rejecting a construction of the statute which would assign to the federal courts the role of "rubber-stamp[ing]" executive branch decisions).

These background rules of construction favor judicial review, both in light of the specific policies underlying FOIA and the general presumption of judicial review. There is no evidence that Congress intended to depart from those principles when it enacted the PNSDA. Accordingly, the PNSDA should be read as providing for judicial review of the basis for the Secretary of Defense's certification that disclosure of the photographs "would endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States." PNSDA § (d)(1).[9]

As discussed below, the Court will allow the government to submit documents supporting the factual basis for its assertion that these photographs should be withheld. The

---

[9]     Such a reading of the PNSDA is consistent with the Second Circuit's decision in *A. Michael's Piano*. In that case, the Second Circuit construed § 21(f) of the Federal Trade Commission Act, which allowed the Federal Trade Commission ("FTC") to withhold certain documents that were "provided voluntarily in place of such compulsory process." The Second Circuit, after considering the text and legislative history of the statute, concluded that the district court should review the factual basis for the FTC's invocation of § 21(f) as a ground for withholding documents under FOIA. 18 F.3d at 146.

16

Court is, of course, mindful of the security concerns that are at issue in this case. Accordingly, in conducting any review of the Secretary of Defense's certification the Court will, in the words of the Second Circuit, adopt a "workable standard," *id.* at 145, as it did with respect to other sensitive documents in this case, when I gave substantial deference to the submissions of military and intelligence officers. [10] *See ACLU I*, 389 F. Supp. 2d at 564-65. As Professor Goldsmith noted, with approval, FOIA litigation, by requiring the government to identify responsive documents, serves to call the government to account. *See* JACK GOLDSMITH, POWER AND CONSTRAINT: THE ACCOUNTABLE PRESIDENCY AFTER 9/11 at 114-18 (2012). But, once it has done so, courts have largely deferred to the submissions of military and intelligence officers, certifying the government's need to maintain secrecy. As plaintiffs' counsel observes, this Court has ordered the disclosure of "relatively few documents." *Id.*

As applied to this case, the government must show why, on November 9, 2012, the release of pictures taken years earlier would continue to "endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States." PNSDA § (d)(1).

---

[10]    For example, the National Security Act, 50 U.S.C. § 403(d)(3) requires the Director of the Central Intelligence Agency ("CIA") to protect intelligence sources and methods from unauthorized disclosure. Courts considering that statute have given "substantial weight and due consideration to the CIA's affidavits" in determining whether withheld material relates to intelligence sources or methods because courts lack expertise in intelligence methods. *Maynard v. C.I.A.*, 986 F.2d 547, 555 (1st Cir. 1993) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990)); *see also New York Times Co. v. U.S. Dep't of Justice*, 13-422 L, 2014 WL 1569514 (2d Cir. Apr. 21, 2014) (noting that when the government invokes a FOIA exemption "involving classified documents in the national security context, the Court must give *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record") (quotation omitted; emphasis in original).

## II.   Individual or collective review of the photographs:

The second question posed by the parties is whether the PNSDA requires the Secretary of Defense to issue an individual certification for each separate photograph. The statute provides that the Secretary of Defense shall issue a certification "[f]or any photograph" if the "disclosure of that photograph" would meet certain criteria. PNSDA § (d)(1). This plain language refers to the photographs individually—"*that* photograph"—and therefore requires that the Secretary of Defense consider each photograph individually, not collectively. *See A. Michael's Piano*, 18 F.3d at 144 (noting that "the Supreme Court in construing [FOIA] withholding statutes, look[s] to the plain language of the statute and its legislative history, in order to determine legislative purpose").

Reading the PNSDA as requiring individual review is supported by the way the Supreme Court has read FOIA, the legislation that forms the background and context of the PNSDA. As discussed above, I presume that Congress had FOIA's background norm of "broad disclosure of Government records," *Sims*, 471 U.S. at 166, in mind when it enacted the PNSDA. *See also Halpern*, 181 F.3d at 284-85 (noting that FOIA's "policy of full disclosure of all information not exempted serves the need for citizens to know what their government is up to and, generally, where the information sought sheds light on an executive agency's performance of its official duties, full access to the information serves FOIA's purposes").

Reading the PNSDA as requiring the individual review of photographs, rather than collective review, will further that goal of broad disclosure. It has been estimated that the government is withholding approximately 2,000 photographs. *See* 155 Cong. Rec. S5987 (daily ed. June 3, 2009) (statement of Senator Lieberman) (stating that the government had "nearly 2,100 photographs depicting the alleged mistreatment of detainees in U.S. custody"). During the

18

course of this litigation, I have reviewed some of these photographs and I know that many of these photographs are relatively innocuous while others need more serious consideration. Even if some of the photographs could prompt a backlash that would harm Americans, it may be the case that the innocuous documents could be disclosed without endangering the citizens, armed forces or employees of the United States. Considering the photographs individually, rather than collectively, may allow for more photographs to be released, furthering FOIA's "policy of full disclosure." *Halpern*, 181 F.3d at 284-85.

However, while the PNSDA requires individual review of each photograph, it does not prescribe what form the certification must take. Nothing in the statute prevents the Secretary of Defense from issuing one certification to cover more than one photographs. What is important is that the government, to invoke the PNSDA, must prove that the Secretary of Defense considered each photograph individually. *See Wilney*, 592 F.3d at 69 (noting that the government bears the burden of proving that withholding is appropriate under FOIA); *A. Michael's Piano*, 18 F.3d at 143 (noting that the government's bears the burden of proving that documents fall under an exemption (3) FOIA withholding statute).

The 2012 Recertification refers to "a collection of photographs . . . assembled by the Department of Defense." It states that, upon the recommendations of certain advisors, Secretary Panetta "determine[d] that the public disclosure of these photographs" would meet the requisite criteria for withholding disclosure. This document suggests that the Secretary of Defense has reviewed the photographs as a "collection," not individually. Thus, standing alone, the 2012 Recertification is insufficient to meet the government's burden of showing that the photographs were individually considered by the Secretary of Defense. The condition provided by the PNSDA for withholding disclosure is that each individual photograph, if disclosed, alone

19

or with others "would endanger citizens of the United States, members of the United States
Armed Forces, or employees of the United States Government deployed outside the United
States." PNSDA § (d)(1).

## C.    Next Steps

As set forth above, the 2012 Recertification, standing alone, is insufficient to meet
the government's burden to justify its withholding the photographs from disclosure. The
government has failed to submit to this Court evidence supporting the Secretary of Defense's
determination that there is a risk of harm, and evidence that the Secretary of Defense considered
whether each photograph could be safely released.

It would, however, be prudent to allow the government the opportunity to create a
record in this Court justifying its invocation of the PNSDA. *See Am. Civil Liberties Union v.
Dep't of Justice*, 681 F.3d at 69 (noting that an agency invoking a FOIA exemption may meet its
burden of proof by submitting "[a]ffidavits or declarations giving reasonably detailed
explanations why any withheld documents fall within an exemption" (internal quotation marks
omitted)).

Accordingly, counsel are directed to attend a conference at 3pm on September 8,
2014 to address whether the government intends to submit additional evidence into the record or
to produce redacted versions of the photographs.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion is granted in part and the

government's motion is denied.  Counsel shall attend a conference at 3pm on September 8, 2014.

The Clerk mark the motions (Doc. Nos. 493 and 495) terminated.  The case shall

remain open for two issues: the issue discussed in this Order and Opinion and the issue of fees

and allowances.

SO ORDERED.

Dated:      New York, New York
            August 22, 2014

                                    ALVIN K. HELLERSTEIN
                                    United States District Judge

21

CERTIFICATION RENEWAL OF THE
SECRETARY OF DEFENSE

This Certification Renewal pertains to a collection of photographs (as that term is defined in Section 565(c)(2) of the Department of Homeland Security Appropriations Act, 2010 (Pub. L. 111-83) ("DHS Appropriations Act")) assembled by the Department of Defense that were taken in the period between September 11, 2001 and January 22, 2009, and that relate to the treatment of individuals engaged, captured, or detained after September 11, 2001 by the Armed Forces of the United States in operations outside the United States. These photographs are contained in, or derived from, records of investigations of allegation of detainee abuse, including the records of investigation processed and released in *American Civil Liberties Union v. Department of Defense*, 04 Civ. 4151 (AKH) (S.D.N.Y.). The photographs include but are not limited to the 44 photographs referred to in the decision of the United States Court of Appeals for the Second Circuit in *American Civil Liberties Union v. Department of Defense*, 543 F.3d 59, 65 & n.2 (2d Cir. 2008), *vacated & remanded*, 130 S. Ct. 777 (2009).

Upon the recommendations of the Chairman of the Joint Chiefs of Staff, the Commander of the U.S. Central Command, and the Commander, International Security Assistance Force/United States Forces-Afghanistan and by the authority vested in me under Section 565(d)(1), (3) of the DHS Appropriations Act, I have determined that public disclosure of these photographs would "endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States."

Therefore, these photographs continue to meet the standard for protected documents, as that term is defined in Section 565(c)(1) of the DHS Appropriations Act and are exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and in all proceedings pursuant to that law. As required by Section 565(d)(4) of the DHS Appropriations Act, I hereby direct that notice of this Certification Renewal be provided to Congress.

Date: **NOV 0 9 2012**

Secretary of Defense

# CERTIFICATION OF THE
## SECRETARY OF DEFENSE

      This certification pertains to a collection of photographs (as that term is defined in Section 565(c)(2) of the Department of Homeland Security Appropriations Act, 2010 (Pub. L. 111-83) ("DHS Appropriations Act")) assembled by the Department of Defense that were taken in the period between September 11, 2001 and January 22, 2009, and that relate to the treatment of individuals engaged, captured or detained after September 11, 2001 by the Armed Forces of the United States in operations outside the United States. These photographs are contained in, or derived from, records of investigations of allegations of detainee abuse, including the records of investigation processed and released in *American Civil Liberties Union* v. *Department of Defense*, 04 Civ. 4151 (AKH) (S.D.N.Y.). The photographs include but are not limited to the 44 photographs referred to in the decision of the United States Court of Appeals for the Second Circuit in *American Civil Liberties Union v. Department of Defense*, 543 F.3d 59, 65 & n.2 (2d Cir. 2008), petition for cert. filed, 78 U.S.L.W. 3083 (Aug. 7, 2009) (No. 09-160).

      Upon the recommendations of the Chairman of the Joint Chiefs of Staff, the Commander of U.S. Central Command, and the Commander of Multi-National Forces-Iraq, and by the authority vested in me under Section 565(d)(1) of the DHS Appropriations Act, I have determined that public disclosure of these photographs would endanger citizens of the United States, members of the United States Armed Forces, or employees of the United States Government deployed outside the United States.

      Therefore, these photographs meet the standard for protected documents, as that term is defined in section 565(c)(1) of the DHS Appropriations Act and are exempt from disclosure under the Freedom of Information Act, 5 U.S.C § 552, and in all proceedings pursuant to that law. As required by Section 565(d)(4) of the DHS Appropriations Act, I hereby direct that notice of this Certification be provided to Congress.

Date: *11-13-09*

_____
Secretary of Defense